UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| BankUnited Financial Corporation, *et al.*,[1] | ) | Case No. 09-19940-LMI |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER FIXING AND AUTHORIZING
PAYMENT OF COMPENSATION TO  BOARD OF DIRECTORS**

BankUnited Financial Corporation (**"BUFC"**), BankUnited Financial Services, Incorporated (**"BUFS"**), and CRE America Corporation (**"CRE"**), as debtors and debtors in possession (the **"Debtors"**), respectfully move pursuant to 11 U.S.C. §§ 105(a), 363(b) and 503(b) for entry of an order fixing and authorizing payment of compensation to the members of the Board of Directors of BUFC (the **"Board"**) *nunc pro tunc* to the Petition Date, and state:

**BACKGROUND**

1.      These Chapter 11 cases were commenced on May 22, 2009 (the **"Petition Date"**), upon the filing of voluntary petitions for relief under Chapter 11 of the Bankruptcy Code by the Debtors.  The Debtors continue to operate as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code; no trustee or examiner has been sought or appointed in these cases.

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335). The address of each of the Debtors is c/o Development Specialists, Inc., 200 South Biscayne Blvd., Suite 1818, Miami, FL 33131.

2.      On May 29, 2009, the Office of the United States Trustee appointed an official committee of unsecured creditors (the **"Creditors Committee"**) (DE # 33).

3.      BUFC is a unitary savings and loan holding company[2] of BankUnited, FSB (the **"Bank"**) that is incorporated in the State of Florida and formerly headquartered in Coral Gables, Florida.  BUFC is also the 100% owner of (i) CRE, which holds a timeshare interest in certain real property; (ii) BUFS, which was organized in 1997 for the purpose of selling annuities, mutual funds and other insurance and securities products; and (iii) certain other subsidiary entities which for various reasons have not sought the protection of this Court.  Notwithstanding the ownership of these various entities, at all times prior to the Petition Date the primary asset of BUFC was its capital stock in the Bank.

4.      Following several unsuccessful attempts to raise the Bank's capital levels in accordance with Office of Thrift Supervision (**"OTS"**) mandates, on May 21, 2009, the OTS closed the Bank and appointed the Federal Deposit Insurance Corporation as its receiver (the **"FDIC"**).  The FDIC entered into a Purchase and Assumption Agreement with a group of investors who invested in a new depository institution, BankUnited, a de novo federal savings association organized under the laws of the United States and having its principal place of business in Coral Gables, Florida (**"New Bank"**), for the purchase of the assets of the Bank.

5.      As of the Petition Date the Board consisted of eight directors: (1) Ramiro A. Ortiz, (2) Humberto L. Lopez, (3) Felix Garcia, (4) Bradley Weiss, (5) Lawrence

---

[2] The OTS having denied an application to terminate its bank holding company status, BUFC remains subject to the regulatory oversight of the OTS, which approved the post-petition election of the four new directors to the reconstituted Board.

Blum, (6) Allen Bernkrant, (7) Neil Messinger, and (8) Marc Jacobson. As set forth in more detail below, each of the directors was entitled to receive a basic compensation package consisting of an annual cash retainer of $33,500, plus restricted stock grants of $23,000 (paid in quarterly installments and subject to vesting restrictions).[3] Members of the Board also received additional consideration for sitting on and chairing various Board committees.

6.      On the Petition Date, Messrs. Ortiz, Lopez, and Garcia submitted their resignation as directors.  On May 27, 2009, the Board was reconstituted at a duly called and previously adjourned meeting of BUFC's shareholders.  At the May 27 meeting, Messrs. Weiss and Blum also resigned as directors of BUFC; Messrs. Bernkrant, Messinger and Jacobson were re-elected as directors of BUFC; and Mr. Doyle Bartlett, Mr. Lester Bliwise, and Ms. Danielle Camner Lindholm were elected as directors of BUFC.  On June 2, 2009, BUFC continued its meeting of shareholders recessed at the May 27, 2009 meeting, and elected Mr. Gol Kalev to the Board.

