IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                            )
                                                  )     Chapter 11
BankUnited Financial Corporation, *et al.*,[1]    )
                                                  )     Case No. 09-19940-LMI
                    Debtors.                      )
                                                  )     (Jointly Administered)

### OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF BANKUNITED FINANCIAL CORPORATION AND RELATED DEBTORS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER FIXING AND AUTHORIZING PAYMENT OF COMPENSATION TO BOARD OF DIRECTORS

The Official Committee of Unsecured Creditors of the above-captioned Debtors (the "Committee") submits to this Court its objection (the "Objection") to the Debtors' Motion for Entry of an Order Fixing and Authorizing Payment of Compensation to Board of Directors (the "Motion"), and as grounds therefor, shows this Court as follows:

### BACKGROUND

1.     On May 22, 2009 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     BankUnited Financial Corporation ("BankUnited") was the direct parent of BankUnited, FSB (the "Bank"), a federally chartered savings institution, through which BankUnited primarily conducted its business.

---

[1] The debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335) (collectively, the "Debtors").

US2008 806212.6

3. On May 21, 2009, the Office of Thrift Supervision closed the Bank and appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver, thereby necessitating the filing of the instant bankruptcy cases. The FDIC has transferred the Bank's assets and most liabilities to a newly chartered federal savings bank.

4. The Debtors' primary assets now consist of cash and litigation claims, and the operation of debtor Bank United Financial Services, Inc., which sells annuities, mutual funds and other insurance and securities products, and debtor CRE America Corporation, which holds a time share interest in certain real property.

5. On May 29, 2009, the acting United States Trustee for Region 21, appointed the members of the Committee and filed an appropriate notice of appointment. [Docket No. 33].

6. On August 10, 2009, the Debtors filed the Motion [Docket No. 171] seeking an order fixing and authorizing payment of compensation to the current members of the Board of Directors of BankUnited (each a "Director", and collectively, the "Directors"), nunc pro tunc to the Petition Date, pursuant to sections 105(a), 363(b), and 503(b) of the Bankruptcy Code. In particular, the Debtors seek to compensate each of their seven Directors at the rate of $1,500.00 per month ($10,500.00 per month in total), plus reimbursement of expenses, for each month in which a Director attends one or more meetings of the Board of Directors (the "Board").

**OBJECTION**

7. Section 363(b) of the Bankruptcy Code allows the use of property of the bankruptcy estate outside the ordinary course of business, upon notice and a hearing, if such use represents a reasonable business judgment of the debtor. See 11 U.S.C. § 363(b). In addition, section 503(b)(1)(A)(i) of the Bankruptcy Code allows an administrative expense for "the actual, necessary costs and expenses of preserving the estate including – wages, salaries, and

commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A)(i). Accordingly, the Debtors argue that the services previously provided, as well as the services to be provided by the Directors are actual and necessary costs of preserving the Debtors' bankruptcy estates, and that compensating the Directors at the rate specified above represents reasonable business judgment on behalf of the Debtors.

8. The Committee vigorously disputes the assertions contained in the Motion. Even if the Court applies the business judgment rule, the Debtors' Motion should be denied because the relief requested therein is unnecessary and represents self-dealing and a lack of reasonable business judgment.

9. As an initial matter, the law is clear that bankruptcy courts have the power to adjust the compensation of insiders. See In re Lynx Transport, Inc., 1999 WL 615366, *4 (Bankr. E.D. Pa. 1999) (numerous authorities support the principle that the compensation of insiders must be scrutinized by bankruptcy courts); In re Hooper Goode Realty, 60 B.R. 328, 331 (Bankr. S.D. Cal. 1986) (bankruptcy court is clearly vested with authority to review the propriety of salaries paid to insiders); Lyon & Reboli, Inc., 24 B.R. 152, 154-55 (Bankr. E.D.N.Y. 1982) (finding authority to regulate payrolls of insiders of debtors under sections 105(a) and 1107(a) at the Bankruptcy Code). In addition, the fact that the Directors are insiders of the Debtors necessitates increased scrutiny. See In re Fortune Natural Resources Corp., 366 B.R. 558, 562-563 (Bankr. E.D. La. 2007) (denying directors requests for compensation because directors did not meet higher level of scrutiny imposed on directors seeking allowance of an administrative expense claim); Mark IV Properties, Inc. v. Club Development & Management Corp. (In re Club Development & Management Corp.), 27 B.R. 610, 612-13 (9th Cir. B.A.P. 1982) (reversing bankruptcy court order providing directors and officers in a liquidating chapter 11 case with a

