UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re | Chapter 11 |
| BankUnited Financial Corporation, *et al.*,[1] | Case No. 09-19940-LMI |
| Debtors.                                    / | (Jointly Administered) |

**MOTION FOR ENTRY OF AN ORDER APPROVING STIPULATION BETWEEN THE DEBTORS AND THE BANK OF NEW YORK MELLON GRANTING RELIEF FROM THE AUTOMATIC STAY AND AUTHORIZING RELEASE OF COLLATERAL**

BankUnited Financial Corporation ("**BUFC**"), BankUnited Financial Services, Incorporated ("**BUFS**"), and CRE America Corporation ("**CRE**"), debtors and debtors in possession (collectively, the "**Debtors**"), respectfully move pursuant to 11 U.S.C. §§ 362 and 365, Federal Rules of Bankruptcy Procedure 4001 and 9014, and Local Rule 4001-1, for entry of an Order approving that certain *Stipulation Between the Debtors and The Bank of New York Mellon Granting Relief from the Automatic Stay* (the "**Stipulation**"), annexed hereto as **Exhibit A**, and state:

**PRELIMINARY STATEMENT**

1.    As set forth more fully below, BNYM and the Debtors differ sharply regarding whether (i) as contended by the Debtors, BUFC's interest in the Collateral (defined below) became property of its estate upon the commencement of its bankruptcy case, protected from release by the aegis of the automatic stay or (ii) as advanced by BNYM, the commencement of the case constituted a Termination Event under the Agreement governing the HiMEDS Units (all as defined below), as a result of which any interest of BUFC in the Collateral was extinguished,

---

[1]    The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335). The address of each of the Debtors is c/o Development Specialists, Inc., 200 South Biscayne Blvd., Suite 1818, Miami, FL 33131.

the Collateral never became property of the BUFC estate, and the automatic stay does not operate to preclude the release of the Collateral.  Nevertheless, in spite of these stark differences, BNYM and the Debtors have agreed as set forth in the Stipulation and described further below that, to the extent the stay applies, cause exists to modify the stay in accordance with the terms of the Stipulation such that BNYM may proceed without interference or fear of reprisal to release the Collateral.

## BACKGROUND

2.      These Chapter 11 cases were commenced on May 22, 2009, upon the filing of voluntary petitions for relief under Chapter 11 of the Bankruptcy Code by the Debtors.  The Debtors continue to operate as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108; no trustee or examiner has been sought or appointed in these cases.

3.      On May 29, 2009, the Office of the United States Trustee appointed an official committee of unsecured creditors (DE # 33).

4.      BUFC is a former unitary savings and loan holding company of BankUnited, FSB (the **"Bank"**) that is incorporated in the State of Florida and headquartered in Coral Gables, Florida.  BUFC is the 100% owner of (i) CRE, which holds a timeshare interest in certain real property; and (ii) BUFS, which was organized in 1997 for the purpose of selling annuities, mutual funds and other insurance and securities products.

5.      Following several unsuccessful attempts to raise the Bank's capital levels in accordance with Office of Thrift Supervision (**"OTS"**) mandates, on May 21, 2009, the OTS closed the Bank and appointed the Federal Deposit Insurance Corporation as receiver (the **"FDIC"**) for the Bank.  The FDIC entered into a Purchase and Assumption Agreement with a group of investors who invested in a new depository institution, BankUnited, a de novo federal

2

savings association organized under the laws of the United States and having its principal place of business in Coral Gables, Florida (**"New Bank"**), for the purchase of the Bank's assets.

## THE HIMEDS UNITS

6.      On April 18, 2007, BUFC entered into that certain Indenture with BNYM authorizing BUFC to issue certain securities (the "**Base Indenture**").  On April 25, 2007, BUFC and BNYM entered into that certain First Supplemental Indenture (together with the Base Indenture, the "**Indenture**") authorizing BUFC to issue up to $184,000,000 in aggregate principal amount of 6.37% Senior Notes due May 17, 2012 (the "**Senior Notes**").  On April 25, 2007, BUFC and BNYM entered into that certain Purchase Contract and Pledge Agreement (the "**Agreement**") dated as of April 25, 2007 authorizing BUFC to issue 3,680,000 HiMEDS[SM] Units (the "**HiMEDS Units**").  **This Stipulation relates solely to the HiMEDS Units, and otherwise leaves unimpaired the rights of all parties in respect of the Senior Notes**.

