UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| BankUnited Financial Corporation, *et al.*,[1] | ) | Case No. 09-19940-LMI |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' RESPONSE AND LIMITED OBJECTION TO MOTION OF THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR DERIVATIVE
STANDING TO INVESTIGATE, ASSERT AND PROSECUTE CLAIMS
AGAINST OFFICERS, DIRECTORS AND PREPETITION PROFESSIONALS**

**(Hearing Scheduled Tuesday, September 15, 2009 at 10:00 a.m.)**

BankUnited Financial Corporation ("**BUFC**"), BankUnited Financial Services, Incorporated ("**BUFS**"), and CRE America Corporation ("**CRE**"), debtors and debtors in possession (collectively, the "**Debtors**"), respond and object to the *Motion of the Official Committee of Unsecured Creditors for Derivative Standing to Investigate, Assert and Prosecute Claims Against Officers, Directors and Prepetition Professionals* (the **"Motion"**) (DE # 228) to the extent set forth below, and state:

**PRELIMINARY STATEMENT**

1.     Without limitation, the Motion seeks an order granting derivative standing to the Committee[2] to investigate, assert and prosecute any and all Claims against current and former officers and directors of the Debtors (the **"Insiders"**), along with the Debtors' prepetition professionals (the **"Professionals"**).   The Motion is rife with broad-brush and unsupported

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335). The address of each of the Debtors is c/o Development Specialists, Inc., 200 South Biscayne Blvd., Suite 1818, Miami, FL 33131.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion.

allegations, and relies largely on an assortment of convenient assumptions and evidentiary presumptions in the place and stead of demonstrable facts.

2.      By way of this Limited Objection, the Debtors seek not to defeat the Motion entirely but rather to address, narrow and object to the scope of the relief requested.  While the circumstances and appearances in these cases are such that it may well be appropriate for the Committee to invoke principles of derivate standing to investigate, assert and pursue Claims against the Insiders, such relief is entirely unwarranted as it relates to the Professionals.

3.      The Debtors are keenly aware of the relationships that exist between certain members of the current Board of Directors and the officers and directors who certainly would fall within the scope of any reasonable investigation, and have made no attempt to suppress or camouflage those relationships nor, as explained further below, to interfere with such investigation by the Committee.  Irrespective of any perception of a lack of disinterestedness with respect to the Insiders, no such inference can fairly be drawn with respect to any Claims against Professionals.  Thus, the Committee's request for standing to pursue Claims against Professionals is an unjustifiable attempt to usurp the Debtors' duty to investigate and pursue such Claims.

4.      In recognition of these principles, and for the other reasons discussed below, the Debtors submit that any relief granted in respect of the Insiders should be carefully circumscribed and limited to ensure that the rights and responsibilities of the Debtors under Sections 1106 and 1107 of the Bankruptcy Code are not eviscerated or impaired, and that the grant of derivative standing should be denied in respect of Claims against Professionals.[3]

---

[3] As more fully discussed below, for purposes of this Response the Debtors do not include the law firm of Camner Lipsitz within the definition of Professionals but rather, in a further effort to avoid even the appearance of impropriety or lack of disinterestedness, adopt the view that Claims in respect of Camner Lipsitz should be treated in the same manner as those against Insiders.

## GENERAL FACTUAL BACKGROUND

5.      These Chapter 11 cases were commenced on May 22, 2009, upon the filing of voluntary petitions for relief under Chapter 11 of the Bankruptcy Code by the Debtors.  The Debtors continue to operate as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108, no trustee or examiner has been sought or appointed in these cases.

6.      On May 29, 2009, the Office of the United States Trustee appointed the Committee (DE #33).

7.      BUFC is a former unitary savings and loan holding company of BankUnited, FSB (the **"Bank"**) that is incorporated in the State of Florida and formerly was headquartered in Coral Gables, Florida.  BUFC is the 100% owner of (i) CRE, which holds a timeshare interest in certain real property; and (ii) BUFS, which was organized in 1997 for the purpose of selling annuities, mutual funds and other insurance and securities products.

