## IN THE UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
#### www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| BankUnited Financial Corporation, *et al.*, | Case No. 09-19940-LMI |
| Debtors. | (Jointly Administered) |

## OBJECTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR DERIVATIVE STANDING TO INVESTIGATE, ASSERT AND PROSECUTE CLAIMS AGAINST OFFICERS, DIRECTORS AND PREPETITION PROFESSIONALS

The Federal Deposit Insurance Corporation (the "FDIC"), by and through its undersigned counsel, hereby files this objection (the "Objection")[1] to the Motion of the Official Committee of Unsecured Creditors (the "Committee") for Derivative Standing to Investigate, Assert and Prosecute Claims Against Officers, Directors and Prepetition Professionals (the "Motion").  In support of the Objection, the FDIC respectfully states as follows:

---

[1] The filing of the Objection does not constitute a submission by the FDIC to the jurisdiction or authority of the Bankruptcy Court, as defined below, for the resolution of any regulatory matter involving the Debtors, as defined below, or the FDIC.  Nor is the Objection an admission that this Court is the appropriate forum for disputes between the FDIC or the Debtors other than with respect to the Objection.  The filing of the Objection shall not constitute a waiver or consent by the FDIC of any right to assert Sovereign Immunity whether the FDIC is acting in its capacity as Receiver.  The filing of the Objection shall not constitute a waiver or consent by the FDIC of any (a) right to have any and all final orders in any all non-core matters entered only after de novo review by the United States District Court; (b) right to trial by jury in any proceedings as to any and all matters so triable therein, whether or not the same be designated legal or private rights, or in any case, controversy or proceeding related thereto, whether or not such jury trial right is pursuant to statute or the United States Constitution; (c) right to have the reference of this matter withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal; or (d) other rights, claims, actions, defenses, setoffs, recoupments or other matters to which the FDIC is entitled under any agreements or at law or in equity or under the United States Constitution. Except with respect to the specific statements in the Objection, all of the foregoing rights are expressly reserved and preserved without exception and with no purpose of conceding jurisdiction in any way by filing the Objection.  The FDIC expressly reserves all rights at law and equity to assert the preemption of the Bankruptcy Court's jurisdiction and the exclusive jurisdiction provided under Title 12 as applicable with respect to the FDIC.

## PRELIMINARY STATEMENT

1.      The Committee's Motion to investigate and prosecute potential claims against directors and officers of the Bank, as defined below, and of third-party professionals retained by the Bank, such as claims for mismanagement, lack of internal controls and flawed financial reporting (as further defined in the Motion, the "Claims") should be denied.  As conceded by the Committee, the Claims are not "direct" but derivative and thus, by operation of law, they belong *exclusively* to the FDIC, as receiver.  Each of the Committee's potential Claims turn on acts taken by the directors and officers at the Bank level and causing injury to the Bank. Accordingly, the Committee should not be allowed to investigate or prosecute these Claims. Moreover, the FDIC has been very actively engaged, from the commencement of its receivership months ago, in investigating claims against the Bank's directors, officers, and third-party professionals arising from the Bank's financial decline ultimately leading to its seizure and the FDIC's appointment as receiver.   Investigation and/or prosecution of the Claims by the Committee would merely begin again the process in which the FDIC has already long been actively engaged, at government expense, and duplicate much, if not all of that effort at the substantial and unnecessary expense of the estate, thus wasting the estate's limited assets.

2.      The FDIC's exclusive right to pursue the Claims provides ample grounds for the Court to deny the Motion.  However, even if the Court determines to review the substance of the Committee's request, the Motion must be, likewise, denied.  First, none of the cases cited by the Committee in its Motion are in the context of a party seeking derivative standing on behalf of a bank holding company whose bank subsidiaries are under an FDIC receivership and subject to FIRREA (as defined below).  Rather, they are generic cases that do not contemplate the situation present in these cases since the cases that discuss derivative standing in the context of FIRREA

uniformly hold that the FDIC has exclusive standing to bring derivative claims – and has rights that are superior to the rights of the bankruptcy estate. Second, the Committee's Motion does not establish the factual predicates necessary for this Court to find that it has satisfied the test for derivative standing – nor can it. Accordingly, for these additional reasons, the Motion should be denied.

## BACKGROUND

3.      On May 22, 2009 (the "Petition Date"), BankUnited Financial Corporation ("BUFC"), BankUnited Financial Services, Incorporated ("BUFS"), and CRE America Corporation ("CRE") (together, as debtors and debtors in possession, the "Debtors"), each filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the Unites States Code (the "Bankruptcy Code") in this court (the "Bankruptcy Court" or the "Court").

4.      The Debtors continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been sought or appointed in these cases. The Committee was appointed on May 29, 2009.

5.      BUFC is a former unitary savings and loan holding company of BankUnited, FSB (the "Bank") that is incorporated in the State of Florida and headquartered in Coral Gables, Florida. BUFC is the 100% owner of (i) CRE, which holds a timeshare interest in certain real property; and (ii) BUFS, which was organized in 1997 for the purpose of selling annuities, mutual funds and other insurance and securities products.

6.      Following several unsuccessful attempts to raise the Bank's capital levels in accordance with Office of Thrift Supervision ("OTS") mandates, on May 21, 2009, the OTS closed the Bank and appointed the FDIC as receiver for the Bank. The FDIC entered into a Purchase and Assumption Agreement with a group of investors who invested in a new depository

NYK 1224509-2.084080.0013

institution, BankUnited ("New Bank"), a de novo federal savings association organized under the laws of the United States and having its principal place of business in Coral Gables, Florida, for the purchase of the Bank.

