UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| BankUnited Financial Corporation, *et al.*,[1] | ) | Case No. 09-19940-LMI |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' THIRD MOTION TO EXTEND EXCLUSIVE
## PERIODS TO FILE A PLAN AND SOLICIT ACCEPTANCES THEREOF

Debtors and debtors-in-possession, BankUnited Financial Corporation (**"BUFC"**), BankUnited Financial Services, Incorporated (**"BUFS"**), and CRE America Corporation (**"CRE"**) (collectively, the **"Debtors"**), respectfully move pursuant to 11 U.S.C. § 1121(d), (i) to extend the period under 11 U.S.C. § 1121(b) during which the Debtors have the exclusive right to file a Chapter 11 plan (the **"Exclusive Filing Period"**) for an additional period of 90 days from the date the Debtors file their consolidated tax return for their 2008 fiscal year ended September 30, 2009 (**"FY 2008"**), and (ii) to extend the period under 11 U.S.C. § 1121(c)(3) during which the Debtors have the exclusive right to solicit acceptances of a Chapter 11 plan for an additional 60 days from the end of the newly established Exclusive Filing Period (the **"Exclusive Solicitation Period,"** together with the Exclusive Filing Period, the **"Exclusivity Periods"**), without prejudice to seek additional extensions of the Exclusivity Periods. In support of the requested relief, the Debtors rely upon the following facts and substantial matters of law.

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335). The address of each of the Debtors is c/o Development Specialists, Inc., 200 South Biscayne Blvd., Suite 1818, Miami, FL 33131.

## PRELIMINARY STATEMENT

1.      Since entry of the Court's January 13, 2010 *Order Granting Second Extension of Debtors' Exclusive Periods to File a Plan and Solicit Acceptances Thereof* (DE #432) (the **"Second Exclusivity Order"**), the Debtors have continued to make progress in administering these cases.  There is, however, much more work to be done before the Debtors will be in a position to file and solicit acceptances of any Chapter 11 plan, including the following key tasks and objectives:

- Selection and engagement of a tax accountant and adviser to assist the Debtors and their undersigned general counsel in connection with the preparation and filing of consolidated federal and state tax returns for Debtors and their affiliates[2] for their FY 2008;

- Preparation and filing of the consolidated FY 2008 federal and state tax returns, and related tax planning to maximize the tax attributes available to the estates for use in connection with a Chapter 11 plan;

- Framing and resolution of numerous issues and controversies with the Federal Deposit Insurance Corporation, as Receiver (the **"FDIC-Receiver"**) for BankUnited, FSB (the **"Bank"**), including the right to any tax refunds and competing interests in certain causes of action;

- Continued pursuit of the Debtors' claims against the FDIC-Receiver in the Bank Receivership and assessment of their impact on the corresponding claims filed by the

---

[2] BUFC intends as in prior years to file consolidated tax returns for its entire consolidated tax reporting group, including the Bank, and anticipates that the FDIC-Receiver will cooperate in that effort as may be necessary to effectuate the filings.

FDIC-Receiver in these Chapter 11 cases, involving the comprehensive review and analysis of the factual, legal and financial bases for such claims and their resolution;

- Review and analysis of the numerous proofs of claim filed in these cases, and resolution of issues of relative priority among various claims; and

- Negotiating, proposing and seeking to confirm a Chapter 11 plan in consultation with the Official Committee of Unsecured Creditors (the **"Committee"**) and their legal and financial advisors, which maximizes the value of assets for the estates, creditors and, if appropriate, other constituencies in these cases.

2.      Additional progress on the foregoing and other issues is necessary before the Debtors will be in a position to develop and present a Chapter 11 plan to the Committee that will maximize the return available for creditors and, if appropriate, equity holders in these cases.

3.      For the reasons set forth below, the Debtors respectfully request extensions of the Exclusive Filing Period for 90 days from the date the Debtors file the consolidated federal tax return for FY 2008, and of the Exclusive Solicitation Period for 60 days from the conclusion of the newly established Exclusive Filing Period, without prejudice to seek additional extensions, in order to allow the Debtors a sufficient opportunity to maximize the value of their assets and propose a feasible Chapter 11 plan that is in the best interests of creditors and these estates.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334.  This is a core proceeding under 28 U.S.C. §157(b).  Venue is proper in this District under 28 U.S.C. §§1408 and 1409.

## BACKGROUND

5.     The Debtors commenced these cases on May 22, 2009 (the **"Petition Date"**) by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108, no trustee or examiner having been sought or appointed.  On May 29, 2009, the Office of the United States Trustee appointed the Committee (DE # 33).

