**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| BankUnited Financial Corporation, *et al.*, | Case No. 09-19940-LMI |
| Debtors. | (Jointly Administered) |

**MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION
FOR AN ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
TO THE EXERCISE OF CERTAIN TAX RIGHTS OR, IN THE ALTERNATIVE, FOR
AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

The Federal Deposit Insurance Corporation (the "FDIC" or "Receiver"), as receiver of BankUnited, FSB (the "Bank"), by undersigned counsel, hereby moves for entry of an order either (1) confirming that the automatic stay does not apply to the exercise of certain Tax Rights (as defined below), or alternatively, (2) granting relief from the automatic stay to facilitate the exercise of those rights (the "Motion").

Under Section 6402(k) of Title 26 of the United States Code (the "Internal Revenue Code" or "IRC") and 26 C.F.R. § 301.6402-7 ("Treas. Reg. § 301.6402-7"), the FDIC, as a fiduciary of the Bank, is entitled to:

a)  file a claim for a refund and/or a loss return for the 2009 tax year,

b)  file any amendments to prior years' returns as may be permitted under the law, and

c)  take such other actions as may be necessary to protect and preserve the claims of the receivership estate (the "Receivership") to tax refunds

(collectively, the "Tax Rights"). The FDIC believes that the Bankruptcy Code's automatic stay does not apply to the exercise of the Tax Rights and thus seeks confirmation from this Court.

However, in an abundance of caution, to the extent the automatic stay may be deemed to apply, the FDIC alternatively seeks stay relief, *nunc pro tunc*, so as to exercise the Tax Rights, including permitting the prior submission of a Form 56-F ("Notice Concerning Fiduciary Relationship of Financial Institution")[1] to the Internal Revenue Service (the "IRS") and/or grant of relief from the automatic stay to allow the FDIC to submit (or re-submit) Form 56-F pursuant to Treas. Reg. § 301.6402-7.

It is important to highlight that the FDIC is not, by this Motion, seeking to recover a claim or exercise any rights against BankUnited Financial Corporation ("BUFC"), BankUnited Financial Services, Incorporated ("BUFS") or CRE America Corporation ("CRE") (collectively, the "Debtors"). As set forth in the relevant Treasury Regulations, the mere act of filing a tax return is itself not determinative of ownership of any refund which might be remitted by the IRS. Although the FDIC believes that the Tax Refunds, as defined below, rightfully belong to the Bank, and thus now to the Receivership, the resolution of the ownership of the Tax Refunds will be for another day and is not the subject of this Motion. Indeed, in the event that any Tax Refunds were remitted to the FDIC, the FDIC agrees to place the monies into escrow pending a judicial determination of ownership.

In support of the Motion, the FDIC respectfully submits as follows:

## PRELIMINARY STATEMENT

1.      The FDIC has consistently urged the Debtors to work cooperatively with the FDIC to maximize the amount of any tax attributes, including the Tax Refunds, available to the Debtors and/or the Bank, including by jointly retaining accountants to represent both the Debtors and the FDIC (as Receiver for the Bank). Apparently, the Debtors disagree, having rejected this

---

[1]      A sample copy of a Form 56-F is attached hereto as Exhibit A.

offer on several occasions,[2] presumably for fear of some conflict between them and the FDIC in seeking the Tax Refunds. The FDIC has long asserted, however, that a conflict should only arise, if at all, after the Tax Refunds are received, in connection with their allocation.

2.      Because the Debtors intend to file their own tax returns which may contain positions contrary to those taken by the Receivership, the FDIC had no choice but to file this Motion so that it can protect the Receivership's interests by filing its own returns. The FDIC is a fiduciary under law. It is charged with the preservation and collection of all assets of a failed depository institution for the benefit of depositors and taxpayers. The law recognizes that the FDIC's fiduciary duties entail seeking tax refunds that may be owing to failed depository institutions, even in the context, as here, where consolidated tax returns have previously been filed by a parent holding company, as agent of an affiliated group. Under § 6402 of the IRC and Treas. Reg. § 301.6402-7, the FDIC, as a "fiduciary," is granted the right to serve as an alternate agent for a consolidated group, with the corresponding right to file a return separately from the parent holding company and to assert its own basis for a refund.

3.      Thus, by this Motion, the FDIC seeks an order that will permit it to file such returns, either by confirming that the automatic stay does not apply to the FDIC's exercise of certain Tax Rights, or, alternatively, by lifting the stay. The direct filing of such returns by the FDIC, in accordance with § 6402 of the IRC and applicable regulations, will provide the FDIC with the opportunity to set forth before the IRS the basis for the tax treatment that the FDIC believes is appropriate and fair in these circumstances.

