UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

BANKUNITED FINANCIAL
CORPORATION, *et al.*,[1]

Debtors.
_____/

Case No. 09-19940-LMI

Chapter 11

Jointly Administered

**DEBTORS' SUPPLEMENTAL BRIEF IN OPPOSITION TO AMENDED
MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION FOR
AN ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
TO THE EXERCISE OF CERTAIN TAX RIGHTS OR, IN THE ALTERNATIVE,
FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

Debtors, BankUnited Financial Corporation ("**BUFC**"), BankUnited Financial Services, Incorporated, and CRE America Corporation (collectively, the "**Debtors**"), as directed by the Court at the October 26, 2010 hearing (the **"October 26 Hearing"**) on the *Amended Motion of the Federal Deposit Insurance Corporation for an Order Confirming that the Automatic Stay Does Not Apply to the Exercise of Certain Tax Rights or, in the Alternative, for an Order Granting Relief from the Automatic Stay* (DE #683) (the **"Amended Motion"**) filed by the Federal Deposit Insurance Corporation, as receiver ("**FDIC-Receiver**") of BankUnited, FSB, submits this supplemental brief on the issue of whether the FDIC-Receiver must be granted immediate relief from the automatic stay in order to preserve some alleged "standing" with the IRS to be able to file a competing tax return at some point in the future. As explained more fully below, the issue of the FDIC-Receiver's "standing" before the IRS is not a basis upon which to

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335). The address of each of the Debtors is c/o Development Specialists, Inc., 200 South Biscayne Blvd., Suite 1818, Miami, FL 33131.

grant immediate relief from the stay to which the FDIC-Receiver has yet to demonstrate that it is entitled.

1.      During the course of the October 26 Hearing, after extensive questioning in which the Court repeatedly characterized the FDIC-Receiver's position as little more than "moral outrage" over certain positions taken by BUFC on the FY 2008 Return,[2] counsel for the FDIC-Receiver belatedly raised the argument – with no citation of authority in support – that absent immediate relief from the stay the FDIC-Receiver would lack "standing" before the IRS to protect its interests in the event that BUFC were to file an amended consolidated return for that, or presumably any other, tax year.[3]

2.      At the outset, it should be noted the entire concept of immediacy as raised in this context by the FDIC-Receiver rings hollow in light of its inexplicable delay for more than the first eleven months of this case to seek leave to file a competing tax return, notwithstanding its filing of a Form 56-F with the IRS back in June of 2009.  Nevertheless, as the issue of "standing" before the IRS was not raised previously in any of the briefing on the Amended Motion (nor, for that matter, the FDIC-Receiver's original motion filed before the FY 2008 Return was prepared), the Court afforded each of the parties 14 days within which to brief the sole issue of whether maintaining the stay in effect would somehow impair the FDIC-Receiver's "standing" before the IRS with respect to the FY 2008 Return or any competing return.

3.      Other than Treasury Regulation § 301.6402-7 (a copy of which is attached hereto as **Exhibit A**) cited by the FDIC-Receiver in its Amended Motion, the Debtors are aware of no

---

[2] All capitalized terms not defined in this Supplemental Brief shall have the definitions set forth in the *Debtors' Response and Objection to Motion of the Federal Deposit Insurance Corporation for an Order Confirming that the Automatic Stay Does Not Apply to the Exercise of Certain Tax Rights or, in the Alternative, for an Order Granting Relief from the Automatic Stay* (DE #579) (the **"Debtors' Original Response"**).

[3] As previously stated and conclusively established at the October 26 Hearing, the FDIC-Receiver admits that the FY 2008 Return claims the maximum NOL carryback and resulting tax refund available to BUFC and the consolidated taxpayer group.

statute, case law, or federal regulation that discusses the concept of "standing" of the FDIC-Receiver to file a competing tax return on behalf of a bank holding company's consolidated tax reporting group, for so long as the consolidated group remains intact.[4]

4.      It is generally established that only the parent company is permitted to file a tax return for a consolidated tax reporting group. Treas. Reg. § 1.1502-75(h)(1) (a copy of which is attached hereto as **Exhibit B**). The only apparent exception to this general rule arises in the context of a holding company for an insolvent financial institution, where Treasury Regulation § 301.6402-7 also authorizes the FDIC-Receiver, as a "fiduciary" for an insolvent financial institution, to file a return for the consolidated tax reporting group. It is a precondition to that authority that the FDIC-Receiver first file a Form 56-F with the IRS[5] and meet the other conditions set forth in the Regulation.[6]

---

[4] Even the Treasury Regulation does not, strictly speaking, adopt the concept of "standing" before the IRS.

[5] Treasury Regulation § 301.6036-1(a)(2) (a copy of which is attached hereto as **Exhibit C**), requires that the FDIC-Receiver give written notice of its appointment to the IRS within ten days of the FDIC-Receiver's appointment as receiver for the failed bank.

[6] Specifically, Treas. Reg. § 301.6402-7(e)(3) states:

(3) *Loss year return by the fiduciary.* If the institution is a member of a loss year group, and either the common parent does not file a loss year return or the fiduciary does not accept the loss year return filed by the common parent, the fiduciary may file a loss year return with respect to the loss year group. A loss year return can only be filed by the fiduciary in conjunction with the filing of a claim for refund under paragraph (e)(1). The return must be based on all information pertaining to the institution and all information pertaining to other members to which the fiduciary has reasonable access. Any return filed by the fiduciary under this paragraph (e)(3) must contain the title "Loss year return under section 6402(i) of the Code" at the top of the first page of the return, and the following must be attached to the return:

(i) The name and employer identification number of the institution that is a member of the loss year group;

(ii) The name of the fiduciary;

(iii) A representation that the institution is an insolvent financial institution as defined in paragraph (b)(4) of this section; and

(iv) A representation that the fiduciary has satisfied the requirements set forth in paragraphs (d)(2)(i) and (ii) of this section.