7.      As a result of these resignations and elections, the reconstituted Board now consists of the following seven directors:

(1)    Doyle Bartlett.  Mr. Bartlett co-founded the Eris Group, a boutique government relations firm, in 2003. Previously, he served for five years as Chief of Staff to Representative Bill McCollum, supporting Congressman McCollum's work as Vice Chairman of the House Banking Committee and Chairman of the House Judiciary Committee's Crime Subcommittee. From 1999 to 2002, Mr. Bartlett was a Senior Vice President at the Smith-Free Group. From 1988 to 1994, Mr. Bartlett was General Counsel and Senior Vice President for Legislative Services with the Conference of State Bank Supervisors ("CSBS"), the professional association of state banking

---

[3] This basic compensation package was in addition to the separate executive compensation paid to Messrs. Ortiz and Lopez for their services as Chief Executive Officer and Chief Financial Officer, respectively.  In light of business conditions at the time, the Board elected to waive the grant of the last installment of quarterly options prior to the Petition Date.

regulators.  Before joining CSBS, Mr. Bartlett was Manager of State Government Relations at Freddie Mac.  He is a lawyer admitted to practice in Florida and formerly served on the Board of BU Delaware, a subsidiary of the Bank.

(2)    <u>Allen Bernkrant</u>.  Mr. Bernkrant has been a director of BUFC since 1993 and was a director of the Bank since 1985.  He formerly served as Chairman of BUFC's audit committee.  Mr. Bernkrant has been a private investor in Miami since 1990, and served as chief executive officer of several closely held businesses in various industries.

(3)    <u>Lester Bliwise</u>.  Mr. Bliwise is a partner in the national law firm of Sutherland Asbill & Brennan LLP, resident in its New York office. His practice is national in scope and concentrates in the area of commercial real estate where he has extensive experience in conventional and capital market financings, acquisitions and dispositions, equity investments and debt restructurings and workouts. He has served as counsel to commercial and investment banks, pension funds and their advisors, insurance companies, institutional owners and investors and others. Mr. Bliwise is co-chair of Sutherland's Debt and Equity Finance Practice Group. He is a fellow of the American College of Real Estate Lawyers, the American College of Mortgage Attorneys and the New York Bar Foundation.

(4)    <u>Danielle Camner Lindholm</u>.  Ms. Lindholm is a Vice President for Policy at Business Executives for National Security ("BENS") and manages a portfolio that includes threat finance/anti-money laundering, intelligence transformation, homeland security, and federal outreach projects. Specializing in economic and commercial aspects of national security, she has served in a range of positions: as International Harmonization Program Specialist at the Department of Transportation (1996-1997), as the Country Manager for the Middle East and North Africa at the U.S. Trade and Development Agency (1997-1999), as a Special Assistant to the Under Secretary of State for Economic, Business, and Agricultural Affairs (doing worldwide commercial issues) (1999-2001), and as an Advisor for International Economic Policy at the National Economic Council (2000-2001). Before joining BENS in January 2005, Ms. Lindholm served as the Senior Policy Advisor to a U.S. Congressman, working on issues that included financial services, national and homeland security, and foreign affairs.  Ms. Lindholm is also a lawyer admitted to practice in Florida and Washington, D.C., and previously served both as Vice President - Government Relations for BankUnited and as Chair of the Board of BU Delaware, a subsidiary of the Bank.

(5)    <u>Marc Jacobson</u>.  Marc D. Jacobson has served as a director of BUFC since 1993, and Secretary from 1993 to 1997. He has also served as a director of the Bank since 1984, and its Secretary, from 1985 to 1996.  Mr. Jacobson has been the Senior Vice President of Head-Beckham

AmerInsurance Agency, Inc., and its predecessor, Head-Beckham Insurance Agency, Inc. since 1990.

(6)    <u>Gol Kalev</u>.  Mr. Kalev has been an Investment Banker in the Financial Institutions industry for over 13 years. Prior to founding GK Global Partners in 2008, Mr. Kalev was Executive Director of JPMorgan's Financial Institutions Group from 2006 to 2008. Mr. Kalev also has extensive experience in the European asset management market and developed relationships with banks, insurance companies and private firms in the UK and throughout Europe. Previously, Mr. Kalev was with Citigroup Global Markets (previously Salomon Smith Barney) from 1996 to 2005, where he was a Director in the Financial Institutions Group. Prior to joining Citigroup, Mr. Kalev was an Associate at RogersCasey from 1995 to 1996, where he was part of a group providing strategic consulting to CEOs of asset management firms on topics ranging from strategic positioning to joint ventures formations.  Previously, he was an Associate at Cahn Capital and has served in the Israeli Defense Forces. Mr. Kalev is on the Board of Directors of the America-Israel Friendship League where he serves on the Executive Committee. In 2007, Mr. Kalev was nominated by the Israeli Government to serve on the International Advisory Committee to the Ariav Commission, which was formed to recommend broad capital markets reforms in Israel.