total of $12,700.00 per month because "[a]llowance of [an administrative claim] to an officer, director or stockholder imposes a duty of 'rigorous scrutiny' upon the court, and the absence of an independent trustee increases the court's duty to insure that the transaction is inherently fair to the estate and its creditors," and noting that "business judgment is not a statutory ground for allowance of administrative expenses incurred out of the ordinary course of business."); In re Zerodec Mega Corp., 39 B.R. 932, 935 (Bankr. E.D. Pa. 1984) (because insider transactions are subject to greater scrutiny than "arms length" transactions and the burden of proof must be borne by insiders as opposed to objecting party, bankruptcy court reduced officer's proposed salary by one-third, from $1,200.00 per week to $800.00 per week).

10. The instant Motion is the latest in the Directors' attempts at obtaining unnecessary and excessive compensation from the Debtors' bankruptcy estates, solely for the benefit of insiders of the Debtors. Despite serious conflicts of interest, on July 7, 2009 (more than six weeks after the cases were filed), the Debtors (at the direction of the Board) filed a motion seeking the retention of Camner Lipsitz, P.A. ("Camner Lipsitz"), as special corporate, securities and banking regulatory counsel, nunc pro tunc to the Petition Date [Docket No. 135] (the "Camner Lipsitz Motion"). Camner Lipsitz was previously employed as the Debtors' primary corporate, securities and banking regulatory counsel, and based upon information and belief, BankUnited (and its related entities) were Camner Lipsitz's only substantial clients. In addition, Alfred R. Camner ("Camner"), founder and former Senior Managing Director of Camner Lipsitz, was BankUnited's founder and served as the Chairman of the Board and Chief Executive Officer for both the Bank and BankUnited. Camner's daughter, Danielle Camner Lindholm, is now Chairman of the Board for BankUnited. Camner is now a defendant in the pending class action lawsuit alleging various violations of securities laws by Camner and the

other defendants. After discussions with the Committee and other concerned parties, the Debtors eventually withdrew the improvidently filed Camner Lipsitz Motion.[2]

11. The Board also instructed the Debtors to file the instant Motion, in which the relief requested only serves to benefit the Board, while reducing the Debtors' limited resources to the detriment of the Debtors' creditors. Accordingly, it appears that even though there is a significant deficiency between the Debtors' liquid assets and anticipated debt (approximately $17 million in liquid assets and over $500 million in anticipated debt), the Directors are intent on administering the instant bankruptcy cases for the benefit of themselves and other insiders of the Debtors. Therefore, the Debtors should not be afforded the protection of the business judgment rule with respect to the relief sought in the Motion.

12. Furthermore, because the Debtors are in the process of winding down their limited business operations and liquidating their estates (with a possible reorganization around the Debtors' insurance brokerage business), the Committee, after consultation with the Debtor, and the Debtor's professionals, asserts that the Directors are no longer essential to the management of the Debtors and that the proposed compensation is grossly excessive. The Debtors are seeking authorization from the Court to pay each Director $1,500.00 per month for each month in which the Director attends one Board meeting. Accordingly, each Board meeting (assuming one per month, which itself is excessive given the status of the bankruptcy cases) would cost the Debtors' bankruptcy estates $10,500.00 (the Board is comprised of seven Directors, a number that is also grossly excessive when no more than three Directors could easily fulfill the limited role of the Board in these cases), which translates to compensating the Board at

---

[2] Also, it recently came to light that just prior to the bankruptcy filing, a series of retainers, totaling approximately $750,000.00, were paid to law firms (presumably at the direction of the Board) who had been retained to represent the Directors, some of which payments cleared the Debtors' bank accounts postpetition. See Debtors' Consolidated Standard Monthly Operating Report for the period of May 22, 2009 through June 30, 2009 at p. 29 [Docket No. 156]; Debtors' Statement of Financial Affairs 3(b).

the hourly rate of $750.00 to $1,000.00 per Director, and at the annual rate of $18,000.00 per Director.[3] This is grossly excessive and unnecessary, especially in the context of Debtors whose businesses have all but discontinued and are about to liquidate (with a possible reorganization around the Debtors' insurance brokerage business).