7.      Pursuant to the Agreement, each HiMEDS Unit[2] has a stated amount of $50 and is comprised of two parts: (i) a 5% interest in $1,000 principal amount of Senior Notes, and (ii) a "**Purchase Contract**" which obligates the unit holder (the "**Holder**") to purchase, and obligates BUFC to sell, newly issued shares of BUFC Class A Common Stock (the "**Common Stock**") on May 17, 2010 (the "**Purchase Contract Settlement Date**") at a price varying with the market price but not less than approximately $23 per share.

8.      Pursuant to the Agreement, the Senior Notes were pledged (the "**Pledge**") as collateral (the "**Collateral**") to BNYM, as agent of and for the benefit of BUFC (BNYM in such capacity, the "**Collateral Agent**"), and held by the Collateral Agent in that certain "**Collateral**

---

[2]      Each HiMEDS Unit also contained an option to modify the Collateral (as defined below) by substituting zero-coupon United States treasury securities for the Senior Notes (each such modified HiMEDS Unit, a "**Treasury HiMEDS Unit**").  However, as of the commencement of these chapter 11 cases, none of the HiMEDS Units were Treasury HiMEDS Units.

3

**Account**" to secure the obligations of the Holders of HiMEDS Units to purchase Common Stock pursuant to the Purchase Contract (the "**Purchase Obligations**").  Also, BNYM serves as securities intermediary (as defined in Section 8-102(a)(14) of the UCC) with respect to the Collateral Account (BNYM in such capacity, the "**Securities Intermediary**") and as purchase contract agent for the Holders (BNYM in such capacity, the "**Purchase Contract Agent**").

9.    Pursuant to Section 1.01 of the Agreement, the filing of a petition for relief under the Bankruptcy Code by BUFC at any time on or before the Purchase Contract Settlement Date constitutes a "**Termination Event**."  Pursuant to Section 5.06 of the Agreement, upon the occurrence of a Termination Event, the Purchase Contracts and the Holders' Purchase Obligations terminate and the HiMEDS Units "shall thereafter represent the right to receive the Senior Notes" (the "**Purchase Contract Termination Clause**").  Also, Section 11.02 of the Agreement states that the Pledge "shall terminate upon the satisfaction of such Holder's Obligations" (the "**Pledge Termination Clause**"),  and that upon such termination, the Collateral Agent will instruct the Securities Intermediary to release the applicable portion of the Collateral to the Purchase Contract Agent for distribution to the Holders (the "**Transfer Clause**").

10.    The Debtors and BNYM have conducted discussions concerning (i) the extent, if any, of the Holders' Purchase Obligations under the Agreement and the Debtors' interest in the Collateral, and (ii) whether relief from the automatic stay is necessary to terminate the Pledge and permit BNYM, as Collateral Agent, Securities Intermediary, and Purchase Contract Agent, to release the Collateral to the Holders.  As a result of such discussions and in light of the legal analysis set forth below, the Debtors and BNYM have agreed to resolve these issues pursuant to the terms and conditions of the Stipulation, subject to the Court's approval.  The Stipulation

provides that the automatic stay, to the extent applicable, shall be modified to effectuate the termination of BUFC's interest, if any, in the Collateral pursuant to the Agreement, and to permit BNYM, in its capacities as Collateral Agent, Securities Intermediary, and Purchase Contract Agent, to enforce the Purchase Contract Termination Clause and the Pledge Termination Clause and release the Collateral to the Holders of the HiMEDS Units pursuant to the Agreement.

## JURISDICTION AND VENUE

11.    The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are 11 U.S.C. §§ 362 and 365, Federal Rules of Bankruptcy Procedure 4001 and 9014, and Local Rule 4001-1.

## RELIEF REQUESTED

12.    The Debtors and BNYM respectfully request that the Court enter an Order approving the Stipulation and modifying the automatic stay to effectuate the termination of BUFC's interest, if any, in the Collateral pursuant to the Agreement, and to permit BNYM, in its capacities as Collateral Agent, Securities Intermediary, and Purchase Contract Agent, to enforce the Purchase Contract Termination Clause and the Pledge Termination Clause and release the Collateral to the Holders of the HiMEDS Units pursuant to the Agreement.

## BASIS FOR RELIEF

**A.    The Debtors and BNYM Disagree Regarding Whether Relief from Stay Is Necessary to Permit BNYM to Release the Collateral to the Holders.**

13.    BNYM asserts that the commencement of BUFC's bankruptcy case triggered the Purchase Contract Termination Clause and the Pledge Termination Clause, which in BNYM's view are immediately enforceable *ipso facto* clauses pursuant to either Section 365(e)(2)(B) or Section 555 of the Bankruptcy Code.  As a result, BNYM contends that upon the bankruptcy

filing the Purchase Obligations were terminated, the Pledge of the Collateral was extinguished, and BNYM was required to release the Collateral to the Holders. BNYM further contends that because the Pledge of the Collateral was extinguished by the Termination Event, BUFC's interest in the Collateral pursuant to the Pledge did not become property of the estate and is not protected by the prohibition on acts to exercise control over estate property imposed by the automatic stay.