8.      Following several unsuccessful attempts to raise the Bank's capital levels in accordance with Office of Thrift Supervision (**"OTS"**) mandates, on May 21, 2009, the OTS closed the Bank and appointed the Federal Deposit Insurance Corporation as receiver (the **"FDIC"**) for the Bank.  The FDIC entered into a Purchase and Assumption Agreement with a group of investors who invested in a new depository institution, BankUnited, a de novo federal savings association organized under the laws of the United States and having its principal place of business in Coral Gables, Florida, for the purchase of the Bank's assets.

9.      The Motion was filed on August 31, 2009 and seeks an order granting the Committee standing to investigate, assert and prosecute any and all claims that are property of the Debtors' estates against current and former officers and directors of the Debtors, as well as the Debtors' prepetition professionals.

## ARGUMENT

**I.    Any Grant of Derivative Standing to the Committee in Respect of Claims Against the Insiders and Camner Lipsitz Should be Narrowly Tailored to Acknowledge and Preserve the Debtors' Statutory and Fiduciary Rights, Powers and Duties Under the Bankruptcy Code.**

10.     Simply stated, the Debtors do not agree with nor consent to the Committee's request for derivative standing to investigate, assert or prosecute claims with respect to the Insiders.   Nevertheless, the Debtors are well aware of the familial relationship that exists between their current Chair and the former Chairman and CEO of the Debtors who is a defendant in the Securities Litigation, as well as the fact that certain of their prepetition outside directors remain on the reconstituted Board.  In light of this relationship and continuing involvement, and in order to avoid even the slightest appearance of any conflict of interest or perception of a lack of disinterestedness, the Debtors do not formally object to the Committee's request for derivative standing as it relates to Claims against Insiders and the Camner Lipsitz law firm.

11.     It is of paramount importance to the CRO and the Board that their actions in these cases be beyond reproach, and that any potential appearance of impropriety in respect of the Claims against Insiders be avoided.  Thus, the Debtors withhold any formal objection to the Insider portion of the Motion only because any suggestion that the investigation of Claims against Insiders has been less than complete, thorough and transparent would undermine their ability to administer these estates and propose a Chapter 11 plan in good faith.  The lack of formal objection, however, should in no way be perceived as an admission that the allegations contained in the Motion are true and correct,[4] or that the case law on which the Motion purports

---

[4] The Debtors do not, however, contest the Committee's assertion that the allegations in the Securities Litigation and the fact of the regulatory seizure of the Bank are such that an investigation to determine whether the estates may hold claims against the Insider is merited.

to rely necessarily supports the broad grant of derivative standing sought by the Committee in this instance.

12.      Relying almost entirely on legal presumption rather than sustainable facts, the Motion cites to a number of cases in support of the position that under certain circumstances a court will grant a creditors committee derivative standing to pursue claims.  Motion ¶ 14.  While technically correct in its recitation of the law,[5] the cited cases are in many ways so easily distinguishable from the facts at hand as to render the Committee's reliance on them misplaced.  In each of the cases cited within paragraph 13 of the Motion, the court granted derivative standing to a creditor or creditor's committee under circumstances in which the debtor *flatly refused* – after *actual* request from the interested party – to bring an avoidance action against non-insider defendants.