7.    On August 31, 2009, the Committee filed the Motion.  On September 11, 2009, the Debtors filed a response to the Motion (the "Response") that neither consented to nor opposed the relief requested in the Motion but, in order to avoid the appearance of impropriety, suggested that the scope of the Committee's investigation be narrowed solely to include the Debtors' current and former directors and officers and the Camner Lipsitz law firm, but not the Debtors' pre-petition professionals.

## OBJECTION

### I.    Only the FDIC Is Entitled to Investigate and Prosecute Claims Against the Bank's Directors and Officers and Third-Party Professionals.

#### A.    The FDIC Has Exclusive Standing to Pursue Derivative Claims on the Bank's Behalf.

8.    The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") affords the FDIC the *exclusive* right to assert all derivative claims on behalf of a bank in receivership.  Specifically, 12 U.S.C. § 1821(d)(2)(A)(i) -- enacted by Congress as part of FIRREA -- provides that, upon its appointment as receiver for a failed bank, the FDIC acquires "*all rights, titles, powers, and privileges of the insured depository institution*, and of any stockholder, member, accountholder, depositor, officer, or director of such institution […]." Congress' investiture of the FDIC with such broad authority over failed banks' derivative claims "helps assure the expeditious and orderly protection of all who are interested in the bank by placing the pursuit of its rights, protection of its assets, and payment of its liabilities firmly in the hands of a single, congressionally designated agency." *Pareto v. FDIC,* 139 F.3d 696, 700 (9th

- 4 -

Cir. 1998). *See In re Southeast Banking Corp.*, 827 F. Supp. 742, 746 (S.D. Fla. 1993) (holding that FIRREA "legislatively dispelled" any possible doubt concerning the exclusivity of the FDIC's standing to assert derivative claims, and ordering that "all the derivative averments shall be dismissed"), *rev'd in part on other grounds*, 69 F.3d 1539 (11th Cir. 1995).

9.      Thus, it is beyond dispute that, by operation of law, the FDIC, as receiver, is the only proper party entitled to assert derivative claims "for the benefit of *all* depositors and creditors[.]" *Totilo v. Herbert*, No. 1:08-CV-1033-BBM, at 12-13 (N.D. Ga. May 20, 2008)[2] (quoting *In re Sunrise Secs. Litig.*, 916 F.2d 874, 887 (3d Cir. 1990) (emphasis added)); *see also Renfro v. Fed. Deposit Ins. Corp.*, 773 F.2d 657, 660 (5th Cir. 1985) (stating that FDIC was "the proper party to assert" plaintiffs' derivative claims); *FDIC v. Am. Bank Trust Shares, Inc.,* 460 F. Supp. 549, 561 (D.S.C. 1978), *aff'd*, 629 F.2d 951 (4th Cir.1980) (shareholders of a bank holding company had no standing to assert claims against the directors of either the holding company or its banking subsidiary for harm caused to the subsidiary because such claims were deemed derivative at the subsidiary level and passed to the FDIC by operation of law).

10.     The case of *In re Southeast Banking* is directly on point.  There, a bank holding company filed for bankruptcy after its wholly owned subsidiary -- its main asset -- was placed into receivership.  The trustee brought claims against the overlapping directors and officers of the bank and holding company based on allegations of mismanagement and breaches of fiduciary duties.  The District Court held that the claims were derivative in nature, and, thus, belonged exclusively to the FDIC.[3]  In dismissing the claims, the Court stated:

---

[2]  A copy of this decision is attached hereto as Exhibit A.
[3]  As discussed in section I.B.3 below, the Court only permitted the trustee to maintain a "sliver" of claims involving alleged mismanagement on the part of the holding company's directors for acts causing direct injury to the holding company only, not its subsidiary bank. *Id.* at 746-47.

> Any possible doubt on this issue has been legislatively dispelled by
> Congress. FIRREA, 12 U.S.C. § 1821(d)(2)(A)(i) (1988),
> specifically provides that such derivative claims belong
> exclusively to the FDIC.  Accordingly, all the derivative averments
> set forth shall be dismissed.  There is no meaningful distinction
> between injury suffered by the holding company and the derivative
> claims of mismanagement . . . .

*In re Southeast Banking Corp.*, 827 F. Supp. at 746.

11.    The Ninth Circuit's decision in *Pareto v. FDIC* is also instructive.  139 F.3d 696.
There, former shareholders brought an action against the former directors of a failed bank for
which the FDIC had been appointed receiver, alleging violations of the duties of care and
loyalty.  *Id.* at 698.  The plaintiffs alleged, *inter alia*, that the former directors had "failed to
safeguard the assets and equity of the bank, failed to appropriately manage the operations of the
bank [and] . . . failed to exercise due diligence and care [...]."  *Id.*  The Ninth Circuit held that
such claims amounted to an action "against the former directors for allegedly delivering a fatal
blow to the bank."  *Id.* at 700.  "It is clearly derivative, and that is all it is."  *Id.*  As such, the
court stated that the action must "founder on the rocks of 12 U.S.C. § 1821(d)(2)(A)(i)," through
which "Congress ha[d] transferred everything it could to the FDIC. . . includ[ing] a stockholder's
right, power or privilege to demand corporate action or to sue directors or others when action is
not forthcoming."  *Id.*  The court affirmed dismissal of the complaint, holding that the plaintiffs
had "no standing to proceed" with their derivative claims."  *Id.* at 701.