6.     BUFC is a former unitary savings and loan holding company of the Bank, incorporated in the State of Florida and formerly headquartered in Coral Gables, Florida.  BUFC is also the 100% owner of (i) CRE, which holds a timeshare interest in certain real property located in New York City; and (ii) BUFS, which was organized in 1997 for the purpose of selling annuities, mutual funds and other insurance and securities products.[3]

7.     Following several unsuccessful attempts to raise the Bank's capital levels in accordance with Office of Thrift Supervision (**"OTS"**) mandates, on May 21, 2009, the OTS closed the Bank and appointed the FDIC as its receiver.  The FDIC-Receiver entered into a Purchase and Assumption Agreement with a group of investors who invested in a new depository institution, BankUnited, a de novo federal savings association organized under the laws of the United States and having its principal place of business in Coral Gables, Florida (**"New Bank"**), for the purchase of the Bank's assets.  All of the former officers and employees of the Bank then terminated their relationship with the Bank or the Debtors and either took positions at New Bank or pursued other opportunities.

8.     With no remaining officers and management after the Petition Date, BUFC's Board of Directors appointed Joseph J. Luzinski as Chief Restructuring Officer (the **"CRO"**),

---

[3] BUFC is also the parent and 100% owner of other subsidiary entities which have not sought relief in this or any other Court, and appear at this juncture not to have any meaningful assets.

effective as of June 2, 2009.  Immediately upon his appointment, the CRO and his staff at Development Specialists, Inc., began diligently working to gather documents and information belonging to the Debtors that were necessary to administer their bankruptcy cases.  As a result of the closure of the Bank and sale to New Bank, nearly all of the Debtors' assets and documents were in the hands of third parties – primarily New Bank and the FDIC-Receiver – as of the Petition Date.  As such, it took significant time and effort to obtain many of these documents and information – including negotiating and implementing certain document and information sharing protocols – which efforts still continue in earnest to date.

9.      In light of these difficulties, the Debtors obtained extensions of the deadline to file their Bankruptcy Schedules and Statements of Financial Affairs (the **"Schedules and SOFAs"**), which they were finally able to file on August 10, 2009, about eleven weeks after the Petition Date. (DE #172).[4]  Upon the filing of the Schedules and SOFAs, and at the Debtors' request, the Court then set a Uniform Bar Date for the filing of all proofs of claim (including claims by governmental units) of November 17, 2009 (DE #193).

10.     Now that the Uniform Bar Date has passed, there are a number of issues that the Debtors must address before they will be in a position to propose a plan, including an analysis of the various outstanding debt issues that include senior notes, subordinated notes and other securities known as HiMEDs units and Trust Preferred Securities, the relative priority of which must be confirmed in order to develop the classification scheme required in any plan under Section 1123(a)(1) of the Bankruptcy Code.

---

[4] The Schedules and SOFAs for BUFS and CRE were filed in their respective cases on August 10, 2009, and were then filed in this lead jointly administered case on August 11, 2009 (DE #176, 177).

11.    In addition, the FDIC-Receiver has filed claims in each of the Debtors' three cases in excess of $4.9 billion.[5]  While the Debtors believe that all or a substantial portion of the claims asserted by the FDIC-Receiver are simply invalid and subject to objection on both factual and legal grounds, if allowed in full or even in substantial part these claims will dominate the distribution scheme under any plan and significantly dilute the return available to other creditors. The Debtors believe that significant additional steps need be taken to review and analyze these claims and to resolve -- in whole or in part -- their validity, priority and amount before proposing and pursuing a plan toward confirmation, so as to determine their amount and the extent of the FDIC-Receiver's participation, if any, under a plan.

12.    Moreover, the Debtors are in the final stages of confirming the engagement of tax accountants to prepare the federal and state returns for their FY 2008, which closed on September 30, 2009, with retention applications to be filed in advance of the hearing on this Motion.  The process of interviewing and selecting among qualified candidates for this position has been far more difficult and time-consuming than the Debtors ever could have anticipated, based upon a vast number of issues ranging from real or perceived conflicts of interest arising from past or present relationships with the FDIC to qualifications and experience in the highly specialized area of federal and state taxation of financial institutions.[6]  As noted in other

---

[5] The Debtors have also filed a series of claims totaling in excess of $414 million in the BUFC Receivership, which the FDIC-Receiver has yet to disallow under 12 U.S.C. §1821(d)(5)(A).