---

[2]      On April 5, 2010, the Debtors filed an Application to Employ and Retain Morrison Brown Argiz & Farra LLP as Tax Services Provider for the Debtors, *Nunc Pro Tunc* to March 26, 2010, to, among other things, provide advice and analysis related to tax sharing agreements and net operating loss carryback and carryforward implications and generally to prepare returns for the Debtors only [Docket No. 542]. Such application was approved by this Court on May 10, 2010 [Docket No. 561]. In addition, on March 19, 2010, counsel for the FDIC sent to counsel for the Debtors a proposed stipulation and order seeking a consensual resolution of this matter. Counsel for the Debtors rejected the FDIC's proposal, leaving the FDIC with no choice but to file the present Motion.

NYK 1287076-7.084080.0013

4.    Moreover, the submission to the IRS of a specific form, a "Form 56-F," is required in order for the FDIC, as fiduciary, to exercise its Tax Rights.  Because the FDIC has previously submitted such a form, the FDIC also seeks, by this Motion (and to the extent necessary), stay relief *nunc pro tunc* to sanction the prior submission of the Form 56-F to the IRS and/or allow the FDIC to submit (or re-submit) Form 56-F pursuant to Treas. Reg. § 301.6402-7.[3]

5.    Lastly, it is important to note what this Motion does not seek.  The FDIC is not seeking to retain any refund it may recover from the IRS by reason of the exercise of its rights under § 6402 of the IRC and Treas. Reg. § 301.6402-7.  Rather, the FDIC agrees to remit any such refund into the escrow account previously created pursuant to an order of this Court, and further agrees that the funds shall remain in escrow subject to an order of a court of applicable jurisdiction.  Indeed, as Treas. Reg. § 301.6402-7(j) expressly provides, the IRS' determination of the competing tax returns of the Debtors and the FDIC would not determine ownership of any resulting refund.  *See* Treas. Reg. § 301.6402-7(j).  Determination of ownership would be the province of a court ruling to be sought at a later date.

6.    In sum, this Court should enter an order confirming that the automatic stay does not apply to the FDIC's exercise of certain Tax Rights, or, in the alternative, enter an order lifting the automatic stay for the sole purpose of permitting the FDIC to exercise its rights under § 6402 of the IRC and Treas. Reg. § 301.6402-7 as a fiduciary for the Bank.

---

[3]    The submission of a Form 56-F is not subject to the automatic stay in any event -- it merely places the IRS on notice that the fiduciary is now acting for the failed institution.  *See* Treas. Reg. § 301.6402-7(d).  The FDIC asserts that the automatic stay is inapplicable to it in these circumstances and reserves all rights with respect thereto.

## BACKGROUND

### Appointment of the FDIC as Receiver

7.      On May 21, 2009 (the "Bank Closing Date"), the Office of Thrift Supervision closed the Bank and appointed the FDIC as the Receiver of the Bank.  Immediately after the FDIC was appointed as the Receiver, the FDIC entered into a Purchase and Assumption Agreement (the "Agreement") with a group of investors who invested in a new depository institution, BankUnited, a de novo federal savings association organized under the laws of the United States and having its principal place of business in Coral Gables, Florida, for the purchase of the Bank.  The FDIC retained certain interests and assets under the Agreement, including the rights to any and all tax refunds to which the Bank would be entitled.

8.      Prior to the Bank Closing Date, BUFC was a unitary savings and loan holding company of the Bank incorporated in the State of Florida and headquartered in Coral Gables, Florida.  BUFC is the 100% owner of: (i) CRE, which holds a timeshare interest in certain real property; and (ii) BUFS, which was organized in 1997 for the purpose of selling annuities, mutual funds and other insurance and securities products.

9.      The FDIC is a corporation organized and existing pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1811, *et seq.*, with its principal place of business located in Washington, D.C.  The FDIC is an independent agency created by the Congress of the United States that maintains the stability and public confidence in the nation's financial system by insuring deposits, examining and supervising financial institutions, and managing receiverships.

10.      Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC, as Receiver, succeeds by operation of law to all rights, titles, powers, and privileges, including legal claims, of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution. *See* 12

5

U.S.C. § 1821(d)(2)(A)(i). Further, pursuant to 12 U.S.C. § 1821(g)(1), and notwithstanding any other provision of federal law, the FDIC, as Receiver, is subrogated to all rights of any payment to any depositors upon either payment to depositors or the making of provisions for payment to the depositors of the Bank. *See* 12 U.S.C. § 1821(g)(1). The FDIC acts to protect insured depositors and creditors of the Bank.

11.     The powers and responsibilities of the FDIC in its various capacities are set forth in Title 12 of the United States Code ("Title 12") and, in particular, the provisions of Title 12 enacted by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). *See* Pub. L. No. 101-73, 103 Stat. 183 (1989) (codified in various sections of Title 12). Congress enacted FIRREA to alleviate the dire circumstances facing the savings and loan industry during the savings and loan crisis, ultimately seeking to restore public confidence in the banking system. *See Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 62 (3d Cir. 1991). To realize this goal, Congress established in FIRREA a comprehensive statutory scheme under which the FDIC is granted broad powers to manage, reorganize, and collect assets of a failed depository institution for the benefit of depositors (and taxpayers). *See In re Landmark Land Co.*, 973 F.2d 283, 289 (4th Cir. 1992).