5.       If the FDIC-Receiver has met the requirements of the foregoing regulations, and *timely* notified the IRS of its appointment (which it did not do here), then the only bar to the FDIC-Receiver filing a competing tax return – other than the automatic stay – is the statute of limitations on seeking a refund under 26 U.S.C. § 6511(a), which is three years from the date the return was filed.  Here, BUFC filed its FY 2008 Return on June 14, 2010.  The statute of limitations on seeking a refund with respect to the FY 2008 Return therefore would not run until ***June 14, 2013***.

6.       Other than the general statute of limitations on seeking a tax refund, the Debtors have found no authority for the proposition that if the FDIC-Receiver is not permitted to file a competing tax return immediately it somehow would lack or forfeit "standing" with the IRS to file such a return or make a competing refund claim at some appropriate point in the future.  As freely admitted by the FDIC-Receiver, the FY 2008 Return carries back the maximum NOL and seeks the maximum available tax refund.  These facts, coupled with the Tax Escrow Stipulation applicable to the Tax Refunds and the pending adversary proceeding commenced by the Debtors to resolve, *inter alia*, the issue of entitlement to those refunds in this Court, constitute adequate protection of the FDIC-Receiver's asserted rights (if any) in and to the Tax Refunds under Sections 362(d)(1) and 361 of the Bankruptcy Code.

7.       Upon filing the Form 56-F – albeit untimely and in violation of the automatic stay[7] – the FDIC-Receiver preserved whatever "standing" it may have with the IRS to file any

---

[7] While the simple act of filing the Form 56-F itself may be "ministerial," the *effect* of the filing was that it caused the IRS to reject BUFC's original tax refund claim submitted on a Form 1139, because that form did not contain the FDIC-Receiver's signature.  Had the FDIC-Receiver not filed the Form 56-F, the IRS would not have required the FDIC-Receiver's signature on BUFC's refund claim, and the refund might already have been issued to BUFC (to then be held in escrow pending a determination of ownership).  Thus, the *effect* of the FDIC-Receiver's filing of the Form 56-F was to exercise control over property of the estate – BUFC's interest (whatever the Court may determine it to be) in the Tax Refunds – by causing the IRS initially to deny BUFC's refund claim because the FDIC-Receiver's signature was not contained on the Form 1139.   In order to cure this deficiency, BUFC has since filed refund claims on Forms 1120X.

competing tax return for BUFC's consolidated tax reporting group, pursuant to Treasury Regulation § 301.6402-7. Thus, the Form 56-F put the IRS on notice of those rights (indeed, the IRS rejected BUFC's Form 1139 claim for a "quickie" refund because it did not contain the FDIC-Receiver's signature). Nothing in Treas. Reg. § 301.6402-7, however, contains any other bar, limitation, or other condition that would require the FDIC-Receiver to file a competing tax return "immediately" or suffer some form of prejudice to its alleged "standing" with the IRS.[8]

8.     In summary, the FDIC-Receiver already has perfected its "standing" with the IRS by (late-)filing the Form 56-F, and its asserted interest in the Tax Refunds is adequately protected as described above. In contrast, were the FDIC-Receiver granted leave to file a competing return, BUFC believes that such filing will only serve to require the IRS unnecessarily to review and compare two voluminous and complex tax returns – both of which claim the same amount of refund, but based on differing calculations. *See* Declaration of Miguel G. Farra, attached hereto as **Exhibit D**. The resulting confusion may ultimately delay payment of the Tax Refunds for a considerable period of time, to the detriment of both these Chapter 11 estates and the BUFSB receivership estate for which the FDIC-Receiver acts as fiduciary. *See id.* As surely the FDIC-Receiver cannot intend such a result, Debtors are left to wonder whether its demand for "immediate" relief in order to perfect some elusive concept of "standing" before the IRS offers nothing more than code words for its "moral outrage" over tax positions taken by BUFC in the FY 2008 Return that affect neither the amount of the NOL carryback nor the resulting Tax Refunds

---

[8] In the event that BUFC at some point in the future desires to amend the FY 2008 Return or the related refund claim, BUFC would agree to provide ten days' advance notice of such filing to the FDIC-Receiver, in order to allow the FDIC-Receiver the renewed opportunity to seek stay relief in order to file a competing return or refund claim.

9.    The Court must therefore deny the Amended Motion, without prejudice to renewal in the event that BUFC may file an amended consolidated tax return or refund claim that substantially and materially affects the rights or interests of the FDIC-Receiver.

WHEREFORE, the Debtors respectfully request that the Court deny the Amended Motion, determine that the FDIC-Receiver has violated the automatic stay, and grant the Debtors such additional relief as the Court deems just and proper.

Dated November 9, 2010.                    Respectfully submitted,

GREENBERG TRAURIG, P.A.
Counsel for the Debtors
333 Avenue of the Americas
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By:   /s/ Mark D. Bloom
MARK D. BLOOM
Florida Bar No. 303836
bloomm@gtlaw.com

- and –

SCOTT M. GROSSMAN
Florida Bar No. 0176702
grossmansm@gtlaw.com
GREENBERG TRAURIG, P.A.
401 East Las Olas Blvd., Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile: 954-765-1477

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        /s/ Mark D. Bloom
        MARK D. BLOOM

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case.

- Vincent F Alexander    vfa@kttlaw.com, lf@kttlaw.com
- Johanna Armengol    Johanna.Armengol@usdoj.gov, johanna.armengol@usdoj.gov
- Paul J. Battista    pbattista@gjb-law.com, gjbecf@gjb-law.com
- Mark D Bloom    bloomm@gtlaw.com, reisinoa@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com
- Shawn M Christianson    schristianson@buchalter.com
- City of Homestead, FL    dgonzales@wsh-law.com
- City of Miramar, FL    dgonzales@wsh-law.com
- Stephen P. Drobny    sdrobny@shutts.com, mvandenbosch@shutts.com
- Douglas R. Gonzales    dgonzales@wsh-law.com
- Scott M. Grossman    grossmansm@gtlaw.com, jacksont@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com
- Robert J Hauser    hauser@beasleylaw.net, lundstrom@beasleylaw.net;miles@beasleylaw.net
- Hollie N Hawn    hhawn@broward.org
- Brian W Hockett    bhockett@thompsoncoburn.com
- Sameer K Kapoor    skapoor@kilpatrickstockton.com, tmeyers@kilpatrickstockton.com;lcanty@kilpatrickstockton.com
- Christina M Kennedy    ckennedy@foley.com
- Peter H Levitt    plevitt@shutts-law.com
- Corali Lopez-Castro    clc@kttlaw.com, rcp@kttlaw.com
- Todd C Meyers    tmeyers@kilpatrickstockton.com
- Miami-Dade County Tax Collector    mdtcbkc@miamidade.gov
- Dennis A Nowak    dn@tewlaw.com
- Dennis A. Nowak    dnowak@fowler-white.com, agrage@fowler-white.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov

- Craig V Rasile    crasile@hunton.com,
  mtucker@hunton.com,mmannering@hunton.com,adeboer@hunton.com
- Patricia A Redmond    predmond@stearnsweaver.com,
  jrivera@stearnsweaver.com;rross@stearnsweaver.com;mmesones-
  mori@stearnsweaver.com
- David Samole    das@kttlaw.com, mc@kttlaw.com;ycc@kttlaw.com
- Michael C Sontag    msontag@clplaw.net
- Jonathan C. Vair    jvair@stearnsweaver.com,
  cgraver@stearnsweaver.com;jmartinez@stearnsweaver.com;rross@stearnsweaver.com;m
  mesones-mori@stearnsweaver.com
- Mark J Wolfson    mwolfson@foley.com, btanner@foley.com;jhayes@foley.com

**Manual Notice List**

The following is the list of parties who are not on the list to receive e-mail notice/service for this case, and are therefore being served by first class U.S. Mail, postage prepaid:

**NON-ECF SERVICE LIST**

Cede & Co.
P.O. Box 20
Bowling Green Station
New York, NY 10004-1408

Wells Fargo Delaware Trust Company
Attn: Molly A. Breffitt
919 N. Market Street
Suite 1600
Wilmington, DE 19801

U.S. Bank
1555 N. River Center Drive
Suite 300
Milwaukee, WI 53212

Thomas M. Korsman, Vice President
Corporate Special Accounts Group
Wells Fargo Bank, N.A.
MAC N9311-110
625 Marquette Avenue
Minneapolis, MN 55479

U.S. Bank
Attn: Earl Dennison, Acct. Admin.
Goodwin Square, 23rd Floor
225 Asylum Street
Hartford, CT 06103

Dennis S. Klein, Esq.
*Co-Counsel for FDIC*
Hughes Hubbard & Reed LLP
1775 I Street N.W., Suite 600
Washington, D.C. 20006-2401

Geoffrey T. Raicht, Esq.
*Counsel for FDIC*
McDermott Will & Emery LLP
340 Madison Ave.
New York, N.Y. 10173-1922

Coffey Burlington
Office in the Grove Penthouse
2699 S. Bayshore Drive
Miami, FL 33133

Aviva L. Wernick, Esq.
*Local Counsel for FDIC*
Hughes Hubbard & Reed LLP
201 S. Biscayne Blvd., Suite 2500
Miami, FL 33131-4332

Bridget Schessler, Vice President
The Bank of New York Mellon
525 William Penn Place, 7th Floor
Pittsburgh, PA 15259

Moses Marx
c/o Ross Martin, Esq.
Ropes & Gray, LLP
One International Place
Boston, MA 02110-2624

Steven M. Cimalore
Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1615

Susan D. Profant, CFCA, CLA, Paralegal
KEN BURTON, JR., Manatee County
Tax Collector
P.O. Box 25300
Bradenton, FL 34206-5300

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Internal Revenue Service
Insolvency Unit
7850 S.W. 6th Court
Mail Stop 5730
Plantation, FL 33324

Honorable R. Alexander Acosta
Attn: Civil Process Clerk
U.S. Attorney
99 NE Fourth Street
Miami, FL 33132

Susan R. Sherrill-Beard
Senior Trial Counsel/Bankruptcy
U.S. Securities and Exchange Commission
Atlanta Regional Office
Suite 1000, 3475 Lenox Road, N.E.
Atlanta, GA 30326-1232

Allison H. Weiss, Esq.
Jeffrey Chubak, Esq.
*Counsel for Bank of New York Mellon*
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, N.Y. 10019

Jeffrey N. Rothleder, Esq.
*Counsel for Wilmington Trust Company*
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20026

Jack Reise
Waterford Township General Employees
Retirement System
c/o Coughlin Stoia Geller et al
120 E. Palmetto Park Road Suite 500
Boca Raton, FL 33432

~~Internal Revenue Service~~
~~Department of Treasury~~
~~227 N. Borough St.~~
~~Tallahassee, FL 32301~~

State of Florida
Department of Revenue
Bankruptcy Section
P.O. Box 6668
Tallahassee, FL 32314-6668

Honorable Eric Holder
U.S. Attorney General
Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

David A. Lander, Esq.
Brian W. Hockett, Esq.
*Counsel for BankUnited (New Bank)*
Thompson Coburn LLP
One US Bank Plaza
St. Louis, Missouri 63101

Andrew I. Silfen, Esq.
Leah M. Eisenberg, Esq.
*Counsel for Wilmington Trust Company*
ARENT FOX LLP
1675 Broadway
New York, N.Y. 10019

Jonathan Lee Riches
dba Bernard L. Madoff Invest. Sec. LLC
POB 14500 #40948018
Lexington, KY 40512

Wendy H. Zoberman, Esq.
*Lead Counsel for the Putative Class*
BERMAN DEVALERIO
4280 Professional Center Drive, Suite 350
Palm Beach Gardens, FL 33410

Monumental Life Insurance Co
c/o Maureen Ocampo CFA
2049 Century Park East #330
Los Angeles, CA 90067

CC Arbitrage, Ltd
c/o Castle Creek Arbitrage LLC
111 West Jackson Blvd 20th Fl
Chicago, IL 60604

Hudson Bay Fund LP
Hudson Bay Overseas LTD
c/o Charles Winkler
120 Broadway 40th Flr
New York, NY 10271