(7)    <u>Neil Messinger</u>.  Neil H. Messinger, M.D. has been a director of BUFC since 1996, and was formerly a director of the Bank as well. He is a Radiologist and has served as the Chairman of Radiology Associates of South Florida, P.A. since 1986. Dr. Messinger has also been the Chairman of Imaging Services of Baptist Hospital since 1986.

8.    Following the election of the new directors, the Board appointed and ratified, in consideration of the stockholders' election, Ms. Lindholm as Chairman and President; Mr. Bernkrant as Co-Vice Chairman and Vice President; Mr. Kalev as Co-Vice Chairman and Vice President; and Mr. Jacobson as Secretary and Treasurer.  As one of its first orders of business the Board appointed Joseph J. Luzinski as Chief Restructuring Officer (the **"CRO"**), effective as of June 3, 2009.  Mr. Luzinski continues to exercise day-to-day control over the business operations of the Debtors, and has been actively involved in numerous discussions with the Board regarding the issues addressed in this Motion.

9.      As consideration for their services as members of the Board before the Petition Date Messrs. Bernkrant, Messinger and Jacobson were entitled to receive compensation as follows:[4]

| Director | Annual Cash Retainer | Restricted Stock Grant | Committee Compensation | Total Compensation |
|---|---|---|---|---|
| Allen Bernkrant | $33,500 | $23,000 | $61,000 cash plus $12,000 of restricted stock | $129,500 |
| Neil Messinger | $33,500 | $23,000 | $24,000 cash plus $7,000 of restricted stock | $87,500 |
| Marc Jacobson | $33,500 | $23,000 | N/A | $56,500 |

Other former members of the Board were compensated at comparable levels before the Petition Date.

10.     The Debtors understand that the pre-petition compensation paid to BUFC's directors was consistent with compensation paid to directors of similar companies of similar size.  At the urging of the CRO and undersigned counsel all of the directors have agreed to defer the receipt of any compensation pending the Court's consideration of this Motion; as a result, no post-petition compensation has been paid to any member of the reconstituted Board.

---

[4] The Annual Cash Retainer and Restricted Stock Grant were joint fees paid for service on the Boards of both BUFC and the Bank.  In contrast, the Committee Compensation was paid solely for service on the Board.

## JURISDICTION

11.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

12.     Although the payment of reasonable compensation to directors generally falls within the ambit of the ordinary course of business, the Debtors believe in light of the unusual circumstances described above and the substantially diminished operations of the Debtors that it is appropriate to seek the entry of an Order fixing and authorizing the payment of compensation to the members of the Board pursuant to 11 U.S.C. §§ 105(a), 363(b) and 503(b).  Section 363(b)(1) provides, in pertinent part that: "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business property of the estate."  Likewise, Section 503(b)(1)(A)(i) allows an administrative expense for "the actual, necessary costs and expenses of preserving the estate including…wages, salaries, and commissions for services rendered after the commencement of the case." And Section 105(a) authorizes the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of" the Bankruptcy Code.

13.     Under applicable case law in this and other circuits, if a proposed use of estate assets pursuant to Section 363(b) represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See*, *e.g.*, *In re Gulf States, Steel, Inc.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d

513, 515 (7th Cir. 1983); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2nd Cir. 1983); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct").

14.    It is of course customary that directors of bank holding companies receive some form of remuneration for undertaking the duties and obligations associated with their positions.  As set forth above, before the closure of the Bank and the Petition Date Board members received annual compensation in amounts ranging from $56,500 to $129,500.   The Debtors' informal research reveals that in most instances, post-petition compensation of directors is typically maintained at pre-petition levels and paid as an administrative expense in the ordinary course of business.  Here, however, the Debtors submit – and to their credit, the Board members unanimously agree – that the substantial curtailment of BUFC's business operations following the closure of the Bank necessitates a downward adjustment to director compensation.  In the opinion of the Debtors, as recommended by the CRO and undersigned counsel, these circumstances coupled with the fact that four of the directors were elected after the Petition Date dictate that the level of post-petition director compensation be fixed and authorized by the Bankruptcy Court rather than simply by the Board itself.