13. The Motion contains a list of services performed by the Directors. A review of such list indicates that the Directors are performing unnecessary tasks that provide little or no benefit to the Debtors' bankruptcy estates. See Motion, ¶ 15 at p. 9 (". . . meeting on a regular basis telephonically at least once or twice each month and spending significant amounts of time reviewing certain pleadings, financial information, agreements and other documents furnished on a selective basis by the CRO and counsel, and making strategic decisions with respect to matters that typically require the input and approval of a board of directors.").[4] There is also a substantial overlap between the services performed by the CRO and the tasks being performed by the Directors. The Debtors note that the CRO "continues to exercise day-to-day control over the business operations of the Debtors." See Motion, ¶ 8 at p. 5. In light of the "substantially diminished operations of the Debtors," and the duties and responsibilities of the CRO, it is evident that the tasks performed by the Directors provide little or no benefit to the Debtors' bankruptcy estates, and as a result, the compensation sought therefor is excessive and unnecessary. See Motion, ¶ 12 at p. 7.

14. As stated in the Motion, the Committee expressed its concerns to the Debtors regarding compensation for the Board on numerous occasions and requested that the Debtors

---

[3] Each meeting of the Board typically lasts one and one-half to two hours. Motion, ¶ 19 at p. 11.

[4] Given that the Debtors have retained counsel and the CRO, and are in the process of winding down their limited business options and liquidating their estates (with a possible reorganization around the Debtors' insurance brokerage business), it is unclear what strategic decisions the Directors are being asked to make that necessitate the proposed rate of compensation.

refrain from filing the Motion in order to minimize costs and expenses.[5]  Notwithstanding the Committee's requests that the Directors receive little or no compensation for serving on the Board, the Debtors (no doubt acting at the command of the Board) proceeded with filing the Motion.[6]

15.     The Debtors and the Board act as if the reduction from their original proposal, $30,000.00 per year per Director (a total of $210,000.00 annually), validates the "reduced" compensation now requested in their Motion.  See Motion, ¶ 17 at p. 10-11.  Clearly, reducing the Board's requested compensation from a previously unreasonable offer to a slightly less onerous unreasonable offer does not make the relief requested in the Motion a reasonable exercise of business judgment.  As such, the Committee objects to the Motion and requests that the Court deny the relief requested therein.  The Committee believes that given the Directors' limited responsibilities, the Court should prohibit the Debtors from compensating the Directors at all, and certainly not at the rates proposed in the Motion.[7]

---

[5] In the Motion, the Debtors disclosed the Committee's settlement proposal of $1,500.00 per month to be allocated among the entire Board (the size of which the Committee recommended be reduced to no more than three Directors).  The proposal was communicated to Debtors' counsel in the course of settlement negotiations related to the issues presented in the Motion, and should have no evidentiary value for any purpose pursuant to Rule 408 of the Federal Rules of Evidence.

[6] The Debtors allege that they have done "informal research [revealing] that in most instances, post-petition compensation of directors is typically maintained at pre-petition levels and paid as an administrative expense in the ordinary course of business."  Motion, ¶ 14 at p. 8.  However, the results of such research are not included in the Motion, and have not otherwise been provided to the Committee.  The Committee is curious to review and analyze any authority standing for the proposition that the board of a similarly situated bank holding company can command the type of compensation requested herein.  See Fortune, *supra*; Club Development, *supra*; Zerodec Mega, *supra*; Lyon & Reboli, Inc., *supra*; In re Lynx Transport, Inc., *supra*; In re Hooper Goode Realty, *supra*.

[7] The Committee would not be opposed to the Court denying the Motion at this time without prejudice to the Debtors seeking relief at a later date when the direction of the case is more clear and the benefit provided to the Debtors' estates is evident.

WHEREFORE, the Committee respectfully requests that this Court (a) deny the Motion in its entirety, and (b) grant such other and further relief as is appropriate under the circumstances.

Dated:  August 26, 2009

        KILPATRICK STOCKTON LLP

        /s/ Todd C. Meyers
Todd C. Meyers
Georgia Bar No. 503756
Sameer K. Kapoor
Georgia Bar No. 407525
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
tmeyers@kilpatrickstockton.com

and

KOZYAK TROPIN & THROCKMORTON, P.A.

Corali  Lopez-Castro, Esq.
Florida Bar No. 863830
2525 Ponce De Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800 (Telephone)
(305) 372-3508 (Facsimile)
clc@kttlaw.com

Counsel for the Official Committee of Unsecured Creditors of BankUnited Financial Corporation, et al.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on parties listed below via electronic mail.

                                                      /s/ Todd C. Meyers
                                                         Todd C. Meyers

<u>Debtors' Counsel</u>
Mark D Bloom
Email: bloomm@gtlaw.com

<u>Chief Restructuring Officer</u>
Joseph Luzinski
Email: jluzinski@dsi.biz

<u>United States Trustee</u>
Johanna Armengol
Email: Johanna.Armengol@usdoj.gov

US2008 806212.6