14. To the contrary, the Debtors contend that upon the commencement of the bankruptcy case of BUFC the Pledge of the Collateral became property of the BUFC estate as an interest in property of BUFC. Thus, it follows that notwithstanding the possible enforceability of the Purchase Contract Termination Clause and the Pledge Termination Clause pursuant to either Section 365(e)(2)(B) or Section 555 to terminate contractual rights and obligations under the Agreement, any act to extinguish BUFC estate's property right in the Pledge of the Collateral is an act to exercise control over property of the estate and, absent stay relief, a violation of the automatic stay.

15. Notwithstanding these assertions, BNYM has negotiated with the Debtors to enter into the Stipulation "in an abundance of caution" so as to avoid interference in or reprisals following its intended release of the Collateral. Notwithstanding their belief that the Pledge of the Collateral is property of the estate and protected by the stay, the Debtors entered into the Stipulation because they believe cause exists to enter relief from the stay for the reasons set forth below.

6

**B.      To the Extent Necessary, Cause Exists to Lift the Automatic Stay.[3]**

16.      To the extent that relief from the automatic stay is necessary to terminate the Purchase Obligations, extinguish the Pledge of the Collateral, and permit BNYM to release the Collateral to Holders, relief from the stay is appropriate under the circumstances.   Section 362(d)(1) provides that the Court shall grant relief from the automatic stay "for cause."   11 U.S.C. § 362(d)(1).   Cause exists to grant stay relief because pursuant to 11 U.S.C. § 365(e)(2)(B), the Purchase Contract Termination Clause and the Pledge Termination Clause are enforceable *ipso facto* clauses and the Pledge of the Collateral is of no value to BUFC's estate.[4]

---

[3]      This Section B is without prejudice to BNYM arguing on any basis, including without limitation 11 U.S.C. § 555, that relief from the stay is appropriate or that the stay simply does not apply in the event that this Motion is denied and stay relief is not entered.  Moreover, as the relief sought by way of this Motion is the approval of a compromise to resolve a controversy concerning whether the stay applies, an Order approving the Stipulation would not bind BNYM to the Debtors analysis as to the underlying legal issues.

[4]      BNYM contends that the stay does not apply and that this analysis under Section 365 is unnecessary on the basis that the Purchase Contract Termination Clause and Pledge Termination Clause are enforceable without first seeking relief from the automatic stay because they are a "securities contract" within the meaning of Section 555 of the Bankruptcy Code.  Section 555 states that "the exercise of a contractual right of a … financial institution … to cause the liquidation, termination, or acceleration of a securities contract … because of a condition of the kind specified in Section 365(e)(1) of this title shall not be stayed, avoided, or otherwise limited by operation of any provision of this title."  11 U.S.C. § 555.  "Securities contract" is defined in Bankruptcy Code Section 741 as "a contract for the purchase, sale, or loan of a security."  11 U.S.C. § 741.  Thus, the Agreement is a "securities contract" because the Purchase Contracts, which are incorporated into the HiMEDS Units, require Holders to purchase Common Stock on the Purchase Contract Settlement Date.

Because the Agreement is a "securities contract" under Section 555, its termination following the commencement of the Debtors' chapter 11 cases does not violate the automatic stay.  In *In re Am. Home Mortg. Holdings, Inc.*, the Bankruptcy Court for the District of Delaware held that the exercise of termination rights pursuant to an enforceable *ipso facto* clause under Section 555 did not violate the automatic stay.  388 B.R. 69, 88 (Bankr. D. Del. 2008).  Specifically, the court stated:

> As the Court has decided that the Subordinated Notes Transaction . . . is a "securities contract" . . . the safe harbor protections of sections 559 and 555 apply.  Thus, Lehman Brothers may enforce its rights under the [applicable agreement] triggered by a condition of the kind specified in section 365(e)(1) of the Bankruptcy Code.  As the [applicable agreement's] ipso facto clause is of a kind specified in section 365(e)(1), the Defendants did not violate the automatic stay by foreclosing on and/or liquidating the Subordinated Notes.