13.      The Committee also assumes far too much in taking the position that an alleged lack of disinterestedness obviates the need for any formal demand to "investigate vigorously the Claims and assert the Claims that exist" against Insiders or, for that matter, Professionals.  Motion ¶ 15.  <u>To be sure, no such demand – neither written, oral, nor in electronic form – has been presented to the Debtors, the CRO or their undersigned counsel.</u>  In what can be characterized only as a classic bootstrap argument, the Motion proceeds to argue on the basis of this non-existent fact that both "the demand and refusal requirements should be deemed satisfied."  *Id*.  Again, there is no allegation that any such refusal – express, implied or otherwise – has been expressed by the Debtors, their Board, CRO or undersigned counsel.  Thus, the Committee seeks the broad and unrestricted grant of derivative standing on the basis of a

---

[5] The Debtors do not take issue with the general proposition that a committee or creditor may be granted derivative standing to pursue claims upon a showing that (1) a demand has been made upon the statutorily authorized party to take action; (2) the demand is declined; (3) a colorable claim that would benefit the estate, if successful, exists; and (4) the inaction is an abuse of discretion or unjustified.  Motion ¶ 14.

*presumed* demand, a *non-existent* refusal, and the conveniently contrived notion that any such refusal – if one ever existed – would be improper and unjustified.

14.    In support of these fanciful assertions, the Committee relies principally on two factually distinguishable cases.  The first, *In re G-I Holdings, Inc.*, 313 B.R. 612 (Bankr. D. N.J. 2004), involved an action to avoid a series of transactions between the debtor and its non-debtor subsidiary under Sections 547 and 548 of the Bankruptcy Code.  *Id*. at 627.  The committee in *G-I Holdings* argued that because the individuals who orchestrated the transactions on behalf of the debtor and the non-debtor subsidiary remained central to both companies' operations, a conflict of interest existed which naturally precluded these individuals from pursuing any action to unwind the transactions at issue.  *Id*.  The committee then contended that in light of this direct conflict the court should impute both a demand upon and refusal by the debtor to bring an avoidance action with respect to the transactions.  *Id*. at 630.  While the court agreed that the demand and refusal elements could be implied, the circumstances of that case involved both the common identity of pre- and post-petition control on both sides of the transactions at issue and a history of acrimony between the debtor and committee.  In dispensing with the requirement of a formal demand which would "surely be refused," the court noted the litigation posture adopted by the debtor throughout the case:

> In this matter, ample evidence suggests that any formal demand made by the Committee upon [the debtor] to investigate and prosecute the proposed avoidance action would have been refused.  *Significantly, since the commencement of this bankruptcy case [the debtor] and [its non-debtor subsidiary] have taken positions in opposition to the proposed attacks on the . . . transactions*.  For example, in February of 2001 the Committee initiated an adversary proceeding seeking, *inter alia,* the substantive consolidation of [the non-debtor subsidiary] into [the debtor].  The Committee sought preliminary relief in that proceeding, "with a view to challenging the [transfer] as a voidable preference under 11 U.S.C. § 547 within 90 days after the Petition Date."  [The debtor] filed opposition to the request for substantive consolidation, and filed a motion to dismiss the adversary proceeding.

*Id*.  Here, in contrast to the tumultuous history between the committee and debtor in *G-I Holdings*, there exists no such history in these case that would tend to indicate any reluctance or resistance on the part of the Debtors with respect to a demand to fulfill and discharge their statutory and fiduciary duties under Sections 1106 and 1107 of the Bankruptcy Code.

15.    The other case relied upon by the Committee in seeking to dispose of the lack of a formal demand is *Official Comm. Of Unsecured Creditors of Nat. Forge Co. v. Clark (In re Nat. Forge Co.)*, 326 B.R. 532 (W.D. Pa. 2005).  The *Nat. Forge* court ultimately agreed that "courts can, under appropriate circumstances, excuse a creditor committee's failure to formally request a debtor to file suit," in that instance against the debtor's pre-petition lenders.  *Id*. at 544.  In its reasoning, the court stated: "[t]he policy concerns underlying the general requirement of a formal demand are to ensure that the debtor is (i) informed of the committee's intent to assert the subject claims and (ii) afforded an opportunity to explain its reasons, if any, for declining to pursue the claims itself.  In this way, courts can more effectively oversee adversary proceedings and thereby promote the fair and orderly administration of the bankruptcy estate" *Id*.