12.    Tellingly, while the Committee cites a number of cases to support its alleged
"implied right" to pursue derivative claims (Motion, ¶13), not one involves--or even addresses--a

- 6 -

situation where the FDIC had been appointed as receiver and thus acquired the express, exclusive statutory right to assert such claims.[4]

13.    Accordingly, FIRREA gives the FDIC alone the discretion to pursue the purported derivative Bank claims that the Committee seeks to pursue against the Bank's directors, officers and third-party professionals retained by the Bank.  So important is the FDIC's exclusive right to prosecute derivative claims that the District Court in *In re Southeast Banking* expressed concern that, where, as here, "the holding company's . . . only[] asset was the bank and the bank officers overlap with the holding company's directors," to allow the holding company's trustee to prosecute derivative claims "would create a huge loophole in FIRREA as holding companies could be established (whose only asset would be a bank and whose directors would also be officers of the bank) for the sole purpose of circumventing FIRREA."  827 F. Supp. at 753 - 54.  The Court should not permit the Committee to create such a loophole.  It is indeed startling that both the Committee in its Motion and the Debtors in their Response would address the subject matter as if it were generic and completely ignore the implication of FIRREA and the rights and role of the FDIC as if neither were involved.

**B.    The Committee Seeks to Prosecute Only Derivative Claims of the Bank.**

(1)    <u>The Committee Concedes that the Claims are Derivative</u>.

14.    The Committee alleges, *inter alia*, that there is evidence to "suggest that the Debtors were mismanaged grievously, lacked effective internal controls and engaged in flawed financial reporting" and that it "believes that Claims on behalf of the Estate may exist against" officers and directors of the Bank and Debtors.  (Motion, ¶¶9,17.)  The Committee concedes, as

---

[4] Nor is the decision in *FDIC v. Jenkins* applicable here.  While in *Jenkins*, the Eleventh Circuit held that the FDIC lacked priority over *direct* shareholder claims, it left undisturbed the FDIC's exclusive right to pursue *derivative* claims.  888 F.2d 1537, 1545 (11th Cir. 1989) ("In the present case, however, the shareholders are . . . . proceeding against solvent third parties in *non-derivative* shareholder suits.") (emphasis added).

it must, that the Claims are derivative in nature (*See generally* Motion), as it seeks to assert claims for the purposes of "increas[ing] the property of the Estate available for distribution to [all unsecured] creditors" (*Id*. at ¶17).

15.      Whether the Committee's proposed Claims are direct or derivative in nature is determined under Florida law. *See In re Southeast Banking*, 827 F. Supp. at 745 ("Whether a claim is considered direct or derivative is a matter of state law […]."). The District Court in *In re Southeast Banking* explained the distinction between the two types of claims pursuant to Florida law:

> A derivative claim is a wrong to an incorporated group as a whole that depletes or destroys corporate assets and, as a consequence, reduces the value of the corporation's stock. If the gravamen of the complaint is injury primarily to the corporation or to the shareholders generally, then the claim belongs to the corporation and the shareholder's right to bring the action derives from the corporation.

*Id.* There, the Court found that the claims asserted by the trustee of a bank holding company were in fact derivative claims of the bank in receivership, stating that "[t]here is no meaningful distinction between injury suffered by the holding company and the derivative claims of mismanagement, especially where [the holding company's] solvency and success were 'crucially dependent' on the Bank." *Id* at 746. As the trustee's complaint was "substantially dominated by derivative allegations, rather than pleading distinct harm" to the bank holding company, the District Court dismissed the derivative claims as such claims belonged exclusively to the FDIC as receiver. *Id.* at 746.

16.      In a related case, the same trustee filed a complaint on behalf of the bank holding company, Southeast Corp., arising out of a failed merger. *Brandt v. First Union Corp.*, Case No.

94-1803-CIV-HURLEY (S.D. Fla. Apr. 24, 1995) (slip op.).[5]  There, the trustee alleged that the

proposed merger partner, First Union, had, among other things, committed trade slander, fraud in

the inducement, negligent misrepresentation and breaches of fiduciary duty and the implied

covenant of good faith and fair dealing; and misappropriated the trade secrets of Southeast Corp.

and its subsidiary.  *Id.* at 8a-9a.  According to the trustee, these and other misdeeds by First

Union had driven Southeast Corp. into insolvency.  *Id.* at 8a.  The trustee further argued that

these actions directly injured Southeast Corp., and were therefore not derivative.  *Id.* at 10a.  The

Court disagreed:

> [P]laintiff alleges that . . . First Union breached a number of duties
> to [the subsidiary bank] Southeast, thereby injuring Southeast
> Corp., and derivatively, its shareholders.  However, it is clear from
> the complaint that the only 'injury' Southeast Corp. suffered as a
> result of these alleged breaches was the diminution of its share
> value resulting from injuries to Southeast Bank.  *There is no
> meaningful distinction between the harms suffered by the holding
> company from those suffered by the bank.*  Southeast Corp. was
> injured by First Union's alleged disclosure of trade secrets,
> slander, breach of fiduciary duty, fraudulent inducement, negligent
> misrepresentation, breach of implied covenant of good faith and
> fair dealing, and [intentional] interference with existing and
> prospective business relationships, *because and only because*
> Southeast Bank was injured by these.  *Consequently, any claim
> based upon such injuries can only be asserted derivatively.*

*Id.* at 11a (emphasis added).

17.    Similarly, the Northern District of Georgia held that a failed bank's former

officers were responsible for the bank's "improper business practices . . . includ[ing] failed

business strategies, lack of proper controls, poor documentation, and weak underwriting

standards and execution" and asserted claims including "negligent misrepresentation, negligence

[and] fraud . . . ."  *Totilo v. Herbert*, Case No. 1:08-CV-1033-BBM (N.D. Ga. May 20, 2008)

---

[5] A copy of this decision is attached hereto as Exhibit B.