[6] To be sure, the process of retaining tax accountants and advisors has not gone as smoothly or quickly as Debtors had contemplated or intended.  On February 17, 2010 the Debtors filed an *Application to Employ and Retain Ernst & Young LLP as Tax Services Provider for the Debtors, Nunc Pro Tunc to January 14, 2010* (DE #453), to which the FDIC filed an (untimely) "Limited Objection" on February 26, 2010 (DE #481).  As reflected in that Application, Ernst & Young had undertaken to commence work on the tax returns as early as January 14, 2010. Ernst & Young, however, ultimately determined not to go forward with the engagement, as a result of which the Debtors filed a Notice of Withdrawal of the Application on March 5, 2010 (DE #496).  Since that date, the Debtors and their undersigned counsel have conducted numerous interviews of other candidates from across the United States, and selected the South Florida-based firm of Morrison Brown Argiz & Farra, LLP as most qualified for the engagement.  The Debtors are finalizing an engagement letter and retention papers with the Morrison Brown firm to be filed this week, seeking approval of their retention *nunc pro tunc* to on or about March 26, 2010, more than ten

pleadings filed throughout these cases, among the Debtors' most valuable assets may be net operating loss carrybacks and associated refund rights, loss carryforwards and other tax attributes, the value of which cannot be determined until the FY 2008 federal return has been prepared, filed and accepted, and issues with the FDIC-Receiver have been resolved.

13.    As extended by the Second Exclusivity Order, the current Exclusive Filing Period ends on April 19, 2010, and the current Exclusive Solicitation Period ends on June 17, 2010.

## RELIEF REQUESTED

14.    The Debtors have determined to seek a further extension of the Exclusivity Periods in order to continue the foregoing efforts to develop and propose what they hope will be a consensual Chapter 11 plan of reorganization.  In light of the significance of the tax attributes to the feasibility of any reorganization, the Debtors propose to tie the further extension not to any fixed date on the calendar, but rather to the date of filing the consolidated FY 2008 federal tax return.  Accordingly, Debtors seek to extend the Exclusive Filing Period for a period of 90 days from the date the Debtors' file their FY 2008 federal return, and of the Exclusive Solicitation Period for 60 days from the conclusion of the extended Exclusive Filing Period, without prejudice to seek additional extensions of the Exclusivity Periods for cause in accordance with 11 U.S.C. § 1121(d).[7]

15.    Bankruptcy Code Section 1121(d) grants the Court authority to extend the Exclusivity Periods "for cause" after notice and a hearing.  Although the term "cause" is not

---

weeks after the date on which Ernst & Young had commenced work that the Debtors believed would lead to the filing of the returns.

[7] As with the Second Exclusivity Order, the Debtors contemplate and agree that any further extensions of the Exclusivity Periods similarly shall be without prejudice to the right of the Committee or any other party in interest in these cases to seek an earlier termination of such extended Exclusivity Periods "for cause" under Section 1121(d)(1) of the Bankruptcy Code, which may include a lack of progress satisfactory to the Committee on the preparation and filing of the FY 2008 tax returns.

defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997). *See also In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 231 (1978)); *In re Public Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D. N.H. 1988) ("the legislative intent…[is] to promote maximum flexibility").

16.     To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See e.g., In re McLean Indus.*, 87 B.R. at 833-34; *In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987). Recognizing that what is reasonable, of course, depends on the facts and circumstances of each particular case, the decision to extend a debtor's exclusive periods to file a plan and solicit acceptances thereof is committed to the sound discretion of the bankruptcy court. *See First Am. Bank of N.Y. v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986).

17.     Courts have relied on a variety of factors when determining whether cause exists for an extension of a debtor's exclusive periods to file a plan and solicit acceptances thereof, each of which may provide sufficient grounds for extending those periods. These factors include: (1) the size and complexity of the case, (2) the necessity of sufficient time to negotiate and prepare adequate information, (3) the existence of good faith progress toward reorganization, (4) whether the debtor is paying its debts as they become due, (5) whether the debtor has demonstrated reasonable progress for filing a viable plan, (6) whether the debtor has made progress in negotiating with creditors, (7) the length of time the case has been pending, (8) whether the debtor is seeking the extension to pressure creditors, and (9) whether unresolved

contingencies exist.  *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re Texaco, Inc.*, 76 B.R. at 327.  The identified criteria are only factors, however, not all of which are necessarily relevant in every case.  Moreover, no one factor is dispositive, and the Court is not restricted to merely adding up the factors.  *Dow Corning*, 208 B.R. at 669.  Regardless of the weight afforded to each factor, together these factors demonstrate that extensions of the Exclusivity Periods are warranted here.

18.     First, these cases are large and complex, with more than $557 million of scheduled liabilities among the three Debtors.  While the scheduled assets aggregate only $21 million, the Debtors believe based upon the investigatory activities conducted by their counsel and financial advisors to date that other contingent and unliquidated intangible assets may be of substantially greater amount and benefit to creditors and, potentially, equity holders as well.  The complexity of administering the estates is further compounded by the facts that (a) as of the Petition Date all of the former officers and employees of the Bank terminated their relationship with the Bank or the Debtors and either took positions at New Bank or pursued other opportunities, (b) nearly all of the Debtors' books, records, and other property were in the hands of third parties, including New Bank and the FDIC, and (c) the realization of monetary value from the intangible assets referenced above necessarily requires intensive analysis and development by sophisticated legal and financial advisors.  In addition, the FDIC's competing claims to certain of the causes of action against third parties, along with its proofs of claim filed in excess of $4.9 billion, further complicate these cases and, in the view of the Debtors, must be addressed further before any plan can be formulated and presented for confirmation.