12.     The powers of the FDIC, as Receiver, include the power to:

    (i)     take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

    (ii)    collect all obligations and money due the institution;

    (iii)   perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and

    (iv)    preserve and conserve the assets and property of such institution.

NYK 1287076-7.084080.0013

12 U.S.C. § 1821(d)(2)(B).   Additionally, the FDIC may exercise "such incidental powers as shall be necessary" to carry out the powers specifically enumerated in Title 12.   12 U.S.C. § 1821(d)(2)(J).

13.   Consistent with this broad legislative mandate, FIRREA prohibits any court from taking any action "to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver."   12 U.S.C. § 1821(j).   Indeed, the comprehensive and exclusive scheme of FIRREA evinces Congress' intent to allow the FDIC "full rein" to exercise its statutory authority to protect depositors and creditors without interference from bankruptcy courts or district courts.   *See Landmark*, 973 F.2d at 290.   Numerous courts have accordingly found themselves without jurisdiction to enjoin or otherwise interfere with actions taken by the FDIC when acting within the scope of its authority as receiver or conservator.   *See, e.g., Gross v. Bell Sav. Bank PA SA*, 974 F.2d 403, 408 (3d Cir. 1992) (holding that "the district court does not have the ability to enjoin activity by the RTC where the Corporation is colorably acting within its enumerated powers."); *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703 (1st Cir. 1992) (federal court lacks jurisdiction to enjoin FDIC from foreclosing on a certificate of deposit to which it acquired a secured interest as receiver); *281-300 Joint Venture v. Onion*, 938 F.2d 35 (5th Cir. 1991) (district court lacked ability to enjoin the RTC, acting as conservator, from foreclosing on property that served as security for the failed institution's loan).[4]

---

[4]      While the FDIC recognizes that a number of courts have held that 12 U.S.C. § 1821(j) does not exempt the FDIC from operation of the automatic stay where the actions of the FDIC might affect property of the estate, the FDIC respectfully submits that this is not an appropriate interpretation of the explicit, preclusive language in this anti-injunction provision, and the FDIC reserves any and all of its rights in this regard. *See Sunshine Dev., Inc., v. FDIC*, 33 F.3d 106 (1st Cir. 1994); *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992). *But see Asquino v. FDIC*, 196 B.R. 25, 29 (D. Md. 1996).

7

**The Chapter 11 Cases**

14.    On May 22, 2009 (the "Petition Date"), BUFC, BUFS, and CRE each filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

15.    The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been sought or appointed in these cases.  A creditors committee was appointed on May 29, 2009.

16.    On or about November 16, 2009, the FDIC filed a proof of claim in the Debtors' Chapter 11 cases, fully preserving, *inter alia*, all jurisdictional rights of the FDIC.  The Debtors later objected to the FDIC's proof of claim.

**The FDIC's Rights as a Fiduciary Under the Internal Revenue Code and Regulations**

17.    Section 6402(j) of the Internal Revenue Code provides:

> Notwithstanding any other provision of law, in the case of an insolvent corporation which is a member of an affiliated group of corporations filing a consolidated return for any taxable year and which is subject to a statutory or court-appointed fiduciary, the Secretary may by regulation provide that any refund for such taxable year may be paid on behalf of such insolvent corporation to such fiduciary *to the extent that the Secretary determines that the refund is attributable to losses or credits of such insolvent corporation.*

26 U.S.C. § 6402(j) (emphasis added).  The applicable regulations are found in Treas. Reg. § 301.6402-7.

18.    For the purposes of this statute, the FDIC constitutes a "fiduciary" to whom such refund may be remitted.  *See* Treas. Reg. § 301.6402-7(b)(3)(i).  Importantly, Treas. Reg. § 301.6402-7(b)(3) provides, in pertinent part, that a "fiduciary is (i) [t]he Federal Deposit Insurance Corporation; ... in its capacity as an authorized receiver or conservator of an insolvent financial institution."  Treas. Reg. § 301.6402-7(b)(3)(i).  In order to inform the IRS of its

8

fiduciary status, the fiduciary must file Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution, with the applicable Internal Revenue Service Center. *See* Treas. Reg. § 301.6402-7(d)(1) ("To satisfy the notice requirement of this paragraph (d)(1), the fiduciary must file Form 56–F, Notice Concerning Fiduciary Relationship of Financial Institution, with the Internal Revenue Service Center indicated on the form.").

19.     Pursuant to and in accordance with this notice requirement, on June 11, 2009, the FDIC, in connection with the administration of the Bank, submitted a Form 56-F with the IRS. At no time has the FDIC attempted to obtain any refund on account of the 2009 Net Operating Losses ("NOLs") or otherwise, seeking instead by this Motion authority to exercise its Tax Rights.