Highbridge International LLC
c/o Highbridge Capital Management LLC
9 West 57 St 27 Floor
New York, NY 10019

Mark F. Hebbeln, Esq.
Harold L. Kaplan, Esq.
*Counsel for Deutsche Bank National Trust
Company*
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313

~~Deutsche Bank Securities, Inc~~
~~60 Wall St~~
~~New York, NY 10005~~

Maureen A. McGreevey, Esq.
Counsel for SunGard Availability Services
680 E. Swedesford Rd
Wayne, PA 19087

Edward G Salloom, Jr.
Claudia R. Sullivan
255 Wildwood Ave
Worcester, MA 01603

Deborah K Curran, Esq.
Counsel for McCabe Wiesberg & Conway
LLC
8101 Sandy Spring Road, Suite 100
Laurel, MD 20707

Grace Davila-Perez
14721 SW 159 Place
Miami, FL 33196

Yale Scott Bogen
Development Specialists, Inc.
200 S Biscayne Blvd #1818
Miami, FL 33131

Imperial County Treasurer-Tax Collector
940 West Main Street, Suite 106
El Centro, CA 92243

Richard I. Janvey, Esq.
*Special Litigation Counsel to Debtors*
Diamond McCarthy
620 Eighth Avenue, 39th Floor
New York, NY 10018

Kathryn R. Norcross, Senior Counsel
Sonya L. Levine, Counsel-Legal Division
*Of Counsel to FDIC*
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive, VS-D
Arlington, VA 22226

Miguel G. Farra, CPA
Morrison Brown Argiz & Farra LLP
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131

Alfred S. Lurey, Esq.
*Counsel for Official Committee of Unsecured*
*Creditors*
Kilpatrick Stockton LLP
 1100 Peachtree Street, Suite 2800
Atlanta, GA 30309

**Federal Regulations**

# Reg §301.6402-7. Claims for refund and applications for tentative carryback adjustments involving consolidated groups that include insolvent financial institutions.

**Caution:** The Treasury has not yet amended Reg § 301.6402-7 to reflect changes made by P.L. 104-193

**(a) In general.**

*(1) Overview.* Section 6402(i) authorizes the Secretary to issue regulations providing for the payment of a refund directly to the statutory or court-appointed fiduciary of an insolvent corporation that was a subsidiary in a consolidated group, to the extent the Secretary determines that the refund is attributable to losses or credits of the insolvent corporation. This section provides rules for the payment of refunds and tentative carryback adjustments to the fiduciary of an insolvent financial institution that was a subsidiary in a consolidated group.

*(2) Notice.* This section provides notice to the common parent of a consolidated group of which an insolvent financial institution is or was a member that—

(i) The fiduciary for the institution may, in addition to the common parent, act as agent for the group in certain matters relating to the tax liability of the group in the year in which a loss arose and for the year to which a claim for refund or application for tentative carryback adjustment relates; and

(ii) The Internal Revenue Service may deal directly with the common parent or the fiduciary (or both) as agent for the group to the extent provided in this section.

**(b) Definitions.** For purposes of this section, the following terms have the meanings set forth below:

*(1) Carryback year group.* A carryback year group is a consolidated group of which a corporation that is or becomes an insolvent financial institution is a member during a consolidated carryback year.

*(2) Consolidated carryback year.* A consolidated carryback year is a consolidated return year to which a loss arising in a loss year is carried back.

*(3) Fiduciary.* A fiduciary is—

(i) The Federal Deposit Insurance Corporation;

(ii) The Resolution Trust Corporation; or

EXHIBIT A

(iii) Any other entity established by federal law, or a federal agency, that is identified by the Commissioner in a revenue ruling or revenue procedure as a fiduciary for purposes of this section;

in its capacity as an authorized receiver or conservator of an insolvent financial institution.

*(4) Insolvent financial institution.* An insolvent financial institution (an institution) is a bank or domestic building and loan association for which the fiduciary is authorized to act as a receiver or conservator—

(i) On the ground that the institution is insolvent within the meaning of 12 U.S.C. 191, 12 U.S.C. 1821(c)(5)(A), 12 U.S.C. 1464(d)(2)(A)(i), or 12 U.S.C. 1464(d)(2)(C)(i) or any applicable state law (or any successor statute which adopts a substantially similar standard); or

(ii) On grounds other than insolvency, provided that the institution is insolvent within the meaning of paragraph (b)(4)(i) of this section at any time after commencement of the conservatorship or receivership.

A reference to an institution under these regulations includes, as the context requires, a reference to predecessors and successors of the institution.

*(5) Loss year.* A loss year is a taxable year for which any member or former member of the carryback year group claims a loss that may be carried back.

*(6) Loss year group.* A loss year group is a consolidated group of which a corporation that is or becomes an insolvent financial institution is a member during a loss year.

*(7) Procedure effective date.* The procedure effective date is the day on which the Internal Revenue Service has processed the notice described in paragraph (d)(1) of this section to the extent necessary for all Internal Revenue Service Centers to have access to information indicating that—

(i) Appropriate notice to the Internal Revenue Service has been filed; and

(ii) Payments with respect to losses of an institution are to be paid in accordance with the procedures set forth in this section.

*(8) Definitions in §1.1502-1.* Unless otherwise provided, the definitions contained in §1.1502-1 of this chapter apply in this section.

## (c) Deemed agency status of fiduciary.

*(1) In general.* Notwithstanding the general treatment of a common parent as the agent of a group under §§1.1502-77 and 1.1502-78 of this chapter, if the fiduciary satisfies the notice requirements of paragraph

(d)(1) of this section, the fiduciary may also be deemed to be an agent under §§ 1.1502-77 and 1.1502-78 of this chapter—

(i) Of the loss year group (if any) for purposes of filing a consolidated return for the loss year;

(ii) Of the carryback year group for purposes of filing a claim for refund or an application for a tentative carryback adjustment for the consolidated carryback year under paragraph (e) of this section and receiving payments of any refund or tentative carryback adjustment under paragraph (g) of this section; and

(iii) Of the carryback year group, the loss year group or any other group of which the institution is a member for any matter pertaining to the determination of the refund or tentative carryback adjustment, but only to the extent provided in paragraph (c)(2) of this section.