15.     The Board and its members continue to serve an important and active role in these cases, meeting on a regular basis telephonically at least once or twice each month[5] and spending significant amounts of time reviewing certain pleadings, financial information, agreements, and other documents furnished on a selective basis by the CRO and counsel, and making strategic decisions with respect to matters that typically require the input and approval of a board of directors.  Since the Petition Date these matters have included, without limitation, the following:

- interview, appointment and compensation of Chief Restructuring Officer, and ongoing review of his performance;

- retention of various professionals by the Debtors;

- appointment of successor indenture trustees for certain of BUFC's outstanding debt securities;

- termination of a Political Action Committee and recovery of amounts held in its account;

- filing of federal and state tax returns and refund claims, along with the preservation of significant tax attributes for the benefit of the estates;

- entry into a series of stipulations with the FDIC, OTS, and New Bank necessary to obtain access to documents essential to the Debtors' operations and compliance with the Bankruptcy Code and Rules;

- maintaining and generating value from the Debtors' business and certain non-debtor subsidiaries;

- identification and assertion of claims against the FDIC Receivership of the Bank;

---

[5] In the interests of economy all of the post-petition meetings held to date have been conducted telephonically rather than in person.

- selective cancellation and preservation of various insurance policies for the benefit of the estates;

- other efforts to maximize value for unsecured creditors and, to the extent possible, holders of equity interests.

16.    While the CRO has substantial authority to act on behalf of the Debtors and to carry out the Board's decisions, it is ultimately the Board from which the CRO derives that authority and to which he is responsible for his executive actions in furtherance of the strategic objectives developed and/or approved by the Board. Accordingly, the Debtors believe in their informed business judgment that it is necessary and appropriate, and in the best interests of these Chapter 11 estates and their creditors, for the members of the Board to receive reasonable compensation for their postpetition services.

17.    Over the past several weeks undersigned counsel has discussed the issues addressed in this Motion with counsel for the Creditors Committee, even providing an earlier draft of a proposed form of Motion and seeking to reach agreement with the Committee on a reasonable level of compensation.    Regrettably the Committee has responded with the position that the Board members deserve little or no compensation other than the ongoing coverage under existing policies of errors and omissions insurance, and proposed the payment of no more than $1500 per month to be allocated among the Board members as they see fit.  The Board members, on the other hand, had initially requested compensation of $30,000 per year per member, well below even the minimum base compensation paid prepetition.  After consultation with the CRO and undersigned counsel and, indirectly with the Committee, the Board

members have reduced their requested compensation to a level that the CRO deems to be reasonable in the circumstances and is prepared to support.

18.     The Debtors do not represent and speak for the members of the Board in furtherance of their individual interests as directors.  The Debtors do, however, have a compelling interest in maintaining an active Board of Directors consisting of talented and experienced members who remain engaged and capable of exercising sound and prudent business judgment.  In furtherance of that objective the Debtors respectfully disagree with the Creditors Committee's position that Board members should serve with little or no compensation; rather, the Debtors propose as reasonable that the Court fix monthly compensation to each director in the amount of not less than $1500 per month, plus reimbursement of reasonable out-of-pocket expenses, for each month in which a director attends one or more Board meetings. Assuming that the Board remains at its current level of seven members, the proposed director compensation comes to $10,500 per month, or $126,000 per year, in the aggregate, less than the annual compensation paid to the highest-compensated Board member prior to the Petition Date.

19.     As noted above, the Board has been meeting once or twice per month since the Petition Date, each telephonic meeting typically lasting one and one-half to two hours.  The Board members estimate that they each spend approximately two hours in preparation for each meeting, reviewing various documents including board minutes, agendas, and other documents that may be considered at such meetings. Given these time commitments, along with the necessary guidance to and exchange of information with the CRO and undersigned counsel as may be required of individual

directors from time to time, the proposed compensation of $1500 per month per director is far less than the regular hourly compensation that the Board members typically receive in their respective professional roles.[6]

16.     Acknowledging that the prepetition level of compensation for the Board members is no longer appropriate – but disagreeing with the Creditors Committee's position that the Board members should serve for little or no compensation other than continuing coverage under policies of errors and omissions insurance – the Debtors respectfully request that the Court fix and authorize payment of reasonable compensation for the members of the Board, *nunc pro tunc* to the Petition Date.

---

[6] This discrepancy is hardly surprising given the talent and professional experience of the Board, which includes three attorneys, an investment banker, medical doctor, insurance executive, lobbyist and national security consultant, several of whom are successful investors and have served in executive capacities in their respective businesses and on other boards of directors as well.

## CONCLUSION

WHEREFORE, the Debtors respectfully request the entry of an Order (i) granting this motion, (ii) fixing and determining the appropriate compensation for the members of the Board *nunc pro tunc* to the Petition Date, (iii) authorizing payment of such compensation as an administrative expense of the estates, and (iv) granting such other and further relief as the Court deems just and proper.