*Id.*

17.    The Agreement is an executory contract under Section 365 of the Bankruptcy Code.   To determine whether a contract is an "executory contract," the Eleventh Circuit has "tacitly approved" the "functional approach."   *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1305 n.13 (11th Cir. 2007).   *See also In re General Development Corp.*, 84 F.3d 1364 (11th Cir. 1996) (affirming the bankruptcy court's use of the functional approach in analyzing and determining "executoriness").   Under this approach, a contract is executory if its assumption or rejection would ultimately benefit the estate or its creditors.   *Id.*   If the Agreement were assumed by the Debtors, a clear benefit would flow to their estates as BUFC would be permitted to retain the Collateral following the Purchase Contract Settlement Date.

18.    The Purchase Contract Termination Clause and Pledge Termination Clause are *ipso facto* clauses because by their own terms they terminate the Purchase Contracts, the Holders' Purchase Obligations, and the Pledge, upon the occurrence of, among other things, the commencement of a bankruptcy case by BUFC.   In general, *ipso facto* clauses in executory contracts are unenforceable.   Section 365(e)(1) of the Bankruptcy Code states:

> Notwithstanding a provision in an executory contract … any right or obligation under such a contract … may not be terminated or modified at any time after the commencement of the case solely because of a provision in such contract … that is conditioned on … the commencement of a case under this title.

11 U.S.C. § 365(e)(1).   However, this rule does not apply to, among other things, contracts "to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor" ("**Financial Accommodations Contracts**") pursuant to Section 365(e)(2)(B) of the Bankruptcy Code.   11 U.S.C. § 365(e)(2)(B).

19.    The Agreement is a Financial Accommodations Contract because  it is a contract "to issue a security of the debtor" as the Purchase Contracts, which form a part of each HiMEDS Unit, require the Holders to purchase the Common Stock, a "security" of the Debtors as defined

in Bankruptcy Code Section 101(49), on the Purchase Contract Settlement Date.[5]  *See, e.g., In re Teligent, Inc.,* 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001) (holding that the phrase "to issue a security of the debtor" in Section 365(e)(2)(B) refers to "a prepetition agreement obligating the non-debtor to advance new cash or credit in exchange for the debtor's note … or its stock").  As the Agreement is a Financial Accommodations Contract, the Purchase Contract Termination Clause and the Pledge Termination Clause are enforceable *ipso facto* clauses.

20.    Courts are split regarding whether enforcement of enforceable *ipso facto* clauses under Section 365(e)(2) of the Bankruptcy Code requires a party to first seek relief from the automatic stay.  *Compare In re Mirant Corp.*, 440 F.3d 238, 252-53 (5th Cir. 2006) ("Even when Section 365(e)(2)(A) will ultimately permit a nondebtor party to terminate an executory contract … the nondebtor party must seek relief from the automatic stay under §362(d).") with *Watts v. Pa. Hous. Fin. Co.*, 876 F.2d 1090, 1096 (3d Cir. 1989) (holding that preventing the termination of contracts covered by Section 365(e)(2) is "at worst anomalous, and at best an imposition of a pro forma requirement that the creditor must ask for what the Code plainly grants him" and permitting the debtor to challenge the termination after the fact allows sufficient protection for the debtor).[6]  If the Court adopts the view that relief from the stay is necessary to enforce an enforceable *ipso facto* clause, then cause exists to modify the stay to permit enforcement of those clauses to terminate any right of obligation under the Agreement, as the Purchase Contract Termination Clause and the Pledge Termination Clause are enforceable *ipso facto* clauses for the

---

[5]    The Debtors, BNYM, and the Committee have discussed whether there is a second basis to determine that the Agreement is a Financial Accommodations Contract as a "contract to make . . . financial accommodations" under Section 365(e)(2)(B).  However, the Debtors do not rely on this second basis in support of the Motion.

[6]    Neither this Court nor the Eleventh Circuit have issued a decision regarding whether a party must first seek relief from the automatic stay before enforcing an otherwise valid *ipso facto* clause pursuant to Section 365(e)(2) of the Bankruptcy Code.

reasons stated.  And, if the Court adopts the contrary view, then those contractual rights and obligations have terminated.

21.     Cause exists to take the further step to enter relief from the stay to permit BUFC's property interest in the Collateral to be extinguished and the Collateral to be released to the Holders.  The underlying Purchase Obligations for which the Collateral was Pledged to BUFC has been or will be terminated by enforcement of the Purchase Contract Termination Clause and the Pledge Termination Clause.  As a result, BUFC cannot or will not be able to demand or enforce performance of the Purchase Obligations, and the HiMEDS Units have been or will be reduced to simply the right of the Holders to receive the Collateral.  Therefore, the Pledge of the Collateral cannot be enforced, and the BUFC estate's property interest in that Pledge cannot add value to the estate.