16.    As in *G-I* Holdings, the court in *Nat. Forge* based its decision to excuse formal demand upon the debtor as futile on the pattern of prior activity within that particular bankruptcy case:

> Language in both the Interim and Final DIP Orders as well as the numerous Stipulations put all parties on notice that the Creditors' Committee would be charged with the responsibility of investigating the legitimacy of the Banks' claims and, if appropriate, challenging those claims through litigation.  At all times, the Debtor was well aware of the Committee's involvement in investigating the 1999 stock redemption with an eye toward possibly filing an avoidance action.
>
> Moreover, the Bankruptcy Court was fully justified in concluding that the Debtor would have declined to file the Adversary Proceeding had a formal request been made by the Committee. At the commencement of this Chapter 11 case, the Debtor waived all rights it had to contest the Bank's claims by express language in the Interim and Final DIP Orders. Thus, the Debtor clearly could not have

> pressed the Adversary Proceeding against the Banks. Instead, the responsibility to investigate and challenge the Banks' claims passed directly to the Creditors' Committee as set forth in the Interim and Final DIP Orders.

*Id.* at 544-45.  Thus, contrary to the Committee's assertions in the Motion, the *Nat. Forge* case held that, when determining that demand upon a debtor to bring a claim is excused and that refusal on the part of the debtor is "imputed," the policy concerns set forth in paragraph 15 above must first be satisfied.

17.     Notwithstanding the absence of formal demand and refusal and the substantial distinctions between these two cases and the situation at bar, and most certainly without endorsing the Committee's assertions in paragraph 20 of the Motion, the Debtors submit that in light of the existence of certain insider relationships it could be considered imprudent for the Board to retain control over the Claims against Insiders and the Camner Lipsitz firm.  For the Debtors to argue otherwise and then undertake the investigation on its own in light of these allegations would serve only to subject to rigid scrutiny and relentless second-guessing its entire analysis and deliberative process – in terms of which if any present or former Insiders to pursue on which if any Claims, and of course whether and on what terms to enter into settlement of any such Claims.  Solely for these reasons, the Debtors neither object nor consent to the Motion insofar as it seeks derivative standing for the Committee to assert claims against Insiders and the Camner Lipsitz firm.

**II.     There is No Basis to Grant Derivative Standing to the Committee with Respect to Any Claims Against the Debtors' Prepetition Professionals.**

18.     While the demand and refusal arguments set forth in the Motion are based on legal inference rather than the facts of these cases, the Committee draws one inference too many in seeking that the grant of derivative standing extend as well to pursue Claims against the Debtors' Professionals along with the Insiders.  Motion ¶ 15, note 6.    The only notion of any

lack of disinterestedness in respect of Claims against pre-petition professionals is with respect to the law firm of Camner Lipsitz, and for the reasons set forth above the Debtors offer no formal objection to the grant of derivative standing in connection with those Claims.  The situation is far different, however, for the balance of the Debtors' prepetition Professionals, in respect of which the Committee's request for derivative standing amounts to nothing more than an attempt at overreaching without sufficient factual or legal basis.

19.    The absence of a formal demand upon the Debtors with respect to Claims against unnamed Professionals is fatal to the Committee's effort to obtain derivative standing in respect to Claims against those unidentified persons or firms, and nothing in any of the case law cited by the Committee suggests otherwise.  Moreover, the Board and CRO are in no way prepared to abdicate their duties to investigate possible Claims against the Debtors' prepetition Professionals, and most certainly should not be compelled to do so at this early stage of these cases in the absence of compelling justification to do so.[6]  The Claims against Professionals are property of the estates within the broad scope of 11 U.S.C. § 541(a).  *See Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. v. Alvarez (In re Alvarez)*; 224 F.3d 1273, 1278 (11th Cir. 2000) ("It is well settled that causes of action which have accrued prior to bankruptcy become part of the bankruptcy estate") (quoting *Venn v. St. Paul Fire and Marine Ins. Co.*, 99 F.3d 1058, 1064 n.10 (11th Cir. 1996)); *Miller v. Shallowford Community Hospital, Inc.*, 767 F.2d 1556, 1559 (11th Cir. 1985) ("The legislative history of [11 U.S.C. § 541(a)(1)] indicates that the definition [of property of the estate] includes causes of action existing at the time of the commencement of the