(slip op.) at 2. The court found that the plaintiff-depositor had not alleged a special injury distinct from that of the bank or its other constituents -- "[h]is injury was shared by numerous other depositors, and is derived from the harm to [the bank] caused by the alleged mismanagement of [the defendant officers]." *Id.* at 13. While the complaint styled the claims as direct, the court held it was "clear that they are derivative." *Id.* at 8 (applying Georgia law to determine whether the claims were derivative or direct, and stating that Florida law is the same in this regard). *See also Pareto*, 139 F.3d at 699 (shareholder's claims of mismanagement and misrepresentation by the bank's former directors were "derivative, *i.e.*, in the corporate right [because] the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders"); *In re Sunrise Secs. Litig.*, 916 F.2d at 883 (holding that asserted injury emanated from mismanagement of the bank, and the plaintiff depositors' resulting loss "cannot be separated from the injury suffered by the institutions and all other depositors, and the damages recoverable are assets of the institutions").

### (2).    The Claims Are Those of the Bank, Not the Debtors.

18.    While the Committee may think its potential claims against the Bank belong to the Debtors, perhaps in the hope of circumventing FIRREA, the Committee is wrong. The Claims which the Committee seeks to investigate and prosecute stem from or are intertwined with acts or injuries at the Bank level, specifically, (i) mismanagement, (ii) lack of effective internal controls, and (iii) flawed financial reporting by the officers and directors of the Bank, and potentially also by third-party professionals retained by the Bank. Indeed, the Committee candidly admits that "[t]he claims asserted in the Securities Litigation and the seizure of the Bank by the regulatory authorities strongly suggest" the basis for these claims. (Motion, ¶17.)

Yet, the Bank and its directors and officers were parties to the Securities Litigation, not the holding company or any of the other Debtors. Moreover, to the extent seizure of the Bank by the regulatory authorities strongly suggests mismanagement, lack of effective internal controls or flawed financial reporting, as alleged by the Committee, it suggests that these wrongs occurred at the *Bank* level (or otherwise arise out of activities at the *Bank* level). Here, all alleged harm and injury in this case flows directly from failures and mismanagement at the Bank -- the Debtor holding company's only asset, upon which its "solvency and success was crucially dependent" -- by officers and directors of both the Bank and the Debtor holding company. Just because these acts may also have resulted in injuries to the Bank's parent company, does not convert the derivative claims on behalf of the Bank into direct claims on behalf of the Debtor holding company. *See In re Southeast Banking*, 827 F. Supp. at 746; *see also Brandt*, slip op. at 11.

(3).    The Committee Fails to Articulate Even a "Sliver" of Direct Claims.

19.    As the District Court found in *In re Southeast Banking*, the trustee of the bank holding company was only entitled to prosecute the "sliver" of claims that were undoubtedly direct claims on behalf of the bank holding company. 827 F. Supp. at 746. Those claims involved the *holding company's* acquisition of two thrift institutions and a related issuance of dividend payments to the *holding company*, which the trustee alleged, had been the result of mismanagement *at the holding company level. Id.* All other claims were derivative in nature and therefore could only be asserted by the FDIC.

20.    Here, the Committee fails to even articulate a potential "sliver" of claims against officers, directors or third-party professionals that would not belong to the FDIC -- namely, "direct" claims "by a holding company against its own officers and directors for damages to the holding company arising from breaches of duties owed to the holding company." *See Southeast* 827 F. Supp. at 746 & 748. Rather, as discussed above, the claims the Committee seeks to

- 11 -

investigate and assert against the directors and officers of the Bank and holding company are "classic derivative claims since they turn on acts taken by, and injury to, the Bank." *In re Southeast Banking*, 827 F. Supp. at 753. The Committee only vaguely references potential claims against pre-petition professionals, such as the law firm of Camner Lipsitz. Upon information and belief, these professionals were either retained by the Bank, or jointly by the Bank and Debtors. Accordingly, these claims also belong to the FDIC.

21.    The Committee has not and cannot allege potential claims against the officers and directors of the holding company which do not overlap with the claims on behalf of the Bank -- claims that the FDIC has been actively investigating since the Bank's closing. Accordingly, there is no "sliver" of direct claims that can be asserted by the Committee on behalf of the Debtors.[6] Rather, all of the Committee's potential Claims are derivative claims belonging exclusively to the FDIC.

**C.    The Committee's Investigation Would Be Duplicative, Wasteful, and Infringe Upon the FDIC's Investigation of the Same Bank Claims.**

22.    Immediately upon the FDIC's appointment as receiver on May 21, 2009, the FDIC placed personnel onsite at the Bank to lead a team of attorneys, investigators, and consultants in a comprehensive investigation into the Bank's downfall and the potential professional liability claims against the Bank's directors, officers, and third-party professionals arising from the Bank's closing. Specifically, the FDIC's continuing investigation has included, *inter alia*:

---

[6] With respect to the other (non-holding company) Debtors, the Committee similarly fails to identify any potential direct claims on their behalf. To the extent that such claims exist, however, the other Debtors, and thus any claims on their behalf, are not covered by the director and officer liability insurance policies. Accordingly, there is no impending expiration of an insurance reporting period, and, therefore, there is sufficient time to await confirmation of a plan of reorganization or liquidation pursuant to which a plan trustee would be appointed with standing to pursue such claims. Moreover, there is no urgent need to investigate claims against these other Debtors because recovery would necessarily be limited to the directors' and officers' personal assets.

- 12 -

- Analysis of BankUnited documents and interviews with Bank executives and employees; and

- Retention of the law firm of Hughes Hubbard & Reed LLP as external litigation counsel to investigate various potential claims against directors and/or officers of the Bank, as well as determine coverage of those claims by the Bank's various directors and officers insurance policies.

The Claims the Committee now seeks to investigate overlap areas the FDIC has already – and continues to – investigate.