19.    The foregoing facts apply to the second factor as well – the Debtors simply have not had sufficient time to negotiate and prepare adequate information upon which to base a plan. As stated above, to the great consternation of the Debtors and their advisers the task of interviewing, selecting and retaining qualified tax accountants to prepare the consolidated FY 2008 tax returns – and thereby fix the amount of the tax attributes available to the estates and/or the FDIC-Receiver – has taken far more time than initially contemplated.  In addition, based on the circumstances surrounding the closing of the Bank and sale of its assets to New Bank it took several months for the Debtors to gather the documents necessary to prepare their Schedules and SOFAs, and the process of requesting, reviewing and analyzing numerous other documents in the hands of third parties remains ongoing.  The Debtors have likewise had to turn their immediate efforts in these cases to various preliminary matters that customarily would have been addressed pre-petition, but due to the closure of the Bank the Debtors did not have the opportunity or ability to undertake these efforts until after these cases were filed.  Given the immediate and pressing need to analyze and resolve with the Committee, the FDIC-Receiver, New Bank and other third parties a series of issues – some but not all of which have heretofore come before the Court – before a plan can even be proposed, the Debtors simply have not had sufficient time to negotiate and prepare adequate information upon which to base a plan.

20.    Third, under the circumstances outlined above, the Debtors believe that there has been good faith progress toward reorganization.  Within a few days of the CRO's appointment and the Debtors' retention of their current bankruptcy counsel, the Debtors took prompt action to preserve what may be among the estates' most significant assets – the Debtors' net operating losses and other tax attributes – in order to preserve their potentially significant value to their

estates for utilization in a Chapter 11 plan.[8]   Since that time, the Debtors have undertaken significant steps to administer their cases and put themselves in a position to be able to propose a plan within the coming months.   One of the most significant steps in this process will be the preparation of the FY 2008 returns, which the Debtors believe may result in significant net operating losses and other tax attributes of significant value to their estates.   The Debtors do not at this time know the extent to which these attributes may have value, if any, and the process of preparing the FY 2008 return may be time-consuming and complicated.   Nevertheless, and despite the unanticipated ten-week delay in the engagement of a tax accountant following the FDIC-Receiver's "Limited Objection," the Debtors have made good progress toward this end, and continue to work toward the filing of their FY 2008 returns.

21.     Fourth, the Debtors are paying their debts in the ordinary course as they become due.   While those debts consist largely of fees and expenses to professionals retained by the Debtors and the Committee, such is typically the case where, as here, the operations of the Debtors have largely been curtailed as of the Chapter 11 filings and the administration of their estates poses the challenges described above.

22.     Fifth, after securing interim and final orders to preserve the tax attributes, the Debtors have worked diligently to identify, preserve, and maximize the value of other assets that could be utilized in a Chapter 11 plan.   Indeed, since the entry of the Second Exclusivity Order the Debtors have engaged special litigation counsel to investigate and, if appropriate, pursue claims against certain of their former professionals and other third parties.[9]   Likewise, for the

---

[8] Net operating loss carryforwards would have no value in a Chapter 7 liquidation.

[9] *Order Authorizing the Employment and Retention of Diamond McCarthy LLP as Special Litigation Counsel* entered March 1, 2010 (DE #488).   Similarly, the Committee has previously been granted derivative standing to investigate, assert and prosecute direct claims held by the estates against former directors and officers of the Debtors, as well as the law firm of Camner Lipsitz, P.A. (DE #324)

reasons noted above with respect to the third and fourth factors, the Debtors submit that they have demonstrated reasonable progress toward pursuing intangible assets and formulating a plan under the circumstances of these cases, but most certainly will need additional time to file a viable plan that seeks to maximize the value of estate assets.

23.    With respect to the sixth factor, the Debtors have not at this point engaged in any substantive negotiations with creditors with respect to treatment under a Chapter 11 plan, but remain in ongoing discussions with counsel for the Committee on the basic format of a plan depending on whether tax attributes can be preserved.  Indeed, the Debtors and their undersigned counsel have communicated on a frequent and ongoing basis with counsel for the Committee on the tax strategy in these cases and the selection of a tax accountant, affording Committee counsel an opportunity to interview both Ernst & Young and the Morrison Brown firm prior to the filing of the Applications to retain each of those firms.    Debtors intend to continue their communication with the Committee in respect of these and other issues in these cases, including the review, analysis, and objection to and/or estimation of the FDIC's claims which the Debtors believe is necessary before any substantive negotiations on the terms of a Chapter 11 plan can proceed.