20.     In relevant part, Treas. Reg. § 301.6402-7(e)(1) provides that "[i]f … the fiduciary does not accept a claim for refund filed by the common parent, the fiduciary may claim a refund under this section by filing its own claim for refund under section 6402...." Treas. Reg. § 301.6402-7(e)(1).

21.     If a fiduciary elects to file a claim for a refund or an application for a tentative carryback adjustment pursuant to the aforementioned provisions, the IRS "may, in its sole discretion, pay to the fiduciary all or any portion of the refund or tentative carryback adjustment that the Internal Revenue Service determines under this section to be attributable to the net operating losses of the institution." Treas. Reg. § 301.6402-7(g)(1).

22.     Importantly, Treas. Reg. § 301.6402-7(j) provides that the procedures established by this section are "*not determinative of ownership* of any such amount among current or former members of a consolidated group (including the institution)," but merely determine the party to

whom the IRS will pay a refund or tentative carryback adjustment.  Treas. Reg. § 301.6402-7(j) (emphasis added).

**The Filing of Consolidated Tax Returns Prior to the Bank Failure and Bankruptcy**

23.    The Internal Revenue Code authorizes affiliated groups to file consolidated income tax returns.  Section 1501 of the Internal Revenue Code provides that "[a]n affiliated group of corporations shall . . . have the privilege of making a consolidated return with respect to the income tax imposed by the [Internal Revenue Code] for the taxable year in lieu of separate returns."  26 U.S.C. § 1501.  Consistent with section 1501 of the IRC, the Secretary of the Treasury has promulgated regulations that allow a parent holding company to file a consolidated tax return as agent for its subsidiaries.  *See* Treas. Reg. § 1.1502-77.

24.    Upon information and belief, since 1997 and prior to the bankruptcy cases and the Receivership, BUFC and the Bank and their affiliates (collectively, the "Consolidated Group") elected to file consolidated federal income tax returns under section 1501 of the Internal Revenue Code.

25.    The members of the Consolidated Group are parties to a certain Income Tax Allocation Agreement, dated as of December 31, 1997, pursuant to which BUFC and the Bank agreed to a certain allocation of their current and deferred income tax assets and liabilities as between BUFC, the Bank and other members of BUFC and the Bank's affiliated group (the "Tax Sharing Agreement").[5]  As of the date of this Motion, the Debtors have neither assumed nor rejected the Tax Sharing Agreement.

---

[5]        A copy of the Tax Sharing Agreement is attached hereto as <u>Exhibit B</u>.

NYK 1287076-7.084080.0013

26.     Upon information and belief, allegedly in accordance with the provisions of the Tax Sharing Agreement, BUFC prepared and filed consolidated tax returns for BUFC and its consolidated subsidiaries (including the Bank) for the tax years 1998 through 2008.

27.     In connection with their tax returns for the year 2008, the Debtors have requested that a refund be issued in the sum of $5,566,878 and it is anticipated by the Debtors and the FDIC that there may be other refunds to be issued by the United States Treasury and/or by the taxing authorities of different states or municipalities with respect to BUFC and its consolidated subsidiaries (including BUFS, CRE and the Bank) (collectively, the "Tax Refunds").

28.     Upon information and belief, the Bank funded substantially all of the tax payments made by the Consolidated Group for several years by paying those amounts to the Debtors, which in turn remitted payments to the IRS.

29.     Because both the FDIC and the Debtors claim entitlement to the Tax Refunds and certain other amounts, the FDIC and the Debtors entered into a Stipulation Between the Debtors and the Federal Deposit Insurance Corporation with Respect to the Establishment of an Escrow Account (the "Escrow Account") to hold those proceeds [Docket No. 339], which this Bankruptcy Court approved by Order entered on November 25, 2009 [Docket No. 378].

**The 2009 Consolidated Tax Return to be Filed**

30.     Upon information and belief, the Bank sustained NOLs in the year 2009. Pursuant to applicable tax law, the carryback of these NOLs would entitle the Consolidated Group to a refund of income taxes paid in the previous five years.[6] Because the Bank funded substantially all of the tax payments made by the Consolidated Group and incurred almost all of

---

[6]     With the recent enactment of the American Recovery and Reinvestment Act of 2009, all taxpayers (except TARP funding recipients) may now elect to increase the carryback period for an applicable net operating loss for up to five years, as opposed to two years under prior law.

11

the losses, the FDIC, as Receiver for the Bank, would be entitled to all or almost all of the Tax Refunds based on the NOLs. Upon information and belief, the right to Tax Refunds of the Debtors would be solely as a result of the payment of taxes made by the Bank in prior years.

**Exercise of the Tax Rights Does Not Determine Ownership of the Tax Refunds**

31.    Treas. Reg. § 301.6402-7(j) expressly provides that the payment by the IRS of any refund or tentative carryback adjustment to the fiduciary is "not determinative of ownership" of any such amount among the members of a consolidated group. Treas. Reg. § 301.6402-7(j).