*(2) Limitation.* The fiduciary may act as an agent for matters described in paragraph (c)(1)(iii) of this section only to the extent—

(i) Authorized by the district director, in his/her sole discretion, after receiving a written request from the fiduciary; or

(ii) Requested by the Internal Revenue Service under paragraph (f)(3) of this section.

**(d) Notice requirements.**

*(1) Notice to the Internal Revenue Service.* To satisfy the notice requirement of this paragraph (d)(1), the fiduciary must file Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution, with the Internal Revenue Service Center indicated on the form. However, in its sole discretion, the Internal Revenue Service may treat notice to it in any other manner as satisfying the notice requirement under this paragraph (d)(1).

*(2) Notice to the common parent.*

(i) Form 56-F. The fiduciary must send a copy of the Form 56-F filed with the Internal Revenue Service Center or any other notice provided to the Service under paragraph (d)(1) of this section to the common parent of the loss year group (if any) and the common parent of all carryback year groups (if different from the loss year group).

(ii) Claim for refund and loss year return. If a claim for refund is filed by the fiduciary in accordance with paragraph (e)(1) of this section, the fiduciary must provide a copy of the claim for refund to the common parent of the carryback year group. If a loss year return is filed by the fiduciary in accordance with paragraph (e)(3) of this section, the fiduciary must provide a copy of the loss year return to the common parent of the loss year group (if any).

(iii) Additional information. The fiduciary must provide to the affected common parent a copy of the request for agency status referred to in paragraphs (c)(2)(i) and (ii) of this section, and a copy of any additional information submitted to the Internal Revenue Service as agent under paragraph (c)(1)(iii) of this section.

**(e) Filing requirements of the fiduciary.**

*(1) Claim for refund by the fiduciary.* If the fiduciary accepts a claim for refund filed by the common parent, the fiduciary may claim a refund under this section by filing a copy of the common parent's claim for refund. If no claim for refund is filed by the common parent for the consolidated carryback year or the fiduciary does not accept a claim for refund filed by the common parent, the fiduciary may claim a refund under this section by filing its own claim for refund under section 6402, based on all information pertaining to the institution and all information pertaining to other members of the carryback year group and the loss year group to which the fiduciary has reasonable access. Any claim for refund filed by the fiduciary under this paragraph (e)(1) must contain the title "Claim for refund under section 6402(i) of the Code" at the top of the first page of the claim, and the following must be attached to the claim:

(i) The name and employer identification number of the institution that was a member of the carryback year group;

(ii) The name of the fiduciary;

(iii) A schedule demonstrating that the amount of the refund claimed by the fiduciary is determined in accordance with paragraph (g) of this section;

(iv) A representation that the institution is an insolvent financial institution as defined in paragraph (b)(4) of this section;

(v) A representation that the fiduciary has satisfied the requirements set forth in paragraphs (d)(2)(i) and (ii) of this section; and

(vi) A statement executed by an authorized representative of the fiduciary and any paid preparer utilized by the fiduciary that provides "Under penalties of perjury, I declare that I have examined the items listed in § 301.6402-7T(e)(1)(i) through (v), including accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than fiduciary) is based on all information of which the preparer has any knowledge."

*(2) Application for tentative carryback adjustment pursuant to section 6411.* Notwithstanding section 6411 and §1.1502-78 of this chapter, an application for a tentative carryback adjustment must be signed by both the common parent of the carryback year group and the fiduciary if the payment with respect to the tentative carryback adjustment is not made before the procedure effective date (whether or not the application was

filed before the procedure effective date). Any application for a tentative carryback adjustment filed under this paragraph (e)(2) must contain the title "Application for tentative carryback adjustment under section 6402(i) of the Code" at the top of the first page of the application. In addition, the following must be attached to the application:

(i) The name and employer identification number of the institution that was a member of the carryback year group;

(ii) The name of the fiduciary;

(iii) A schedule demonstrating that the amount claimed by the fiduciary is determined in accordance with paragraph (g) of this section;

(iv) A representation that the institution is an insolvent financial institution as defined in paragraph (b)(4) of this section; and

(v) A representation that the fiduciary has satisfied the requirements set forth in paragraph (d)(2)(i) of this section.

*(3) Loss year return by the fiduciary.* If the institution is a member of a loss year group, and either the common parent does not file a loss year return or the fiduciary does not accept the loss year return filed by the common parent, the fiduciary may file a loss year return with respect to the loss year group. A loss year return can only be filed by the fiduciary in conjunction with the filing of a claim for refund under paragraph (e)(1). The return must be based on all information pertaining to the institution and all information pertaining to other members to which the fiduciary has reasonable access. Any return filed by the fiduciary under this paragraph (e)(3) must contain the title "Loss year return under section 6402(i) of the Code" at the top of the first page of the return, and the following must be attached to the return:

(i) The name and employer identification number of the institution that is a member of the loss year group;

(ii) The name of the fiduciary;

(iii) A representation that the institution is an insolvent financial institution as defined in paragraph (b)(4) of this section; and

(iv) A representation that the fiduciary has satisfied the requirements set forth in paragraphs (d)(2)(i) and (ii) of this section.

*(4) Additional information.* If the fiduciary files additional information under paragraph (c)(1)(iii) of this section, the fiduciary must attach a representation that it has satisfied the requirements set forth in paragraph (d)(2)(iii) of this section.

*(5) Election to waive carryback.* Any election filed after December 30, 1991 by the common parent of a loss year group under section 172(b)(3)

to relinquish the entire carryback period with respect to a consolidated net operating loss arising in a loss year is not effective with respect to the portion of the consolidated net operating loss attributable to a subsidiary that is an institution. Instead, the fiduciary may make the election under section 172(b)(3) with respect to the portion attributable to the institution after the notice described in paragraph (d)(1) of this section is filed. For purposes of this paragraph (e)(5), the portion attributable to an institution is determined under the principles of paragraph (g)(2)(ii) of this section.