Dated August 10, 2009.                    Respectfully submitted,

                                                                 GREENBERG TRAURIG, P.A.
Counsel for the Debtors
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By:    /s/ Mark D. Bloom
        MARK D. BLOOM
        Florida Bar No. 303836
        bloomm@gtlaw.com
        SCOTT M. GROSSMAN
        Florida Bar No. 0176702
        grossmansm@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                                 /s/ Mark D. Bloom
                                                                 MARK D. BLOOM

*MIA 180,640,396 v14 117136010200.*

## SERVICE LIST

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case:

Johanna Armengol on behalf of U.S. Trustee Office of the US Trustee
Johanna.Armengol@usdoj.gov, johanna.armengol@usdoj.gov

Paul J. Battista on behalf of Creditor Alfred Camner
pbattista@gjb-law.com, ctarrant@gjb-law.com;gjbecf@gjb-law.com

Bruce J Berman on behalf of Creditor Federal Deposit Insurance Corporation,
bberman@mwe.com, wjanke@mwe.com;graicht@mwe.com

Mark D Bloom on behalf of Debtor BankUnited Financial Corporation
bloomm@gtlaw.com, phillipsj@gtlaw.com; MiaLitDock@gtlaw.com;
miaecfbky@gtlaw.com

Stephen P Drobny on behalf of Debtor BankUnited Financial Corporation
sdrobny@shutts.com, mvandenbosch@shutts.com

Scott M. Grossman on behalf of Debtor BankUnited Financial Corporation
grossmansm@gtlaw.com, phillipsj@gtlaw.com; MiaLitDock@gtlaw.com;
miaecfbky@gtlaw.com

Peter H Levitt on behalf of Debtor BankUnited Financial Corporation
plevitt@shutts-law.com

Corali Lopez-Castro on behalf of Creditor Committee Official Committee of Unsecured Creditors
clc@kttlaw.com, rcp@kttlaw.com

Todd C Meyers on behalf of Creditor Committee Official Committee of Unsecured Creditors
tmeyers@kilpatrickstockton.com, skapoor@kilpatrickstockton.com

Miami-Dade County Tax Collector
mdtcbkc@miamidade.gov

Dennis A Nowak on behalf of Interested Party Humberto Lopez
dn@tewlaw.com, ag@tewlaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Craig V Rasile on behalf of Creditor U.S. Bank, N.A.
crasile@hunton.com, mtucker@hunton.com, mmannering@hunton.com,
keckhardt@hunton.com, adeboer@hunton.com

Patricia A Redmond on behalf of Interested Party BankUnited, FSB ("New Bank")
predmond@swmwas.com, jmartinez@swmwas.com;rross@swmwas.com

David Samole on behalf of Creditor Committee Official Committee of Unsecured
Creditors
das@kttlaw.com, pm@kttlaw.com;la@kttlaw.com;ycc@kttlaw.com

**<u>Manual Notice List</u>**

The following is the list of parties who are not on the list to receive e-mail notice/service
for this case, and are therefore being served by first class U.S. Mail, postage prepaid:

LIST ATTACHED

## NON-ECF SERVICE LIST

| | |
|---|---|
| Cede & Co.<br>P.O. Box 20<br>Bowling Green Station<br>New York, NY 10004-1408 | Wells Fargo Delaware Trust Company<br>Attn: Molly A. Breffitt<br>919 N. Market Street<br>Suite 1600<br>Wilmington, DE 19801 |
| U.S. Bank<br>1555 N. River Center Drive<br>Suite 300<br>Milwaukee, WI 53212 | Thomas M. Korsman, Vice President<br>Corporate Special Accounts Group<br>Wells Fargo Bank, N.A.<br>MAC N9311-110<br>625 Marquette Avenue<br>Minneapolis, MN 55479 |
| U.S. Bank<br>Attn: Earl Dennison, Acct. Admin.<br>Goodwin Square, 23rd Floor<br>225 Asylum Street<br>Hartford, CT 06103 | Stearns Weaver<br>Museum Tower<br>150 W. Flagler Street Suite 2200<br>Miami, FL 33130 |
| Geoffrey T. Raicht, Esq.<br>Attorneys for FDIC<br>McDermott Will & Emery LLP<br>340 Madison Ave.<br>New York, N.Y. 10173-1922 | Tew Cardenas<br>Four Seasons Tower - 15th Floor<br>1441 Brickell Avenue<br>Miami, FL 33131-3439 |
| Bridget Schessler, Vice President<br>The Bank of New York Mellon<br>525 William Penn Place, 7th Floor<br>Pittsburgh, PA 15259 | Coffey Burlington<br>Office in the Grove Penthouse<br>2699 S. Bayshore Drive<br>Miami, FL 33133 |
| Steven M. Cimalore<br>Wilmington Trust Company<br>Rodney Square North<br>1100 North Market Street<br>Wilmington, DE 19890-1615 | Jack Reise<br>Waterford Township General Employees<br>Retirement System<br>c/o Coughlin Stoia Geller et al<br>120 E. Palmetto Park Road Suite 500<br>Boca Raton, FL 33432 |
| Moses Marx<br>c/o Ross Martin, Esq.<br>Ropes & Gray, LLP<br>One International Place<br>Boston, MA 02110-2624 | Internal Revenue Service<br>Department of Treasury<br>227 N. Borough St.<br>Tallahassee, FL 32301 |