22.     In filing the instant Motion, the Debtors are keenly aware of the seeming incongruity of seeking relief from the automatic stay which, after all, is created for the purpose of protecting property of their estates for the benefit of those estates and for creditors.  Having exhaustively reviewed and discussed the issue with BNYM and its counsel, however, the Debtors have concluded that the Purchase Contract Termination Clause and the Pledge Termination Clause are enforceable *ipso facto* clauses and retention of the Collateral serves no purpose other than to interfere unreasonably with the rights and interests of the Holders of HiMEDS Units who, on the basis of those holdings, are creditors of the BUFC estate.  In an effort to bring this somewhat complex series of contractual and legal issues before the Court for consideration in an orderly fashion, the Debtors and BNYM have determined that entry into and submission of the annexed Stipulation to the Court for approval, upon notice in accordance with

the applicable Rules cited in the preamble to this Motion, is the most efficient means of presenting the issues for consideration by the Court and all parties in interest.

23.    This Motion and the Stipulation have been reviewed by counsel for the Committee who has advised undersigned counsel that the Committee does not oppose the entry of an Order approving the Stipulation and terminating the stay in accordance with its terms.

WHEREFORE, the Debtors respectfully request that the Court enter an Order approving the annexed Stipulation in its entirety, so as to modify the automatic stay in order to effectuate the termination of BUFC's interest in the Collateral pursuant to the Agreement, and to permit BNYM, in its capacities as Collateral Agent, Securities Intermediary, and Purchase Contract Agent, to enforce the Purchase Contract Termination Clause and the Pledge Termination Clause and release the Collateral to the Holders of the HiMEDS Units pursuant to the Agreement.

Dated August 28, 2009.                    Respectfully submitted,

GREENBERG TRAURIG, P.A.
Counsel for the Debtors
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By:____/s/ Mark D. Bloom_____
       MARK D. BLOOM
       Florida Bar No. 303836
       bloomm@gtlaw.com
       SCOTT M. GROSSMAN
       Florida Bar No. 0176702
       grossmansm@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/ Mark D. Bloom_____
MARK D. BLOOM

## SERVICE LIST

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case:

Johanna Armengol on behalf of U.S. Trustee Office of the US Trustee
Johanna.Armengol@usdoj.gov, johanna.armengol@usdoj.gov

Paul J. Battista on behalf of Creditor Alfred Camner
pbattista@gjb-law.com, ctarrant@gjb-law.com;gjbecf@gjb-law.com

Bruce J Berman on behalf of Creditor Federal Deposit Insurance Corporation,
bberman@mwe.com, wjanke@mwe.com;graicht@mwe.com

Mark D Bloom on behalf of Debtor BankUnited Financial Corporation
bloomm@gtlaw.com, phillipsj@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Stephen P Drobny on behalf of Debtor BankUnited Financial Corporation
sdrobny@shutts.com, mvandenbosch@shutts.com

Scott M. Grossman on behalf of Debtor BankUnited Financial Corporation
grossmansm@gtlaw.com, phillipsj@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Brian W Hockett on behalf of Interested Party BankUnited, FSB ("New Bank")
bhockett@thompsoncoburn.com

Peter H Levitt on behalf of Debtor BankUnited Financial Corporation
plevitt@shutts-law.com

Corali Lopez-Castro on behalf of Creditor Committee Official Committee of Unsecured
Creditors
clc@kttlaw.com, rcp@kttlaw.com

Todd C Meyers on behalf of Creditor Committee Official Committee of Unsecured Creditors
tmeyers@kilpatrickstockton.com, skapoor@kilpatrickstockton.com

Miami-Dade County Tax Collector
mdtcbkc@miamidade.gov

Dennis A Nowak on behalf of Interested Party Humberto Lopez
dn@tewlaw.com, ag@tewlaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Craig V Rasile on behalf of Creditor U.S. Bank, N.A.
crasile@hunton.com, mtucker@hunton.com, mmannering@hunton.com,
keckhardt@hunton.com, adeboer@hunton.com

Patricia A Redmond on behalf of Interested Party BankUnited, FSB ("New Bank")
predmond@swmwas.com, jmartinez@swmwas.com;rross@swmwas.com

David Samole on behalf of Creditor Committee Official Committee of Unsecured Creditors
das@kttlaw.com, pm@kttlaw.com;la@kttlaw.com;ycc@kttlaw.com

Mark J Wolfson on behalf of Creditor c/o Mark J. Wolfson Deutsche Bank National Trust
Company
mwolfson@foley.com, mgrettenberger@foley.com;jalmeida@foley.com


**Manual Notice List**

The following is the list of parties who are not on the list to receive e-mail notice/service for this
case, and are therefore being served by first class U.S. Mail, postage prepaid:

LIST ATTACHED

**NON-ECF SERVICE LIST**

| | |
|---|---|
| Cede & Co.<br>P.O. Box 20<br>Bowling Green Station<br>New York, NY 10004-1408 | Wells Fargo Delaware Trust Company<br>Attn: Molly A. Breffitt<br>919 N. Market Street<br>Suite 1600<br>Wilmington, DE 19801 |
| U.S. Bank<br>1555 N. River Center Drive<br>Suite 300<br>Milwaukee, WI 53212 | Thomas M. Korsman, Vice President<br>Corporate Special Accounts Group<br>Wells Fargo Bank, N.A.<br>MAC N9311-110<br>625 Marquette Avenue<br>Minneapolis, MN 55479 |
| U.S. Bank<br>Attn: Earl Dennison, Acct. Admin.<br>Goodwin Square, 23rd Floor<br>225 Asylum Street<br>Hartford, CT 06103 | Stearns Weaver<br>Museum Tower<br>150 W. Flagler Street Suite 2200<br>Miami, FL 33130 |
| Geoffrey T. Raicht, Esq.<br>Attorneys for FDIC<br>McDermott Will & Emery LLP<br>340 Madison Ave.<br>New York, N.Y. 10173-1922 | Tew Cardenas<br>Four Seasons Tower - 15th Floor<br>1441 Brickell Avenue<br>Miami, FL 33131-3439 |
| Bridget Schessler, Vice President<br>The Bank of New York Mellon<br>525 William Penn Place, 7th Floor<br>Pittsburgh, PA 15259 | Coffey Burlington<br>Office in the Grove Penthouse<br>2699 S. Bayshore Drive<br>Miami, FL 33133 |
| Steven M. Cimalore<br>Wilmington Trust Company<br>Rodney Square North<br>1100 North Market Street<br>Wilmington, DE 19890-1615 | Jack Reise<br>Waterford Township General Employees<br>Retirement System<br>c/o Coughlin Stoia Geller et al<br>120 E. Palmetto Park Road Suite 500<br>Boca Raton, FL 33432 |
| Moses Marx<br>c/o Ross Martin, Esq.<br>Ropes & Gray, LLP<br>One International Place<br>Boston, MA 02110-2624 | Internal Revenue Service<br>Department of Treasury<br>227 N. Borough St.<br>Tallahassee, FL 32301 |

| | |
|---|---|
| Internal Revenue Service<br>P.O. Box 21126<br>Philadelphia, PA 19114 | Internal Revenue Service<br>Insolvency Unit<br>7850 S.W. 6th Court<br>Mail Stop 5730<br>Plantation, FL 33324 |
| State of Florida<br>Department of Revenue<br>Bankruptcy Section<br>P.O. Box 6668<br>Tallahassee, FL 32314-6668 | Honorable Eric Holder<br>U.S. Attorney General<br>Office of the Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |
| Honorable R. Alexander Acosta<br>Attn: Civil Process Clerk<br>U.S. Attorney<br>99 NE Fourth Street<br>Miami, FL 33132 | Susan R. Sherrill-Beard<br>Senior Trial Counsel/Bankruptcy<br>U.S. Securities and Exchange Commission<br>Atlanta Regional Office<br>Suite 1000, 3475 Lenox Road, N.E.<br>Atlanta, GA 30326-1232 |
| Susan D. Profant, CFCA, CLA, Paralegal<br>KEN BURTON, JR., Manatee County<br>Tax Collector<br>P.O. Box 25300<br>Bradenton, FL 34206-5300 | David A. Lander, Esq.<br>Brian W. Hockett, Esq.<br>Attorneys for BankUnited (New Bank)<br>Thompson Coburn LLP<br>One US Bank Plaza<br>St. Louis, Missouri 63101 |
| Allison H. Weiss, Esq.<br>Jeffrey Chubak, Esq.<br>Counsel for Bank of New York Mellon<br>DEWEY & LeBOEUF LLP<br>1301 Avenue of the Americas<br>New York, N.Y. 10019 | Andrew I. Silfen, Esq.<br>Leah M. Eisenberg, Esq.<br>Counsel for Wilmington Trust Company<br>ARENT FOX LLP<br>1675 Broadway<br>New York, N.Y. 10019 |
| Jeffrey N. Rothleder, Esq.<br>Counsel for Wilmington Trust Company<br>ARENT FOX LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20026 | Jonathan Lee Riches<br>dba Bernard L. Madoff Invest. Sec. LLC<br>POB 14500 #40948018<br>Lexington, KY 40512 |
| Michael C. Sontag, Esq.<br>Special Counsel to Debtors<br>CAMNER LIPSITZ, P.A.<br>550 Biltmore Way, Suite 700<br>Coral Gables, FL 33134 | Wendy H. Zoberman, Esq.<br>Lead Counsel for the Putative Class<br>BERMAN DEVALERIO<br>4280 Professional Center Drive, Suite 350<br>Palm Beach Gardens, FL 33410 |