---

[6] Assuming that the Committee's overreaching Motion is denied with respect to the Claims against Professionals, it is the intention of the CRO to begin immediately the process of evaluating and interviewing independent counsel to investigate any potential claims against such Professionals, on a fee basis to be brought before the Court for approval under 11 U.S.C. §§ 327 and 328.

bankruptcy action").[7]  The responsibility to investigate and pursue those Claims rests first with the Debtors under 11 U.S.C. §§ 1106 and 1107.  Absent any actual or even presumptive factual basis for the request, the Committee is not entitled to the broad grant of derivative standing with respect to Claims against Professionals.

20.    In addition, the grant of derivative standing to the Committee to investigate Claims against Professionals does nothing whatsoever to promote the orderly and efficient administration of these estates.  Even in situations where – unlike here – compliance with the established requirements of demand and refusal has been demonstrated, courts have held that:

> where the debtor-in-possession's failure to bring suit has *not* been found to be 'unjustifiable' . . . a court granting derivative standing to a committee must find that suit by the committee is (a) in the best interests of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings.  This approach permit[s] a reasoned and practicable division of labor between the creditors committee and the debtor in possession or trustee, while also providing bankruptcy courts with significant authority to both manage the litigation and to check any potential for abuse by the parties.

*Official Committee of Equity Security Holders v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)*, 371 B.R. 660, 667 (S.D.N.Y. 2007).

21.    Here, contrary to the Committee's bald assertion that "considerations of economy and efficiency militate in favor of the same party" investigating and prosecuting Claims against the Insiders as is investigating and prosecuting Claims against prepetition professionals, Motion ¶ 15, note 6, it cannot be said that a granting of such standing is in the "best interests of these estates" or is "necessary and beneficial" to the "fair and efficient" resolution of these cases.

---

[7] This uniform rule of law has been acknowledged and accepted by other Circuits as well.  *See, e.g., Morley v. Ontos (In re Ontos)*, 478 F.3d 427, 431-32 (1st Cir. 2007) (holding that the right to assert a claim which, outside of bankruptcy may be invoked by a creditor, "is property of the estate that only a . . . debtor in possession may pursue once a bankruptcy is under way"); *Kollar v. Miller*, 176 F.3d 175 (3d Cir. 1999) (scope of Bankruptcy Code's definition of property of the estate is broad and includes causes of action); *Matter of Swift*, 129 F.3d 792 (5th Cir. 1997) (same); *Matter of Geise*, 992 F.2d 651 (7th Cir. 1993) (same); *Crysen/Montenay Energy, Co. v. Esselen Associates, Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098 (2nd Cir. 1990) (same).

*Adelphia*, 371 B.R. at 667.  It can hardly be assumed whether any Claims against the Debtors' prepetition Professionals will be similar or related to those that may exist against Insiders.  Not only are the Claims, standards of care and basic allegations likely in many instances to be sharply different, but any notion that all such Claims could or should be joined in a single action is both premature and likely unworkable.

22.     Perhaps most compelling of all, the respective deadlines to assert any Claims against the Insiders and prepetition Professionals are different.  While the D&O Policies may require Claims to be asserted by "as early as November 10, 2009," Motion ¶ 6, the same consideration is not true with respect to Professionals.  Rather, any deadline to assert Claims against Professionals is governed and determined  by principles of Florida law and the relevant statutes of limitations, as such may be modified or extended by 11 U.S.C. § 108.  It therefore strains credulity to state that the grant of derivative standing to the Committee to pursue Claims against prepetition Professionals would result in the "fair and efficient" resolution of these cases.  *Adelphia*, 371 B.R. at 667.