23.     Yet, despite the FDIC's well-advanced investigation, the Committee now demands that this Court ignore the FDIC's efforts and afford the Committee standing to do what the FDIC is exclusively empowered to do.  The Committee does not seek to investigate any new holding company claims; rather, it attempts to infringe upon the FDIC's continuing investigation into derivative claims that properly belong exclusively to the FDIC.  Such investigation would be wasteful and unnecessary, and prematurely exhaust the bankruptcy estates' limited cash reserves. The FDIC is funding its own investigation; whereas, if the Committee is given standing to conduct a duplicate investigation and assert and prosecute claims against the directors and officers, the related costs and expenses will unnecessarily deplete and/or exhaust the bankruptcy estates' available assets, namely the limited cash reserves and Directors and Officers Liability Policies, for no additional benefit to the estate.  Accordingly, the Committee's Motion should be denied.

## II.    The Committee Cannot Meet and Has Not Met the Test for Derivative Standing.

24.     As explained above, the Committee has failed to cite to any case in support of its Motion in the context of a party seeking derivative standing on behalf of a bank holding company whose bank subsidiaries are under an FDIC receivership.  Even if this case did not

implicate FIRREA, the Committee has failed to sustain its burden of proof that it may have derivative standing.

A.    **The Committee Does Not Cite Any Relevant Authority in Support of the Motion.**

25.    In support of the Motion, the Committee cites a number of cases from outside the 11th Circuit and only one unpublished order from this Bankruptcy Court. However, each of the cases cited address the issue of derivative standing <u>outside</u> of the context of the bankruptcy case of a bank holding company where its bank subsidiaries are under an FDIC receivership. *See Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) (creditors' committee sought derivative standing to bring fraudulent transfer claims relating to a leveraged buyout of the chapter 11 debtor's nutrition business); *In re Racing Services, Inc.*, 540 F.3d 892 (8th Cir. 2008) (individual creditor sought derivative standing to avoid the payment of funds labeled as "taxes" by the chapter 7 debtor to the state of North Dakota); *In re Commodore Int'l Ltd.*, 262 F.3d 96 (2d Cir. 2001) (creditors' committee denied derivative standing despite debtors' consent because claims were already being investigated by another entity in the foreign bankruptcy proceedings); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436 (6th Cir. 1995) (individual creditor sought derivative standing to challenge transfers made by the debtor to another creditor); *Liberty Mutual Ins. Co. v. Official Unsecured Creditors' Committee of Spaulding Composites Co. (In re Spaulding Composites Co.)*, 207 B.R. 899 (9th Cir. B.A.P. 1997) (creditors' committee granted derivative standing where debtor consented to the committee's prosecution of the debtor's insurer for violating the automatic stay); *In re Puig, Inc.*, Case No. 14026-BKC-RAM (Bankr. S.D. Fla. Aug. 19, 2007) (creditors' committee granted derivative standing where chapter 11 debtors consented to the committee's request). The key distinguishing feature of this case is the

- 14 -

existence of the FDIC's receivership of the Bank and the powers and rights bestowed on it by Congress pursuant to FIRREA. The Committee does not cite a single authority in support of its proposition that the Committee may have derivative standing to bring claims and causes of action over matters that so clearly are within the exclusive province of the FDIC. The FDIC has provided this Court with clear authority for the primacy of its right to pursue the very claims that the Committee attempts to investigate. *See supra*, ¶¶8-13.

26.    The existence of the FDIC receivership and the black letter law of FIRREA, which exclusively empowers the FDIC to bring the Claims, undermines the basic premise that justifies the grant of derivative standing to a third party as enunciated by the Third Circuit Court of Appeals in *Cybergenics* – that derivative standing may only be granted because somehow "the intended system broke down." 330 F.3d at 568. Here, the system is not broken but is in fact working efficiently as contemplated by Congress and, thus, the relief requested by the Committee need not be considered.

### B.    The Committee Has Failed to Prove That It Has Derivative Standing To Pursue the Claims.

27.    Even under the standard cited in the Committee's Motion, the Committee fails to prove that it has derivative standing to pursue the Claims. The Committee cites the following four-prong test, which requires that: (i) a demand has been made upon the statutorily authorized party to take action; (ii) such demand was rejected; (iii) a colorable claim, which would benefit the estate if successful, exists; and (iv) to the extent the debtor denies the demand, it must be shown that the debtor's inaction was unjustified in light of the debtor's duties in a Chapter 11 case. *See In re G-I Holdings, Inc.*, 313 B.R. 612, 628 (Bankr. D.N.J. 2004) (*citing Canadian Pacific Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.*), 66 F.3d 1436, 1446 (6th Cir. 1995)); *In re Racing Services, Inc.*, 540 F.3d 892, 900 (8th Cir. 2008).

- 15 -

28.    The Committee bears the burden of proof to show that it should be granted standing to pursue the Claims. *See, e.g., Racing Services*, 540 F.3d at 900 ("The creditor, *not the bankruptcy court*, has the onus of establishing the trustee unjustifiably refuses to bring the creditor's claim") (emphasis in original); *Gibson Group*, 66 F.3d at 1438-39 ("the creditor has the initial burden to allege facts showing that the refusal to file suit is 'unjustified'"); *G-I Holdings*, 313 B.R. at 629 ("[I]t is the committee's burden in the first instance to demonstrate that it has satisfied the test for derivative standing"). In this case, the Committee has failed to sustain its burden of proof that it should be granted derivative standing to pursue the Claims.

(1).    The Committee Has Failed to Make a Demand on the Debtors to Pursue the Claims.