24.    As for the seventh factor, these cases have been pending for only ten months, and this is only the third request for an extension of the Exclusivity Periods.  Given the complicating factors arising from the closing of the Bank and ensuing sale of its assets by the FDIC-Receiver and the lack of virtually any prepetition bankruptcy planning, the Debtors submit that the length of time these cases have been pending without any Chapter 11 plan having been proposed to date is entirely reasonable under the circumstances.  *See In re Washington Mutual, Inc.*, Case No. 08-12229 (MFW) (Bankr. D. Del. Nov. 20, 2009), *Fourth Order Pursuant to Section 1121(d) of the*

*Bankruptcy Code Extending Exclusive Periods for the Filing of a Chapter 11 Plan and Solicitation of Acceptances Thereto* (granting fourth requested extension of exclusive filing period to a date sixteen months after the September 26, 2008 petition date, and of the exclusive solicitation period to a date eighteen months after the petition date, in another pending Chapter 11 bank holding company bankruptcy case, without prejudice to seeking further extensions) (copy attached as **Exhibit A** to *Debtors' Second Motion to Extend Exclusive Periods to File a Plan and Solicit Acceptances Thereof* (DE #407)).

25.    Eighth, the Debtors do not seek the requested extension in an effort to exert pressure upon creditors.  To the contrary, as described above the Debtors remain in close consultation with the professionals retained by the Committee on virtually every significant issue in these cases, and seek this third extension in order to gain sufficient time to formulate a plan that will realize additional value for creditors (and, if appropriate, equity holders as well), a process that will necessarily take several additional months to come to fruition.  The Debtors fully recognize that in the event Committee support for the framework of a Chapter 11 plan cannot be obtained within a reasonable period after the FY 2008 tax returns are filed and, if appropriate, the market for a transaction that would monetize the tax attributes determined to be available to the estates can be tested, the Committee may seek leave to file its own plan of reorganization.

26.    As set forth more fully above, a number of unresolved contingencies remain at this point, including the claims by the Debtors in the BUFC Receivership; the FDIC-Receiver's claims in these cases and asserted competing interests in various estate assets, including certain causes of action and tax attributes; pursuit of other causes of action by the Debtors against third parties; the potential to monetize and realize significant value from the Debtors' tax attributes

through a Chapter 11 plan; and other matters that simply cannot be identified (or disclosed publicly) at this stage in these cases.

27.    Thus, based on the factors set forth in *Dow Corning* as applied to the facts of these cases, the Debtors have established more than sufficient cause to grant these third requested extensions of the Exclusivity Periods.

28.    In addition to analyzing the *Dow Corning* factors, courts have recognized that the key question in determining whether to grant extensions of a debtor's exclusivity periods is whether the extensions will function "to facilitate movement towards a fair and equitable resolution of the case, taking into account all the divergent interests involved." *Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem. Hospital (In re Henry Mayo Newhall Mem. Hospital)*, 282 B.R. 444, 452-53 (9th Cir. BAP 2002) (noting that "a transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolution," citing *Dow Corning*, 208 B.R. at 670).

29.    The reasoning of *Dow Corning* and *Henry Mayo* applies with equal force here. These are large and complex cases, which have been further complicated by the facts set forth above.  This third request for extension of the Exclusivity Periods is therefore entirely reasonable under the circumstances.  The Debtors are not in any way proceeding in bad faith or attempting to pressure creditors with the requested extensions.  Rather, the Debtors simply need more time to analyze and resolve the various issues and controversies described above, to evaluate and analyze the legal and financial bases upon which a plan may be formulated, and to negotiate the terms of any proposed plan with the Committee and other parties in interest.

30.    Finally, the Debtors are keenly aware of the fact the right to extend the Exclusivity Periods is not unlimited.  By amendment as part of the BAPCPA in 2005 Congress

limited the right of a debtor to seek such extensions of the Exclusive Filing Period and Exclusive Solicitation Period beyond dates that are 18 and 20 months, respectively, from the date of the order for relief.  11 U.S.C. §§1121(d)(2)(A), (B).  Thus, based upon the May 22, 2009 Petition Date the latest that the Exclusive Filing Period can be extended in these cases is November 22, 2010, and the latest that the Exclusive Solicitation Period can be extended is January 22, 2011. Although it is difficult at present to fix the date upon which the FY 2008 consolidated federal tax return will be filed, the Debtors believe and aver that the requested extensions fall well within the statutory limitations imposed under Sections 1121(d)(2)(A) and (B) of the Bankruptcy Code, and that the extensions requested herein will facilitate a keener understanding of the assets available for use and distribution in the context of a Chapter 11 plan.