32.    By this Motion, the FDIC is not asking the Bankruptcy Court to determine the "ownership" of the Tax Refunds or whether the Tax Refunds are property of the Debtors' estates or the Receivership. Such issues will be resolved at a later date, either by adversary proceeding before this Bankruptcy Court or litigation before another tribunal with requisite jurisdiction. The FDIC agrees, subject to approval by the Bankruptcy Court, that in the event that any Tax Refunds are received, such funds will be deposited into the Escrow Account where they will remain, without any presumption of ownership, until the funds are released pursuant to an order of a court of competent jurisdiction. Consequently, there is no prejudice that inures to the Debtors were this Motion to be granted.

## JURISDICTION

33.    This Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

34.    By this Motion, the FDIC seeks an order confirming that the automatic stay does not apply to the FDIC's exercise of certain of its Tax Rights or, in the alternative, lifting the automatic stay so that the FDIC may exercise its Tax Rights including, among other things, re-

12

submitting (or deeming submitted), if necessary, a Form 56-F and filing a claim for a refund and/or a loss return for the 2009 tax year and any amendments to prior years' returns as may be permitted under the law, as a fiduciary of the Bank.

## BASIS FOR RELIEF REQUESTED

### The Automatic Stay Should Not Apply to the Exercise of the Tax Rights

35.    Section 362(a) of the Bankruptcy Code effectuates a stay of, *inter alia*, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . ."  11 U.S.C. § 362(a)(3) and (a)(6).  The stay is not applicable to actions that neither take possession of estate property nor exercise control over it.  *See Citizens Bank v. Strumpf*, 516 U.S. 16, 21, 116 S.Ct. 286, 290 (1995) (holding that bank's action of placing an administrative freeze on debtor's account pending resolution of the bank's right of setoff did not violate the automatic stay because the temporary refusal to pay was neither a taking of possession of debtor's property nor an exercising of control over it).

36.    Even assuming, without conceding, that some portion of the anticipated Tax Refunds might constitute property of the Debtors' estates, by taking these proposed actions to, among other things, file a claim for a refund and/or file a loss return for the 2009 tax year as a fiduciary of the Bank, the FDIC neither seeks to take possession of estate property nor exercise dominion over it.  Rather, the FDIC wishes to exercise the rights granted to it under § 6402 of the IRC and Treas. Reg. § 310.6402-7 to file a loss year tax return and/or a claim for a refund, in its capacity as a fiduciary of a failed depository institution, and such other actions as may be required to protect and preserve the Receivership's interest in such tax proceeds.  As explicitly stated in Treas. Reg. § 310.6402-7(j), a payment by the IRS to the FDIC is not a determination of

13

ownership in this regard, but merely serves to discharge the IRS' liability to remit previously overpaid amounts to an agent of a consolidated group. The FDIC agrees to deposit any such Tax Refunds into the Escrow Account, subject to further order by a court of competent jurisdiction.

37.    The exercise by the FDIC of its rights as a fiduciary of a failed depository institution under the aforementioned applicable tax law is pursuant to, and consistent with, its statutory duties under Title 12 to, among other things, preserve and conserve the assets and property of such institution. *See* 12 U.S.C. § 1821(d)(2)(B)(iv).

## To the Extent That It Is Deemed to Apply, Cause Exists to Lift the Automatic Stay to Allow the FDIC to Exercise its Tax Rights

38.    Should the Bankruptcy Court determine that the automatic stay applies to the FDIC's exercise of the Tax Rights, the stay should be lifted.

39.    Section 362(d)(1) of the Bankruptcy Code provides that:

> the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

11 U.S.C. § 362(d)(1). The FDIC bears the burden of showing that such cause exists. *See* 11 U.S.C. § 362(g).

40.    While the Bankruptcy Code does not define what constitutes "cause," it is a flexible concept, and courts in this Circuit usually conduct "a case-by-case inquiry and apply a totality of the circumstances test to determine whether cause for relief from the stay exists." *Mack v. Chambers (In re Mack)*, Case No. 06-1782, 2007 U.S. Dist. LEXIS 30114, at *9 (M.D. Fla. Apr. 23, 2007) (citation omitted); *see also In re Aloisi*, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001); *In re Bryan Road*, LLC, 382 B.R. 844, 854 (Bankr. S.D. Fla. 2008); *In re Laminate Kingdom, LLC*, Case No. 07-10279 (AJC), 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13,

14

2008).  The decision to lift the stay is within the discretion of the bankruptcy court judge.  *In re Dixie Broad., Inc.,* 871 F.2d 1023, 1026 (11th Cir. 1989).