**(f) Processing and reconciliation of information by the Internal Revenue Service.**

*(1) Loss year return if the insolvent financial institution is a member of a loss year group.* The Internal Revenue Service may, in its sole discretion, adjust a loss year return filed by the common parent of a loss year group to take into account information filed by the fiduciary in accordance with paragraph (e) of this section, or accept or adjust a loss year return for the loss year group filed by the fiduciary. Nothing in this section relieves the common parent of a loss year group of its duty to file a consolidated return taking into account an institution's items of income, gain, loss, deduction, and credit for any taxable year, or obligates the internal Revenue Service to accept a return filed by the fiduciary as the return of the loss year group.

*(2) Claim for refund with respect to consolidated carryback year.* The Internal Revenue Service may, in its sole discretion, adjust a claim for refund filed by the common parent of a carryback year group to take into account information filed by the fiduciary in accordance with paragraph (e) of this section, or accept or adjust a claim for refund for the carryback year group filed by the fiduciary. Nothing in this section obligates the Internal Revenue Service to pay a claim for refund, or to accept a claim for refund, filed by the fiduciary as a claim for refund for the carryback year group.

*(3) Additional information.* In determining the amount of any refund that may be paid to the fiduciary under paragraph (g) of this section, the Internal Revenue Service may, in its sole discretion, take into account any information that the Internal Revenue Service deems relevant and may require the fiduciary to file any additional information the Internal Revenue Service deems appropriate.

**(g) Payment of a refund or a tentative carryback adjustment to fiduciary.**

*(1) In general.* If a claim for refund or an application for a tentative carryback adjustment is filed for the consolidated carryback year in accordance with paragraph (e) of this section, the Internal Revenue Service may, in its sole discretion, pay to the fiduciary all or any portion of the refund or tentative carryback adjustment that the Internal Revenue Service determines under this section to be attributable to the net operating losses of the institution. Nothing in this section obligates the Internal Revenue Service to pay to the fiduciary all or any portion of a claim for refund or application for tentative carryback adjustment.

*(2) Portion of refund or tentative carryback adjustment attributable to the net operating loss of an insolvent financial institution.*

(i) In general. The portion of a refund or tentative carryback adjustment attributable to a net operating loss of an institution that is carried to a consolidated carryback year is determined based on the absorption, as described in paragraph (g)(2)(iii) of this section, of the institution's net operating loss carried to the consolidated carryback year.

(ii) Member's net operating loss. If the loss year is a consolidated return year, references in this section to the net operating loss of a member of the loss year group is a reference to the portion of the loss year group's consolidated net operating loss attributable to the member. The consolidated net operating loss for a taxable year that is attributable to a member is determined by a fraction, the numerator of which is the separate net operating loss of the member for the year of the loss and the denominator of which is the sum of the separate net operating losses for that year of all members having such losses. For this purpose, the separate net operating loss of a member is determined by computing the consolidated net operating loss by taking into account only the member's items of income, gain, deduction, and loss, including the member's losses and deductions actually absorbed by the group in the taxable year (whether or not absorbed by the member).

(iii) Absorption of net operating losses. The absorption of net operating losses generally is determined under applicable principles of the Code and regulations, including the principles of section 172 and §§1.1502-21(b) or 1.1502-21A(b) (as appropriate) of this chapter. Notwithstanding any contrary rule or principle of the Code or regulations, if an institution and another member of the carryback year group have net operating losses that arise in taxable years ending on the same date and are carried to the same consolidated carryback year, the carryback year group's consolidated taxable income for that year is treated as offset first by the loss attributable to the institution to the extent thereof.

*(3) Examples.* For purposes of the examples in this section, all groups file consolidated returns, all corporations have calendar taxable years, the facts set forth the only corporate activity, the fiduciary has met the notice and filing requirements of this section, and the common parent has filed a return for the loss year and a claim for refund. The principles of this paragraph (g) are illustrated by the following examples.

*Example (1).* Absorption of net operating losses.

(a) P owns all the stock of S1, an insolvent financial institution, and S2, a corporation that is not a financial institution. For Year 1, P, S1, and S2 each have $50 of income, and the P group's consolidated taxable income is $150. On May 31 of Year 2, S1 becomes insolvent and is placed in receivership under the supervision of a fiduciary. For Year 2, the P group

has a consolidated net operating loss of $200, of which $100 is attributable to S1 and $100 is attributable to S2.

(b) Under paragraph (g)(2)(iii) of this section, the $150 of consolidated taxable income for Year 1 is offset first by the $100 portion of the consolidated net operating loss for Year 2 attributable to S1. The remaining $50 is treated as offset by $50 of the $100 of consolidated net operating loss attributable to S2. Thus, the refund attributable to $100 of the loss may be payable to the fiduciary and the refund attributable to $50 of the loss may be payable to P. The remaining $50 consolidated net operating loss, available to be carried forward, is entirely attributable to S2.

*Example (2).* Separate return net operating loss. The facts are the same as in *Example 1,* except that S1 left the P group at the end of Year 1 and its $100 of loss in Year 2 is incurred in a separate return limitation year. Under paragraph (g)(2)(iii) of this section, the generally applicable absorption principles of section 172 and §1.1502-21 of this chapter apply. Although S1 and S2 are carrying back losses to Year 1 from taxable years ending on the same date (Year 2), S1's loss is subject to a $50 limitation under §1.1502-21(c) of this chapter and only $50 of S1's loss is absorbed before S2's net operating loss. Therefore, the refund attributable to $50 of the net operating loss of S1 may be payable to the fiduciary, and the refund attributable to $100 of the net operating loss of S2 may be payable to P. The remaining $50 net operating loss of S1 is available to be carried forward.

*(4) Refund or tentative carryback adjustment allocation agreement.* The determination of the portion of any refund or tentative carryback adjustment payable to the fiduciary under this paragraph (g) shall be made without regard to—

> (i) Any agreement among the members of the consolidated group; or

> (ii) Whether the fiduciary is otherwise entitled to any portion of the refund or tentative carryback adjustment under applicable law.