| | |
|---|---|
| Internal Revenue Service<br>P.O. Box 21126<br>Philadelphia, PA 19114 | Internal Revenue Service<br>Insolvency Unit<br>7850 S.W. 6th Court<br>Mail Stop 5730<br>Plantation, FL 33324 |
| State of Florida<br>Department of Revenue<br>Bankruptcy Section<br>P.O. Box 6668<br>Tallahassee, FL 32314-6668 | Honorable Eric Holder<br>U.S. Attorney General<br>Office of the Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |
| Honorable R. Alexander Acosta<br>Attn: Civil Process Clerk<br>U.S. Attorney<br>99 NE Fourth Street<br>Miami, FL 33132 | Susan R. Sherrill-Beard<br>Senior Trial Counsel/Bankruptcy<br>U.S. Securities and Exchange Commission<br>Atlanta Regional Office<br>Suite 1000, 3475 Lenox Road, N.E.<br>Atlanta, GA 30326-1232 |
| Susan D. Profant, CFCA, CLA, Paralegal<br>KEN BURTON, JR., Manatee County<br>Tax Collector<br>P.O. Box 25300<br>Bradenton, FL 34206-5300 | David A. Lander, Esq.<br>Brian W. Hockett, Esq.<br>Attorneys for BankUnited (New Bank)<br>Thompson Coburn LLP<br>One US Bank Plaza<br>St. Louis, Missouri 63101 |
| Allison H. Weiss, Esq.<br>Jeffrey Chubak, Esq.<br>Counsel for Bank of New York Mellon<br>DEWEY & LeBOEUF LLP<br>1301 Avenue of the Americas<br>New York, N.Y. 10019 | Andrew I. Silfen, Esq.<br>Leah M. Eisenberg, Esq.<br>Counsel for Wilmington Trust Company<br>ARENT FOX LLP<br>1675 Broadway<br>New York, N.Y. 10019 |
| Jeffrey N. Rothleder, Esq.<br>Counsel for Wilmington Trust Company<br>ARENT FOX LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20026 | Jonathan Lee Riches<br>dba Bernard L. Madoff Invest. Sec. LLC<br>POB 14500 #40948018<br>Lexington, KY 40512 |
| Michael C. Sontag, Esq.<br>Special Counsel to Debtors<br>CAMNER LIPSITZ, P.A.<br>550 Biltmore Way, Suite 700<br>Coral Gables, FL 33134 | Wendy H. Zoberman, Esq.<br>Lead Counsel for the Putative Class<br>BERMAN DEVALERIO<br>4280 Professional Center Drive, Suite 350<br>Palm Beach Gardens, FL 33410 |

| | |
|---|---|
| CC Arbitrage, Ltd<br>c/o Castle Creek Arbitrage LLC<br>111 West Jackson Blvd 20th Fl<br>Chicago, IL 60604 | Monumental Life Insurance Co<br>c/o Maureen Ocampo CFA<br>2049 Century Park East #330<br>Los Angeles, CA 90067 |
| Hudson Bay Fund LP<br>Hudson Bay Overseas LTD<br>c/o Charles Winkler<br>120 Broadway 40th Flr<br>New York, NY 10271 | Highbridge International LLC<br>c/o Highbridge Capital Management LLC<br>9 West 57 St 27 Floor<br>New York, NY 10019 |
| Deutsche Bank Securities, Inc<br>60 Wall St<br>New York, NY 10005 | |