| | |
|---|---|
| CC Arbitrage, Ltd<br>c/o Castle Creek Arbitrage LLC<br>111 West Jackson Blvd 20th Fl<br>Chicago, IL 60604 | Monumental Life Insurance Co<br>c/o Maureen Ocampo CFA<br>2049 Century Park East #330<br>Los Angeles, CA 90067 |
| Hudson Bay Fund LP<br>Hudson Bay Overseas LTD<br>c/o Charles Winkler<br>120 Broadway 40th Flr<br>New York, NY 10271 | Highbridge International LLC<br>c/o Highbridge Capital Management LLC<br>9 West 57 St 27 Floor<br>New York, NY 10019 |
| Deutsche Bank Securities, Inc<br>60 Wall St<br>New York, NY 10005 | Tracy J Saunders<br>c/o Pricewaterhousecoopers<br>1441 Brickell Ave #1100<br>Miami, FL 33131 |
| Edward G Salloom, Jr.<br>Claudia R. Sullivan<br>255 Wildwood Ave<br>Worcester, MA 01603 | Harold L. Kaplan<br>Mark F. Hebbeln<br>Foley & Lardner LLP<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313 |

*MIA 180,736,122 v12 117136010200.*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re | Chapter 11 |
| BankUnited Financial Corporation, *et al.*,[1] | Case No. 09-19940-LMI |
| _____Debtors._____ / | (Jointly Administered) |

### STIPULATION BETWEEN THE DEBTORS AND THE BANK OF NEW YORK MELLON GRANTING RELIEF FROM THE AUTOMATIC STAY

This Stipulation (the "**Stipulation**") is made between BankUnited Financial Corporation ("**BUFC**"), BankUnited Financial Services, Incorporated, and CRE America Corporation, debtors and debtors in possession (collectively, the "**Debtors**"), and The Bank of New York Mellon ("**BNYM**," together with the Debtors, the "**Parties**").

### Recitals

A.      On May 22, 2009, the Debtors filed voluntary petitions for relief pursuant to 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") commencing the above-captioned Chapter 11 cases in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**").  The Debtors continue to operate as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108; no trustee or examiner has been sought or appointed in these cases.

B.      On April 18, 2007, BUFC entered into that certain Indenture with BNYM authorizing BUFC to issue certain securities (the "**Base Indenture**").  On April 25, 2007, BUFC and BNYM entered into that certain First Supplemental Indenture (together with the Base Indenture, the "**Indenture**") authorizing BUFC to issue up to $184,000,000 in aggregate

---

[1]  The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335). The address of each of the Debtors is c/o Development Specialists, Inc., 200 South Biscayne Blvd., Suite 1818, Miami, FL 33131.

principal amount of 6.37% Senior Notes due May 17, 2012 (the "**Senior Notes**").  On April 25, 2007, BUFC and BNYM entered into that certain Purchase Contract and Pledge Agreement (the "**Agreement**") dated as of April 25, 2007 authorizing BUFC to issue 3,680,000 HiMEDS$^{SM}$ Units (the "**HiMEDS Units**").  **This Stipulation relates solely to the HiMEDS Units, and otherwise leaves unimpaired the rights of all parties in respect of the Senior Notes**.

C.    Pursuant to the Agreement, each HiMEDS Unit[2] has a stated amount of $50 and is comprised of two parts: (i) a 5% interest in $1,000 principal amount of Senior Notes, and (ii) a "**Purchase Contract**" which obligates the unit holder (the "**Holder**") to purchase, and obligates BUFC to sell, newly issued shares of BUFC Class A Common Stock (the "**Common Stock**") on May 17, 2010 (the "**Purchase Contract Settlement Date**") at a price varying with the market price but not less than approximately $23 per share.

D.    Pursuant to the Agreement, the Senior Notes were pledged (the "**Pledge**") as collateral (the "**Collateral**") to BNYM, as agent of and for the benefit of BUFC (BNYM in such capacity, the "**Collateral Agent**"), and held by the Collateral Agent in that certain "**Collateral Account**" to secure the obligations of the Holders of HiMEDS Units to purchase Common Stock pursuant to the Purchase Contract (the "**Purchase Obligations**").  Also, BNYM serves as securities intermediary (as defined in Section 8-102(a)(14) of the UCC) with respect to the Collateral Account (BNYM in such capacity, the "**Securities Intermediary**") and as purchase contract agent for the Holders (BNYM in such capacity, the "**Purchase Contract Agent**").