23.     Stated simply, the Committee's request for standing to investigate and assert Claims against the Debtors' prepetition Professionals is premature, unsupported by any factual showing (or even any presumption), and without basis to usurp the Debtors' statutory and fiduciary duty to investigate and, if appropriate, pursue such Claims.  Accordingly, the Debtors object to any grant of derivative standing with respect to potential Claims against prepetition Professionals as unfounded and not within the best interests of these estates.

## CONCLUSION

24.     In addition to all of the foregoing, the grant of derivative standing to assert claims on behalf of these or any bankruptcy estates carries with it the burden and responsibility of acting

as the <u>exclusive</u> designated representative of the estates to investigate, assess and pursue claims against officers, directors and other third parties.  In evaluating the Motion, the Court is respectfully urged to consider and evaluate closely the commitment and qualification of the Committee and its professionals to undertake that significant responsibility prior to issuing a ruling that, for all intents and purposes, will cause the Debtors and their professionals to "stand down," step aside, and entrust the stewardship of these Claims to the Committee on behalf of the estates.

WHEREFORE, the Debtors respectfully request that the relief requested by the Motion be denied as it relates to derivative standing to investigate and pursue Claims against the Debtors' prepetition Professionals.  As indicated above, the Debtors neither consent nor formally object to the grant of such standing in respect of Claims against Insiders (including Camner Lipsitz), solely in order to eliminate any concern with respect to disinterestedness or appearance of impropriety or bias in respect of the investigations which can and should proceed without delay.

Dated September 11, 2009.                    Respectfully submitted,

GREENBERG TRAURIG, P.A.
Counsel for the Debtors
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By:____/s/ Mark D. Bloom_____
    MARK D. BLOOM
    Florida Bar No. 303836
    bloomm@gtlaw.com
    SCOTT M. GROSSMAN
    Florida Bar No. 0176702
    grossmansm@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

　_/s/ Mark D.Bloom_　　　　　　　
MARK D. BLOOM

*MIA 180,796,708 v3 117136011500.*

## SERVICE LIST

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case:

Johanna Armengol on behalf of U.S. Trustee Office of the US Trustee
Johanna.Armengol@usdoj.gov, johanna.armengol@usdoj.gov

Paul J. Battista on behalf of Creditor Alfred Camner
pbattista@gjb-law.com, ctarrant@gjb-law.com;gjbecf@gjb-law.com

Bruce J Berman on behalf of Creditor Federal Deposit Insurance Corporation,
bberman@mwe.com, wjanke@mwe.com;graicht@mwe.com

Mark D Bloom on behalf of Debtor BankUnited Financial Corporation
bloomm@gtlaw.com, phillipsj@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Stephen P Drobny on behalf of Debtor BankUnited Financial Corporation
sdrobny@shutts.com, mvandenbosch@shutts.com

Scott M. Grossman on behalf of Debtor BankUnited Financial Corporation
grossmansm@gtlaw.com, phillipsj@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Hollie N Hawn on behalf of Creditor Broward County Revenue Collector
hhawn@broward.org

Brian W Hockett on behalf of Interested Party BankUnited, FSB ("New Bank")
bhockett@thompsoncoburn.com

Peter H Levitt on behalf of Debtor BankUnited Financial Corporation
plevitt@shutts-law.com

Corali Lopez-Castro on behalf of Creditor Committee Official Committee of Unsecured
Creditors
clc@kttlaw.com, rcp@kttlaw.com

Todd C Meyers on behalf of Creditor Committee Official Committee of Unsecured Creditors
tmeyers@kilpatrickstockton.com, skapoor@kilpatrickstockton.com