29.    The first two elements of the test (*i.e.*, that the Committee made a demand that the Debtors pursue the Claims and that the Debtors rejected such demand) has not been satisfied. The Committee admits (and the Debtors confirm in their Response) that it has made no such demand on the Debtors and, instead, relies on its belief that "[u]nder the circumstances of this case, a formal demand upon the Debtors to bring the Claims should not be required." (Motion, ¶15.) The Committee alleges that it was not required to make a formal demand upon the Debtors because the Debtors' directors, officers, and prepetition professionals are conflicted, which caused the demand and refusal requirements to become redundant and unnecessary. (Motion, ¶15.) In support of its argument, the Committee cites *Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.)*, 326 B.R. 532 (W.D. Pa. 2005) and *G-I Holdings*. However, in both of those cases, a creditors' committee initiated actions after the debtor was aware and informed of the committee's intent, and after the debtor took no action. *See Nat'l Forge,* 326 B.R. at 544-45 (the demand and refusal requirements were satisfied even if no formal demand was made because (i) the language in the interim and final DIP orders put all

parties on notice of the creditors' committee's ability to challenge the validity of certain liens; (ii) the debtor waived its right to bring a claim against the secured lenders; (iii) the debtor knew of the creditors' committee's investigation relating to the stock redemption; and (iv) the directors and managers were conflicted and "at all times…[had] opposed the filing of the Adversary Proceeding"); *G-I Holdings*, 313 B.R. at 630 (there was sufficient evidence to satisfy the demand and refusal requirements because (i) the debtors knew of the asbestos committee's intent to eventually challenge the validity of the transfers; (ii) the debtors denied any wrongdoing regarding the transfers; and (iii) the executives that drafted the transfer agreements at issue were still in control of the debtors).[7]

30.    In stark contrast with the *Nat'l Forge* and the *G-I Holdings* cases, here, the Committee never informed the Debtors that it intended to pursue the Claims and the Debtors were never given the opportunity to either deny that the Claims were valid or agree to pursue such Claims.  More importantly, in the Response, the Debtors specifically do not agree or consent to the Committee's request for derivative standing. (*See* Response, ¶¶10-11).  However, as a result of a perceived conflict of interest and in order to avoid the appearance of impropriety, the Debtors determined not to "formally object" to the Committee's request as it relates to certain insiders or the Camner Lipsitz firm.  However, it is clear from the Response that in formulating their position, the Debtors failed to consider the FDIC's rights and obligations under FIRREA and the added cost that will burden the Debtors' estates.  Based on the foregoing, the

---

[7]  Although, in the Motion, the Committee alleges that the Debtors' directors, officers, and prepetition professionals are hopelessly conflicted, the only conflict that is described with any specificity relates to only one director on the board of directors of one of the Debtors. (Motion, ¶15.)  While the board may indeed be conflicted, that has yet to be demonstrated.  The present situation is also in stark contrast to the *G-I Holdings* case where all the executives that were allegedly conflicted remained in control of the debtors.

NYK 1224509-2.084080.0013

Committee has failed to satisfy its burden of proof to show that the first and second factors of the derivative standing test are satisfied in this case.

> (2).   The Committee Has Failed to Describe Specifically the Claims It Intends to Pursue.

31.    The Committee has failed to appropriately describe the Claims it intends to pursue and to demonstrate that such Claims are colorable, *i.e.*, that they will survive a motion to dismiss. *See Racing Services*, 540 F.3d at 900; *see also G-I Holdings*, 313 B.R. at 631 (*citing In re iPCS, Inc.*, 297 B.R. 283, 291 (Bankr. N.D. Ga. 2003)).[8]  In the Motion, the Committee fails to allege with any degree of specificity what claims will be asserted by the Committee against the Debtors' directors, officers, and professionals.  Rather, the Motion merely references general theories of recovery.  (*See* Motion, ¶17) (describing the Claims as "viable causes of action under bankruptcy and/or applicable non-bankruptcy law [...]").  Thus, the Committee's description of the Claims is so vague that it does not allow this Court to conduct a proper analysis of the Committee's alleged standing.  Indeed, the Committee does not attach a complaint to the Motion or an affidavit outlining or describing the Claims for this Court's review.  As explained in *Nat'l Forge*, to "pre-approve litigation" without a thorough analysis of the committee's claims would be "an abdication of the Bankruptcy Court's gate-keeping role."  *Nat'l Forge,* 326 B.R. at 562. Thus, to approve a litigation without a specific analysis of the potential claims would show that a court did not "expressly consider[] the viability of the [c]ommittee's claims, the likely costs of litigation, or the reasons for the [d]ebtor's opposition."  *Id.*  In essence, the Motion is seeking

---

[8]  In order to determine if a claim will survive a motion to dismiss, courts generally analyze the legal sufficiency of the claims as asserted by the creditors' committee.  *See, e.g., G-I Holdings*, 313 B.R. at 633 (claims involving an avoidance action pursuant to section 544 of the Bankruptcy Code required the creditors' committee to "identify an existing unsecured creditor with an allowable claim who could avoid the transfer of [the debtors' assets]"); *iPCS,* 297 B.R. at 292 (claims were colorable where creditors' committee alleged sufficient facts to prosecute an action predicated on alter ego liability against the debtor).

*carte blanche* authority for the Committee to pursue any action it deems appropriate, which would be detrimental to the Debtors' estates. *Id.* at 554 ("Prejudice can occur in numerous ways if creditors are permitted to file avoidance actions *carte blanche*").

32.    In addition, the Committee's argument that colorable claims exist is premised upon contingent and uncertain events which cannot serve as the basis to grant a creditors' committee derivative standing. *G-I Holdings*, 313 B.R. at 651 (finding that the claims were premised on contingent and uncertain events when "the proposed Summary of Claims … all contain the following qualifying language: if [the non-debtor entity] is determined to be the alter ego of [the debtors] or is substantially consolidated with [the debtors]") (citation omitted). The Committee admits as much in the Motion when it states that "given appropriate proofs, … the Committee likely will uncover strong evidentiary support" for the Claims. (Motion, ¶17.) Thus, this Court cannot, based on the Motion, determine that the Claims are of "sufficient immediacy and reality to justify judicial resolution." *G-I Holdings*, 313 B.R. at 652 (*citing Peachlum v. City of York*, 333 F.3d 429, 434 (3d Cir. 2003)).