<u>CONCLUSION</u>

31.    The Debtors have acted in good faith throughout the duration of these cases in seeking to identify, preserve, and maximize the value of the estates' assets.  At this time, and in light of the significant progress made in the face of the myriad of hurdles discussed above, the Debtors submit that these third requested extensions of their Exclusivity Periods are more than amply warranted and are certainly consistent with the intent of Section 1121 "to promote maximum flexibility," *Public Serv. Co.*, 88 B.R. at 534, "in order to allow the debtor[s] to reach an agreement," H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997).

32.    The Debtors are not seeking the extensions of the Exclusivity Periods to delay administration of their cases or to pressure creditors to accept unsatisfactory plans.  To the contrary, this request is intended to facilitate an orderly, efficient and cost-effective plan process for the benefit of all creditors and parties in interest.  While there is still much more work to be done, given the circumstances described above, the Debtors believe they have made significant progress to date, and anticipate making further significant progress over the coming months.

33.     For these reasons and those set forth above, the Debtors respectfully request that the Court grant the third requested extensions of the Exclusive Filing Period for 90 days from the date the Debtors' file their FY 2008 return, and of the Exclusive Solicitation Period for 60 days from the newly established Exclusive Filing Period, without prejudice to their right to seek additional extensions within the confines of Section 1121(d)(2)(A) and (B) of the Bankruptcy Code, and to the right of any party in interest to oppose any further extensions or seek an earlier termination of the extended Exclusivity Periods pursuant to Section 1121(d)(1).

WHEREFORE, the Debtors respectfully request that the Court (i) extend the Exclusive Filing Period for 90 days from the date the Debtors' file their FY 2008 return, and (ii) extend the Exclusive Solicitation Period for 60 days from the newly established Exclusive Filing Period, in each instance without prejudice to the right of the Debtors to seek additional extensions or the right of the Committee or any other party in interest to oppose such extensions or seek to terminate exclusivity on any grounds; and (iii) grant such other and further relief as the Court deems just and proper.

Dated March 30, 2010.                    Respectfully submitted,

                                         GREENBERG TRAURIG, P.A.
                                         Counsel for the Debtors
                                         1221 Brickell Avenue
                                         Miami, Florida 33131
                                         Telephone: (305) 579-0500
                                         Facsimile: (305) 579-0717

                                         By:   /s/  Mark D. Bloom
                                             MARK D. BLOOM
                                             Florida Bar No. 303836
                                             bloomm@gtlaw.com
                                             SCOTT M. GROSSMAN
                                             Florida Bar No. 0176702
                                             grossmansm@gtlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 30, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    /s/  Mark D. Bloom_____
          MARK D. BLOOM

*MIA 181,122,543 v7 117136010200.*

## <u>SERVICE LIST</u>

### <u>Electronic Mail Notice List</u>

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case:

Johanna Armengol on behalf of U.S. Trustee Office of the US Trustee
Johanna.Armengol@usdoj.gov, johanna.armengol@usdoj.gov

Paul J. Battista on behalf of Creditor Alfred Camner
pbattista@gjb-law.com, gjbecf@gjb-law.com

Bruce J Berman on behalf of Creditor Federal Deposit Insurance Corporation,
bberman@mwe.com,
wjanke@mwe.com;graicht@mwe.com;knorcross@fdic.gov;slevine@fdic.gov

Mark D Bloom on behalf of Debtor BankUnited Financial Corporation
bloomm@gtlaw.com, phillipsj@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Shawn M Christianson on behalf of Creditor Oracle USA, Inc.
schristianson@buchalter.com

City of Homestead, FL
dgonzales@wsh-law.com

City of Miramar, FL
dgonzales@wsh -law.com

Stephen P. Drobny on behalf of Debtor BankUnited Financial Corporation
sdrobny@shutts.com, mvandenbosch@shutts.com

Douglas R. Gonzales on behalf of Creditor City of Homestead, FL
dgonzales@wsh-law.com

Scott M. Grossman on behalf of Debtor BankUnited Financial Corporation
grossmansm@gtlaw.com, phillipsj@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Robert J Hauser on behalf of Creditor CF West Palm Office L.P.
hauser@beasleylaw.net, lundstrom@beasleylaw.net;miles@beasleylaw.net

 Hollie N Hawn on behalf of Creditor Broward County Revenue Collector
hhawn@broward.org

Brian W Hockett on behalf of Interested Party BankUnited, FSB ("New Bank")
bhockett@thompsoncoburn.com

Christina M Kennedy on behalf of Creditor Deutsche Bank National Trust Company
ckennedy@foley.com