41.    Courts have also referred to a three-prong balancing test to determine whether to grant relief from the stay, pursuant to which courts should (1) balance the prejudice to the debtor against the hardship to the moving party if the stay remains in effect, (2) consider the efficient use of judicial resources, and (3) examine whether a creditor has a probability of success on the merits of his case.  *See In re Aloisi,* 261 B.R. at 508 (citation omitted); *In re Paxson Elec. Co.,* 242 B.R. 67, 70 (Bankr. M.D. Fla. 1999).[7]

42.    The totality of the circumstances present in this case militate toward a finding of sufficient "cause" to warrant relief from the automatic stay.  First and foremost, the Debtors' estates will not be prejudiced by the lifting of the automatic stay because the FDIC's actions will not result in any disposition with respect to ownership of the disputed Tax Refunds and thus will take away nothing from the Debtors' estates.[8]  Instead, the FDIC's exercise of the Tax Rights will ensure that the FDIC preserves its claim to any portion of the Tax Refunds to which it is entitled, while at the same time still ensuring placement of the disputed Tax Refunds into the Escrow Account, thereby preserving the parties' respective rights for judicial adjudication.  In addition, even if the FDIC recovers the amount of the Tax Refunds to which it is entitled, the

---

[7]    To determine whether "cause" exists, some courts in the 11th Circuit have also referenced the twelve-part test set forth in *Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus.),* 907 F.2d 1280 (2d Cir. 1990) and the three-part test set forth in *In re Pro Football Weekly, Inc.,* 60 B.R. 824 (N.D. Ill. 1986).  *See, e.g., WOW! Factor Desserts, Inc. v. Anderson (In re Johnson),* Case No. 04-74452 (MHM), 2006 Bankr. LEXIS 3246 (Bankr. N.D. Ga. Oct. 11, 2006); *Beane v. United States (In re Beane),* 404 B.R. 942 (M.D. Fla. 2008).  However, courts have noted that "[n]either of these tests is intended to be applied mechanically and is intended to assist in determining whether the totality of the circumstances provide cause for modification of the automatic stay."  *In re Johnson,* 2006 Bankr. LEXIS 3246, *5.

[8]    The Tax Sharing Agreement may relate to these issues and thus may be part of any litigation concerning the dispute over ownership of the Tax Refunds, whether the Tax Sharing Agreement is assumed or rejected by the Debtors or repudiated by the FDIC.

FDIC's exercise of the Tax Rights will not preclude a chance of recovery by the Debtors of the portion of the refunds to which the Debtors are entitled, if any.

43.     Second, the FDIC will face substantial hardship if the stay is not lifted.  The Debtors' filing of a tax return, without consulting the FDIC or taking its interest into account, will undermine the rights accorded to the FDIC, under law, to assert a basis for a refund on account of the Bank's NOLs.  This would work a substantial prejudice on the FDIC, as successor to the Bank, because most, if not all, of the Tax Refunds are predicated upon taxes paid by the Bank.  Were the FDIC unable to preserve its rights by invoking section 6402 of the IRC and related regulations, the Debtors could gain a windfall, while the FDIC, which represents the interests of all taxpayers, could be hindered in its ability to seek the equitable allocation of the Tax Refunds.  The FDIC should be permitted to exercise its Tax Rights in order to (i) officially state its claim to all or a portion of the Tax Refunds to which it is entitled, and (ii) preserve its rights with respect to such a claim and prevent the possibility that the FDIC, in not taking the action that it has a right and a fiduciary duty to take, could be deemed to have waived any right it has to all or a portion of the Tax Refunds. *See United States v. Rodrigues*, 159 F.3d 439, 448 (9th Cir. 1998) (faulting the RTC for "complain[ing] about a situation it could have prevented from arising" because it failed to exercise its right, under § 301.6402-7, to apply for the tax refunds due to the failed depository institution for which it was a conservator).

44.     Finally, the FDIC is also likely to succeed on the merits of its claims.  Although the issue of "ownership" of any refund is not before the Bankruptcy Court at this time, there is a substantial body of case law that holds that a member of a consolidated group is entitled to a tax refund arising from the filing of a consolidated tax return, where the refund sought constitutes either taxes paid by the consolidated tax group member or losses sustained by that member in the

years at issue. *See, e.g., Capital Bancshares v. FDIC*, 957 F.2d 203, 208 (5th Cir. 1992) (FDIC was entitled to the tax refund where the bank generated the losses and the bank paid to the parent company a sum greater in aggregate than the disputed refund for its annual tax contribution); *In re Revco D.S., Inc.*, 111 B.R. 631 (Bankr. N.D. Ohio 1990) (income tax refund belonged to the former subsidiary member of consolidated group where the NOL was entirely attributable to the subsidiary and the refund sought represented the income taxes paid by income generated by the subsidiary); *Fed. Deposit Ins. Corp. v. Mercer Bancorp, Inc.*, Case No. 89-0849, 1990 WL 515173 (W.D. Mo. Dec. 5, 1990) (FDIC, as receiver of subsidiary bank, was entitled to the tax refund because the bank was the entity who overpaid the tax which the IRS refunded and the entity upon whose business losses the refund was based); *Jump v. Manchester Life & Cas. Mgmt. Corp.*, 438 F. Supp. 185 (E.D. Mo. 1977) (bankrupt subsidiary was entitled to its share of the refund generated by its losses and the unrecovered taxes it previously paid, and parent held this portion in specific trust); *In the Matter of Fla. Park Banks, Inc.*, 110 B.R. 986 (Bankr. M.D. Fla. 1990) (FDIC, as receiver for bank subsidiary, was entitled to the entire tax refund of taxes previously paid by the bank subsidiary and that resulted from its NOLs); *see also In re Bob Richards Chrysler-Plymouth Corp.*, 473 F.2d 262, 265 (9th Cir. 1973).