**(h) Credits, net capital losses, and subgroups.**

> *(1) Credits and net capital losses.*

> > (i) In general. The principles of this section also apply to credits and net capital losses, with appropriate adjustments to reflect differences between the rules applicable to net operating losses and those applicable to credits and net capital losses.

> > (ii) Example. The principles of this paragraph (h)(1) are illustrated by the following example.

> > *Example.* Net capital loss.

(a) P owns all the stock of S1, an insolvent financial institution, and S2, a corporation that is not a financial institution. For Year 1, P, S1, and S2 each have $50 of capital gain, and the P group's consolidated capital gain net income is $150. On May 31 of Year 2, S1 becomes insolvent and is placed in receivership under the supervision of a fiduciary. For Year 2, the P group has a consolidated net operating loss of $100 that is attributable to S1, and a consolidated net capital loss of $100 that is attributable to S2.

(b) Under paragraphs (g)(2)(iii) and (h)(1) of this section, the generally applicable absorption principles of sections 172 and 1212 and §§1.1502-21(b) and 1.1502-22(b) of this chapter apply. Consequently, S2's capital loss is absorbed before S1's net operating loss. Therefore, the $150 of consolidated capital gain net income is offset first by S2's $100 capital loss and the remaining $50 by S1's net operating loss. The refund attributable to $50 of the net operating loss may be payable to the fiduciary, and the refund attributable to the $100 of capital loss may be payable to P. The remaining $50 consolidated net operating loss available to be carried forward is entirely attributable to S1.

*(2) Insolvent financial institution subgroup.*

(i) In general. The principles of this section apply to all members included in an insolvent financial institution subgroup with appropriate adjustments to reflect differences resulting from the application to more than one corporation in a group. Unless otherwise determined by the Internal Revenue Service in its sole discretion, an insolvent financial institution subgroup is composed of an insolvent financial institution and those other members of a loss year group that, at any time during the conservatorship or receivership of the institution, bear the same relationship to the institution that the members of a group bear to their common parent under section 1504(a)(1).

(ii) Examples. The principles of this paragraph (h)(2) are illustrated by the following examples.

*Example (1).* Loss of other subgroup members.

(a) S1 is a financial institution, and P, S2, and S3 are not financial institutions. P owns all the stock of S1, S1 owns all the stock of S2, and the stock of S3 is owned 20 percent by S2 and 80 percent by P. For Year 1, P, S1, and S2 each have $100 of income, S3 has no income or loss, and the P group's consolidated taxable income is $300. On May 31 of Year 2, S1 becomes insolvent and is placed in receivership under the supervision of a fiduciary. For Year 2, the P group has a consolidated net operating loss of $300, of which $200 is attributable to S1 and $100 is attributable to S2.

(b) S1 and S2 compose a subgroup because S2 bears the same relationship to S1 that the member of a group bears to its common parent under section 1504(a). S3 is not included in the subgroup

because it is not connected to S1 through 80 percent stock ownership as described in section 1504(a).

(c) Because S1 and S2 are members of a subgroup, a claim for refund under paragraph (e) of this section must be based on the aggregate consolidated net operating loss of both S1 and S2. Under paragraph (e)(5) of this section, P may not elect under section 172(b)(3) to relinquish the entire carryback period with respect to the $300 of consolidated net operating loss arising in Year 2 that is attributable to S1 and S2. Any refund payable under paragraph (g)(1) of this section with respect to the $300 loss of S1 and S2 may be paid by the Internal Revenue Service directly to the fiduciary.

*Example (2).* Income of other subgroup members.

(a) The facts are the same as in *Example 1,* except that S2 has $100 of income in Year 2 rather than $100 of loss. Any refund payable under paragraph (g) of this section with respect to the loss of S1 in Year 2 must take into account the income of S2, and therefore the refund will be based on a $100 loss of the subgroup.

(b) Although P and S3 are not members included in the subgroup, the loss year return and the claim for refund filed by the fiduciary under paragraph (e) of this section must be completed based on all information to which the fiduciary has reasonable access. Under paragraph (e)(3) of this section, if P does not file a loss year return that is accepted by S1, and S1 has reasonable access to information indicating that P and S3 have income in Year 2, S1 must take that income into account in filing the P group's return for Year 2 and reduce the amount of S1's loss that may be carried to Year l accordingly. However, if P or S3 has a loss in Year 2, any refund attributable to that loss will not be paid to the fiduciary.

**(i) [Reserved]**

**(j) Determination of ownership.** This section determines the party to whom a refund or tentative carryback adjustment will be paid but is not determinative of ownership of any such amount among current or former members of a consolidated group (including the institution).

**(k) Liability of the Government.** Any refund or tentative carryback adjustment paid to the fiduciary discharges any liability of the Government to the same extent as payment to the common parent under §1.1502-77 or §1.1502-78 of this chapter. Furthermore, any refund or tentative carryback adjustment paid to the fiduciary is considered a payment to all members of the carryback year group. Any determination made by the Internal Revenue Service under this section to pay a refund or tentative carryback adjustment to a fiduciary or the common parent may not be challenged by the common parent, any member of the group, or the fiduciary.

**(l) Effective dates.** This section applies to refunds and tentative carryback adjustments paid after December 30, 1991.

T.D. 8387, 12/30/91 , amend T.D. 8446, 11/5/92 , T.D. 8677, 6/26/96 , T.D. 8823,
6/25/99 .

© 2010 Thomson Reuters/RIA. All rights reserved.

**Federal Regulations**

# Reg §1.1502–75. Filing of consolidated returns.

### (h) Method of filing return and forms.

*(1) Consolidated return made by common parent corporation.* The consolidated return shall be made on Form 1120 for the group by the common parent corporation. The consolidated return, with Form 851 (affiliations schedule) attached, shall be filed with the district director with whom the common parent would have filed a separate return.