E.    Pursuant to Section 1.01 of the Agreement, the filing of a petition for relief under the Bankruptcy Code by BUFC at any time on or before the Purchase Contract Settlement Date

---

[2]    Each HiMEDS Unit also contained an option to modify the Collateral (as defined below) by substituting zero-coupon United States treasury securities for the Senior Notes (each such modified HiMEDS Unit, a "**Treasury HiMEDS Unit**").  However, as of the commencement of these chapter 11 cases, none of the HiMEDS Units were Treasury HiMEDS Units.

constitutes a "**Termination Event**." Pursuant to Section 5.06 of the Agreement, upon the occurrence of a Termination Event, the Purchase Contracts and the Holders' Purchase Obligations terminate and the HiMEDS Units "shall thereafter represent the right to receive the Senior Notes" (the "**Purchase Contract Termination Clause**"). Also, Section 11.02 of the Agreement states that the Pledge "shall terminate upon the satisfaction of such Holder's Obligations" (the "**Pledge Termination Clause**"), and that upon such termination, the Collateral Agent will instruct the Securities Intermediary to transfer the applicable portion of the Collateral to the Purchase Contract Agent for distribution to the Holders (the "**Transfer Clause**").

F.        The Debtors and BNYM have conducted discussions concerning (i) the extent, if any, of the Holders' Purchase Obligations and the Debtors' interest in the Collateral, and (ii) whether relief from the automatic stay is necessary to terminate the pledge of the Collateral and to permit BNYM, as Collateral Agent, Securities Intermediary, and Purchase Contract Agent, to release the Collateral to the Holders. As a result of such discussions, the Parties have agreed to the terms and conditions of the Stipulation, subject to the approval of the Bankruptcy Court.

NOW, THEREFORE, pursuant to 11 U.S.C. §§ 362, 365, and 555, Federal Rules of Bankruptcy Procedure 4001 and 9014, and Local Rule 4001-1, and subject to approval by the Bankruptcy Court, the Debtors and BNYM acknowledge and agree as follows:

## Agreement

1.        The foregoing Recitals are true and correct and are incorporated herein by reference as material terms of this Stipulation.

2.        The automatic stay imposed by 11 U.S.C § 362(a), to the extent applicable, shall be modified, so as to authorize BNYM to take such actions in respect of the Collateral pursuant to the Purchase Contract Termination Clause, the Pledge Termination Clause, and the Transfer

Clause, all as more fully set forth in this Stipulation and the Order of the Bankruptcy Court described below.

3.      Pursuant to the Purchase Contract Termination Clause, the Holders' Purchase Obligations shall be terminated and the HiMEDS Units shall represent the right of Holders to receive the Collateral pursuant to the Agreement.

4.      Pursuant to the Pledge Termination Clause, the Holders' Pledge of Collateral to BNYM, as Collateral Agent, shall be terminated.

5.      Pursuant to the Transfer Clause, BNYM, as Collateral Agent, shall instruct BNYM, as the Securities Intermediary, to transfer the Collateral to the Holders in accordance with the terms of the Agreement directing the timing and manner of such transfer.

6.      The ten-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3) upon an order granting a motion for relief from the automatic stay shall be waived.

7.      The Bankruptcy Court shall retain exclusive jurisdiction over any issues arising from or relating to this Stipulation and its enforcement.

8.      The terms and conditions of the Stipulation are subject to approval by the Bankruptcy Court upon entry of an Order approving this Stipulation.  The Debtors shall file an appropriate motion seeking approval of the Stipulation and relief from the automatic stay no later than five days after the Stipulation is executed by the Parties.  In the event of any conflict between this Stipulation and the Order, the terms of the Order shall control.  If the Bankruptcy Court for any reason does not approve the Stipulation in its entirety, the terms and conditions of the Stipulation shall be rendered null and void.

9.      The Stipulation may be executed in counterparts, any of which may be transmitted by facsimile or electronic mail, and each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**Agreed to on this 28th day of August, 2009:**

**GREENBERG TRAURIG, P.A.**
Mark D. Bloom (Fla. Bar No. 303836)
Scott M. Grossman (Fla. Bar No. 0176702)
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

*Counsel for the Debtors*

**DEWEY & LEBOEUF, LLP**
Allison H. Weiss
1301 Avenue of the Americas
New York, New York 10019-6092
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

*Counsel for The Bank of New York Mellon*