Miami-Dade County Tax Collector
mdtcbkc@miamidade.gov

Dennis A Nowak on behalf of Interested Party Humberto Lopez
dn@tewlaw.com, ag@tewlaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Craig V Rasile on behalf of Creditor U.S. Bank, N.A.
crasile@hunton.com, mtucker@hunton.com, mmannering@hunton.com,
keckhardt@hunton.com, adeboer@hunton.com

Patricia A Redmond on behalf of Interested Party BankUnited, FSB ("New Bank")
predmond@swmwas.com, jmartinez@swmwas.com; rross@swmwas.com

David Samole on behalf of Creditor Committee Official Committee of Unsecured Creditors
das@kttlaw.com, pm@kttlaw.com;la@kttlaw.com;ycc@kttlaw.com

Mark J Wolfson on behalf of Creditor c/o Mark J. Wolfson Deutsche Bank National Trust
Company
mwolfson@foley.com, mgrettenberger@foley.com;jalmeida@foley.com

## **Manual Notice List**

The following is the list of parties who are not on the list to receive e-mail notice/service for this
case, and are therefore being served by first class U.S. Mail, postage prepaid:

LIST ATTACHED

**BankUnited Chapter 11**
**NON-ECF SERVICE LIST**

| | |
|---|---|
| Cede & Co.<br>P.O. Box 20<br>Bowling Green Station<br>New York, NY 10004-1408 | Wells Fargo Delaware Trust Company<br>Attn: Molly A. Breffitt<br>919 N. Market Street<br>Suite 1600<br>Wilmington, DE 19801 |
| U.S. Bank<br>1555 N. River Center Drive<br>Suite 300<br>Milwaukee, WI 53212 | Thomas M. Korsman, Vice President<br>Corporate Special Accounts Group<br>Wells Fargo Bank, N.A.<br>MAC N9311-110<br>625 Marquette Avenue<br>Minneapolis, MN 55479 |
| U.S. Bank<br>Attn: Earl Dennison, Acct. Admin.<br>Goodwin Square, 23rd Floor<br>225 Asylum Street<br>Hartford, CT 06103 | Stearns Weaver<br>Museum Tower<br>150 W. Flagler Street Suite 2200<br>Miami, FL 33130 |
| Geoffrey T. Raicht, Esq.<br>*Counsel for FDIC*<br>McDermott Will & Emery LLP<br>340 Madison Ave.<br>New York, N.Y. 10173-1922 | Dennis S. Klein, Esq.<br>*Co-Counsel for FDIC*<br>Hughes Hubbard & Reed LLP<br>1775 I Street N.W., Suite 600<br>Washington, D.C. 20006-2401 |
| Aviva L. Wernick, Esq.<br>*Local Counsel for FDIC*<br>Hughes Hubbard & Reed LLP<br>201 S. Biscayne Blvd., Suite 2500<br>Miami, FL 33131-4332 | Coffey Burlington<br>Office in the Grove Penthouse<br>2699 S. Bayshore Drive<br>Miami, FL 33133 |
| Tew Cardenas<br>Four Seasons Tower - 15th Floor<br>1441 Brickell Avenue<br>Miami, FL 33131-3439 | Bridget Schessler, Vice President<br>The Bank of New York Mellon<br>525 William Penn Place, 7th Floor<br>Pittsburgh, PA 15259 |
| Moses Marx<br>c/o Ross Martin, Esq.<br>Ropes & Gray, LLP<br>One International Place<br>Boston, MA 02110-2624 | Steven M. Cimalore<br>Wilmington Trust Company<br>Rodney Square North<br>1100 North Market Street<br>Wilmington, DE 19890-1615 |