33.    Based on the foregoing, the Committee has failed to satisfy its burden of proof to show that the third factor of the derivative standing test is satisfied in this case.

(3).    <u>The Committee Has Not Demonstrated an Unjustified Refusal by the Debtors to Pursue the Claims.</u>

34.    The Committee has also failed to demonstrate that the Debtors **unjustifiably** failed to pursue the Claims. As case law requires, the Committee has failed to present an affidavit or other evidentiary documentation in support of its position that the Debtors' refusal was unjustified, and it has not requested that an evidentiary hearing be conducted on such issue. *See In re STN Enterprises*, 779 F.2d 901, 905 (2nd Cir. 1985) (requiring committee to submit affidavit or to have an evidentiary hearing to demonstrate the benefit to the reorganization

estate); *see also Racing Services*, 540 F.3d at 900 n. 8 (same); *Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. M & S Grading, Inc. (In re M & S Grading, Inc.)*, 541 F.3d 859, 866 (8th Cir. 2008) ("To satisfy its burden, the [moving party], at a minimum, must provide the bankruptcy court with specific reasons why it believes the [debtor's] refusal is unjustified") (citation omitted); *G-I Holdings*, 313 B.R. at 629 (same). Indeed, the Committee asks this Court to summarily grant its request for relief on the flimsiest of factual record.

35. In addition, "the determination of whether the trustee unjustifiably refuses to bring … proposed claims will require bankruptcy courts to perform a cost-benefit analysis." *Racing Services*, 540 F.3d at 901; *Nat'l Forge*, 326 B.R. at 548 ("courts generally perform a cost-benefit analysis of the claims"). As part of the cost-benefit analysis, the factors a bankruptcy court may consider include: "(1) [the] probabilities of legal success and financial recovery in event of success; (2) the creditor's proposed fee arrangement; and (3) the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce." *Racing Services*, 540 F.3d at 901 (*citing STN Enters.*, 779 F.2d at 905-06) (quotation omitted); *see also Nat'l Forge*, 326 B.R. at 548.

36. Here, while the appearance of impropriety may impede the Debtors and its Chief Restructuring Officer from taking stronger positions on this issue, the Court itself is not so restricted. There can be little doubt that any cost benefit analysis would tip in favor of denying the Committee's request. To the extent the Claims to be pursued by the Committee overlap with those which the FDIC is statutorily responsible for investigating, defending two inquiries based largely on the same matters does not make any economic sense. As such, the Debtors would indeed be justified in denying the Committee's request. Instead of supplying evidence that would allow this Court to conduct an appropriate cost-benefit analysis, the Committee merely

provides sweeping generalizations that granting the Committee standing is in the best interest of the Debtors' estates.  (*See* Motion, ¶20.)  Thus, the Committee has also failed to satisfy its burden of proof with respect to a cost-benefit analysis of the Claims.

## CONCLUSION

WHEREFORE, the FDIC respectfully requests that this Court deny the Motion for the reasons set forth above.

Dated:  September 14, 2009                Respectfully Submitted,

McDERMOTT WILL & EMERY LLP

By:    */s/ Bruce J. Berman*
Bruce J. Berman
Fla. Bar # 159280
201 South Biscayne Boulevard, Suite 2200
Miami, FL 33131-4336
Tel.:  305.358.3500
Fax.:  305.347.6500

Geoffrey T. Raicht
340 Madison Avenue
New York, New York 10173-1922
Tel.:  212.547.5400
Fax.:  212.547.5444

and

HUGHES HUBBARD & REED LLP

Dennis Klein
Aviva L. Wernick
201 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131-4332
Tel:  305.358.1666
Fax:  305.371.8759

*Co-Counsel for the Federal Deposit Insurance Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail on those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  /s/ Bruce J. Berman
Bruce J. Berman

### <u>Service List for Case 09-19940-LMI</u>

## Electronic Mail Notice List

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case:

**Johanna Armengol** on behalf of U.S. Trustee, Office of the US Trustee
Johanna.Armengol@usdoj.gov, johanna.armengol@usdoj.gov

**Paul J. Battista** on behalf of creditor Alfred Camner
pbattista@gjb-law.com; ctarrant@gjb-law.com; gjbecf@gjb-law.com

**Bruce J Berman** on behalf of Creditor Federal Deposit Insurance Corporation
bberman@mwe.com, wjanke@mwe.com, graicht@mwe.com

**Mark D Bloom** on behalf of Debtor BankUnited Financial Corporation
bloomm@gtlaw.com, phillipsj@gtlaw.com, MiaLitDock@gtlaw.com, miaecfbky@gtlaw.com

**Stephen P Drobny** on behalf of Debtor BankUnited Financial Corporation
sdrobny@shutts.com, mvandenbosch@shutts.com

**Scott M. Grossman** on behalf of Debtor BankUnited Financial Corporation
grossmansm@gtlaw.com, phillipsj@gtlaw.com, MiaLitDock@gtlaw.com, miaecfbky@gtlaw.com

**Brian W Hockett** on behalf of Debtor BankUnited
bhockett@thompsoncoburn.com

**Peter H Levitt** on behalf of Debtor BankUnited Financial Corporation
plevitt@shutts-law.com

MIA 351342-1.084080.0013

**Corali Lopez-Castro** on behalf of Official Committee of Unsecured Creditors
clc@kttlaw.com, rcp@kttlaw.com

**Todd C Meyers** on behalf of Official Committee of Unsecured Creditors
tmeyers@kilpatrickstockton.com, skapoor@kilpatrickstockton.com