Peter H Levitt on behalf of Debtor BankUnited Financial Corporation
plevitt@shutts-law.com

Corali Lopez-Castro on behalf of Creditor Committee Official Committee of Unsecured
Creditors
clc@kttlaw.com, rcp@kttlaw.com

Todd C Meyers on behalf of Creditor Committee Official Committee of Unsecured Creditors
tmeyers@kilpatrickstockton.com, skapoor@kilpatrickstockton.com

Miami-Dade County Tax Collector
mdtcbkc@miamidade.gov

Dennis A Nowak on behalf of Interested Party Humberto Lopez
dn@tewlaw.com, ag@tewlaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Craig V Rasile on behalf of Creditor U.S. Bank, N.A.
crasile@hunton.com,
mtucker@hunton.com,mmannering@hunton.com,keckhardt@hunton.com,adeboer@hunton.com

Patricia A Redmond on behalf of Interested Party BankUnited, FSB ("New Bank")
predmond@stearnsweaver.com,
jmartinez@stearnsweaver.com;rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com

David Samole on behalf of Creditor Committee Official Committee of Unsecured Creditors
das@kttlaw.com, pm@kttlaw.com;la@kttlaw.com;ycc@kttlaw.com

Jonathan C. Vair on behalf of Interested Party Lawrence Blum
jvair@stearnsweaver.com,
cgraver@stearnsweaver.com;tcotter@stearnsweaver.com;rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com

Mark J Wolfson on behalf of Creditor Deutsche Bank National Trust Company
mwolfson@foley.com, mgrettenberger@foley.com;jalmeida@foley.com

**Manual Notice List**

The following is the list of parties who are not on the list to receive e-mail notice/service for this case, and are therefore being served by first class U.S. Mail, postage prepaid:

| | |
|---|---|
| Cede & Co.<br>P.O. Box 20<br>Bowling Green Station<br>New York, NY 10004-1408 | Wells Fargo Delaware Trust Company<br>Attn: Molly A. Breffitt<br>919 N. Market Street<br>Suite 1600<br>Wilmington, DE 19801 |
| U.S. Bank<br>1555 N. River Center Drive<br>Suite 300<br>Milwaukee, WI 53212 | Thomas M. Korsman, Vice President<br>Corporate Special Accounts Group<br>Wells Fargo Bank, N.A.<br>MAC N9311-110<br>625 Marquette Avenue<br>Minneapolis, MN 55479 |
| U.S. Bank<br>Attn: Earl Dennison, Acct. Admin.<br>Goodwin Square, 23rd Floor<br>225 Asylum Street<br>Hartford, CT 06103 | Stearns Weaver<br>Museum Tower<br>150 W. Flagler Street Suite 2200<br>Miami, FL 33130 |
| Geoffrey T. Raicht, Esq.<br>*Counsel for FDIC*<br>McDermott Will & Emery LLP<br>340 Madison Ave.<br>New York, N.Y. 10173-1922 | Dennis S. Klein, Esq.<br>*Co-Counsel for FDIC*<br>Hughes Hubbard & Reed LLP<br>1775 I Street N.W., Suite 600<br>Washington, D.C. 20006-2401 |
| Aviva L. Wernick, Esq.<br>*Local Counsel for FDIC*<br>Hughes Hubbard & Reed LLP<br>201 S. Biscayne Blvd., Suite 2500<br>Miami, FL 33131-4332 | Coffey Burlington<br>Office in the Grove Penthouse<br>2699 S. Bayshore Drive<br>Miami, FL 33133 |
| Tew Cardenas<br>Four Seasons Tower - 15th Floor<br>1441 Brickell Avenue<br>Miami, FL 33131-3439 | Bridget Schessler, Vice President<br>The Bank of New York Mellon<br>525 William Penn Place, 7th Floor<br>Pittsburgh, PA 15259 |
| Moses Marx<br>c/o Ross Martin, Esq.<br>Ropes & Gray, LLP<br>One International Place<br>Boston, MA 02110-2624 | Steven M. Cimalore<br>Wilmington Trust Company<br>Rodney Square North<br>1100 North Market Street<br>Wilmington, DE 19890-1615 |