45.    The parent, as agent for the Consolidated Group for the purposes of administrative convenience in connection with the filing of consolidated tax returns, holds any tax refunds remitted by the IRS on account of such filing in trust for the members of the Consolidated Group and is under a duty to return the tax refund to the appropriate member. *Id.* at 265. This principal-agent relationship cannot be overridden by a tax sharing agreement unless such an intention is expressly or impliedly manifested in a written agreement, and even then the court must examine the economic reality of the transaction rather than the words used. *See BSD*

*Bancorp, Inc. v. FDIC*, Case No. 93-12207-A11 (S.D. Cal. Feb. 28, 1995) (a copy of the opinion is attached hereto as Exhibit C). Given the foregoing jurisprudence, the FDIC meets his burden to show that "cause" may be lifted to allow the FDIC to exercise its Tax Rights.

WHEREFORE, the FDIC respectfully requests that this Court enter an Order, in the form attached hereto (i) confirming that the automatic stay does not apply to the FDIC's exercise of its Tax Rights, or alternatively, (ii) lifting the automatic stay so that the FDIC may exercise the Tax Rights including, among other things, submitting, if necessary, a Form 56-F and filing a claim for a refund and/or a loss return for the 2009 tax year as a fiduciary of the Bank, and any amendments to prior year's returns as may be permitted under law, with any refund that may be remitted to the FDIC by the IRS on account of such filing to be deposited in the Escrow Account as described above for determination by this Court hereafter, and (iii) granting such other and further relief as this Court may deem just and proper.

May 25, 2010

Of Counsel:

Kathryn R. Norcross
Senior Counsel
Sonya L. Levine
Counsel-Legal Division
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive, VS-D-
Arlington, VA 22226
(703) 562-2783
Email: *knorcross@fdic.gov*
Email: *slevine@fdic.gov*

McDERMOTT WILL & EMERY LLP

By: /s/ Bruce Berman
Bruce J. Berman (Fla. Bar # 159280)
201 S. Biscayne Blvd., Suite 2200
Miami, FL 33131-4336
Tel: 305.358.3500 / Fax: 305.347.6500
- and -
Geoffrey T. Raicht
340 Madison Avenue
New York, New York 10173-1922
Tel: 212.547.5400 / Fax: 212.547.5444

*Counsel for the Federal Deposit Insurance Corporation*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on May 25, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail on those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   /s/ Bruce J. Berman
           Bruce J. Berman

### <u>Service List for Case 09-19940-LMI</u>

## Electronic Mail Notice List

The following is the list of parties who receiving this email:

**Johanna Armengol** on behalf of U.S. Trustee, Office of the US Trustee
Johanna.Armengol@usdoj.gov, johanna.armengol@usdoj.gov

**Paul J. Battista** on behalf of creditor Alfred Camner
pbattista@gjb-law.com; gjbecf@gjb-law.com

**Bruce J Berman** on behalf of Creditor Federal Deposit Insurance Corporation
bberman@mwe.com, wjanke@mwe.com, graicht@mwe.com, knorcross@fdic.gov, slevine@fdic.gov

**Mark D Bloom** on behalf of Debtor BankUnited Financial Corporation
bloomm@gtlaw.com, phillipsj@gtlaw.com, MiaLitDock@gtlaw.com, miaecfbky@gtlaw.com

**Shawn M Christianson** on behalf of Creditor Oracle USA, Inc.
schristianson@buchalter.com

**Stephen P Drobny** on behalf of Debtor BankUnited Financial Corporation
sdrobny@shutts.com, mvandenbosch@shutts.com

**Douglas R. Gonzales** on behalf of Creditors City of Homestead, FL and City of Miramar, FL
dgonzales@wsh-law.com

**Scott M. Grossman** on behalf of Debtor BankUnited Financial Corporation
grossmansm@gtlaw.com, phillipsj@gtlaw.com, MiaLitDock@gtlaw.com, miaecfbky@gtlaw.com

**Robert J Hauser** on behalf of Creditor CF West Palm Office L.P.
hauser@beasleylaw.net, lundstrom@beasleylaw.net;miles@beasleylaw.net

**Hollie N Hawn** on behalf of Creditor Broward County Revenue Collector
hhawn@broward.org

**Brian W Hockett** on behalf of Debtor BankUnited
bhockett@thompsoncoburn.com

**Sameer K Kapoor**, on behalf of Official Committee of Unsecured Creditors of Debtors
skapoor@kilpatrickstockton.com, tmeyers@kilpatrickstockton.com