*(2) Filing of Form 1122 for first year.* If, under the provisions of paragraph (a)(1) of this section, a group wishes to file a consolidated return for a taxable year, then a Form 1122 ("Authorization and Consent of Subsidiary Corporation To Be Included in a Consolidated Income Tax Return") must be executed by each subsidiary. For taxable years beginning before January 1, 2003, the executed Forms 1122 must be attached to the consolidated return for the taxable year. For taxable years beginning after December 31, 2002, the group must attach either executed Forms 1122 or unsigned copies of the completed Forms 1122 to the consolidated return. If the group submits unsigned Forms 1122 with its return, it must retain the signed originals in its records in the manner required by §1.6001-1(e). Form 1122 is not required for a taxable year if a consolidated return was filed (or was required to be filed) by the group for the immediately preceding taxable year.

*(3) Persons qualified to execute returns and forms.* Each return or form required to be made or prepared by a corporation must be executed by the person authorized under section 6062 to execute returns of separate corporations.

T.D. 6894, 9/7/66 , amend T.D. 7016, 10/6/69 , T.D. 7024, 2/9/70 , T.D. 7244, 12/29/72 , T.D. 7246, 12/29/72 , T.D. 8438, 9/24/92 , T.D. 8515, 1/12/94 , T.D. 8560, 8/12/94 , T.D. 8858, 1/5/2000 , T.D. 8940, 2/12/2001 , T.D. 9100, 12/18/2003 , T.D. 9300, 12/7/2006 , T.D. 9424, 9/10/2008 .

© 2010 Thomson Reuters/RIA. All rights reserved.

# EXHIBIT B

**Federal Regulations**

# Reg §301.6036-1. Notice required of executor or of receiver or other like fiduciary.

### (a) Receivers and other like fiduciaries.

*(1) Exemption for bankruptcy proceedings.*

(i) A bankruptcy trustee, debtor in possession or other like fiduciary in a bankruptcy proceeding is not required by this section to give notice of appointment, qualification or authorization to act to the Secretary or his delegate. (However, see the notice requirements under the Bankruptcy Rules.)

(ii) Paragraph (a)(1)(i) of this section is effective for appointments, qualifications and authorizations to act made on or after January 29, 1988. For appointments, qualifications and authorizations to act made before the foregoing date, 26 CFR 301.6036-1(a)(1) and (4)(i) (revised as of April 1, 1986) apply.

*(2) Proceedings other than bankruptcy.* A receiver in a receivership proceeding or a similar fiduciary in any proceeding (including a fiduciary in aid of foreclosure), designated by order of any court of the United States or of any State or Territory or of the District of Columbia as in control of all or substantially all the assets of a debtor or other party to such proceeding shall, on, or within 10 days of, the date of his appointment or authorization to act, give notice thereof in writing to the district director for the internal revenue district in which the debtor, or such other party, is or was required to make returns. Moreover, any fiduciary in aid of foreclosure not appointed by order of any such court, if he takes possession of all or substantially all the assets of the debtor, shall, on, or within 10 days of, the date of his taking possession, give notice thereof in writing to such district director.

T.D. 6517, 12/20/60 , amend T.D. 7222, 11/20/72 , T.D. 7238, 12/28/72 , T.D. 8172, 1/28/88 .

© 2010 Thomson Reuters/RIA. All rights reserved.

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

BANKUNITED FINANCIAL
CORPORATION, *et al.*,[1]

Debtors.

_____/

Case No. 09-19940-LMI

Chapter 11

Jointly Administered

**DECLARATION OF MIGUEL G. FARRA, CPA, IN SUPPORT OF
DEBTORS' SUPPLEMENTAL BRIEF WITH RESPECT TO AMENDED
MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION FOR
AN ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
TO THE EXERCISE OF CERTAIN TAX RIGHTS OR, IN THE ALTERNATIVE,
<u>FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY</u>**

Miguel G. Farra declares as follows:

1.       I am over the age of 18 and have personal knowledge of the facts set forth herein.

2.       I make this Declaration in support of the *Debtors' Supplemental Brief with Respect to Amended Motion of the Federal Deposit Insurance Corporation for an Order Confirming that the Automatic Stay Does Not Apply to the Exercise of Certain Tax Rights or, in the Alternative, for an Order Granting Relief from the Automatic Stay.*

3.       I am a certified public accountant and attorney licensed to practice in the State of Florida.

4.       I am the partner-in-charge of the Tax and Accounting Department at Morrison, Brown, Argiz, & Farra, LLP (**"MBAF"**), and I have over 34 years of experience in the areas of

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335). The address of each of the Debtors is c/o Development Specialists, Inc., 200 South Biscayne Blvd., Suite 1818, Miami, FL 33131.

EXHIBIT D

tax planning and compliance, mergers and acquisition, accounting and audit services for domestic and international businesses.

5.      My industry experience includes banking, manufacturers, distribution, automotive dealerships, aviation, electronic commerce, finance, healthcare, hospitality, real estate, and technology. I have been involved in corporate reorganizations, international tax and corporate structures, tax planning for real estate developers, audits of healthcare organizations and income and estate planning for high net worth individuals.

6.      I have forensic experience on numerous tax controversies and have served as an expert witness on divorce and commercial litigation cases, and have been qualified to give expert testimony in the United States Tax Court, Miami-Dade County Circuit Court, and the Broward County Circuit Court.

7.      I, along with my firm, MBAF, have been retained as tax accountants to the Debtors,[2] and I have been personally involved in and supervised the preparation of the Debtors' FY 2008 Return.

8.      Based on my experience, it is my considered professional opinion that allowing the FDIC-Receiver to file a competing tax return will only serve to require the IRS unnecessarily to review and compare two voluminous and complex tax returns – both of which claim the same amount of refund, but based on differing calculations.  The resulting confusion may ultimately delay payment of the Tax Refunds for a considerable period of time, to the detriment of both these Chapter 11 estates and the BUFSB receivership estate for which the FDIC-Receiver acts as fiduciary.

---

[2] All capitalized terms not defined in this Declaration shall have the definitions set forth in the *Debtors' Response and Objection to Motion of the Federal Deposit Insurance Corporation for an Order Confirming that the Automatic Stay Does Not Apply to the Exercise of Certain Tax Rights or, in the Alternative, for an Order Granting Relief from the Automatic Stay* (DE #579).

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct, on this 9th day of November, 2010.

Miguel G. Farra, CPA

MIA 181,537,184v3

3