| | |
|---|---|
| Susan D. Profant, CFCA, CLA, Paralegal<br>KEN BURTON, JR., Manatee County<br>Tax Collector<br>P.O. Box 25300<br>Bradenton, FL 34206-5300 | Jack Reise<br>Waterford Township General Employees<br>Retirement System<br>c/o Coughlin Stoia Geller et al<br>120 E. Palmetto Park Road Suite 500<br>Boca Raton, FL 33432 |
| Internal Revenue Service<br>P.O. Box 21126<br>Philadelphia, PA 19114 | Internal Revenue Service<br>Department of Treasury<br>227 N. Borough St.<br>Tallahassee, FL 32301 |
| Internal Revenue Service<br>Insolvency Unit<br>7850 S.W. 6th Court<br>Mail Stop 5730<br>Plantation, FL 33324 | State of Florida<br>Department of Revenue<br>Bankruptcy Section<br>P.O. Box 6668<br>Tallahassee, FL 32314-6668 |
| Honorable R. Alexander Acosta<br>Attn: Civil Process Clerk<br>U.S. Attorney<br>99 NE Fourth Street<br>Miami, FL 33132 | Honorable Eric Holder<br>U.S. Attorney General<br>Office of the Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |
| Susan R. Sherrill-Beard<br>Senior Trial Counsel/Bankruptcy<br>U.S. Securities and Exchange Commission<br>Atlanta Regional Office<br>Suite 1000, 3475 Lenox Road, N.E.<br>Atlanta, GA 30326-1232 | David A. Lander, Esq.<br>Brian W. Hockett, Esq.<br>*Counsel for BankUnited (New Bank)*<br>Thompson Coburn LLP<br>One US Bank Plaza<br>St. Louis, Missouri 63101 |
| Allison H. Weiss, Esq.<br>Jeffrey Chubak, Esq.<br>*Counsel for Bank of New York Mellon*<br>DEWEY & LeBOEUF LLP<br>1301 Avenue of the Americas<br>New York, N.Y. 10019 | Andrew I. Silfen, Esq.<br>Leah M. Eisenberg, Esq.<br>*Counsel for Wilmington Trust Company*<br>ARENT FOX LLP<br>1675 Broadway<br>New York, N.Y. 10019 |
| Jeffrey N. Rothleder, Esq.<br>*Counsel for Wilmington Trust Company*<br>ARENT FOX LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20026 | Michael C. Sontag, Esq.<br>*Special Counsel to Debtors*<br>CAMNER LIPSITZ, P.A.<br>550 Biltmore Way, Suite 700<br>Coral Gables, FL 33134 |

| | |
|---|---|
| Wendy H. Zoberman, Esq.<br>*Lead Counsel for the Putative Class*<br>BERMAN DEVALERIO<br>4280 Professional Center Drive, Suite 350<br>Palm Beach Gardens, FL 33410 | Jonathan Lee Riches<br>dba Bernard L. Madoff Invest. Sec. LLC<br>POB 14500 #40948018<br>Lexington, KY 40512 |
| CC Arbitrage, Ltd<br>c/o Castle Creek Arbitrage LLC<br>111 West Jackson Blvd 20th Fl<br>Chicago, IL 60604 | Monumental Life Insurance Co<br>c/o Maureen Ocampo CFA<br>2049 Century Park East #330<br>Los Angeles, CA 90067 |
| Highbridge International LLC<br>c/o Highbridge Capital Management LLC<br>9 West 57 St 27 Floor<br>New York, NY 10019 | Hudson Bay Fund LP<br>Hudson Bay Overseas LTD<br>c/o Charles Winkler<br>120 Broadway 40th Flr<br>New York, NY 10271 |
| Deutsche Bank Securities, Inc<br>60 Wall St<br>New York, NY 10005 | Harold L. Kaplan, Esq.<br>Mark F. Hebbeln, Esq.<br>*Counsel for Deutsche Bank National Trust Company*<br>Foley & Lardner LLP<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313 |
| Edward G Salloom, Jr.<br>Claudia R. Sullivan<br>255 Wildwood Ave<br>Worcester, MA 01603 | |