**Miami-Dade County Tax Collector**
mdtcbkc@miamidade.gov

**Dennis A Nowak** on behalf of Interested Parties Humberto L. Lopez and Ramiro A. Ortiz
dn@tewlaw.com, ag@tewlaw.com

**Office of the US Trustee**
USTPRegion21.MM.ECF@usdoj.gov

**Craig V. Rasile** on behalf of Creditor U.S. Bank, N.A.
crasile@hunton.com, mtucker@hunton.com, mmannering@hunton.com,
keckhardt@hunton.com, adeboer@hunton.com

**Patricia A Redmond** on behalf of Interested Party BankUnited, FSB ("New Bank")
predmond@swmwas.com, jmartinez@swmwas.com, rross@swmwas.com

**David Samole** on behalf of Official Committee of Unsecured Creditors
das@kttlaw.com, pm@kttlaw.com;la@kttlaw.com;ycc@kttlaw.com

**Dennis S. Klein** on behalf of FDIC
klein@hugheshubbard.com

## Manual Notice List

The following is the list of parties who are not on the list to receive e-mail notice/service for this case, and are therefore being served by first class U.S. Mail, postage prepaid:

SEE ATTACHED

MIA 351342-1.084080.0013

**NON-ECF SERVICE LIST**

Cede & Co.
P.O. Box 20
Bowling Green Station
New York, NY 10004-1408

Wells Fargo Delaware Trust Company
Attn: Molly A. Breffitt
919 N. Market Street
Suite 1600
Wilmington, DE 19801

U.S. Bank
1555 N. River Center Drive
Suite 300
Milwaukee, WI 53212

Thomas M. Korsman, Vice President
Corporate Special Accounts Group
Wells Fargo Bank, N.A.
MAC N9311-110
625 Marquette Avenue
Minneapolis, MN 55479

U.S. Bank
Attn: Earl Dennison, Acct. Admin.
Goodwin Square, 23rd Floor
225 Asylum Street
Hartford, CT 06103

Stearns Weaver
Museum Tower
150 W. Flagler Street Suite 2200
Miami, FL 33130

Geoffrey T. Raicht, Esq.
Attorneys for FDIC
McDermott Will & Emery LLP
340 Madison Ave.
New York, N.Y. 10173-1922

Tew Cardenas
Four Seasons Tower - 15th Floor
1441 Brickell Avenue
Miami, FL 33131-3439

Bridget Schessler, Vice President
The Bank of New York Mellon
525 William Penn Place, 7th Floor
Pittsburgh, PA 15259

Coffey Burlington
Office in the Grove Penthouse
2699 S. Bayshore Drive
Miami, FL 33133

Steven M. Cimalore
Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1615

Jack Reise
Waterford Township General Employees
Retirement System
c/o Coughlin Stoia Geller et al
120 E. Palmetto Park Road Suite 500
Boca Raton, FL 33432

Moses Marx
c/o Ross Martin, Esq.
Ropes & Gray, LLP
One International Place
Boston, MA 02110-2624

Internal Revenue Service
Department of Treasury
227 N. Borough St.
Tallahassee, FL 32301

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Internal Revenue Service
Insolvency Unit
7850 S.W. 6th Court
Mail Stop 5730
Plantation, FL 33324

State of Florida
Department of Revenue
Bankruptcy Section
P.O. Box 6668
Tallahassee, FL 32314-6668

Honorable Eric Holder
U.S. Attorney General
Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Honorable R. Alexander Acosta
Attn: Civil Process Clerk
U.S. Attorney
99 NE Fourth Street
Miami, FL 33132

Susan R. Sherrill-Beard
Senior Trial Counsel/Bankruptcy
U.S. Securities and Exchange Commission
Atlanta Regional Office
Suite 1000, 3475 Lenox Road, N.E.
Atlanta, GA 30326-1232

Susan D. Profant, CFCA, CLA, Paralegal
KEN BURTON, JR., Manatee County
Tax Collector
P.O. Box 25300
Bradenton, FL 34206-5300

David A. Lander, Esq.
Brian W. Hockett, Esq.
Attorneys for BankUnited (New Bank)
Thompson Coburn LLP
One US Bank Plaza
St. Louis, Missouri 63101

Allison H. Weiss, Esq.
Jeffrey Chubak, Esq.
Counsel for Bank of New York Mellon
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, N.Y. 10019

Andrew I. Silfen, Esq.
Leah M. Eisenberg, Esq.
Counsel for Wilmington Trust Company
ARENT FOX LLP
1675 Broadway
New York, N.Y. 10019

Jeffrey N. Rothleder, Esq.
Counsel for Wilmington Trust Company
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20026

Jonathan Lee Riches
dba Bernard L. Madoff Invest. Sec. LLC
POB 14500 #40948018
Lexington, KY 40512

Michael C. Sontag, Esq.
Special Counsel to Debtors
CAMNER LIPSITZ, P.A.
550 Biltmore Way, Suite 700
Coral Gables, FL 33134

Wendy H. Zoberman, Esq.
Lead Counsel for the Putative Class
BERMAN DEVALERIO
4280 Professional Center Drive, Suite 350
Palm Beach Gardens, FL 33410

CC Arbitrage, Ltd
c/o Castle Creek Arbitrage LLC
111 West Jackson Blvd 20th Fl
Chicago, IL 60604

Monumental Life Insurance Co
c/o Maureen Ocampo CFA
2049 Century Park East #330
Los Angeles, CA 90067

Hudson Bay Fund LP
Hudson Bay Overseas LTD
c/o Charles Winkler
120 Broadway 40th Flr
New York, NY 10271

Highbridge International LLC
c/o Highbridge Capital Management LLC
9 West 57 St 27 Floor
New York, NY 10019

Deutsche Bank Securities, Inc
60 Wall St
New York, NY 10005

Hollie N. Hawn, Assistant County Attorney
County Attorney for Broward County
115 South Andrews Avenue
Fort Lauderdale, FL  33301