| | |
|---|---|
| Susan D. Profant, CFCA, CLA, Paralegal<br>KEN BURTON, JR., Manatee County<br>Tax Collector<br>P.O. Box 25300<br>Bradenton, FL 34206-5300 | Jack Reise<br>Waterford Township General Employees<br>Retirement System<br>c/o Coughlin Stoia Geller et al<br>120 E. Palmetto Park Road Suite 500<br>Boca Raton, FL 33432 |
| Internal Revenue Service<br>P.O. Box 21126<br>Philadelphia, PA 19114 | Internal Revenue Service<br>Department of Treasury<br>227 N. Borough St.<br>Tallahassee, FL 32301 |
| Internal Revenue Service<br>Insolvency Unit<br>7850 S.W. 6th Court<br>Mail Stop 5730<br>Plantation, FL 33324 | State of Florida<br>Department of Revenue<br>Bankruptcy Section<br>P.O. Box 6668<br>Tallahassee, FL 32314-6668 |
| Honorable R. Alexander Acosta<br>Attn: Civil Process Clerk<br>U.S. Attorney<br>99 NE Fourth Street<br>Miami, FL 33132 | Honorable Eric Holder<br>U.S. Attorney General<br>Office of the Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |
| Susan R. Sherrill-Beard<br>Senior Trial Counsel/Bankruptcy<br>U.S. Securities and Exchange Commission<br>Atlanta Regional Office<br>Suite 1000, 3475 Lenox Road, N.E.<br>Atlanta, GA 30326-1232 | David A. Lander, Esq.<br>Brian W. Hockett, Esq.<br>*Counsel for BankUnited (New Bank)*<br>Thompson Coburn LLP<br>One US Bank Plaza<br>St. Louis, Missouri 63101 |
| Allison H. Weiss, Esq.<br>Jeffrey Chubak, Esq.<br>*Counsel for Bank of New York Mellon*<br>DEWEY & LeBOEUF LLP<br>1301 Avenue of the Americas<br>New York, N.Y. 10019 | Andrew I. Silfen, Esq.<br>Leah M. Eisenberg, Esq.<br>*Counsel for Wilmington Trust Company*<br>ARENT FOX LLP<br>1675 Broadway<br>New York, N.Y. 10019 |
| Jeffrey N. Rothleder, Esq.<br>*Counsel for Wilmington Trust Company*<br>ARENT FOX LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20026 | Michael C. Sontag, Esq.<br>*Special Counsel to Debtors*<br>CAMNER LIPSITZ, P.A.<br>550 Biltmore Way, Suite 700<br>Coral Gables, FL 33134 |

| | |
|---|---|
| Wendy H. Zoberman, Esq.<br>*Lead Counsel for the Putative Class*<br>BERMAN DEVALERIO<br>4280 Professional Center Drive, Suite 350<br>Palm Beach Gardens, FL 33410 | Jonathan Lee Riches<br>dba Bernard L. Madoff Invest. Sec. LLC<br>POB 14500 #40948018<br>Lexington, KY 40512 |
| CC Arbitrage, Ltd<br>c/o Castle Creek Arbitrage LLC<br>111 West Jackson Blvd 20th Fl<br>Chicago, IL 60604 | Monumental Life Insurance Co<br>c/o Maureen Ocampo CFA<br>2049 Century Park East #330<br>Los Angeles, CA 90067 |
| Highbridge International LLC<br>c/o Highbridge Capital Management LLC<br>9 West 57 St 27 Floor<br>New York, NY 10019 | Hudson Bay Fund LP<br>Hudson Bay Overseas LTD<br>c/o Charles Winkler<br>120 Broadway 40th Flr<br>New York, NY 10271 |
| Deutsche Bank Securities, Inc<br>60 Wall St<br>New York, NY 10005 | Mark F. Hebbeln, Esq.<br>Harold L. Kaplan, Esq.<br>*Counsel for Deutsche Bank National Trust Company*<br>Foley & Lardner LLP<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313 |
| Edward G Salloom, Jr.<br>Claudia R. Sullivan<br>255 Wildwood Ave<br>Worcester, MA 01603 | Christina M. Kennedy, Esq.<br>*Local Counsel for Deutsche Bank National Trust Company*<br>Foley & Lardner LLP<br>2 Biscayne Blvd., Suite 1900<br>Miami, FL 33131 |
| Grace Davila-Perez<br>14721 SW 159 Place<br>Miami, FL 33196 | Maureen A. McGreevey, Esq.<br>Counsel for SunGard Availability Services<br>680 E. Swedesford Rd<br>Wayne, PA 19087 |
| Imperial County Treasurer-Tax Collector<br>940 West Main Street, Suite 106<br>El Centro, CA 92243 | Deborah K Curran, Esq.<br>Counsel for McCabe Wiesberg & Conway LLC<br>8101 Sandy Spring Road, Suite 100<br>Laurel, MD 20707 |

| Kathryn R. Norcross, Senior Counsel | |
| Sonya L. Levine, Counsel-Legal Division | |
| *Of Counsel to FDIC* | |
| Federal Deposit Insurance Corporation | |
| Legal Division | |
| 3501 Fairfax Drive, VS-D | |
| Arlington, VA 22226 | |

*MIA 180,624,727 v1 117136.010200*