**Christina M Kennedy,** ckennedy@foley.com

**Peter H Levitt** on behalf of Debtor BankUnited Financial Corporation
plevitt@shutts-law.com

**Corali Lopez-Castro** on behalf of Official Committee of Unsecured Creditors
clc@kttlaw.com, rcp@kttlaw.com

**Todd C Meyers** on behalf of Official Committee of Unsecured Creditors
tmeyers@kilpatrickstockton.com, skapoor@kilpatrickstockton.com

**Miami-Dade County Tax Collector**
mdtcbkc@miamidade.gov

**Dennis A Nowak** on behalf of Interested Parties Humberto L. Lopez and Ramiro A. Ortiz
dn@tewlaw.com, ag@tewlaw.com
dnowak@fowler-white.com, agrage@fowler-white.com

**Office of the US Trustee**
USTPRegion21.MM.ECF@usdoj.gov

**Craig V. Rasile** on behalf of Creditor U.S. Bank, N.A.
crasile@hunton.com, mtucker@hunton.com, mmannering@hunton.com,
keckhardt@hunton.com, adeboer@hunton.com

**Patricia A Redmond** on behalf of Interested Party BankUnited, FSB ("New Bank")
predmond@swmwas.com, jmartinez@swmwas.com, rross@swmwas.com

**David Samole** on behalf of Official Committee of Unsecured Creditors
das@kttlaw.com, pm@kttlaw.com;la@kttlaw.com;ycc@kttlaw.com

**Jonathan C. Vair**  jvair@stearnsweaver.com, cgraver@stearnsweaver.com;
tcotter@stearnsweaver.com; rross@stearnsweaver.com; mmesones-mori@stearnsweaver.com

**Mark J Wolfson** on behalf of Creditor Deutsche Bank National Trust Company
mwolfson@foley.com, mgrettenberger@foley.com;jalmeida@foley.com

**Dennis S. Klein** on behalf of FDIC
klein@hugheshubbard.com

**Joseph Luzinski**, Chief Restructuring Officer
jluzinski@dsi.biz

## Manual Notice List

The following is the list of parties who are not on the list to receive e-mail notice/service for this case, and are therefore being served by first class U.S. Mail, postage prepaid:

SEE ATTACHED

## NON-ECF SERVICE LIST

Yale Scott Bogen
200 S Biscayne Blvd #1818
Miami, FL 33131

CC Arbitrage, Ltd
c/o Castle Creek Arbitrage LLC
111 West Jackson Blvd 20th Fl
Chicago, IL 60604

Jeffrey Chubak
Dewey & LeBoeuf
1301 Avenue of the Americas
New York, NY 10019-6092

Deborah K Curran
8101 Sandy Spring Rd #100
Laurel, MD 20707

Grace Davila-Perez
14721 SW 159 Place
Miami, FL 33196

Deutsche Bank Securities, Inc
60 Wall St
New York, NY 10005

Development Specialists, Inc.
200 S. Biscayne Blvd , Suite 1818
Miami, FL 33131-2329

Mark F Hebbeln
321 N Clark St #2800
Chicago, IL 60654

Miguel Farra
1001 Brickell Bay Dr 9 Floor
Miami, FL 33131

Highbridge International LLC
c/o Highbridge Capital Management LLC
9 West 57 St 27 Floor
New York, NY 10019

Hudson Bay Fund LP
Hudson Bay Overseas LTD
c/o Charles Winkler
120 Broadway 40th Flr
New York, NY 10271

Imperial County Treasurer-Tax Collector
940 W Main St #106
El Centro, CA 92243

Richard I Janvey
620 Eighth Ave 39 Floor
New York, NY 10018

Sameer K. Kapoor
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530

Dennis S Klein
1775 I St NW #600
Washington, DC 20006

Corali Lopez-Castro
c/o Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134

MPerial County Treasurer-Tax Collector
940 W Main St #106
El Centro, CA 92243

Manatee County Tax Collector
c/o Ken Burton, Jr
POB 25300
Bradenton, FL 34206

Maureen McGreevey
680 E Swedesford Rd
Wayne, PA 19087

Todd C Meyers
1100 Peachtree St #2800
Atlanta, GA 30309

Monumental Life Insurance Co
c/o Maureen Ocampo CFA
2049 Century Park East #330
Los Angeles, CA 90067

Jonathan Lee Riches
dba Bernard L. Madoff Invest. Sec. LLC
POB 14500 #40948018
Lexington, KY 40512

Edward G Salloom
255 Wildwood Ave
Worcester, MA 01603

Shutts & Bowen
201 S Biscayne Blvd #1500
Miami, FL 33131

Andrew I. Silfen
Arent Fox
1675 Broadway
New York, NY 10019

Michael C Sontag
550 Biltmore Way #700
Coral Gables, FL 33134

Claudia R Sullivan
255 Wildwood Ave
Worcester, MA 01603

The Corcorn Group
660 Madison Ave
New York, NY 10065

Wendy H Zoberman
4280 Professional Center Dr #350
Palm Beach Gardens, FL 33410