UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

BANKUNITED FINANCIAL
CORPORATION, *et al.*,[1]

        Debtors.

_____/

Chapter 11

Case No. 09-19940-LMI

(Jointly administered)

**DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**DATED NOVEMBER 22, 2010**

Mark D. Bloom
bloomm@gtlaw.com
GREENBERG TRAURIG, P.A.
333 Avenue of the Americas (333 S.E. 2nd Avenue)
Miami, Florida, 33131
Telephone: (305) 579-0500
Fax: (305) 579-0717

      - and –

Scott M. Grossman
grossmansm@gtlaw.com
GREENBERG TRAURIG, P.A.
401 East Las Olas Blvd., Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 765-0500
Fax:  (954) 765-1477

Counsel for Debtors and Debtors in Possession

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335). The address of each of the Debtors is c/o Development Specialists, Inc., 200 S. Biscayne Blvd., Suite 1818, Miami, Florida 33131.

# **TABLE OF CONTENTS**

Article I DEFINITIONS .................................................................................................... 1
1.1    Administrative Claim Bar Date .......................................................... 1
1.2    Administrative Expense Claim ........................................................... 1
1.3    Affiliate .............................................................................................. 2
1.4    Allowed Administrative Expense Claim ............................................ 2
1.5    Allowed BUFS Unsecured Claim ...................................................... 2
1.6    Allowed Claim .................................................................................... 2
1.7    Allowed CRE Unsecured Claim ......................................................... 2
1.8    Allowed FDIC Claim .......................................................................... 2
1.9    Allowed General Unsecured Claim .................................................... 2
1.10   Allowed Priority Non-Tax Claim ...................................................... 3
1.11   Allowed Priority Tax Claim ............................................................... 3
1.12   Allowed Secured Claim ...................................................................... 3
1.13   Allowed Senior Notes Claim .............................................................. 3
1.14   Allowed Subordinated Notes Claim ................................................... 3
1.15   Allowed Trustee Claim ....................................................................... 3
1.16   Assets .................................................................................................. 3
1.17   Avoidance Actions .............................................................................. 3
1.18   Ballot .................................................................................................. 3
1.19   Ballot Date .......................................................................................... 3
1.20   Bankruptcy Code ................................................................................ 3
1.21   Bankruptcy Court ............................................................................... 3
1.22   Bankruptcy Rules ............................................................................... 4
1.23   Benefit Plan ........................................................................................ 4
1.24   BUFC .................................................................................................. 4
1.25   BUFC Board ....................................................................................... 4
1.26   BUFC Entities .................................................................................... 4
1.27   BUFS .................................................................................................. 4
1.28   BUFS Stock Interests ......................................................................... 4
1.29   BUFS Unsecured Claim ..................................................................... 4
1.30   BUFSB ................................................................................................ 4
1.31   BU Realty ........................................................................................... 4
1.32   BU Realty Stock Interests .................................................................. 4
1.33   Business Day ....................................................................................... 4
1.34   Cash .................................................................................................... 4
1.35   Cash Equivalents ................................................................................ 5
1.36   Causes of Action ................................................................................ 5
1.37   Chapter 11 Cases ................................................................................ 5
1.38   Claim .................................................................................................. 5
1.39   Class ................................................................................................... 5
1.40   Class A Common Stock Equity Interest ............................................ 5
1.41   Class B Common Stock Equity Interest ............................................ 6
1.42   Common Equity Interest ..................................................................... 6
1.43   Confidentiality Stipulation ................................................................ 6

| | | |
|---|---|---|
| 1.44 | Confirmation Date | 6 |
| 1.45 | Confirmation Hearing | 6 |
| 1.46 | Confirmation Order | 6 |
| 1.47 | Cramdown | 6 |
| 1.48 | CRE | 6 |
| 1.49 | CRE Stock Interests | 6 |
| 1.50 | CRE Unsecured Claim | 6 |
| 1.51 | Creditor | 6 |
| 1.52 | Creditor Cash | 6 |
| 1.53 | Creditors' Committee | 7 |
| 1.54 | CRO | 7 |
| 1.55 | D&O Claims | 7 |
| 1.56 | Debtors | 7 |
| 1.57 | Debtors in Possession | 7 |
| 1.58 | Disbursing Agent | 7 |
| 1.59 | Disclosure Statement | 7 |
| 1.60 | Disclosure Statement Order | 7 |
| 1.61 | Disputed Claim | 7 |
| 1.62 | Distribution Date | 8 |
| 1.63 | Distribution Record Date | 8 |
| 1.64 | Effective Date | 8 |
| 1.65 | Eligible Claim | 8 |
| 1.66 | Eligible Creditor | 8 |
| 1.67 | Eligible Creditor Election | 8 |
| 1.68 | Entity | 8 |
| 1.69 | Equity Interest | 8 |
| 1.70 | FDIC Claim | 8 |
| 1.71 | FDIC-Corporate | 8 |
| 1.72 | FDIC-Receiver | 8 |
| 1.73 | Final Order | 8 |
| 1.74 | General Unsecured Claim | 9 |
| 1.75 | Hedge Fund Investments | 9 |
| 1.76 | HiMEDs Indenture | 9 |
| 1.77 | HiMEDs Indenture Trustee | 9 |
| 1.78 | HiMEDs Notes | 9 |
| 1.79 | HiMEDs Notes Claim | 9 |
| 1.80 | Indentures | 9 |
| 1.81 | Information Access Agreement | 9 |
| 1.82 | Information Demands | 9 |
| 1.83 | Intercompany Claim | 9 |
| 1.84 | Interests | 10 |
| 1.85 | Investment | 10 |
| 1.86 | Investor | 10 |
| 1.87 | Junior Subordinated Debentures | 10 |
| 1.88 | Junior Subordinated Debentures Claim | 10 |
| 1.89 | Junior Subordinated Indenture | 10 |

1.90    Junior Subordinated Indenture Trustee ............................................................ 10
1.91    IRC .................................................................................................................... 10
1.92    IRS .................................................................................................................... 10
1.93    Law Debenture Trust Company ........................................................................ 10
1.94    Lien ................................................................................................................... 10
1.95    Liquidating Trust .............................................................................................. 10
1.96    Liquidating Trust Agreement ........................................................................... 10
1.97    Liquidating Trust Assets .................................................................................. 10
1.98    Liquidating Trust Beneficiaries ....................................................................... 11
1.99    Liquidating Trust Claims Reserve ................................................................... 11
1.100    Liquidating Trustee ......................................................................................... 11
1.101    Liquidating Trust Interests ............................................................................. 11
1.102    Local Bankruptcy Rules .................................................................................. 11
1.103    Master Subscription Agreement ..................................................................... 11
1.104    New Bank ........................................................................................................ 11
1.105    OTS .................................................................................................................. 11
1.106    Person .............................................................................................................. 11
1.107    Petition Date .................................................................................................... 11
1.108    Plan .................................................................................................................. 11
1.109    Plan Supplement ............................................................................................. 11
1.110    Preferred Equity Interest ................................................................................ 12
1.111    Priority Non-Tax Claim .................................................................................. 12
1.112    Priority Tax Claim .......................................................................................... 12
1.113    Privileges ......................................................................................................... 12
1.114    Pro Rata Share ................................................................................................ 12
1.115    Purchase and Assumption Agreement ............................................................ 12
1.116    Receivership .................................................................................................... 12
1.117    Related Persons ............................................................................................... 12
1.118    Released Parties .............................................................................................. 13
1.119    Reorganized BUFC ......................................................................................... 13
1.120    Reorganized BUFC Articles of Incorporation ................................................ 13
1.121    Reorganized BUFC Bylaws ............................................................................ 13
1.122    Reorganized BUFC Common Stock ............................................................... 13
1.123    Reorganized BUFC Junior Preferred Stock .................................................... 13
1.124    Reorganized BUFC Securities ........................................................................ 13
1.125    Reorganized BUFC Senior Preferred Stock .................................................... 13
1.126    Reorganized BUFC Subsidiaries .................................................................... 13
1.127    Reorganized BUFS .......................................................................................... 13
1.128    Reorganized CRE ............................................................................................ 13
1.129    Reorganized Debtors ....................................................................................... 14
1.130    Reorganized Debtors' Articles of Incorporation ............................................ 14
1.131    Reorganized Debtors' Bylaws ........................................................................ 14
1.132    Retained Professionals .................................................................................... 14
1.133    Schedules ........................................................................................................ 14
1.134    Secured Claim ................................................................................................. 14
1.135    Senior Convertible Notes ................................................................................ 14

| | | |
|---|---|---|
| 1.136 | Senior Convertible Notes Claim | 14 |
| 1.137 | Senior Convertible Notes Indenture | 14 |
| 1.138 | Senior Convertible Notes Indenture Trustee | 14 |
| 1.139 | Senior Indentures | 14 |
| 1.140 | Senior Indenture Trustees | 15 |
| 1.141 | Senior Notes | 15 |
| 1.142 | Senior Notes Claim | 15 |
| 1.143 | State Street | 15 |
| 1.144 | Statutory Trust III Debentures | 15 |
| 1.145 | Statutory Trust III Debentures Claim | 15 |
| 1.146 | Statutory Trust III Indenture | 15 |
| 1.147 | Statutory Trust III Indenture Trustee | 15 |
| 1.148 | Statutory Trust IV Debentures | 15 |
| 1.149 | Statutory Trust IV Debentures Claim | 15 |
| 1.150 | Statutory Trust IV Indenture | 15 |
| 1.151 | Statutory Trust IV Indenture Trustee | 15 |
| 1.152 | Statutory Trust V Debentures | 15 |
| 1.153 | Statutory Trust V Debentures Claim | 15 |
| 1.154 | Statutory Trust V Indenture | 15 |
| 1.155 | Statutory Trust V Indenture Trustee | 16 |
| 1.156 | Statutory Trust VI Debentures | 16 |
| 1.157 | Statutory Trust VI Debentures Claim | 16 |
| 1.158 | Statutory Trust VI Indenture | 16 |
| 1.159 | Statutory Trust VI Indenture Trustee | 16 |
| 1.160 | Statutory Trust VII Debentures | 16 |
| 1.161 | Statutory Trust VII Debentures Claim | 16 |
| 1.162 | Statutory Trust VII Indenture | 16 |
| 1.163 | Statutory Trust VII Indenture Trustee | 16 |
| 1.164 | Statutory Trust VIII Debentures | 16 |
| 1.165 | Statutory Trust VIII Debentures Claim | 16 |
| 1.166 | Statutory Trust VIII Indenture | 16 |
| 1.167 | Statutory Trust VIII Indenture Trustee | 16 |
| 1.168 | Statutory Trust IX Debentures | 16 |
| 1.169 | Statutory Trust IX Debentures Claim | 16 |
| 1.170 | Statutory Trust IX Indenture | 17 |
| 1.171 | Statutory Trust IX Indenture Trustee | 17 |
| 1.172 | Statutory Trust X Debentures | 17 |
| 1.173 | Statutory Trust X Debentures Claim | 17 |
| 1.174 | Statutory Trust X Indenture | 17 |
| 1.175 | Statutory Trust X Indenture Trustee | 17 |
| 1.176 | Statutory Trust XI Debentures | 17 |
| 1.177 | Statutory Trust XI Debentures Claim | 17 |
| 1.178 | Statutory Trust XI Indenture | 17 |
| 1.179 | Statutory Trust XI Indenture Trustee | 17 |
| 1.180 | Statutory Trust XII Debentures | 17 |
| 1.181 | Statutory Trust XII Debentures Claim | 17 |

1.182    Statutory Trust XII Indenture ............................................................... 17
1.183    Statutory Trust XII Indenture Trustee ................................................... 17
1.184    Statutory Trust Indenture Trustees ....................................................... 17
1.185    Statutory Trust Indentures ..................................................................... 18
1.186    Subordinated Indentures ........................................................................ 18
1.187    Subordinated Indenture Trustees ........................................................... 18
1.188    Subordinated Notes ................................................................................ 18
1.189    Subordinated Notes Claim ..................................................................... 18
1.190    Tax Authority ......................................................................................... 18
1.191    Taxes ...................................................................................................... 18
1.192    Tax Attributes ........................................................................................ 18
1.193    Tax Refunds ........................................................................................... 18
1.194    Tax Return .............................................................................................. 18
1.195    Trading Injunction Order ....................................................................... 18
1.196    Transaction ............................................................................................. 19
1.197    Treasury Regulations ............................................................................. 19
1.198    Trust Advisory Board ............................................................................. 19
1.199    Trustee Claims ....................................................................................... 19
1.200    Trustee Distribution Expenses ............................................................... 19
1.201    Trustees .................................................................................................. 19
1.202    Trust Preferred Securities ...................................................................... 19
1.203    Trust Preferred Securities III ................................................................. 19
1.204    Trust Preferred Securities IV ................................................................. 19
1.205    Trust Preferred Securities V ................................................................... 19
1.206    Trust Preferred Securities VI ................................................................. 19
1.207    Trust Preferred Securities VII ................................................................ 19
1.208    Trust Preferred Securities VIII ............................................................... 20
1.209    Trust Preferred Securities IX .................................................................. 20
1.210    Trust Preferred Securities X ................................................................... 20
1.211    Trust Preferred Securities XI .................................................................. 20
1.212    Trust Preferred Securities XII ................................................................ 20
1.213    Trust Preferred Subordinated Debentures .............................................. 20
1.214    Unsecured Claim .................................................................................... 20
1.215    U.S. Bank ............................................................................................... 20
1.216    Voting Record Date ................................................................................ 20
1.217    Wells Fargo ............................................................................................ 21
1.218    Wilmington Trust ................................................................................... 21
Article II CLASSIFICATION OF CLAIMS AND INTERESTS ............................. 21
2.1    Classification Generally .......................................................................... 21
2.2    Unclassified Claims ................................................................................ 21
2.3    Unimpaired/non-voting Classes of Claims ............................................ 21
2.4    Impaired/voting Classes of Claims ........................................................ 21
2.5    Impaired/non-voting Classes of Interests ............................................... 22
2.6    Impaired/voting Classes of Interests ...................................................... 22
Article III TREATMENT OF CLAIMS AND INTERESTS ................................... 22
3.1    Unclassified Claims ................................................................................ 22

3.2      Unimpaired/non-voting Classes of Claims ................................................ 24
3.3      Impaired/voting Classes of Claims ........................................................ 24
3.4      Impaired/non-voting Classes of Interests.............................................. 27
3.5      Impaired/voting Classes of Interests ..................................................... 27
Article IV IDENTIFICATION OF CLAIMS AND INTERESTS IMPAIRED AND NOT
IMPAIRED BY THE PLAN ............................................................................................ 27
4.1      Impaired and Unimpaired Classes ........................................................ 27
4.2      Impaired Classes Entitled to Vote on Plan .......................................... 27
4.3      Interests Deemed to Reject ................................................................... 28
4.4      Claims Deemed to Accept .................................................................... 28
4.5      Controversy Concerning Impairment .................................................... 28
Article V ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY
ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS ............................ 28
5.1      Impaired Classes to Vote ...................................................................... 28
5.2      Acceptance by Class of Creditors ........................................................ 28
5.3      Cramdown.............................................................................................. 28
Article VI DISPUTED CLAIMS .................................................................................... 28
6.1      Objections to Claims; Prosecution of Disputed Claims........................ 28
6.2      Estimation of Claims............................................................................. 29
6.3      Payments and Distributions on Disputed Claims.................................. 29
Article VII THE LIQUIDATING TRUST ...................................................................... 30
7.1      Execution of Liquidating Trust Agreement .......................................... 30
7.2      Purpose of the Liquidating Trust .......................................................... 30
7.3      Liquidating Trust Assets ....................................................................... 30
7.4      Administration of the Liquidating Trust ............................................... 31
7.5      The Liquidating Trustee ........................................................................ 31
7.6      Role of the Liquidating Trustee ............................................................ 31
7.7      Liquidating Trustee's Tax Power for Debtors ...................................... 31
7.8      Transferability of Liquidating Trust Interests ...................................... 32
7.9      Cash....................................................................................................... 32
7.10    Distribution of Liquidating Trust Assets .............................................. 32
7.11    Costs and Expenses of the Liquidating Trust ....................................... 33
7.12    Compensation of the Liquidating Trustee and Trust Advisory Board........ 33
7.13    Retention of Professionals by the Liquidating Trustee......................... 33
7.14    Federal Income Tax Treatment of the Liquidating Trust...................... 33
7.15    Indemnification of Liquidating Trustee ............................................... 36
7.16    Privileges, Information Demands, Information Access Agreement, and Confidentiality
Stipulation .............................................................................................................. 37
Article VIII PRESERVATION AND PROSECUTION OF CLAIMS HELD BY BUFC .......... 37
8.1      Preservation and Prosecution of Claims Held by BUFC ..................... 37
Article IX PROVISIONS GOVERNING DISTRIBUTIONS........................................... 38
9.1      Time and Manner of Distributions........................................................ 38
9.2      Timeliness of Payments ........................................................................ 39
9.3      Distributions by the Disbursing Agent ................................................. 39
9.4      Manner of Payment under the Plan....................................................... 39
9.5      Delivery of Distributions ...................................................................... 39

| | | |
|---|---|---|
| 9.6 | Undeliverable Distributions | 40 |
| 9.7 | Withholding and Reporting Requirements | 40 |
| 9.8 | Time Bar to Cash Payments | 41 |
| 9.9 | Distributions After Effective Date | 41 |
| 9.10 | Setoffs | 41 |
| 9.11 | Allocation of Plan Distributions Between Principal and Interest | 41 |
| 9.12 | Certain Trustee Fees and Expenses | 41 |
| 9.13 | Distribution Record Date | 42 |

Article X MEANS OF IMPLEMENTATION ................................................................ 42
| | | |
|---|---|---|
| 10.1 | Equity Investment Transaction | 42 |
| 10.2 | Intercompany Claims and Interests | 43 |
| 10.3 | Merger/Dissolution/Consolidation | 43 |
| 10.4 | Cancellation of Existing Securities and Agreements | 43 |
| 10.5 | Claims of Subordination | 43 |
| 10.6 | Surrender of Instruments | 44 |
| 10.7 | Issuance of Reorganized BUFC Securities | 44 |
| 10.8 | Exemption from Securities Laws | 44 |
| 10.9 | Hart-Scott-Rodino Compliance | 44 |
| 10.10 | Fractional Stock or Other Distributions | 45 |
| 10.11 | Contractual Subordination Rights | 45 |

Article XI CREDITORS COMMITTEE ....................................................................... 45
| | | |
|---|---|---|
| 11.1 | Dissolution of the Creditors' Committee | 45 |

Article XII EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................ 45
| | | |
|---|---|---|
| 12.1 | Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases | 45 |
| 12.2 | Approval of Rejection or Assumption of Executory Contracts and Unexpired Leases | 46 |
| 12.3 | Inclusiveness | 46 |
| 12.4 | Cure of Defaults | 46 |
| 12.5 | Rejection Damage Claims | 47 |
| 12.6 | Indemnification and Reimbursement Obligations | 47 |
| 12.7 | Termination of Benefit Plans | 47 |

Article XIII RIGHTS AND POWERS OF DISBURSING AGENT ................................ 47
| | | |
|---|---|---|
| 13.1 | Exculpation | 47 |
| 13.2 | Powers of the Disbursing Agent | 47 |
| 13.3 | Fees and Expenses Incurred From and After the Effective Date | 48 |

Article XIV CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN ......... 48
| | | |
|---|---|---|
| 14.1 | Conditions Precedent to Confirmation of the Plan | 48 |
| 14.2 | Waiver of Conditions Precedent to Confirmation | 49 |

Article XV CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN ......... 49
| | | |
|---|---|---|
| 15.1 | Conditions Precedent to Effective Date of the Plan | 49 |
| 15.2 | Waiver of Conditions Precedent | 49 |

Article XVI RETENTION OF JURISDICTION ............................................................ 49
| | | |
|---|---|---|
| 16.1 | Retention of Jurisdiction | 49 |

Article XVII MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........ 51
| | | |
|---|---|---|
| 17.1 | Modification of Plan | 51 |
| 17.2 | Revocation or Withdrawal | 51 |
| 17.3 | Amendment of Plan Documents | 51 |

17.4   No Admission of Liability ............................................................................... 52
Article XVIII CORPORATE GOVERNANCE AND MANAGEMENT OF THE
REORGANIZED DEBTORS ............................................................................................... 52
18.1   Corporate Action ............................................................................................ 52
18.2   Amendment of Articles of Incorporation and Bylaws ................................... 53
18.3   Directors of the Reorganized Debtors ............................................................ 53
18.4   Officers of the Reorganized Debtors .............................................................. 53
18.5   Shareholders' Agreement ............................................................................... 53
Article XIX MISCELLANEOUS PROVISIONS .............................................................. 53
19.1   Title to Assets ................................................................................................. 53
19.2   Discharge and Release of Claims and Termination of Equity Interests ........ 54
19.3   Injunction on Claims ...................................................................................... 55
19.4   Integral to Plan ............................................................................................... 55
19.5   Exculpation ..................................................................................................... 56
19.6   Term of Existing Injunctions or Stays ........................................................... 56
19.7   Payment of Statutory Fees ............................................................................. 56
19.8   Post-Effective Date Fees and Expenses ......................................................... 56
19.9   Exemption from Transfer Taxes ..................................................................... 56
19.10    Severability ................................................................................................. 57
19.11    Governing Law ........................................................................................... 57
19.12    Notices ........................................................................................................ 57
19.13    Closing of Case ........................................................................................... 58
19.14    Section Headings ........................................................................................ 58
19.15    Inconsistencies ........................................................................................... 59

Debtors, BankUnited Financial Corporation, BankUnited Financial Services, Incorporated, and CRE America Corporation hereby propose this joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code.

# ARTICLE I
# DEFINITIONS

As used in the Plan, the terms below shall have the respective meanings specified below and be equally applicable to the singular and plural of the terms defined. Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. Unless otherwise specified, (a) all section, schedule, or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time and (b) all references to dollars are to the lawful currency of the United States of America. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.1 **Administrative Claim Bar Date**: Unless otherwise ordered by the Bankruptcy Court, the date established by the Bankruptcy Court and set forth in the Confirmation Order as the last day to file proof of Administrative Expense Claims, which date shall be no more than ninety (90) days after the Effective Date, after which date, any proof of Administrative Expense Claim not filed shall be deemed forever barred, and the Debtors, the Reorganized Debtors, and the Liquidating Trust shall have no obligation with respect thereto; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim shall have been incurred (i) in accordance with an order of the Bankruptcy Court or (ii) with the consent of the Debtors and in the ordinary course of the Debtors' operations.

1.2 **Administrative Expense Claim**: A Claim constituting a cost or expense of administration of the Chapter 11 Cases asserted or authorized to be asserted, on or before the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, including, without limitation, (i) any actual and necessary cost and expense of preserving the estates of the Debtors, (ii) any actual and necessary cost and expense of operating the businesses of the Debtors in Possession, (iii) any post-Petition Date loan or advance extended by one Debtor to the other Debtor, (iv) any actual and necessary cost and expense of the Debtors in Possession for the management, maintenance, preservation, sale, or other disposition of any assets, (v) any actual and necessary cost and expense of administration and implementation of the Plan, (vi) any actual and necessary cost and expense of administration, prosecution, or defense of Claims by or against the Debtors and for distributions under the Plan, (vii) any guarantee or indemnification obligation extended by the Debtors in Possession, (viii) any Claim for compensation and reimbursement of expenses arising during the period from and after the Petition Date and before the Effective Date and awarded by the Bankruptcy Court in accordance with section 328, 330, 331, or 503(b) of the Bankruptcy Code or otherwise in accordance with the provisions of the

Plan, whether fixed before or after the Effective Date, (ix) any fee or charge assessed against the Debtors' estates pursuant to section 1930, chapter 123, title 28, United States Code, and (x) any tort or extra-contractual claims against the Debtors in Possession.

1.3 **Affiliate**: With respect to any specified Entity, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified entity.

1.4 **Allowed Administrative Expense Claim**: An Administrative Expense Claim, to the extent it is or has become an Allowed Claim.

1.5 **Allowed BUFS Unsecured Claim**: A BUFS Unsecured Claim, to the extent it is or has become an Allowed Claim.

1.6 **Allowed Claim**: A Claim against any of the Debtors or the Debtors' estates, (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing such proof of claim against any such Debtor or such Debtor's estate, or (ii) if no proof of Claim has been timely filed, which has been or hereafter is listed by such Debtor in its Schedules as liquidated in amount and not disputed or contingent, in each such case in clauses (i) and (ii) above, a Claim as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. For purposes of determining the amount of an "Allowed Claim," there shall be deducted therefrom an amount equal to the amount of any claim that the Debtors may hold against the holder thereof, to the extent such claim may be set off pursuant to applicable bankruptcy and non-bankruptcy law. Without in any way limiting the foregoing, "Allowed Claim" shall include any Claim arising from the recovery of property in accordance with sections 550 and 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, any Claim allowed under or pursuant to the terms of the Plan, or any Claim to the extent that it has been allowed pursuant to a Final Order; provided, however, that (i) Claims estimated or allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) for any purpose under the Plan, "Allowed Claim" shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, and (iii) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

1.7 **Allowed CRE Unsecured Claim**: A CRE Unsecured Claim, to the extent it is or has become an Allowed Claim.

1.8 **Allowed FDIC Claim**: An FDIC Claim, to the extent it is or has become an Allowed Claim.

1.9 **Allowed General Unsecured Claim**: A General Unsecured Claim, to the extent it is or has become an Allowed Claim.

2

1.10    **Allowed Priority Non-Tax Claim**:  A Priority Non-Tax Claim, to the extent it is or has become an Allowed Claim.

1.11    **Allowed Priority Tax Claim**:  A Priority Tax Claim, to the extent it is or has become an Allowed Claim.

1.12    **Allowed Secured Claim**:  A Secured Claim, to the extent it is or has become an Allowed Claim.

1.13    **Allowed Senior Notes Claim**:  A Senior Notes Claim, to the extent it is or has become an Allowed Claim.

1.14    **Allowed Subordinated Notes Claim**:  A Subordinated Notes Claim, to the extent it is or has become an Allowed Claim.

1.15    **Allowed Trustee Claim**:  A Trustee Claim, to the extent it is or has become an Allowed Claim.

1.16    **Assets**:  With respect to a Debtor, (i) all "property" of such Debtor's estate, as defined in section 541 of the Bankruptcy Code, including, without limitation, such property as is reflected on such Debtor's books and records as of the date of the Disclosure Statement Order and (ii) all claims and causes of action, and any subsequent proceeds thereof, that have been or may be commenced by such Debtor in Possession or other authorized representative for the benefit of such Debtor's estate, unless modified pursuant to the Plan or a Final Order, including, without limitation, any claim or cause of action pursuant to chapter 5 of the Bankruptcy Code.

1.17    **Avoidance Actions**:  Any and all avoidance, recovery, subordination or other actions or remedies against Entities that may be brought by or on behalf of a Debtor or its estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions, settlements or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

1.18    **Ballot**:  The form distributed to each holder of an impaired Claim entitled to vote on the plan (as set forth herein), on which is to be indicated, among other things, acceptance or rejection of the Plan and for Eligible Creditors, the Eligible Creditor Election.

1.19    **Ballot Date**:  The date established by the Bankruptcy Court and set forth in the Disclosure Statement Order for the submission of Ballots and for Eligible Creditors, the making of the Eligible Creditor Election.

1.20    **Bankruptcy Code**:  The Bankruptcy Reform Act of 1978, as amended, to the extent codified in title 11, United States Code, as applicable to the Chapter 11 Cases.

1.21    **Bankruptcy Court**:  The United States Bankruptcy Court for the Southern District of Florida or such other court having jurisdiction over the Chapter 11 Cases.

1.22    **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases.

1.23    **Benefit Plan**:  The BUFC 2007 Stock Award and Incentive Plan, the 2002 BUFC Stock Award and Option Plan, the BUFC Supplemental Tax Deferred Savings Plan, and any other (i) oral or written employment or consulting agreement to or under which one or more of the Debtors is a party or has or may have any actual or contingent liability or obligation, and (ii) employee benefit plan, program or arrangement currently sponsored, maintained or contributed to by one or more of the Debtors, or with respect to which one or more of the Debtors has or may have any actual or contingent liability or obligation (including any such obligations under any terminated plan or arrangement), including but not limited to employee pension benefit plans, as defined in Section 3(2) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), multi-employer plans, as defined in Section 3(37) of ERISA, employee welfare benefit plans, as defined in Section 3(1) of ERISA, deferred compensation plans, stock option or other equity compensation plans, stock purchase plans, phantom stock plans, bonus plans, fringe benefit plans, life, health, dental, vision, hospitalization, disability and other insurance plans, employee assistance program, severance or termination pay plans and policies, and sick pay and vacation plans or arrangements, whether or not described in Section 3(3) of ERISA.

1.24    **BUFC**:  BankUnited Financial Corporation, a Florida corporation.

1.25    **BUFC Board**:  BUFC's Board of Directors as of the last Business Day before the Effective Date.

1.26    **BUFC Entities**:  The Debtors and BU Realty.

1.27    **BUFS**:  BankUnited Financial Services, Incorporated, a Florida corporation.

1.28    **BUFS Stock Interests**:    The issued and outstanding common stock of BUFS, 100% of which is held by BUFC.

1.29    **BUFS Unsecured Claim**:  An Unsecured Claim against BUFS.

1.30    **BUFSB**:  BankUnited, FSB.

1.31    **BU Realty**:  BU Realty Corporation, a Florida corporation.

1.32    **BU Realty Stock Interests**:  The issued and outstanding common stock of BU Realty, 100% of which is held by BUFC.

1.33    **Business Day**:  A day other than a Saturday, Sunday, or any other day on which commercial banking institutions in New York, New York are required or authorized to close by law or executive order.

1.34    **Cash**:  Lawful currency of the United States, including, but not limited to, bank deposits, checks representing good funds, and other similar items.

1.35    **Cash Equivalents**:    Equivalents of Cash in the form of readily marketable securities or instruments issued by a person other than the Debtors, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest-bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than One Hundred Million Dollars ($100,000,000.00), having maturities of not more than one year, at the then best generally available rates of interest for like amounts and like periods.

1.36    **Causes of Action**:    All Claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) of any of the Debtors and/or their estates that are pending or may be asserted against any Entity on or after the date hereof, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assented or assertable directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

1.37    **Chapter 11 Cases**:    The jointly administered cases commenced by the Debtors styled as *In re BankUnited Financial Corporation., et al.* and being jointly administered in the Bankruptcy Court, Case No. 09-19940-LMI, under chapter 11 of the Bankruptcy Code.

1.38    **Claim**:    Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

1.39    **Class**:    A category of holders of Claims or Equity Interests set forth in Article II of the Plan.

1.40    **Class A Common Stock Equity Interest**:    An Equity Interest represented by the 500,000,000 authorized shares of BUFC's Class A Common Stock, $0.01 par value per share, all of which have been designated Series I Class A Common Stock, including, without limitation, one of the 35,190,741 shares of Series I Class A Common Stock, $0.01 par value per share, of BUFC issued and outstanding as of the Petition Date, or any interest or right to convert into such an Equity Interest or acquire any Equity Interest of BUFC that was in existence immediately before or on the Petition Date.

1.41   **Class B Common Stock Equity Interest**:  An Equity Interest represented by the 3,000,000 authorized shares of BUFC's Class B Common Stock, $0.01 par value per share, including, without limitation, one of the 479,734 shares of Class B Common Stock, $0.01 par value per share, of BUFC issued and outstanding as of the Petition Date, or any interest or right to convert into such an Equity Interest or acquire any Equity Interest of BUFC that was in existence immediately before or on the Petition Date.

1.42   **Common Equity Interest**:  The Class A Common Stock Equity Interests and the Class B Common Stock Equity Interests.

1.43   **Confidentiality Stipulation**:  The August 18, 2009 *Confidentiality Stipulation Regarding Discovery Materials* entered into between and among the Debtors, the FDIC-Receiver, New Bank, and the OTS.

1.44   **Confirmation Date**:  The date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.45   **Confirmation Hearing**:  The hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.46   **Confirmation Order**:  The order of the Bankruptcy Court confirming the Plan in accordance with section 1129 of the Bankruptcy Code and directing the consummation of the transactions contemplated therein, which order shall (a) be in form and substance satisfactory to the Debtors, the Creditors' Committee, and the Investor, (b) not be subject to any stay.

1.47   **Cramdown**:  Confirmation of the Plan notwithstanding the rejection or deemed rejection of the Plan by an impaired Class of Claims or Equity Interests, as provided in Section 1129(b) of the Bankruptcy Code.

1.48   **CRE**:  CRE America Corporation, a Florida corporation.

1.49   **CRE Stock Interests**:  The issued and outstanding common stock of CRE, 100% of which is held by BUFC.

1.50   **CRE Unsecured Claim**:  An Unsecured Claim against CRE.

1.51   **Creditor**:  Any Entity holding a Claim against one or more of the Debtors or the Debtors' estates or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtors, including, without limitation, a Claim against any of the Debtors or Debtors in Possession of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

1.52   **Creditor Cash**:  On the Effective Date (or as soon as practicable thereafter when the Disbursing Agent is prepared to make its initial distribution pursuant to Section 9.1 of the Plan), the excess, if any, of (i) all Cash and Cash Equivalents to be distributed by the Disbursing Agent in accordance with the Plan over (ii) such amounts of Cash (a) reasonably determined by the Disbursing Agent as necessary to satisfy, in accordance with the terms and conditions of the Plan, Allowed Administrative Expense Claims, Allowed Priority Tax Claims (to the extent

necessary), Allowed Priority Non-Tax Claims, Trustee Claims, and fees and expenses of the Disbursing Agent as of the Effective Date, (b) necessary to fund the Liquidating Trust in accordance with Article VII of the Plan, as reasonably determined by the Debtors, (c) necessary to make pro rata distributions to holders of Disputed Claims as if such Disputed Claims were, at such time, Allowed Claims, (d) necessary to make pro rata distributions to holders of Administrative Expense Claims that have not yet been filed or Allowed as of the Effective Date, and (e) reasonably determined by the Investor and Reorganized BUFC, in accordance with the terms and conditions of the Master Subscription Agreement, as necessary to fund Reorganized BUFC.

1.53    **Creditors' Committee**:  The official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

1.54    **CRO**:  Joseph J. Luzinski, Chief Restructuring Officer of the Debtors.

1.55    **D&O Claims**:  To the extent of the Debtors' rights, title and interest therein in whatever capacity, all Causes of Action against the Debtors' former officers and directors accrued as of the Petition Date.

1.56    **Debtors**:  Collectively, BUFC, BUFS, and CRE.

1.57    **Debtors in Possession**:  The Debtors as debtors in possession pursuant to sections 1101(1), 1107(a), and 1108 of the Bankruptcy Code.

1.58    **Disbursing Agent**:  With respect to (a) the initial distribution of (i) Cash pursuant to Section 3.1 of the Plan to holders of Allowed Administrative Expense Claims and, to the extent applicable, Allowed Priority Tax Claims as of the Effective Date, (ii) Cash to holders of Allowed Priority Non-Tax Claims as of the Effective Date, (iii) Cash to holders of Trustee Claims as of the Effective Date, (iv) Creditor Cash pursuant to Section 9.1(a) of the Plan, (v) Reorganized BUFC Junior Preferred Stock pursuant to Section 9.1(b) of the Plan, (vi) Reorganized BUFC Common Stock pursuant to Section 9.1(c) of the Plan, (vii) property or Cash to holders of Allowed Secured Claims pursuant to Section 9.1(e) of the Plan, (viii) Cash to holders of Allowed BUFS Unsecured Claims pursuant to Section 9.1(f) of the Plan, and (ix) Cash to holders of Allowed CRE Unsecured Claims pursuant to Section 9.1(g) of the Plan, the Reorganized Debtors or such other Entity designated in the Confirmation Order and (b) with respect to all subsequent distributions, the Liquidating Trustee or any Entity in its capacity as a disbursing agent.

1.59    **Disclosure Statement**:  The disclosure statement relating to the Plan and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.60    **Disclosure Statement Order**:  The Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

1.61    **Disputed Claim**:  A Claim against the Debtors, to the extent the allowance of such Claim is the subject of a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise

disputed by the Debtors in accordance with applicable law, and which objection, request for estimation, or dispute has not been withdrawn, with prejudice, or determined by a Final Order.

1.62  **Distribution Date**:  A date to be determined by the Disbursing Agent that is no later than the first Business Day that is fourteen (14) days after the Effective Date.

1.63  **Distribution Record Date**: The Effective Date.

1.64  **Effective Date**:   The first Business Day on which (i) all of the conditions precedent to confirmation of the Plan specified in Section 14.1 of the Plan shall have been satisfied or waived, as provided in Section 14.2 of the Plan, and (ii) all the conditions precedent to the effectiveness of the Plan specified in Section 15.1 of the Plan shall have been satisfied or waived as provided in Section 15.2 of the Plan.

1.65  **Eligible Claim**: An Allowed Senior Notes Claim held continuously by the same Entity between November 23, 2007 and the Voting Record Date, to the extent of the minimum face amount of such Senior Notes held continuously by such Entity during such period.

1.66  **Eligible Creditor**: An Entity that holds an Eligible Claim.

1.67  **Eligible Creditor Election**:   An election on the Ballot by an Eligible Creditor to receive, pursuant to Section 3.3(a)(2) of the Plan, shares of Reorganized BUFC Common Stock.

1.68  **Entity**:  A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the office of the United States Trustee, or any other entity.

1.69  **Equity Interest**:  The interest of any holder of one or more equity securities of BUFC (including, without limitation, voting rights, if any, related to such equity securities) represented by issued and outstanding shares of common or preferred stock or other instruments evidencing a present ownership interest in BUFC, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including, without limitation, unvested restricted stock.

1.70  **FDIC Claim**:  That portion of the amended proof of Claim filed by the FDIC-Receiver against BUFC's estate in an unliquidated amount and assigned claim number 103, which is not a Priority Non-Tax Claim.

1.71  **FDIC-Corporate**:  The Federal Deposit Insurance Corporation, in its corporate capacity.

1.72  **FDIC-Receiver**:  The Federal Deposit Insurance Corporation, in its capacity as receiver for BUFSB.

1.73  **Final Order**:  An order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed,

vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, re-argument, or rehearing shall then be pending or, (ii) if an appeal, writ of certiorari, new trial, re-argument, or rehearing thereof has been sought, (a) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order and (b) the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing shall have expired; <u>provided, however</u>, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the Local Bankruptcy Rules.

1.74    **General Unsecured Claim**:  An Unsecured Claim against BUFC other than a Senior Notes Claim, an FDIC Claim, or a Subordinated Notes Claim.

1.75    **Hedge Fund Investments**:  BUFC's investments in Malta Hedge Fund II, L.P. and SOAM Capital Partners, L.P.

1.76    **HiMEDs Indenture**:  The Base Indenture, dated as of April 18, 2007, First Supplemental Indenture, dated as of April 25, 2007, and Purchase Contract and Pledge Agreement, each by and between BUFC and the HiMEDs Indenture Trustee.

1.77    **HiMEDs Indenture Trustee**:  The Bank of New York Mellon, as trustee, purchase contract agent, collateral agent, custodial agent, and securities intermediary with respect to the HiMEDs Notes.

1.78    **HiMEDs Notes**:  BUFC's 6.37% Senior Notes due May 17, 2012.

1.79    **HiMEDs Notes Claim**:  An Unsecured Claim arising from or relating to the HiMEDs Notes.

1.80    **Indentures**:  The Senior Indentures and the Subordinated Indentures.

1.81    **Information Access Agreement**:  The July 15, 2009 *Stipulation Among Debtors, the Federal Deposit Insurance Corporation and New BankUnited* entered into between and among the Debtors, the FDIC-Receiver, and New Bank.

1.82    **Information Demands**:  Any and all subpoenas and other demands for documents, testimony and other information issued in connection with any current or future pending or threatened legal proceedings (whether judicial, regulatory, administrative, arbitral, investigative, criminal, civil, or otherwise).

1.83    **Intercompany Claim**:  A Claim against any of the BUFC Entities held by another of the BUFC Entities.

1.84    **Interests**:  Collectively, Equity Interests, BUFS Stock Interests, and CRE Stock Interests.

1.85    **Investment**:  Cash and securities to be invested by the Investor as a capital infusion in Reorganized BUFC pursuant to the Master Subscription Agreement.

1.86    **Investor**:  The Entity to make the Investment pursuant to the Master Subscription Agreement.

1.87    **Junior Subordinated Debentures**:  BUFC's Floating Rate Junior Subordinated Debentures due 2017.

1.88    **Junior Subordinated Debentures Claim**:  An Unsecured Claim arising from or relating to the Junior Subordinated Debentures.

1.89    **Junior Subordinated Indenture**:  The Indenture, dated as of September 28, 2007, by and between BUFC, as issuer, and the Junior Subordinated Indenture Trustee.

1.90    **Junior Subordinated Indenture Trustee**:  Wilmington Trust, as trustee, with respect to the Junior Subordinated Debentures.

1.91    **IRC**:  The Internal Revenue Code of 1986, as amended from time to time.

1.92    **IRS**:  The Internal Revenue Service, an agency of the United States Department of Treasury.

1.93    **Law Debenture Trust Company**:  Law Debenture Trust Company of New York.

1.94    **Lien**:  Any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.95    **Liquidating Trust**:  The Entity to be created on or after the Confirmation Date in accordance with the provisions of Article VII hereof and the Liquidating Trust Agreement, for the benefit of holders of Allowed Senior Notes Claims, Allowed General Unsecured Claims, Allowed FDIC Claims, and Allowed Subordinated Notes Claims, in accordance with the terms and provisions of the Plan.

1.96    **Liquidating Trust Agreement**:  The Liquidating Trust Agreement, substantially in the form contained in the Plan Supplement, pursuant to which the Liquidating Trustee shall manage and administer the Liquidating Trust Assets and distribute the proceeds thereof, if any.

1.97    **Liquidating Trust Assets**:  From and after the Effective Date, all Assets of BUFC except (i) Cash to be distributed by the Reorganized Debtors as Disbursing Agent to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims (to the extent applicable), Allowed Priority Non-Tax Claims, and Allowed Trustee Claims, in each case as of the Effective Date, (ii) Cash necessary to reimburse the Reorganized Debtors for fees and expenses incurred in connection with initial distributions made by the Reorganized Debtors as Disbursing Agent, (iii) Creditor Cash on the Effective Date, (iv) the Hedge Fund Investments, (v)

the Tax Attributes, and (vi) BUFS Stock Interests, BU Realty Stock Interests, and CRE Stock Interests.

1.98    **Liquidating Trust Beneficiaries**:  The holders of Allowed Senior Notes Claims, Allowed General Unsecured Claims, Allowed FDIC Claims, and Allowed Subordinated Notes Claims, to the extent such holders have received Liquidating Trust Interests under the Plan (and any transferee thereof, and any subsequent transferee of any transferor of Liquidating Trust Interests).

1.99    **Liquidating Trust Claims Reserve**:  Any Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, even if held in commingled accounts.

1.100    **Liquidating Trustee**: [_____] and such additional trustee(s) as may be appointed by the Trust Advisory Board in accordance with applicable law.

1.101    **Liquidating Trust Interests**:  The beneficial interests in the Liquidating Trust allocable to certain holders of Allowed Claims (and any transferee thereof, and any subsequent transferee of any transferor of Liquidating Trust Interests) in accordance with the terms and conditions of Article VII of the Plan.

1.102    **Local Bankruptcy Rules**:  The Local Rules of the United States Bankruptcy Court for the Southern District of Florida, as amended from time to time.

1.103    **Master Subscription Agreement**:  That certain Master Subscription Agreement between BUFC and the Investor (including all schedules and exhibits thereto), substantially in the form contained in the Plan Supplement.

1.104    **New Bank**:  BankUnited, a *de novo* federal savings association organized under the laws of the United States, which acquired substantially all of BUFSB's assets from the FDIC-Receiver pursuant to the Purchase and Assumption Agreement.

1.105    **OTS**:    The Office of Thrift Supervision, an agency of the United States Department of Treasury.

1.106    **Person**:    An individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government, or agency or political subdivision thereof, or any other form of legal entity.

1.107    **Petition Date**: May 22, 2009, the date on which each of the respective Debtors filed its voluntary petition for relief commencing the Chapter 11 Cases.

1.108    **Plan**:  This Debtors' Joint Chapter 11 Plan of Reorganization, including, without limitation, the exhibits and schedules hereto, as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.109    **Plan Supplement**:    A separate volume, to be filed with the clerk of the Bankruptcy Court, including, among other documents, forms of (i) the Liquidating Trust

Agreement, (ii) the Master Subscription Agreement, (iii) the Reorganized Debtors' Bylaws, (iv) the Reorganized Debtors' Articles of Incorporation, and (v) a list of executory contracts and unexpired leases to be rejected pursuant to Section 12.1 of the Plan which, in each case, shall be in form and substance satisfactory to the Creditors' Committee. The Plan Supplement (containing drafts or final versions of the foregoing documents) shall be filed with the clerk of the Bankruptcy Court as soon as practicable (but in no event later than fourteen (14) days) before the Ballot Date, or on such other date as the Bankruptcy Court establishes.

1.110    **Preferred Equity Interest**:  An Equity Interest represented by the 10,000,000 authorized shares of BUFC's Noncumulative Convertible Preferred Stock, Series B, $0.01 par value per share, including, without limitation, one of the 1,238,133 shares of Noncumulative Convertible Preferred Stock, Series B, $0.01 par value per share, of BUFC issued and outstanding as of the Petition Date, or any interest or right to convert into such an Equity Interest or acquire any Equity Interest of BUFC that was in existence immediately before or on the Petition Date.

1.111    **Priority Non-Tax Claim**:  A Claim entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.112    **Priority Tax Claim**: A Claim of a governmental unit of the kind entitled to priority in payment pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.113    **Privileges**:  All attorney-client privileges, work product protections, and other immunities or protections from disclosure held by the Debtors.

1.114    **Pro Rata Share**:  With respect to Allowed Claims (i) within the same Class, the proportion that an Allowed Claim bears to the sum of all Allowed Claims within such Class, and (ii) among all Classes, the proportion that a Class of Allowed Claims bears to the sum of all Allowed Claims, without regard to subordination; provided, however, that, notwithstanding the foregoing, for purposes of distributing Creditor Cash, Liquidating Trust Interests, Reorganized BUFC Junior Preferred Stock, and Reorganized BUFC Common Stock, "Pro Rata Share" shall not include Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Trustee Claims. With respect to Eligible Claims in respect of which an Eligible Creditor has made an Eligible Creditor Election and is to receive Reorganized BUFC Common Stock pursuant to Section 3.3(a)(2) of the Plan, the proportion that such Eligible Claim bears to the sum of all Eligible Claims in respect of which Eligible Creditors are to receive Reorganized BUFC Common Stock pursuant to Section 3.3(a)(2) of the Plan.

1.115    **Purchase and Assumption Agreement**:    The Purchase and Assumption Agreement (Whole Bank, All Deposits) among the FDIC-Receiver, FDIC-Corporate, and BUFSB dated as of May 21, 2009.

1.116    **Receivership**:  BUFSB's receivership.

1.117    **Related Persons**:  With respect to any Entity, such predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former Affiliates and each of their respective current and former officers, directors, employees,

managers, shareholders, equity holders, members, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, or other representatives, nominees or investment managers, each acting in such capacity, and any Entity claiming by or through any of them.

1.118    **Released Parties**:  Collectively, (a) the Creditors' Committee and each of its members in their capacity as members of the Creditors' Committee, the CRO, the Liquidating Trust, the Liquidating Trustee, the Retained Professionals, the Reorganized Debtors, the Trustees, and each of the foregoing parties' respective Related Persons; and (b) each of the BUFC Entities, each of the Debtors' estates, and the BUFC Board.

1.119    **Reorganized BUFC**:  BUFC, on and after the Effective Date.

1.120    **Reorganized BUFC Articles of Incorporation**:  The Articles of Incorporation of Reorganized BUFC, which articles shall be in substantially the form included in the Plan Supplement and shall be in form and substance reasonably satisfactory to the Creditors' Committee.

1.121    **Reorganized BUFC Bylaws**:  The bylaws of Reorganized BUFC, which bylaws shall be in substantially the form included in the Plan Supplement and shall be in form and substance reasonably satisfactory to the Creditors' Committee.

1.122    **Reorganized BUFC Common Stock**:  The new common stock, par value $0.001 per share, of Reorganized BUFC to be authorized and issued under Section 10.7 of the Plan as of the Effective Date, with terms substantially as set forth in the Reorganized BUFC Articles of Incorporation and the Reorganized BUFC Bylaws.

1.123    **Reorganized BUFC Junior Preferred Stock**:  The new cumulative preferred stock, par value $0.001 per share, of Reorganized BUFC to be authorized and issued under Section 10.7 of the Plan as of the Effective Date, with terms substantially as set forth in the Reorganized BUFC Articles of Incorporation and the Reorganized BUFC Bylaws.

1.124    **Reorganized BUFC Securities**:  Collectively, Reorganized BUFC Common Stock, Reorganized BUFC Senior Preferred Stock, and Reorganized BUFC Junior Preferred Stock.

1.125    **Reorganized BUFC Senior Preferred Stock**:  The new senior preferred stock, par value $0.001 per share, of Reorganized BUFC to be authorized and issued under Section 10.7 of the Plan as of the Effective Date, with terms substantially as set forth in the Reorganized BUFC Articles of Incorporation and the Reorganized BUFC Bylaws.

1.126    **Reorganized BUFC Subsidiaries**:  Reorganized BUFS, Reorganized CRE, and BU Realty.

1.127    **Reorganized BUFS**:  BUFS, on and after the Effective Date.

1.128    **Reorganized CRE**:  CRE, on and after the Effective Date.

1.129 **Reorganized Debtors**:    Reorganized BUFC, Reorganized BUFS, and Reorganized CRE.

1.130 **Reorganized Debtors' Articles of Incorporation**:    The Reorganized BUFC Articles of Incorporation, together with the respective Articles of Incorporation of Reorganized BUFS and Reorganized CRE, which articles shall be in substantially the form included in the Plan Supplement and shall be in form and substance reasonably satisfactory to the Creditors' Committee.

1.131 **Reorganized Debtors' Bylaws**:    The Reorganized BUFC Bylaws, together with the respective bylaws of Reorganized BUFS and Reorganized CRE, which bylaws shall be in substantially the form included in the Plan Supplement and shall be in form and substance reasonably satisfactory to the Creditors' Committee.

1.132 **Retained Professionals**:    The following professional firms retained in the Chapter 11 Cases pursuant to Section 327 of the Bankruptcy Code or 28 U.S.C. § 156(c) and each of their respective Related Persons, as well as any other professional firms to be retained in the Chapter 11 Cases pursuant to Section 327 of the Bankruptcy Code and each of their respective Related Persons, but specifically excluding PriceWaterhouseCoopers, LLP and any of its Related Persons: Development Specialists, Inc.; Diamond McCarthy LLP; Epiq Bankruptcy Solutions, LLC; Greenberg Traurig P.A.; Kilpatrick Stockton LLP; Kozyak Tropin & Throckmorton, P.A.; Morrison Brown Argiz & Farra, LLP; and J.H. Cohn LLP.

1.133 **Schedules**:    Collectively, the schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms in the Chapter 11 Cases, as may have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.134 **Secured Claim**:    A Claim that is secured by a valid, perfected and enforceable Lien on any Asset, to the extent of the value of the interest of the holder of such Secured Claim in such Asset.

1.135 **Senior Convertible Notes**:    BUFC's 3.125% Convertible Senior Notes due 2034.

1.136 **Senior Convertible Notes Claim**:    An Unsecured Claim arising from or relating to the Senior Convertible Notes.

1.137 **Senior Convertible Notes Indenture**:    The indenture, dated as of February 27, 2004, by and between BUFC and the Senior Convertible Notes Indenture Trustee.

1.138 **Senior Convertible Notes Indenture Trustee**:    U.S. Bank, as indenture trustee with respect to the Senior Convertible Notes.

1.139 **Senior Indentures**:    The Senior Convertible Notes Indenture and the HiMEDs Indenture.

1.140 **Senior Indenture Trustees**:  The Senior Convertible Notes Indenture Trustee and the HiMEDs Indenture Trustee.

1.141 **Senior Notes**:  The Senior Convertible Notes and the HiMEDs Notes.

1.142 **Senior Notes Claim**:  An Unsecured Claim arising from or relating to the Senior Notes.

1.143 **State Street**:  State Street Bank and Trust Company of Connecticut, National Association.

1.144 **Statutory Trust III Debentures**:  BUFC's Floating Rate Junior Subordinated Deferrable Interest Debentures due 2032 issued pursuant to the Statutory Trust III Indenture.

1.145 **Statutory Trust III Debentures Claim**:  An Unsecured Claim arising from or relating to the Statutory Trust III Debentures.

1.146 **Statutory Trust III Indenture**:  The Indenture, dated as of September 26, 2002, by and between BUFC and the Statutory Trust III Indenture Trustee.

1.147 **Statutory Trust III Indenture Trustee**: Law Debenture Trust Company, as successor trustee to U.S. Bank, as successor trustee to State Street, with respect to the Statutory Trust III Debentures.

1.148 **Statutory Trust IV Debentures**:  BUFC's Floating Rate Junior Subordinated Deferrable Interest Debentures due 2032 issued pursuant to the Statutory Trust IV Indenture.

1.149 **Statutory Trust IV Debentures Claim**:  An Unsecured Claim arising from or relating to the Statutory Trust IV Debentures.

1.150 **Statutory Trust IV Indenture**:  The Indenture, dated as of November 15, 2002, by and between BUFC and the Statutory Trust IV Indenture Trustee.

1.151 **Statutory Trust IV Indenture Trustee**:  Law Debenture Trust Company, as successor trustee to U.S. Bank, as successor trustee to State Street, with respect to the Statutory Trust IV Debentures.

1.152 **Statutory Trust V Debentures**:  BUFC's Floating Rate Junior Subordinated Deferrable Interest Debentures due 2032 issued pursuant to the Statutory Trust V Indenture.

1.153 **Statutory Trust V Debentures Claim**:  An Unsecured Claim arising from or relating to the Statutory Trust V Debentures.

1.154 **Statutory Trust V Indenture**:  The Indenture, dated as of December 19, 2002, by and between BUFC and the Statutory Trust V Indenture Trustee.

1.155  **Statutory Trust V Indenture Trustee**:  Law Debenture Trust Company, as successor trustee to U.S. Bank, as successor trustee to State Street, with respect to the Statutory Trust V Debentures.

1.156  **Statutory Trust VI Debentures**:  BUFC's Floating Rate Junior Subordinated Deferrable Interest Debentures due 2033 issued pursuant to the Statutory Trust VI Indenture.

1.157  **Statutory Trust VI Debentures Claim**:  An Unsecured Claim arising from or relating to the Statutory Trust VI Debentures.

1.158  **Statutory Trust VI Indenture**:  The Indenture, dated as of March 26, 2003, by and between BUFC and the Statutory Trust VI Indenture Trustee.

1.159  **Statutory Trust VI Indenture Trustee**:  Law Debenture Trust Company, as successor trustee to U.S. Bank, with respect to the Statutory Trust VI Debentures.

1.160  **Statutory Trust VII Debentures**:  BUFC's Floating Rate Junior Subordinated Deferrable Interest Debentures 2033 issued pursuant to the Statutory Trust VII Indenture.

1.161  **Statutory Trust VII Debentures Claim**:  An Unsecured Claim arising from or relating to the Statutory Trust VII Debentures.

1.162  **Statutory Trust VII Indenture**:  The Indenture, dated as of April 10, 2003, by and between BUFC, as issuer, and the Statutory Trust VII Indenture Trustee.

1.163  **Statutory Trust VII Indenture Trustee**: Wilmington Trust, as trustee, with respect to the Statutory Trust VII Debentures.

1.164  **Statutory Trust VIII Debentures**:  BUFC's Floating Rate Junior Subordinated Deferrable Interest Debentures due 2034 issued pursuant to the Statutory Trust VIII Indenture.

1.165  **Statutory Trust VIII Debentures Claim**:  An Unsecured Claim arising from or relating to the Statutory Trust VIII Debentures.

1.166  **Statutory Trust VIII Indenture**:  The Indenture, dated as of November 30, 2004, by and between BUFC, as issuer, and the Statutory Trust VIII Indenture Trustee.

1.167  **Statutory Trust VIII Indenture Trustee**:  Wilmington Trust, as trustee, with respect to the Statutory Trust VIII Debentures.

1.168  **Statutory Trust IX Debentures**:  BUFC's Fixed/Floating Rate Junior Subordinated Deferrable Interest Debentures due 2034 issued pursuant to the Statutory Trust IX Indenture.

1.169  **Statutory Trust IX Debentures Claim**:  An Unsecured Claim arising from or relating to the Statutory Trust IX Debentures.

1.170    **Statutory Trust IX Indenture**:  The Indenture, dated as of November 30, 2004, by and between BUFC, as issuer and the Statutory Trust IX Indenture Trustee.

1.171    **Statutory Trust IX Indenture Trustee**:  Wilmington Trust, as trustee, with respect to the Statutory Trust IX Debentures.

1.172    **Statutory Trust X Debentures**:  BUFC's Junior Subordinated Debt Securities due 2036 issued pursuant to the Statutory Trust X Indenture.

1.173    **Statutory Trust X Debentures Claim**:  An Unsecured Claim arising from or relating to the Statutory Trust X Debentures.

1.174    **Statutory Trust X Indenture**:  The Indenture, dated as of October 3, 2006, by and between BUFC, as issuer, and the Statutory X Indenture Trustee.

1.175    **Statutory Trust X Indenture Trustee**:  Wells Fargo, as successor trustee to Deutsche Bank Trust Company Delaware, with respect to the  Statutory Trust X Debentures.

1.176    **Statutory Trust XI Debentures**:  BUFC's Floating Rate Junior Subordinated Deferrable Interest Debentures due 2037 issued pursuant to the Statutory Trust XI Indenture.

1.177    **Statutory Trust XI Debentures Claim**:  An Unsecured Claim arising from or relating to the Statutory Trust XI Debentures.

1.178    **Statutory Trust XI Indenture**:  The Indenture, dated as of March 15, 2007, by and between BUFC, as issuer and the Statutory Trust XI Indenture Trustee.

1.179    **Statutory Trust XI Indenture Trustee**: Wilmington Trust, as trustee, with respect to the Statutory Trust XI Debentures.

1.180    **Statutory Trust XII Debentures**:  BUFC's Floating Rate Junior Subordinated Deferrable Interest Debentures due 2037 issued pursuant to the Statutory Trust XII Indenture.

1.181    **Statutory Trust XII Debentures Claim**:  An Unsecured Claim arising from or relating to the Statutory Trust XII Debentures.

1.182    **Statutory Trust XII Indenture**:  The Indenture, dated as of September 20, 2007, by and between BUFC, as issuer and the Statutory Trust XII Indenture Trustee.

1.183    **Statutory Trust XII Indenture Trustee**: Wilmington Trust, as trustee, with respect to the Statutory Trust XII Debentures.

1.184    **Statutory Trust Indenture Trustees**:  The Statutory Trust III Indenture Trustee, the Statutory Trust IV Indenture Trustee, the Statutory Trust V Indenture Trustee, the Statutory Trust VI Indenture Trustee, the Statutory Trust VII Indenture Trustee, the Statutory Trust VIII Indenture Trustee, the Statutory Trust IX Indenture Trustee, the Statutory Trust X Indenture Trustee, the Statutory Trust XI Indenture Trustee, and the Statutory Trust XII Indenture Trustee.

1.185  **Statutory Trust Indentures**:  The Statutory Trust III Indenture, the Statutory Trust IV Indenture, the Statutory Trust V Indenture, the Statutory Trust VI Indenture, the Statutory Trust VII Indenture, the Statutory Trust VIII Indenture, the Statutory Trust IX Indenture, the Statutory Trust X Indenture, the Statutory Trust XI Indenture, and the Statutory Trust XII Indenture.

1.186  **Subordinated Indentures**: The Statutory Trust Indentures and the Junior Subordinated Indenture.

1.187  **Subordinated Indenture Trustees**:  The Statutory Trust Indenture Trustees and the Junior Subordinated Indenture Trustee.

1.188  **Subordinated Notes**:  The Trust Preferred Subordinated Debentures and the Junior Subordinated Debentures.

1.189  **Subordinated Notes Claim**:  An Unsecured Claim arising from or relating to the Subordinated Notes.

1.190  **Tax Authority**:  A federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, court, or other body (if any) charged with the administration of any law relating to Taxes.

1.191  **Taxes**:  All (i) federal, state, local, or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, and estimated taxes, and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (i) hereof.

1.192  **Tax Attributes**:  To the extent of the Debtors' rights, title and interest therein in whatever capacity, all tax attributes, including without limitation all net operating loss carryforwards, of the Debtors and any consolidated, combined or unitary tax group of which the Debtors are members for taxable periods ended on or before September 31, 2009, other than the Tax Refunds.

1.193  **Tax Refunds**:  To the extent of the Debtors' rights, title and interest therein in whatever capacity, all refunds of Taxes of the Debtors and any consolidated, combined or unitary tax group of which the Debtors are members for taxable periods ended on or before September 31, 2009, including, without limitation, any interest received with respect to such refunds.

1.194  **Tax Return**:  A return, declaration, form, election letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Taxes, including any schedule or attachment thereto or amendment thereof, including any claim for a Tax Refund.

1.195  **Trading Injunction Order**:  The June 30, 2009 *Final Order (1) Establishing Trading Procedures and Restrictions so as to Enforce the Automatic Stay to Restrict Transfers of Equity Interests; and (2) Authorizing Form of Notice and Payment of Administrative Expense for Publication* (DE #122), entered by the Bankruptcy Court in the Chapter 11 Cases.

1.196   **Transaction**:  The transactions contemplated by the Plan, the exhibits to the Plan, the Master Subscription Agreement, and the other documents comprising the Plan Supplement.

1.197   **Treasury Regulations**:  The United States Department of Treasury regulations promulgated under the IRC.

1.198   **Trust Advisory Board**:  The trust advisory board provided for in the Liquidating Trust Agreement, to be selected jointly by the Debtors and the Creditors' Committee, which board shall have an oversight function with respect to the Liquidating Trust, and the composition of which may change only in accordance with the Liquidating Trust Agreement.

1.199   **Trustee Claims**:   The Claims of the Trustees pursuant to the respective Indentures, for reasonable fees and expenses, including, without limitation, reasonable attorneys' fees and expenses.

1.200   **Trustee Distribution Expenses**:  The reasonable, direct, out-of-pocket costs and expenses incurred by the Trustees in connection with making distributions pursuant to the Plan.

1.201   **Trustees**:   The Senior Indenture Trustees and the Subordinated Indenture Trustees.

1.202   **Trust Preferred Securities**:  Collectively, the Trust Preferred Securities III, the Trust Preferred Securities IV, the Trust Preferred Securities V, the Trust Preferred Securities VI, the Trust Preferred Securities VII, the Trust Preferred Securities VIII, the Trust Preferred Securities IX, the Trust Preferred Securities X, the Trust Preferred Securities XI, and the Trust Preferred Securities XII.

1.203   **Trust Preferred Securities III**:  The Capital Securities issued pursuant to the Amended and Restated Declaration of the BankUnited Statutory Trust III, dated September 26, 2002, by and between Law Debenture Trust Company, as successor Institutional Trustee and BUFC as Sponsor.

1.204   **Trust Preferred Securities IV**:  The Capital Securities issued pursuant to the Amended and Restated Declaration of the BankUnited Statutory Trust IV, dated November 15, 2002, by and between Law Debenture Trust Company, as successor Institutional Trustee and BUFC as Sponsor.

1.205   **Trust Preferred Securities V**:  The Capital Securities issued pursuant to the Amended and Restated Declaration of the BankUnited Statutory Trust V, dated December 19, 2002, by and between Law Debenture Trust Company, as Institutional Trustee and BUFC as Sponsor.

1.206   **Trust Preferred Securities VI**:  The Capital Securities issued pursuant to the Amended and Restated Declaration of the BankUnited Statutory Trust VI, dated March 26, 2003, by and between Law Debenture Trust Company, as Institutional Trustee and BUFC as Sponsor.

1.207   **Trust Preferred Securities VII**: The MMCapS Floating Rate Capital Securities of BankUnited Statutory Trust VII issued pursuant to the Amended and Restated Declaration of

the BankUnited Statutory Trust VII dated April 10, 2003, by and between Wilmington Trust, as Delaware Trustee and Institutional Trustee and BUFC as Sponsor.

1.208   **Trust Preferred Securities VIII**:  The 15,000 Floating Rate Capital Securities of BankUnited Statutory Trust VIII issued pursuant to the Amended and Restated Declaration of the BankUnited Statutory Trust VIII, dated November 30, 2004, by and between Wilmington Trust, as Delaware Trustee and Institutional Trustee, BUFC as Sponsor, and Humberto Lopez, Roberto Diaz and Thomas Powell as Administrators.

1.209   **Trust Preferred Securities IX**:   The 15,000 Fixed/Floating Rate Capital Securities of BankUnited Statutory Trust IX issued pursuant to the Amended and Restated Declaration of the BankUnited Statutory Trust IX, dated November 30, 2004, by and between Wilmington Trust, as Delaware Trustee and Institutional Trustee, BUFC as Sponsor, and Humberto Lopez, Roberto Diaz and Thomas Powell as Administrators.

1.210   **Trust Preferred Securities X**:  The Capital Securities and Common Securities issued pursuant to the Amended and Restated Declaration of Statutory Trust X, dated October 3, 2006 by and between Wells Fargo Delaware Trust Company, as Delaware Trustee, Wells Fargo Bank, National Association, as Institutional Trustee, BUFC, as Sponsor, and Bernardo Agrudin and David Green as Administrators.

1.211   **Trust Preferred Securities XI**:  The 50,000 Floating Rate Capital Securities of BankUnited Statutory Trust XI issued pursuant to the Amended and Restated Declaration of the BankUnited Statutory Trust XI, dated March 15, 2007, by and between Wilmington Trust, as Delaware Trustee and Institutional Trustee, BUFC as Sponsor, and Bernardo Agrudin and David Green as Administrators.

1.212   **Trust Preferred Securities XII**:  The 7,500 Floating Rate Capital Securities of BankUnited Statutory Trust XII issued pursuant to the Amended and Restated Declaration of the BankUnited Statutory Trust XII, dated September 20, 2007, by and between Wilmington Trust, as Delaware Trustee and Institutional Trustee, BUFC as Sponsor, and Elsa C. Soler and David Green as Administrators.

1.213   **Trust Preferred Subordinated Debentures**:  Collectively, the Statutory Trust III Debentures, Statutory Trust IV Debentures, Statutory Trust V Debentures, Statutory Trust VI Debentures, Statutory Trust VII Debentures, Statutory Trust VIII Debentures, Statutory Trust IX Debentures, Statutory Trust X Debentures, Statutory Trust XI Debentures, and Statutory Trust XII Debentures.

1.214   **Unsecured Claim**:   A Claim against a Debtor, other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, or a Trustee Claim.

1.215   **U.S. Bank**:  U.S. Bank, National Association.

1.216   **Voting Record Date**:   The date established by the Bankruptcy Court in the Disclosure Statement Order for the purpose of determining the holders of Allowed Claims and Equity Interests entitled to vote on the Plan.

1.217 **Wells Fargo**:  Wells Fargo Bank, National Association.

1.218 **Wilmington Trust**:  Wilmington Trust Company.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 **Classification Generally**.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and such Claim or Interest has not been paid, released, or otherwise settled before the Effective Date.  A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

2.2 **Unclassified Claims**.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims have not been classified.

2.3 **Unimpaired/non-voting Classes of Claims**.  The following Classes of Claims are unimpaired and therefore not entitled to vote on the Plan:

    (a)    **Class 1**:  Priority Non-Tax Claims

    (b)    **Class 2**:  Secured Claims

2.4 **Impaired/voting Classes of Claims**.  The following Classes of Claims are impaired and therefore entitled to vote on the Plan:

    (a)    **Class 3**:  Senior Notes Claims

        (1)    Class 3A:  Senior Convertible Notes Claims

        (2)    Class 3B:  HiMEDs Notes Claims

    (b)    **Class 4**:  General Unsecured Claims

    (c)    **Class 5** BUFS Unsecured Claims

    (d)    **Class 6** CRE Unsecured Claims

    (e)    **Class 7**:  FDIC Claims

    (f)    **Class 8**:  Subordinated Notes Claims

        (1)    Class 8A:  Statutory Trust III Debentures Claims

        (2)    Class 8B:  Statutory Trust IV Debentures Claims

        (3)    Class 8C:  Statutory Trust V Debentures Claims

        (4)    Class 8D:  Statutory Trust VI Debentures Claims

(5)    Class 8E:  Statutory Trust VII Debentures Claims

(6)    Class 8F:  Statutory Trust VIII Debentures Claims

(7)    Class 8G:  Statutory Trust IX Debentures Claims

(8)    Class 8H:  Statutory Trust X Debentures Claims

(9)    Class 8I:  Statutory Trust XI Debentures Claims

(10)   Class 8J:  Statutory Trust XII Debentures Claims

(11)   Class 8K:  Subordinated Debentures Claims

2.5    **Impaired/non-voting Classes of Interests**.  The following Classes of Interests are impaired, but are not entitled to vote and are deemed to have rejected the Plan:

(a)    **Class 9**:  Preferred Equity Interests

(b)    **Class 10**:  Common Equity Interests

(1)    Class 10A: Class A Common Stock Equity Interests

(2)    Class 10B: Class B Common Stock Equity Interests

2.6    **Impaired/voting Classes of Interests**.  The following Classes of Interests are impaired and therefore entitled to vote on the Plan:

(a)    **Class 11**:  BUFS Stock Interests

(b)    **Class 12**:  CRE Stock Interests

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

3.1    **Unclassified Claims**:

(a)    **Administrative Claims**.  On the later to occur of (i) the Effective Date and (ii) the date on which an Administrative Expense Claim shall become an Allowed Claim, the Disbursing Agent shall (a) pay to each holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Allowed Administrative Expense Claim or (b) satisfy and discharge such Allowed Administrative Expense Claim in accordance with such other terms no more favorable to the claimant than as may be agreed upon by and between the holder thereof and the Disbursing Agent; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid in full and performed by the Disbursing Agent in the ordinary course of business in accordance with the terms and subject to the conditions of any agreement governing, instrument evidencing, or other document relating to such transactions; and provided, further, that, if any such ordinary course expense is not billed, or a request for payment is not made, within ninety (90) days after

the Effective Date, such ordinary course expense shall be barred and the holder thereof shall not be entitled to a distribution pursuant to the Plan.

(b)      **Professional Compensation and Reimbursement Claims**.  All Entities awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with section 328, 330, or 331 of the Bankruptcy Code or entitled to priorities established pursuant to section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, in the amounts allowed by the Bankruptcy Court (i) on or as soon as reasonably practicable following the later to occur of (a) the Effective Date and (b) the date upon which the Bankruptcy Court order allowing such Claim becomes a Final Order or (ii) upon such other terms no more favorable to the claimant than as may be mutually agreed upon between such claimant and the Disbursing Agent; provided, however, that, except as provided herein, each professional must file its application for final allowance of compensation for professional services rendered and reimbursement of expenses on or before the Administrative Claim Bar Date, or such earlier date as may be required by the Local Rules of the Bankruptcy Court. The Disbursing Agent is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

(c)      **Priority Tax Claims**.  Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed Priority Tax Claim, distributions in an amount equal to the full amount of such Allowed Priority Tax Claim. At the option and discretion of the Debtors, which option shall be exercised, in writing, on or before the commencement of the Confirmation Hearing, such payment shall be made (i) in full, in Cash, on or as soon as reasonably practicable following the later to occur of (a) the Effective Date and (b) the date on which such claim becomes an Allowed Claim, (ii) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, in full, in Cash, in equal quarterly installments commencing on the first Business Day following the Effective Date and continuing over a period not exceeding five years from and after the Petition Date, together with interest accrued thereon at the applicable non-bankruptcy rate, subject to the sole option of the Disbursing Agent to prepay the entire amount of the Allowed Priority Tax Claim, or (iii) by mutual agreement of the holder of such Allowed Priority Tax Claim and the Disbursing Agent.

(d)      **Statutory Fees**.  All fees payable under section 1930 of chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or as soon as reasonably practicable following the Effective Date.

(e)      **Administrative Tax Claims**.  Notwithstanding anything to the contrary in the Plan or in the Confirmation Order, a governmental unit shall not be required to file, make or submit a request for payment (or any document, including, without limitation, a bill) of an expense described in section 503(b)(1)(B) or (C) of the Bankruptcy Code as a condition of its being an Allowed Administrative Expense Claim, and the Disbursing Agent shall pay in full all such Allowed Administrative Expense Claims, including any interest related thereto, when due.

3.2    **Unimpaired/non-voting Classes of Claims**.

(a)    **Class 1 - Payment of Allowed Priority Non-Tax Claims**:  Unless otherwise mutually agreed upon by the holder of an Allowed Priority Non-Tax Claim and the Debtors, on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, the Disbursing Agent shall pay to each holder of an Allowed Priority Non-Tax Claim, in the order of priority set forth in Section 507(a) of the Bankruptcy Code, Cash in the full amount of such Allowed Priority Non-Tax Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Priority Non-Tax Claim.

(b)    **Class 2 - Treatment of Secured Claims:**  Commencing on the Effective Date, each holder of an Allowed Secured Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed Secured Claim (which, for the avoidance of doubt, shall have been finally determined to not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross claim, defense, disallowance, impairment, objection, or challenge under applicable law or regulation by any person, except as otherwise provided herein), at the Liquidating Trustee's option and in his sole discretion, (i) the property securing such holder's Allowed Secured Claim or (ii) the lesser of the full amount of the Allowed Secured Claim or the net proceeds of the liquidation of the property securing such Allowed Secured Claim; provided, however, that in the event of competing Claims to such net proceeds, any distribution shall occur in the order of priority of interest in the property securing such Claims.  The total payment to any holder of an Allowed Secured Claim shall not exceed the amount of such Allowed Secured Claim.  Any part of an Allowed Claim in Class 2 not constituting an Allowed Secured Claim shall be treated as a Class 4, 5, or 6 Claim, as applicable.  Until such time as there is a disposition of such property securing such Allowed Secured Claim or satisfaction in full of such Allowed Secured Claim, holders of such Allowed Secured Claims shall retain their interests in the property securing such Allowed Secured Claims.

3.3    **Impaired/voting Classes of Claims**.

(a)    **Class 3 - Treatment of Senior Notes Claims**.

(1)    <u>General Treatment of Senior Notes Claims</u>:  Commencing on the Effective Date, and subject to the right of election described in Section 3.3(a)(2),  each holder of an Allowed Senior Notes Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed Senior Notes Claim (which, for the avoidance of doubt, shall have been finally determined to not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross claim, defense, disallowance, impairment, objection, or challenge under applicable law or regulation by any person, except as otherwise provided herein), subject to the respective Lien or priority rights of the Senior Indenture Trustees, such holder's Pro Rata Share of (i) Creditor Cash (ii) Liquidating Trust Interests, and (iii) Reorganized BUFC Junior Preferred Stock, in an aggregate amount equal to such holder's Allowed Senior Notes Claim. In addition, each holder of an Allowed Senior Notes Claim shall be entitled to receive on account of such Allowed Senior Notes Claim redistributions of Creditor Cash, Cash received on account of Liquidating Trust Interests, and

Reorganized BUFC Junior Preferred Stock, from the Subordinated Indenture Trustees pursuant to the subordination provisions of the Subordinated Indentures. The relative priorities among holders of Allowed Senior Notes Claims, Allowed General Unsecured Claims, Allowed FDIC Claims, and Allowed Subordinated Notes Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, are governed by the respective Indentures, and nothing in the Plan is intended to or shall conflict with the contractual subordination and subrogation provisions of such Indentures, which shall govern and shall be enforced pursuant to section 510(a) of the Bankruptcy Code.

(2)    Alternative Treatment for Eligible Creditors Making an Eligible Creditor Election:  Eligible Creditors making an Eligible Creditor Election shall, in addition to the treatment set forth in Section 3.3(a)(1) above, receive such Eligible Creditor's Pro Rata share of Reorganized BUFC Common Stock; provided, however, that no more than ninety (90) Eligible Creditors shall be entitled to receive Reorganized BUFC Common Stock.  In the event more than ninety (90) Eligible Creditors make an Eligible Creditor Election, Reorganized BUFC Common Stock shall be distributed to those Eligible Creditors who have so elected and who hold the largest ninety (90) Claims (in aggregate dollar amount per holder), or alternatively, will be distributed based on some other commercially reasonable means as the Disbursing Agent may determine, including without limitation, by drawing lots.   The amount of Creditor Cash otherwise to be distributed pursuant to Section 3.3(a)(1) of the Plan to any Eligible Creditor receiving Reorganized BUFC Common Stock pursuant to this Section 3.3(a)(2) shall be reduced by the value of Reorganized BUFC Common Stock to be distributed to such Eligible Creditor, such that the total value of consideration to be received by any Eligible Creditor shall be equal to the total value of consideration that would have been received by such Eligible Creditor had such Eligible Creditor not made an Eligible Creditor Election and not received Reorganized BUFC Common Stock pursuant to this Section 3.3(a)(2).

(b)    **Class 4 - Treatment of General Unsecured Claims**:  Commencing on the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed General Unsecured Claim, such holder's Pro Rata Share of (i) Creditor Cash (ii) Liquidating Trust Interests, and (iii) Reorganized BUFC Junior Preferred Stock, in an aggregate amount equal to such holder's Allowed General Unsecured Claim. The relative priorities among holders of Allowed Senior Notes Claims, Allowed General Unsecured Claims, Allowed FDIC Claims, and Allowed Subordinated Notes Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, are governed by the respective Indentures, and nothing in the Plan is intended to or shall conflict with the contractual subordination and subrogation provisions of such Indentures, which shall govern and shall be enforced pursuant to section 510(a) of the Bankruptcy Code.  Notwithstanding the foregoing, all such claims shall be subject to, among other things, reduction, offset or disallowance on account of counterclaims, to the extent applicable, including, but not limited to, the right of the Debtors or the Liquidating Trustee, as the case may be, to pursue Avoidance Actions.

(c)    **Class 5 – Treatment of BUFS Unsecured Claims**:  Commencing on the Effective Date, each holder of an Allowed BUFS Unsecured Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed BUFS Unsecured Claim, such holder's Pro Rata Share of Cash up to the value of BUFS's Assets after satisfaction of any

Allowed Secured Claims against BUFS pursuant to Section 3.2(b) hereof, in an amount up to but not greater than such holder's Allowed BUFS Unsecured Claim. Notwithstanding the foregoing, all such claims shall be subject to, among other things, reduction, offset or disallowance on account of counterclaims, to the extent applicable, including, but not limited to, the right of the Debtors or the Liquidating Trustee, as the case may be, to pursue Avoidance Actions.

(d)     **Class 6 – Treatment of CRE Unsecured Claims**:  Commencing on the Effective Date, each holder of an Allowed CRE Unsecured Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed CRE Unsecured Claim, such holder's Pro Rata Share of Cash up to the value of CRE's Assets after satisfaction of any Allowed Secured Claims against CRE pursuant to Section 3.2(b) hereof, in an amount up to but not greater than such holder's Allowed CRE Unsecured Claim.  Notwithstanding the foregoing, all such claims shall be subject to, among other things, reduction, offset or disallowance on account of counterclaims, to the extent applicable, including, but not limited to, the right of the Debtors or the Liquidating Trustee, as the case may be, to pursue Avoidance Actions.

(e)     **Class 7 - Treatment of FDIC Claim**:  Commencing on the Effective Date, the holder of an Allowed FDIC Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed FDIC Claim, such holder's Pro Rata Share of (i) Creditor Cash (ii) Liquidating Trust Interests, and (iii) Reorganized BUFC Junior Preferred Stock, in an aggregate amount equal to such holder's Allowed FDIC Claim. The relative priorities among holders of Allowed Senior Notes Claims, Allowed General Unsecured Claims, Allowed FDIC Claims, and Allowed Subordinated Notes Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, are governed by the respective Indentures, and nothing in the Plan is intended to or shall conflict with the contractual subordination and subrogation provisions of such Indentures, which shall govern and shall be enforced pursuant to section 510(a) of the Bankruptcy Code.  Notwithstanding the foregoing, all such claims shall be subject to, among other things, reduction, offset or disallowance on account of counterclaims, to the extent applicable, including, but not limited to, the right of the Debtors or the Liquidating Trustee, as the case may be, to pursue Avoidance Actions.

(f)     **Class 8 - Treatment of Subordinated Notes Claims**:  Commencing on the Effective Date, each holder of an Allowed Subordinated Notes Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed Subordinated Notes Claim (which, for the avoidance of doubt, shall have been finally determined to not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross claim, defense, disallowance, impairment, objection, or challenge under applicable law or regulation by any person, except as otherwise provided herein), subject to the respective Lien or priority rights of the Subordinated Indenture Trustees, such holder's Pro Rata Share of (i) Creditor Cash (ii) Liquidating Trust Interests, and (iii) Reorganized BUFC Junior Preferred Stock, in an aggregate amount equal to such holder's Allowed Subordinated Notes Claim; provided, however, that any distribution to holders of Allowed Subordinated Notes Claims of (a) Creditor Cash, (b) Cash received on account of Liquidating Trust Interests, and (c) Reorganized BUFC Junior Preferred Stock, shall be redistributed, subject to Bankruptcy Rule 3021 and subject to any Lien or priority rights of the Subordinated Indenture Trustees, pursuant to the subordination provisions of the Subordinated Indentures.  The relative priorities among holders of Allowed Senior Notes Claims, Allowed General Unsecured Claims, Allowed FDIC

Claims, and Allowed Subordinated Notes Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, are governed by the respective Indentures, and nothing in the Plan is intended to or shall conflict with the contractual subordination and subrogation provisions of such Indentures, which shall govern and shall be enforced pursuant to section 510(a) of the Bankruptcy Code.

3.4     **Impaired/non-voting Classes of Interests**.

(a)     **Class 9 - Cancellation of Preferred Equity Interests**:   Holders of Preferred Equity Interests shall receive no distribution under the Plan. On the Effective Date, all Preferred Equity Interests shall be deemed extinguished and the certificates and all other documents representing such Equity Interests shall be deemed cancelled and of no force and effect.

(b)     **Class 10 - Cancellation of Common Equity Interests**:   Holders of Common Equity Interests shall receive no distribution under the Plan. On the Effective Date, all Common Equity Interests shall be deemed extinguished and the certificates and all other documents representing such Equity Interests shall be deemed cancelled and of no force and effect.

3.5     **Impaired/voting Classes of Interests**.

(a)     **Class 11 – Retention of BUFS Stock Interests**: BUFC will retain its BUFS Stock Interests if and only if any equity remains in BUFS after satisfaction of all Allowed Claims against BUFS. If no equity remains in BUFS after satisfaction of all Allowed Claims against BUFS, then, on the Effective Date, all BUFS Stock Interests shall be deemed extinguished and the certificates and all other documents representing such Interests shall be deemed cancelled and of no force and effect.

(b)     **Class 12 – Retention of CRE Stock Interests**:  BUFC will retain its CRE Stock Interests if and only if any equity remains in CRE after satisfaction of all Allowed Claims against CRE. If no equity remains in CRE after satisfaction of all Allowed Claims against CRE, then, on the Effective Date, all CRE Stock Interests shall be deemed extinguished and the certificates and all other documents representing such Interests shall be deemed cancelled and of no force and effect.

## ARTICLE IV
## IDENTIFICATION OF CLAIMS AND INTERESTS
## IMPAIRED AND NOT IMPAIRED BY THE PLAN

4.1     **Impaired and Unimpaired Classes**:  Claims in Classes 1 and 2 are not impaired under the Plan. Claims and Interests in Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 are impaired under the Plan.

4.2     **Impaired Classes Entitled to Vote on Plan**:  The Claims in Classes 3, 4, 5, 6, 7, and 8 are impaired and receiving distributions pursuant to the Plan, and are therefore entitled to vote to accept or reject the Plan.  The Interests in Classes 11 and 12 are impaired, but will only be retained if there is equity remaining in BUFS and CRE, respectively, after payment of all

Allowed Claims against BUFS and CRE, respectively.  Accordingly, the Interests in Classes 11 and 12 are entitled to vote to accept or reject the Plan.

4.3    **Interests Deemed to Reject**:  The Interests in Classes 9 and 10 are not entitled to receive any distribution or retain their Interests pursuant to the Plan, are deemed to reject the Plan, and are not entitled to accept or reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code.

4.4    **Claims Deemed to Accept**:  The Claims in Classes 1 and 2 are not impaired pursuant to the Plan, are deemed to accept the Plan, and are not entitled to accept or reject the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

4.5    **Controversy Concerning Impairment**:  In the event of a controversy as to whether any Class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

5.1    **Impaired Classes to Vote**:  Each holder, as of the Voting Record Date, of a Claim or Interest in an impaired Class not otherwise deemed to have rejected or accepted the Plan in accordance with Sections 4.3 and 4.4 of the Plan shall be entitled to vote separately to accept or reject the Plan.

5.2    **Acceptance by Class of Creditors**:  An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

5.3    **Cramdown**:  In the event that any impaired Class of Claims or Interests shall fail to accept, or be deemed to reject, the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or (ii) subject to the consent of the Creditors' Committee, amend the Plan.

## ARTICLE VI
## DISPUTED CLAIMS

6.1    **Objections to Claims; Prosecution of Disputed Claims**:  The Liquidating Trustee shall object to, and shall substitute as party in interest with respect to any pending objection filed by the Debtors or the Creditors' Committee to, the allowance of Claims filed with the Bankruptcy Court with respect to which it disputes liability, priority or amount, including, without limitation, objections to Claims that have been assigned and the assertion of the doctrine of equitable subordination with respect thereto. All objections, affirmative defenses and counterclaims shall be litigated to Final Order; provided, however, that the Liquidating Trustee shall have the authority to file, settle, compromise or withdraw any objections to Claims or

Equity Interests. Unless otherwise ordered by the Bankruptcy Court, to the extent not already objected to by the Debtors or any other party in interest, the Liquidating Trustee shall file and serve all objections to Claims as soon as practicable, but, in each instance, not later than one hundred eighty (180) days following the Effective Date or such later date as may be approved by the Bankruptcy Court.

6.2    **Estimation of Claims**:  On and after the Effective Date, and unless otherwise limited by an order of the Bankruptcy Court, the Liquidating Trustee may at any time request the Bankruptcy Court to estimate for final distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to or sought to estimate such Claim, and the Bankruptcy Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Unless otherwise provided in an order of the Bankruptcy Court, in the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; provided, however, that, if the estimate constitutes the maximum limitation on such Claim, the Liquidating Trustee may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim; and, provided, further, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

6.3    **Payments and Distributions on Disputed Claims**.

(a)    **Disputed Claims Holdback**:  From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the allowed amount, or allowed or disallowed by Final Order of the Bankruptcy Court, the Liquidating Trustee shall retain, for the benefit of each holder of a Disputed Claim, Creditor Cash (which the Disbursing Agent shall transfer to the Liquidating Trustee) Liquidating Trust Interests, and Reorganized BUFC Junior Preferred Stock, and any dividends, gains or income attributable thereto, in an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Liquidating Trustee. Any Creditor Cash, Liquidating Trust Interests, and Reorganized BUFC Junior Preferred Stock retained and held for the benefit of  a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in Cash or distributed in Liquidating Trust Interests and Reorganized BUFC Junior Preferred Stock in the event the Disputed Claim ultimately becomes an Allowed Claim. Such Creditor Cash and any dividends, gains or income paid on account of the Liquidating Trust Interests and Reorganized BUFC Junior Preferred Stock retained for the benefit of holders of Disputed Claims shall be retained by

the Liquidating Trust for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan.

(b) **Allowance of Disputed Claims**:  At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Liquidating Trustee shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any earnings that have accrued on the amount of Cash so retained (net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim. Such distribution, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order, but in no event more than ninety (90) days thereafter. The balance of any Cash, Liquidating Trust Interests, and Reorganized BUFC Junior Preferred Stock previously retained but not distributed to a Disputed Claim holder shall be included in future calculations of Cash and Liquidating Trust Interests, respectively, to holders of Allowed Claims.

(c) **Tax Treatment of Retained Assets**:  The Liquidating Trustee shall treat any Assets retained pursuant to this Section 6.3 as part of the Liquidating Trust Claims Reserve.

## ARTICLE VII
## THE LIQUIDATING TRUST

7.1    **Execution of Liquidating Trust Agreement**:  On or before the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement, and shall take all other necessary steps to establish the Liquidating Trust and the Liquidating Trust Interests therein, which shall be for the benefit of the Liquidating Trust Beneficiaries, as provided in Sections 3.3(a)(1), 3.3(b), 3.3(e), and 3.3(f) of the Plan, whether their Claims are Allowed before, on, or after the Effective Date. In the event of any conflict between the terms of this Section 7.1 and the terms of the Liquidating Trust Agreement, the terms of this Section 7.1 shall govern. The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

7.2    **Purpose of the Liquidating Trust**:  The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

7.3    **Liquidating Trust Assets**:  The Liquidating Trust shall consist of the Liquidating Trust Assets. On the Effective Date, the Debtors shall transfer all of the Liquidating Trust Assets to the Liquidating Trust. The Liquidating Trust Assets may be transferred subject to certain liabilities, as provided in the Plan or the Liquidating Trust Agreement. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar Tax, pursuant to section 1146(a) of the Bankruptcy Code. Upon delivery of the Liquidating Trust Assets to the Liquidating Trust, the Debtors and their predecessors, successors and assigns, shall be discharged and released from all liability with respect to the delivery of such distributions.

7.4    **Administration of the Liquidating Trust**:   The Liquidating Trust shall be administered by the Liquidating Trustee according to the Liquidating Trust Agreement and the Plan. In the event of any inconsistency between the Plan and the Liquidating Trust Agreement, the Liquidating Trust Agreement shall govern.

7.5    **The Liquidating Trustee**:   In the event the Liquidating Trustee dies, is terminated, or resigns for any reason, the Trust Advisory Board shall designate a successor; provided, however, that under no circumstance shall the Liquidating Trustee be a director or officer with respect to any Entity over which the Liquidating Trust has control.

7.6    **Role of the Liquidating Trustee**:   In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, and subject to the terms of the Confirmation Order, the Plan and the Liquidating Trust Agreement, and the oversight of the Trust Advisory Board, the Liquidating Trustee shall, among other things, have the following rights, powers and duties: (i) to hold, manage, convert to Cash, and distribute the Liquidating Trust Assets, including prosecuting and resolving the Claims belonging to the Liquidating Trust, (ii) to hold the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries, whether their Claims are Allowed on or after the Effective Date, (iii) in the Liquidating Trustee's reasonable business judgment, to investigate, prosecute, settle and/or abandon rights, causes of action, or litigation of the Liquidating Trust, including, without limitation, Avoidance Actions, (iv) to monitor and enforce the implementation of the Plan, (v) to file all tax and regulatory forms, returns, reports, and other documents required with respect to the Liquidating Trust, (vi) in the Liquidating Trustee's reasonable business judgment, to object to Claims, and manage, control, prosecute, and/or settle on behalf of the Liquidating Trust, objections to Claims on account of which the Liquidating Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan, (vii) to take all actions necessary and create any document necessary to implement the Plan, (viii) to hold, manage, and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority, (ix) to act as a signatory to the Debtors for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of the Debtors' assets, and (x) to take all necessary actions and file all appropriate motions to obtain an order closing the Chapter 11 Cases. In all circumstances, the Liquidating Trustee shall comply with all of the Debtors' obligations in accordance with applicable law, and otherwise shall act in the best interests of all Liquidating Trust Beneficiaries and in furtherance of the purpose of the Liquidating Trust. Under no circumstance may the Liquidating Trustee serve on the board of directors of any Affiliate of the Liquidating Trust.

7.7    **Liquidating Trustee's Tax Power for Debtors**:

(a)    For all taxable periods ended on or before September 30, 2009, the Liquidating Trustee shall have full and exclusive authority and responsibility in respect of all Tax Refunds of the Debtors (including, without limitation, as the common parent or other agent of any consolidated, combined or unitary tax group of which the Debtors were the agent), to the same extent as if the Liquidating Trustee was the Debtor-in-Possession. Without limiting the foregoing, each of the Debtors shall execute, on or before the Effective Date, a limited power of attorney authorizing the Liquidating Trustee to correspond with any Tax Authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer Tax payments and Tax Returns.

Notwithstanding the two preceding sentences, the Liquidating Trustee's powers pursuant to this Section 7.7(a) extend only to the Tax Refunds and shall not affect, impair, compromise or otherwise affect the Tax Attributes without the written consent of the Reorganized Debtors and the Investor.

(b)    In furtherance of the transfer of the Liquidating Trust Assets to the Liquidating Trust on the Effective Date, the Liquidating Trust shall be entitled to all Tax Refunds of the Debtors and the Liquidating Trust shall bear responsibility for all Tax liabilities of the Debtors for taxable years ended on or before September 30, 2009, to the extent not discharged by the Plan or provided for payment in the Plan.

7.8    **Transferability of Liquidating Trust Interests**:  The Debtors shall cause the Liquidating Trust Interests to be transferable (either by book-entry or by certificate); provided, however, that (i) if so certificated, the form of certificate, if applicable, shall carry a legend, in substance and form reasonably satisfactory to the Creditors' Committee, setting forth that the interest in such certificate and the holder thereof as to such interest are governed by the terms and provisions of the Plan, and (ii) if the Liquidating Trustee, with consent of the Trust Advisory Board and upon advice of counsel, determines that a class of Liquidating Trust Interests may be subject to registration pursuant to Section 12 of the Securities Exchange Act of 1934, as amended, the Liquidating Trustee shall pursue relief from such registration by obtaining either an exemptive order, a no-action letter or an interpretive letter from the Securities and Exchange Commission or its staff or, absent its ability to achieve that objective or in lieu thereof, shall register such class pursuant to Section 12 of such statute (it being understood and agreed that the Liquidating Trustee shall be authorized, among other things, to register such class and to seek relief from one or more of the requirements then applicable after such registration and to de-register such class); and provided, further, that, notwithstanding the foregoing, (1) the Liquidating Trustee may disregard any transfer of Liquidating Trust Interests if sufficient necessary information (as determined by the Liquidating Trustee), including applicable tax-related information, is not provided by such transferee to the Liquidating Trustee and (2) transfers to non-United States Entities will not be permitted unless either (a) a ruling has been obtained from the IRS or an opinion from the Liquidating Trustee's counsel (to the good faith satisfaction of the Liquidating Trustee) that stated interest income and any other income from tax refunds expected to be received or recognized by the Liquidating Trust are of a type and character that is eligible for exemption from United States withholding, or (b) the requirement in the preceding clause has been waived by the Liquidating Trustee (with the consent of the Trust Advisory Board).

7.9    **Cash**:  The Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; provided, however, that such investments are investments permitted to be made by a Liquidating Trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

7.10    **Distribution of Liquidating Trust Assets**:  The Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their Liquidating Trust Interests, on a quarterly basis, all unrestricted Cash on hand (including any Cash received from the Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this Section

7.10), except such amounts (i) as have been reserved on account of Disputed Claims, or are otherwise part of the Liquidating Trust Claims Reserve, in accordance with Section 6.3 of the Plan, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonable incurred or anticipated expenses (including, but not limited to, any Taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iv) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make a distribution pursuant to this Section 7.10 if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Liquidating Trustee, in accordance with applicable law, but only so long as such aggregate amount is less than One Million Dollars ($1,000,000); and provided, further, that the Liquidating Trustee may decide to forego the first quarterly distribution to those holders of Liquidating Trust Interests with respect to which the Liquidating Trustee, in its reasonable judgment, is not administratively prepared to make such distribution, in which case, such distribution shall be made to such holders as soon as practicable after the Liquidating Trustee is administratively prepared to do so.  In the event that the Liquidating Trustee may determine not to make a distribution as authorized by this Section 7.10, then no further distributions shall be made until the date of the next scheduled quarterly distribution hereunder.

7.11    **Costs and Expenses of the Liquidating Trust**:  The reasonable costs and expenses of the Liquidating Trust, including the fees and expenses of the Liquidating Trustee and its retained professionals, and of the members of the Trust Advisory Board, shall be paid out of the Liquidating Trust Assets. Fees and expenses incurred in connection with the prosecution and settlement of any Claims shall be considered costs and expenses of the Liquidating Trust.

7.12    **Compensation of the Liquidating Trustee and Trust Advisory Board**:  The Liquidating Trustee and the members of the Trust Advisory Board shall be entitled to reasonable compensation as set forth in the Liquidating Trust Agreement.

7.13    **Retention of Professionals by the Liquidating Trustee**:  The Liquidating Trustee may retain and compensate attorneys and other professionals to assist in its duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval. The Liquidating Trustee may assume existing contracts and/or leases to which one or more of the Debtors are parties or may enter into new arrangements on substantially similar terms. Without limiting the foregoing, the Liquidating Trustee may retain any professional that represented parties in interest in the Chapter 11 Cases.

7.14    **Federal Income Tax Treatment of the Liquidating Trust**.

(a)    **Liquidating Trust Assets Treated as Owned by Creditors**:  For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the Liquidating Trust Beneficiaries and, to the extent Liquidating Trust Assets are allocable to Disputed Claims, to the Liquidating

33

Trust Claims Reserve, followed by (2) the transfer by such beneficiaries to the Liquidating Trust of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Liquidating Trust Claims Reserve) in exchange for Liquidating Trust Interests. Accordingly, the Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to the Liquidating Trust Claims Reserve, discussed below). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b)    **Tax Reporting**.

(1)    The Liquidating Trustee shall file Tax Returns for the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 7.14. The Liquidating Trustee also will annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for United States federal income tax purposes and will instruct all such holders to use such information in preparing their United States federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their United States federal income tax returns. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(2)    On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the Tax Refunds as of the Effective Date. The Liquidating Trustee will then in good faith value all other Liquidating Trust Assets, and shall make all such values (including the Tax Refund values) available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(3)    Allocations of Liquidating Trust taxable income among the Liquidating Trust Beneficiaries (other than taxable income allocable to the Liquidating Trust Claims Reserve) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately before such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Liquidating Trust Claims Reserve) to the holders of the Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(4)        Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) timely elect to treat any Liquidating Trust Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtors, and the Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(5)        The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any Taxes imposed on the trust or its assets, including the Liquidating Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Liquidating Trust Claims Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such Taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

(6)        The Liquidating Trustee may request an expedited determination of Taxes of the Liquidating Trust, including the Liquidating Trust Claims Reserve, or the Debtors under section 505 of the Bankruptcy Code for all Tax Returns filed for, or on behalf of, the Liquidating Trust or the Debtors for all taxable periods through the dissolution of the Liquidating Trust, subject, however, to the limitations on the Liquidating Trustee's powers set forth in Section 7.7(a) hereof.

(c)        **Tax Withholdings by Liquidating Trustee**.  The Liquidating Trustee may withhold and pay to the appropriate Taxing Authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of Liquidating Trust Interests. All such amounts withheld and paid to the appropriate Taxing Authority shall be treated as amounts distributed to such holders of Liquidating Trust Interests for all purposes of the Liquidating Trust Agreement. The Liquidating Trustee shall be authorized to collect such tax information from the holders of Liquidating Trust Interests (including, without limitation, social security numbers or other tax identification numbers) as in its sole discretion it deems necessary to effectuate the Plan, the Confirmation Order, and the Liquidating Trust Agreement. In order to receive distributions under the Plan, all holders of Liquidating Trust Interests (including, without limitation, holders of Allowed Senior Notes Claims, Allowed General Unsecured Claims, Allowed FDIC Claims, and Allowed Subordinated Notes Claims) will need to identify themselves to the Liquidating Trustee and provide tax information and the specifics of their holdings, to the extent the Liquidating Trustee deems appropriate. This identification requirement may, in certain cases, extend to holders who hold their securities in street name. The Liquidating Trustee may refuse to make a distribution to any holder of a Liquidating Trust Interest that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a holder of a Liquidating Trust Interest, the Liquidating Trustee shall

35

make such distribution to which the holder of the Liquidating Trust Interest is entitled, without interest; and, provided, further, that, if the Liquidating Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Liquidating Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Liquidating Trustee for such liability.

(d)     **Dissolution**.  The Liquidating Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and the Liquidating Trust Agreement, (ii) the Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit, or (iii) all distributions required to be made by the Liquidating Trustee under the Plan and the Liquidating Trust Agreement have been made; provided, however, in no event shall the Liquidating Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period before the third anniversary (or within the six-month period before the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee and the Trust Advisory Board that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets. If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, that the expense of administering the Liquidating Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, the Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtors, the Liquidating Trust, and any insider of the Liquidating Trustee, and (iii) dissolve the Liquidating Trust.

7.15   **Indemnification of Liquidating Trustee**:   The Liquidating Trustee or the individual(s) comprising the Liquidating Trustee, as the case may be, and the Liquidating Trustee's agents and professionals, shall not be liable to the Liquidating Trust Beneficiaries for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all actions or inactions in their capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct or gross negligence. Any indemnification claim of the Liquidating Trustee (and the other parties entitled to indemnification under this subsection) shall be satisfied solely from the Liquidating Trust Assets and shall be entitled to a priority distribution therefrom, ahead of the Liquidating Trust Interests and any other claim to or interest in such assets. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

7.16 **Privileges, Information Demands, Information Access Agreement, and Confidentiality Stipulation**: All Privileges with respect to the Liquidating Trust Assets shall be transferred, assigned, and delivered to the Liquidating Trust, without waiver, and shall vest in the Liquidating Trustee (and any other individual the Liquidating Trustee may designate, as well as any other individual designated in the Liquidating Trust Agreement). Pursuant to Federal Rule of Evidence 502(d) (to the extent Rule 502(d) is relevant notwithstanding the fact that the Debtors, the Liquidating Trustee, the FDIC-Receiver and New Bank are joint holders of certain attorney-client privileges, work product protections, or other immunities or protections from disclosure), no Privileges shall be waived by disclosure to the Liquidating Trustee of the Debtors' information subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure, or by disclosure among the Debtors, the Liquidating Trustee, the FDIC-Receiver, and/or New Bank of information that is subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure jointly held by the Debtors, the FDIC-Receiver, the Liquidating Trustee and/or New Bank. The Liquidating Trustee shall be obligated to respond, on behalf of the Debtors, to all Information Demands. The Liquidating Trustee shall succeed to all of the rights, duties, and obligations of the Debtors under both the Information Access Agreement and the Confidentiality Agreement, both of which shall remain in full force and effect through the later of the entry of a final decree closing the Chapter 11 cases or the dissolution of the Liquidating Trust. The FDIC-Receiver and New Bank shall take reasonable steps to cooperate with the Liquidating Trustee in responding to Information Demands in accordance with the Information Access Agreement and the Confidentiality Agreement, and such cooperation shall include, for example, taking all steps necessary to maintain and avoid waiver of any and all Privileges (including, without limitation, any Privileges that are shared jointly among or between any of the parties). The Liquidating Trustee may waive Privileges that are held solely by the Debtors and/or the Liquidating Trust, but not jointly held with the FDIC-Receiver and/or New Bank, in the event and to the extent the Liquidating Trustee determines in good faith that doing so is in the best interests of the Liquidating Trust and its beneficiaries. The Liquidating Trustee, the FDIC-Receiver and New Bank may disclose information that is subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure that are jointly held with the FDIC-Receiver and/or New Bank only in accordance with the Information Access Agreement and the Confidentiality Agreement.

## ARTICLE VIII
## PRESERVATION AND PROSECUTION OF
## CLAIMS HELD BY BUFC

8.1 **Preservation and Prosecution of Claims Held by BUFC**: Except as expressly released herein, from and after the Effective Date, the Liquidating Trustee shall have the exclusive right and power to litigate any Claim or Cause of Action that constituted an Asset of BUFC or its estate, including, without limitation, the D&O Claims, any avoidance or recovery action under section 541, 542, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code and any other cause of action, right to payment, or claim that may be pending on the Effective Date or instituted by the Debtors, the Debtors in Possession or the Creditors' Committee thereafter, to a Final Order, and the Liquidating Trustee may compromise and settle such claims, upon approval of the Bankruptcy Court. The net proceeds of any such litigation or settlement (after satisfaction of all costs and expenses incurred in connection therewith) shall be transferred

to the Liquidating Trust for distribution in accordance with the Plan and the Liquidating Trust Agreement.

## ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTIONS

9.1    **Time and Manner of Distributions**:  Except as otherwise provided herein, distributions under the Plan shall be made to each holder of an Allowed Claim as follows:

(a)    **Initial Distributions of Creditor Cash**:  On the Distribution Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Senior Notes Claim, an Allowed General Unsecured Claim, an Allowed FDIC Claim, and an Allowed Subordinated Notes Claim, such holder's share, if any, of Creditor Cash, as determined pursuant to Sections 3.3(a)(1), (b), (e), and (f), hereof.

(b)    **Initial Distribution of Reorganized BUFC Junior Preferred Stock**:  On the Distribution Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Senior Notes Claim, an Allowed General Unsecured Claim, an Allowed FDIC Claim, and an Allowed Subordinated Notes Claim, such holder's share, if any, of Reorganized BUFC Junior Preferred Stock, as determined pursuant to Sections 3.3(a)(1), (b), (e), and (f), hereof.

(c)    **Initial Distribution of Reorganized BUFC Common Stock**:  On the Distribution Date, the Disbursing Agent shall distribute, or cause to be distributed, to each Eligible Creditor receiving Reorganized BUFC Common Stock pursuant to Section 3.3(a)(2) hereof, such Creditor's share of Reorganized BUFC Common Stock, as determined pursuant to Sections 3.3(a)(2) hereof.

(d)    **Allocation of Liquidating Trust Interests**:  On the Distribution Date, the Disbursing Agent shall allocate, or cause to be allocated, to the Liquidating Trustee on behalf of holders of Disputed Claims, and to each holder of an Allowed Senior Notes Claim, an Allowed General Unsecured Claim, Allowed FDIC Claim, and Allowed Subordinated Notes Claim, in respect of the foregoing, such holder's share, if any, of Liquidating Trust Interests, as determined pursuant to Sections 3.3(a)(1), (b), (e), and (f), hereof.

(e)    **Distributions to Holders of Allowed Secured Claims**:  Except as otherwise provided herein, on or as soon as practicable after the later of (i) the Distribution Date and (ii) the date on which such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Secured Claim, such property or Cash, as determined pursuant to Section 3.2(b) hereof.

(f)    **Distributions to Holders of Allowed BUFS Unsecured Claims**:  Except as otherwise provided herein, on or as soon as practicable after the later of (i) the Distribution Date and (ii) the date on which such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Secured Claim, such holder's share of Cash, as determined pursuant to Section 3.3(c) hereof.

(g)     **Distributions to Holders of Allowed CRE Unsecured Claims**:  Except as otherwise provided herein, on or as soon as practicable after the later of (i) the Distribution Date and (ii) the date on which such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Secured Claim, such holder's share of Cash, as determined pursuant to Section 3.3(d) hereof.

(h)     **Distribution of Cash to Holders of Certain Other Claims**:  Except as otherwise provided herein, on or as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Administrative Expense Claim, an Allowed Priority Tax Claim (to the extent applicable), an Allowed Priority Non-Tax Claim, or an Allowed Trustee Claim, such holder's share of Cash, as determined pursuant to Sections 3.1, 3.2(a), and 9.12 hereof.

9.2     **Timeliness of Payments**:  Any payment or distribution to be made pursuant to the Plan shall be deemed to be timely made if made within fourteen (14) days after the date specified in the Plan. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

9.3     **Distributions by the Disbursing Agent**:  All distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Entities entitled to receive the same. The Disbursing Agent shall not hold an economic or beneficial interest in such property.

9.4     **Manner of Payment under the Plan**:  Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Disbursing Agent shall be made, at the election of the payor, by check drawn on a domestic bank or by wire transfer from a domestic bank; provided, however, that no Cash payment shall be made to a holder of an Allowed Claim until such time, if ever, as the amount payable thereto is equal to or greater than Ten Dollars ($10.00).

9.5     **Delivery of Distributions**:  Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided in Section 9.4 of the Plan, distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by the address set forth on proofs of Claim filed by such holders, or at the last known address of such holder if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address; provided, however, that initial distributions paid by the Disbursing Agent for the benefit of holders of Senior Notes Claims shall be made to the appropriate Trustee under the respective governing documents for such obligations. Each such Trustee shall, in turn, administer the initial distributions to the holders of Allowed Claims in accordance with the Plan and the applicable indentures. The Trustees shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court. The Trustees shall only be required to make distributions in accordance with the terms of the Plan and shall have no liability for actions taken in accordance with the Plan or in reliance upon information provided to the Trustees in accordance with the Plan, except for liabilities resulting from their own gross

39

negligence or willful misconduct. Subsequent distributions to holders of Senior Notes Claims on account of Liquidating Trust Interests (or such holders' transferees) that have identified themselves to the Liquidating Trustee will be the responsibility of the Liquidating Trustee as Disbursing Agent. The Liquidating Trustee, with the consent of the applicable Trustee(s) not to be unreasonably withheld, may engage a special paying agent to assist with subsequent distributions in respect of Liquidating Trust Interests. Notwithstanding the foregoing, all distributions are subject to the Lien and priority rights of the Trustees.

9.6    **Undeliverable Distributions**.

(a)    **Holding of Undeliverable Distributions**:   If any distribution to any holder is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified, in writing, of such holder's then current address. Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable. All Entities ultimately receiving undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

(b)    **Failure to Claim Undeliverable Distributions**:   On or about the first anniversary of the Effective Date, the Disbursing Agent shall file a list with the Bankruptcy Court setting forth the names of those Entities for which distributions have been made hereunder that have been returned as undeliverable as of the date thereof. Any holder of an Allowed Claim on such list that does not assert its rights pursuant to the Plan to receive a distribution within two (2) years from and after the Effective Date shall have its entitlement to such undeliverable distribution discharged and shall be forever barred from asserting any entitlement pursuant to the Plan against the Reorganized Debtors, the Liquidating Trust, or their respective property. In such case, any consideration held for distribution on account of such Claim shall revert to the Disbursing Agent for redistribution to holders of Allowed Claims in accordance with the terms and provisions hereof.

9.7    **Withholding and Reporting Requirements**:   Any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state or local tax law or Tax Authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any Taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such Tax obligations and, if any party issuing any instrument or making any distribution under the Plan fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party. The Disbursing Agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as

applicable to each holder. If the holder fails to comply with such a request within one hundred eighty (180) days, such distribution shall be deemed an unclaimed distribution.

9.8    **Time Bar to Cash Payments**:  Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim. After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Disbursing Agent shall retain all monies related thereto for the sole purpose of redistribution to holders of Allowed Claims in accordance with the terms and provisions hereof.

9.9    **Distributions After Effective Date**:  Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made in accordance with the terms and provisions of Article IX of the Plan.

9.10    **Setoffs**:  The Disbursing Agent may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim by the Disbursing Agent), the claims, rights, and causes of action of any nature that one or more of the Debtors, Debtors in Possession, or the Reorganized Debtors may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Debtors in Possession, or the Reorganized Debtors of any such claims, rights, and causes of action that the Debtors, Debtors in Possession, or the Reorganized Debtors may possess against such holder; and, provided, further, that nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment.

9.11    **Allocation of Plan Distributions Between Principal and Interest**:  To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

9.12    **Certain Trustee Fees and Expenses**:  In the event that the Debtors and the Creditors' Committee agree, in their joint and absolute discretion, as to the Trustee Claims incurred during the period from the Petition Date up to and including the Effective Date, such Trustee Claims shall be paid in Cash by the Disbursing Agent on the Effective Date, without the need for the Trustees to file an application for allowance thereof with the Bankruptcy Court; provided, however, that no member of the Creditors' Committee may participate in the

41

Creditors' Committee vote regarding the reasonableness of such member's own fees and expenses. In the event that either the Debtors or the Creditors' Committee disagree with a Trustee as to the reasonableness of all or a portion of the fees and expenses requested by such Trustee, such Trustee may, at its sole discretion, request that the Bankruptcy Court (i) determine the reasonableness and allowance of such contested amounts and (ii) direct the Disbursing Agent to pay such amounts determined to be reasonable, if any, and the Debtors, Creditors' Committee, and any other Creditor or party in interest may object thereto. With respect to any undisputed portion of such Trustee's fees and expenses, such claims shall be deemed Allowed Claims, and the Debtors shall direct the Disbursing Agent to pay such undisputed fees and expenses to such Trustee on the Effective Date. To the extent that the Disbursing Agent fails to pay any Trustee Claim in full, whether as a result of the Creditors' Committee's or the Debtors' objection as to reasonableness, the Bankruptcy Court's determination as to reasonableness, or a Trustee's determination not to request payment therefor, such Trustee shall have the right to assert its Lien and priority rights pursuant to the applicable Indenture for payment of any unpaid amount upon any payment or other distribution to be made in accordance with the provisions contained herein. Notwithstanding the foregoing, the Disbursing Agent shall be responsible and, upon presentation of supporting documentation in form and substance satisfactory to the Disbursing Agent, shall satisfy the Trustee Distribution Expenses; provided, however, that, under no circumstance shall the Disbursing Agent be responsible for any indemnification obligation, cost, or expense of any of the Trustees associated with the gross negligence or willful misconduct of a Trustee in making any such distribution.

9.13    **Distribution Record Date**:  For purposes of distributions, on the Distribution Record Date, registers of the respective Trustees shall be closed and the Trustees shall have no obligation to recognize, and shall not recognize, any transfers of Claims arising under or related to the Indentures occurring from and after the Distribution Record Date.

## ARTICLE X
## MEANS OF IMPLEMENTATION

10.1    **Equity Investment Transaction**:

(a)    On the Effective Date, Reorganized BUFC shall be authorized to enter into the transactions contemplated by the Plan, the Master Subscription Agreement and the related documents included in the Plan Supplement, and shall consummate the Transaction.

(b)    As part of the Transaction, subject to the terms and conditions of the Master Subscription Agreement, on the Effective Date the Investor shall contribute the Investment to Reorganized BUFC.  In consideration for the Investment, the Investor shall receive: (a) shares of Reorganized BUFC Common Stock, constituting 21% of the issued and outstanding shares of Reorganized BUFC Common Stock; and (b) shares of Reorganized BUFC Senior Preferred Stock, constituting 100% of the issued and outstanding shares of Reorganized BUFC Senior Preferred Stock.

(c)    Not less than [$_____] of the Investment shall be included in Creditor Cash to be distributed to holders of Allowed Claims pursuant to Sections 3.2 and 3.3(a)(1), (b), (e), and (f) of the Plan.  The remainder of the Investment will be used by

Reorganized BUFC for general corporate purposes, subject to any limitations set forth in the Reorganized BUFC Articles of Incorporation.

10.2    **Intercompany Claims and Interests**:    Intercompany Claims shall be extinguished, unless otherwise agreed or resolved between the parties to a given Intercompany Claim or released by operation of the Plan. Any such transaction may be effected without any further action by the stockholders of any of the Debtors or the Debtors in Possession. Intercompany Interests shall be treated as set forth in Sections 3.5 and 10.3 hereof.

10.3    **Merger/Dissolution/Consolidation**:    On or as of the Effective Date or as soon as practicable thereafter, and without the need for any consent or approval, Reorganized BUFC may, in its sole and absolute discretion, (i) cause any of the Reorganized BUFC Subsidiaries to be merged, dissolved, or otherwise consolidated, (ii) cause the transfer of assets between or among the Reorganized BUFC Subsidiaries, or (iii) engage in any other transaction in furtherance of the Plan.

10.4    **Cancellation of Existing Securities and Agreements**:    Except as provided herein, on the latest to occur of (i) the Effective Date, (ii) the entry of a Final Order resolving all Claims in the Chapter 11 Cases, and (iii) the final distribution made to holders of Allowed Claims in accordance with Article IX of the Plan, any document, agreement, or instrument evidencing any Claim or Equity Interest shall be deemed automatically cancelled and terminated without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests shall be discharged; provided, however, that the Indentures shall continue in effect for the purposes of (i) allowing the Trustees to make distributions pursuant to the Plan and to perform such other necessary functions with respect thereto, (ii) permitting the Trustees to maintain and assert any right or Lien for reasonable fees, costs, expenses and indemnities under the Indentures, (iii) effectuating the applicable subordination provisions of such documents, (iv) enabling the noteholders to receive distributions and (v) enabling the Trustees to make applications in accordance with Section 9.12 of the Plan; and, provided, further, that, except as otherwise provided herein, nothing in this Plan shall impair, affect, or adversely affect the related transactions and the rights of the parties thereto. Notwithstanding any of the foregoing, nothing contained herein shall be deemed to impair, waive or extinguish any rights of the Trustees with respect to any rights contained in the respective Indentures; provided, however, that, upon payment in full of the respective Trustee Claims and Trustee Distribution Expenses in accordance with the Plan, the rights of the Trustees to seek payment from or assert claims against the Debtors for amounts owed under the respective Indentures shall be discharged as provided in this Plan.

10.5    **Claims of Subordination**:    Except as specifically provided herein, to the fullest extent permitted by applicable law, on the latest to occur of (i) the Effective Date, (ii) the entry of a Final Order resolving all Claims in the Chapter 11 Cases, and (iii) the final distribution made to holders of Allowed Claims in accordance with Article IX of the Plan, all Claims and Equity Interests, and all rights and claims between or among holders of Claims and Equity Interests relating in any manner whatsoever to Claims or Equity Interests, based upon any contractual, equitable or legal subordination rights, will be terminated and discharged in the manner provided in this Plan, and all such Claims, Equity Interests and rights so based, and all such contractual,

43

equitable and legal subordination rights to which any Entity may be entitled will be irrevocably waived. To the fullest extent permitted by applicable law, the rights afforded and the distributions that are made in respect of any Claims or Equity Interests under this Plan will not be subject to levy, garnishment, attachment or like legal process by any holder of a Claim or Equity Interest by reason of any contractual, equitable or legal subordination rights, so that, notwithstanding any such contractual, equitable or legal subordination rights, each holder of a Claim or Equity Interest shall have and receive the benefit of the rights and distributions set forth in this Plan.

10.6    **Surrender of Instruments**:  Except to the extent evidenced by electronic entry, as a condition of receiving any distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note to the appropriate Trustee or the Disbursing Agent or its designee. Any holder of such instrument or note that fails to (i) surrender such instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the appropriate Trustee or the Disbursing Agent before the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any distribution under the Plan. Any distribution so forfeited shall become the property of the Disbursing Agent for distribution to holders of Allowed Claims in accordance with the terms and provisions hereof.

10.7    **Issuance of Reorganized BUFC Securities**:

(a)    Reorganized BUFC shall authorize and issue on the Effective Date the Reorganized BUFC Securities.  Upon consummation of the Transaction and after such issuance and distribution, the Reorganized BUFC Securities will be held as follows: (1) 100% of the issued and outstanding shares of Reorganized BUFC Senior Preferred Stock will be held by the Investor; (2) 100% of the issued and outstanding shares of Reorganized BUFC Junior Preferred Stock will be held by holders of Allowed Senior Notes Claims, Allowed General Unsecured Claims, Allowed FDIC Claims, and Allowed Subordinated Notes Claims, in accordance with Sections 3.3(a)(1), (b), (e) and (f) of the Plan and subject to the redistribution provisions of the respective Indentures, and (3)(A) 79% of the issued and outstanding shares of Reorganized BUFC Common Stock will be held by Eligible Creditors receiving Reorganized BUFC Common Stock pursuant to Section 3.3(a)(2) of the Plan, and (B) 21% of the issued and outstanding shares of Reorganized BUFC Common Stock will be held by the Investor.

(b)    The issuance by Reorganized BUFC of the Reorganized BUFC Securities on the Effective Date is hereby authorized without the need for any further corporate action and without any further action by holders of Claims or Equity Interests.

10.8    **Exemption from Securities Laws**:  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the Reorganized BUFC Securities will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

10.9    **Hart-Scott-Rodino Compliance**:  Any shares of Reorganized BUFC Securities to be distributed under the Plan to any Entity required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended, shall not be

44

distributed until the notification and waiting periods applicable under such Act to such Entity shall have expired or been terminated.

10.10  **Fractional Stock or Other Distributions**: Notwithstanding anything to the contrary contained herein, no fractional shares of Reorganized BUFC Securities shall be distributed, and no Cash payments of fractions of cents will be made. Fractional dollars shall be rounded down to the nearest whole dollar. Fractional shares of stock shall be rounded down to the nearest whole unit. No Cash will be paid in lieu of such fractional shares of stock or dollars.

10.11  **Contractual Subordination Rights**: Notwithstanding anything in the Plan or any annex, attachment, schedule or exhibit to the Plan, the subordination rights in respect of the Senior Notes and Subordinated Notes shall be controlled and governed by the Indentures providing for and relating to such subordination rights and nothing in the Plan or any annex, attachment, schedule or exhibit to the Plan, shall amend, modify or impair such rights (or any remedies in respect thereof) in any manner or fashion.

## ARTICLE XI
## CREDITORS COMMITTEE

11.1  **Dissolution of the Creditors' Committee**:  On the first Business Day thirty (30) days following the Effective Date, and provided that payments to holders of Unsecured Claims have been made in accordance with Article IX of the Plan, the Creditors' Committee shall be dissolved, and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, financial advisors, and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith; provided, however, that the Creditors' Committee may, at its own discretion, continue or resume its duties arising from or relating to (i) any pending litigation or contested matter to which the Creditors' Committee is a party, (ii) any appeal filed regarding confirmation of the Plan, (iii) obligations arising under confidentiality agreements, joint interest agreements, and protective orders, if any, entered during the Chapter 11 Cases that remain in full force and effect according to their terms, (iv) applications for fees and expenses of members of the Creditors' Committee and requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases, and (v) motions, appeals or other litigation seeking the enforcement of the provisions of the Plan and the transactions contemplated hereunder or in the Confirmation Order; and provided, further, that the Debtors or the Reorganized Debtors, as the case may be, shall continue to compensate the Creditors' Committee's attorneys, financial advisors, and other agents, if any, for any of the post-Effective Date activities identified in this Section 11.1 of the Plan.

## ARTICLE XII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

12.1  **Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases**:  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all prepetition

executory contracts and unexpired leases that exist between one or more of the Debtors and any Entity, and which have not expired by their own terms on or before the Confirmation Date, shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease that (i) has been assumed and assigned or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date or (ii) that is specifically designated as a contract or lease to be assumed or assumed and assigned on the schedules to the Plan Supplement; provided, however, that the Debtors reserve the right, on or before the Confirmation Date, to amend such schedules to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, as the case may be, either rejected, assumed, or assumed and assigned as of the Effective Date. The Debtors shall serve notice of any executory contract and unexpired lease to be rejected or assumed or assumed and assigned through the operation of this Section 12.1 by including schedules of such contracts and leases in the Plan Supplement. To the extent there are any amendments to such schedules, the Debtors shall provide notice of any such amendments to the parties to the executory contracts and unexpired leases affected thereby. The listing of a document on the schedules to the Plan Supplement shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

12.2    **Approval of Rejection or Assumption of Executory Contracts and Unexpired Leases**:  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection, assumption, or assumption and assignment, as the case may be, of executory contracts and unexpired leases pursuant to Section 12.1 of the Plan.

12.3    **Inclusiveness**:    Unless otherwise specified on the schedules to the Plan Supplement, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed on such schedule.

12.4    **Cure of Defaults**:  Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed or assumed and assigned pursuant to Section 12.1 of the Plan, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within at least twenty-one (21) days before the Confirmation Hearing, file with the Bankruptcy Court and serve by first class mail on each non-debtor party to such executory contracts or unexpired leases to be assumed pursuant to Section 12.1 of the Plan, a notice, which shall list the cure amount as to each executory contract or unexpired lease to be assumed or assumed and assigned. The parties to such executory contracts or unexpired leases will have twenty-one (21) days from the date of service of such notice to file and serve any objection to the cure amounts listed by the Debtors.  If there are any objections filed, the Bankruptcy Court shall hold a hearing on a date to be set by the Bankruptcy Court. Notwithstanding Section 12.1 of the Plan, the Debtors shall retain their rights to reject any of their executory contracts or unexpired leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.

46

12.5    **Rejection Damage Claims**:  If the rejection of an executory contract or unexpired lease by the Debtors hereunder results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties or agents, successors, or assigns, including, without limitation, the Reorganized Debtors and the Liquidating Trust, unless a proof of Claim is filed with the Bankruptcy Court and served upon attorneys for the Debtors or the Liquidating Trustee, as the case may be, on or before thirty (30) days after the latest to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or unexpired lease.

12.6    **Indemnification and Reimbursement Obligations**:  For purposes of the Plan, (i) the obligations of the Debtors to indemnify and reimburse their directors or officers that were directors or officers, respectively, on or before the Petition Date shall be deemed rejected as of the Effective Date and such parties' rights to assert rejection damage claims, if any, shall be governed by Section 12.5 of the Plan and (ii) indemnification obligations of the Debtors arising from conduct of officers and directors during the period from and after the Petition Date shall be Administrative Expense Claims.  Notwithstanding the foregoing or anything contained in the Plan to the contrary, and for the avoidance of doubt, all of the Debtors' directors and officers liability insurance policies, to the extent such insurance policies are executory contracts, are being assumed as of the Effective Date.

12.7    **Termination of Benefit Plans**:  Notwithstanding anything contained in the Plan to the contrary, the Debtors shall be authorized, but not required, to terminate all Benefit Plans in accordance with the terms and provisions of the documents and instruments relating thereto and applicable law, at such time as determined by the Debtors in their sole discretion.

## ARTICLE XIII
## RIGHTS AND POWERS OF DISBURSING AGENT

13.1    **Exculpation**:  From and after the Effective Date, the Disbursing Agent shall be exculpated by all Entities, including, without limitation, holders of Claims and Equity Interests and other parties in interest, from any and all claims, causes of action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of such Disbursing Agent. No holder of a Claim or an Equity Interest or other party in interest shall have or pursue any claim or cause of action against the Disbursing Agent for making payments in accordance with the Plan or for implementing the provisions of the Plan.

13.2    **Powers of the Disbursing Agent**:  Except as may be provided otherwise hereunder, the Disbursing Agent shall be empowered to (i) take all steps and execute all instruments and documents necessary to effectuate the Plan, (ii) make distributions contemplated by the Plan, (iii) comply with the Plan and the obligations thereunder, and (iv) exercise such other powers as may be vested in the Disbursing Agent pursuant to order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

13.3    **Fees and Expenses Incurred From and After the Effective Date**:  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent from and after the Effective Date and any reasonable compensation and expense reimbursement claims, including, without limitation, reasonable fees and expenses of counsel, incurred by the Disbursing Agent, shall be paid in Cash without further order of the Bankruptcy Court.

## ARTICLE XIV
## CONDITIONS PRECEDENT TO
## CONFIRMATION OF THE PLAN

14.1    **Conditions Precedent to Confirmation of the Plan**:  Confirmation of the Plan is subject to satisfaction of the following conditions precedent:

(a)    **Required Orders**:  The Clerk of the Bankruptcy Court shall have entered an order or orders (including, without limitation, the Disclosure Statement Order and the Confirmation Order):

(1)    approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(2)    authorizing the solicitation of votes with respect to the Plan;

(3)    determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan;

(4)    confirming and giving effect to the terms and provisions of the Plan, including the releases in Article XIX of the Plan;

(5)    determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan;

(6)    approving the Master Subscription Agreement and other documents in the Plan Supplement; and

(7)    authorizing the Debtors to execute, enter into, and deliver the Master Subscription Agreement and other documents in the Plan Supplement, and to execute, implement and take all actions otherwise necessary or appropriate to give effect to the transactions contemplated by the Plan, the Master Subscription Agreement, and the other documents in the Plan Supplement.

(b)    **Form of Orders**:  The Confirmation Order and this Plan each is in a form and substance satisfactory to the Debtors, the Creditors' Committee, and the Investor.

(c)    **Confirmation Order**:    The Confirmation Order includes (i) determinations that all of the settlements and compromises contained in the Plan satisfy applicable standards under sections 365, 1123(b)(3) and 1129 of the Bankruptcy Code and Bankruptcy Rule 9019, and (ii) the releases and injunctions set forth in Article XIX of the Plan.

14.2    **Waiver of Conditions Precedent to Confirmation**:  To the extent practicable and legally permissible, each of the conditions precedent in Section 14.1 hereof may be waived, in whole or in part, by the Debtors, subject to the approval of the Creditors' Committee and the Investor. Any such waiver of a condition precedent may be effected at any time by filing a notice thereof with the Bankruptcy Court executed by the Debtors, the Creditors' Committee, and the Investor.

# ARTICLE XV
# CONDITIONS PRECEDENT TO
# EFFECTIVE DATE OF THE PLAN

15.1    **Conditions Precedent to Effective Date of the Plan**:  The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

(a)    **Entry of the Confirmation Order**: The Clerk of the Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtors, the Creditors' Committee, and the Investor, in accordance with section 1129 of the Bankruptcy Code.

(b)    **Investor's Obligations Under Master Subscription Agreement**:  The Investor shall have met all of its obligations and duties under the Master Subscription Agreement and shall be obligated to close the Transaction.

(c)    **Execution of Documents; Other Actions**: All other actions and documents necessary to implement the Plan shall have been effected or executed.

15.2    **Waiver of Conditions Precedent**:  To the extent practicable and legally permissible, each of the conditions precedent in Section 15.1 hereof may be waived, in whole or in part, by the Debtors, subject to the approval of the Creditors' Committee and the Investor. Any such waiver of a condition precedent may be effected at any time by filing a notice thereof with the Bankruptcy Court executed by the Debtors, the Creditors' Committee, and the Investor.

# ARTICLE XVI
# RETENTION OF JURISDICTION

16.1    **Retention of Jurisdiction**:  The Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following:

(a)    to resolve any matter related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear, determine, and, if necessary, liquidate, any Claim arising therefrom, including those matters related to the amendment after the Effective Date of the Plan to add any executory contract or unexpired lease to the list of executory contracts and unexpired leases to be rejected;

(b)     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, unless any such agreements or documents contain express enforcement and dispute resolution provisions to the contrary, in which case, such provisions shall govern;

(c)     to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtors, the Reorganized Debtors, or the Liquidating Trustee before or after the Effective Date;

(d)     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e)     to hear and determine any timely objection to any Claim, whether such objection is filed before or after the Confirmation Date, including any objection to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(g)     to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     to consider any modification of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(i)     to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred before the Effective Date;

(j)     to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(k)     to determine any other matter that may arise in connection with or that is related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection therewith, unless such agreements or documents contain express enforcement or dispute resolution provisions, in which case, such provisions shall govern;

(l)     to hear and determine matters concerning state, local, and federal Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any matter relating to the Tax Refunds, and any request by the Debtors or by the Liquidating Trustee, as applicable, for an expedited determination of Tax under section 505 of the Bankruptcy Code with respect to the Debtors, the Liquidating Trust, or the Liquidating Trust Claims Reserve, as applicable);

50

(m)      to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

(n)      to enter a final decree closing the Chapter 11 Cases; provided, however, that the foregoing is not intended to (i) expand the Bankruptcy Court's jurisdiction beyond that allowed by applicable law, (ii) grant the Bankruptcy Court jurisdiction over disputes between New Bank and the FDIC-Receiver and/or FDIC-Corporate under the Purchase and Assumption Agreement, (iii) impair the rights of an Entity to (a) invoke the jurisdiction of a court, commission, or tribunal with respect to matters relating to a governmental unit's police and regulatory powers and (b) contest the invocation of any such jurisdiction; and provided, further, that the invocation of such jurisdiction, if granted, shall not extend to the allowance or priority of Claims or the enforcement of any money judgment against the Debtors, the Reorganized Debtors, or the Liquidating Trust, as the case may be, entered by such court, commission, or tribunal, and (iv) impair the rights of an Entity to (a) seek the withdrawal of the reference in accordance with 28 U.S.C. § 157(d) and (b) contest any request for the withdrawal of reference in accordance with 28 U.S.C. § 157(d).

## ARTICLE XVII
## MODIFICATION, REVOCATION, OR
## WITHDRAWAL OF THE PLAN

17.1    **Modification of Plan**:  The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, in the event any amendment or modification would materially adversely affect the substance of the economic provisions set forth in the Plan, to amend or modify the Plan, the Plan Supplement, or any exhibit to the Plan at any time before the entry of the Confirmation Order, subject in each case to the consent of the Creditors' Committee and the Investor. Upon entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

17.2    **Revocation or Withdrawal**:

(a)      The Plan may be revoked or withdrawn before the Confirmation Date by the Debtors.

(b)      If the Plan is revoked or withdrawn before the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claim by the Debtors or any other Entity, or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceeding involving the Debtors.

17.3    **Amendment of Plan Documents**:    From and after the Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the exhibits to the Plan

51

Supplement and the exhibits to the Plan, and any document attached to any of the foregoing, shall be as provided in such Plan Supplement, exhibits to the Plan Supplement, or exhibits to the Plan and their respective attachments, as the case may be.

17.4    **No Admission of Liability**.

(a)    The submission of this Plan is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Entity with respect to any of the matters addressed in this Plan.

(b)    None of this Plan (including, without limitation, the exhibits hereto), or any settlement entered, act performed or document executed in connection with this Plan: (i) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Entity in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (ii) is or may be deemed to be or used as an admission or evidence against the Reorganized Debtors, the Debtors, or any other Person or Entity with respect to the validity of any Claim; or (iii) is or may be deemed to be used as an admission or evidence of the jurisdiction of any court to adjudicate claims or matters relating to the Receivership. None of this Plan or any settlement entered, act performed or document executed in connection with this Plan shall be admissible in any proceeding for any purposes, except to carry out the terms of this Plan, and except that, once confirmed, any Entity may file this Plan in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

**ARTICLE XVIII**
**CORPORATE GOVERNANCE AND MANAGEMENT**
**OF THE REORGANIZED DEBTORS**

18.1    **Corporate Action**:  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Reorganized Debtors, including, without limitation, the authorization to issue or cause to be issued the Reorganized BUFC Securities, the adoption of the Reorganized Debtors' Articles of Incorporation and the Reorganized Debtors' Bylaws, and the election or appointment, as the case may be, of directors and officers of the Reorganized Debtors pursuant to the Plan, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized Debtors, as the case may be. The cancellation of all Equity Interests and other matters provided under the Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors shall be deemed to have occurred, be authorized, and shall be in effect without requiring further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized Debtors. Without limiting the foregoing, from and after the Confirmation Date, the Debtors and the Reorganized Debtors shall take any and all actions deemed appropriate in order to consummate the transactions contemplated herein, and,

notwithstanding any provision contained in the Debtors' articles of incorporation and bylaws to the contrary, such Entities shall not require the affirmative vote of holders of Equity Interests in order to take any corporate action including to (i) compromise and settle claims and causes of action of or against the Debtors and their chapter 11 estates and (ii) dissolve, merge, or consolidate with any other Entity.

18.2    **Amendment of Articles of Incorporation and Bylaws**:    The articles of incorporation and bylaws of the Debtors shall be amended as of the Effective Date to provide substantially as set forth in the Reorganized Debtors' Articles of Incorporation and the Reorganized Debtors' Bylaws, each of which shall in form and substance be satisfactory to the Investor and reasonably satisfactory to the Creditors' Committee. The Reorganized Debtors' Articles of Incorporation and the Reorganized Debtors' Bylaws, to the extent applicable, shall prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.

18.3    **Directors of the Reorganized Debtors**:    On the Effective Date, the boards of directors of each of the Reorganized Debtors shall each consist of [#] individuals and will be comprised as follows: (i) [#] individuals selected by the Debtors; (ii) [#] individuals selected by the Creditors' Committee; and (iii) [#] individuals selected by the Investor; provided, however, that the first annual election of the boards of directors shall take place within six (6) months after the Effective Date.  The initial directors shall be disclosed before the Confirmation Hearing. In the event that, during the period from the Confirmation Hearing up to and including the Effective Date, circumstances require the substitution of one or more persons selected to serve on the boards of directors of the Reorganized Debtors, the Investor shall choose such substitute and the Debtors shall file a notice thereof with the Bankruptcy Court and, for purposes of section 1129 of the Bankruptcy Code, any such replacement person, designated in accordance with the requirements of the immediately preceding sentence, shall be deemed to have been selected and disclosed before the Confirmation Hearing.

18.4    **Officers of the Reorganized Debtors**:    To the extent applicable, the boards of directors of the Reorganized Debtors shall elect officers of the Reorganized Debtors as of or after the Effective Date.

18.5    **Shareholders' Agreement**:    Reorganized BUFC and its shareholders (and their shares of Reorganized BUFC Common Stock) shall be subject to, and bound by, a shareholders' agreement, which shall in form and substance be reasonably satisfactory to the Investor and the Creditors' Committee.

## ARTICLE XIX
## MISCELLANEOUS PROVISIONS

19.1    **Title to Assets**:    Except as otherwise provided by the Plan, on the Effective Date, title to all assets and properties encompassed by the Plan shall vest in the Reorganized Debtors or the Liquidating Trust, as the case may be, free and clear of all Liens and in accordance with sections 363 and 1141 of the Bankruptcy Code, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors and the Debtors in Possession except as provided in the Plan.

19.2    **Discharge and Release of Claims and Termination of Equity Interests**.

(a)    **Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and of all Equity Interests, or other rights of a holder of an Equity Interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and estates, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, or Equity Interests or other rights of a holder of an equity security or other ownership interest. Upon the Effective Date, the Debtors and the Reorganized Debtors shall (i) be deemed discharged under section 1141(d)(1)(A) of the Bankruptcy Code and released from any and all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any Equity Interests or other rights of a holder of an equity security or other ownership interest, of any nature whatsoever, including, without limitation, liabilities that arose before the Effective Date (including before the Petition Date), and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan and (ii) terminate and cancel all rights of any equity security holder in any of the Debtors and all Equity Interests.**

(b)    **Except as provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting against any and each of the Released Parties, and any and each of their respective assets, property and estates, any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and of all Equity Interests, or other rights of a holder of an Equity Interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and estates, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, or Equity Interests or other rights of a holder of an equity security or other ownership interest. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any Equity Interests, or other rights of a holder of an equity interest and termination of all rights of any such holder in any of the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against any of the Released Parties, and their respective assets,**

property and estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated right of any holder of any Equity Interest in any of the Debtors. As of the Effective Date, and in consideration for the value provided to effectuate the Plan, each holder of a Claim or Equity Interest in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against each and any of the Released Parties, and their respective assets, property and estates, all such Claims and Equity Interests.

19.3    **Injunction on Claims**:  Except as otherwise expressly provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all Entities, and each Related Person of such Entities, who have held, hold or may hold Claims or any other debt or liability that is discharged or Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan, or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Sections 19.2 hereof, respectively, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability or Equity Interest that is terminated or cancelled pursuant to the Plan against any of the Released Parties or any of their respective assets, property or estates, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets, property or estates, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets, property or estates, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets, property or estates, with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan; <u>provided, however</u>, that such injunction shall not preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers; and, <u>provided, further</u>, that, except in connection with a properly filed proof of Claim, the foregoing proviso does not permit the United States of America, any state or any of their respective police or regulatory agencies from obtaining any monetary recovery from any of the Released Parties or any of their respective assets, property or estates, with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets, property and estates.

19.4    **Integral to Plan**:  Each of the discharge, injunction and release provisions provided in this Article XIX is an integral part of the Plan and is essential to its implementation. Each of the Released Parties shall have the right to independently seek the enforcement of the discharge, injunction and release provisions set forth in this Article XIX.

19.5    **Exculpation**:  **The Released Parties shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Chapter 11 Cases (including any actions taken by the BUFC Board, the CRO, or the Creditors' Committee after the Effective Date), the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement related thereto, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the foregoing provisions of this Section 19.5 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

19.6    **Term of Existing Injunctions or Stays**:   Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until entry of an order in accordance with Section 19.13 of the Plan or such other Final Order of the Bankruptcy Court; provided, however, that the terms of the Trading Injunction Order shall remain in full force and effect forever, including, without limitation, with respect to any violation thereof on or before the Effective Date.

19.7    **Payment of Statutory Fees**:  All fees payable pursuant to section 1930 of title 28 of the United States Code, and, if applicable, any interest payable pursuant to section 3717 of title 31 of the United States Code, as determined by the Bankruptcy Court, shall be paid on the Effective Date or thereafter as and when they become due or otherwise pursuant to an agreement between the Reorganized Debtors and the United States Department Justice, Office of the United States Trustee, until such time as the Chapter 11 Cases are closed in accordance with the provisions of Section 19.13 of the Plan.

19.8    **Post-Effective Date Fees and Expenses**:  From and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, retain professionals and pay the reasonable professional fees and expenses incurred by the Reorganized Debtors related to implementation and consummation of the Plan without further approval from the Bankruptcy Court.

19.9    **Exemption from Transfer Taxes**:  Pursuant to sections 106, 1141 and 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Reorganized BUFC Securities, and any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar Tax.  The Confirmation Order shall direct all state and local government officials and agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any instrument or other

document issued or transferred pursuant to the Plan, without the payment of any such tax or government assessment.

19.10  **Severability**:  If, before the Confirmation Date, any term or provision of the Plan shall be held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted, is valid and enforceable pursuant to its terms.

19.11  **Governing Law**:  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an exhibit hereto or any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Florida, without giving effect to principles of conflicts of laws.

19.12  **Notices**:  All notices, requests, and demands to or upon the Debtors, the Debtors in Possession, the Reorganized Debtors, or the Liquidating Trustee to be effective shall be in writing, including by facsimile transmission or email transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission or email transmission, when received and telephonically confirmed, addressed as follows:

To the Debtors or the Debtors in Possession:

BankUnited Financial Corporation
c/o Development Specialists, Inc.
200 South Biscayne Blvd., Suite 1818
Miami, Florida 33131
Attention: Joseph J. Luzinski, Chief Restructuring Officer
Telephone: (305) 374-2717
Fax: (305) 374-2718
Email: jluzinski@dsi.biz

With a copy to:

Mark D. Bloom, Esq.
GREENBERG TRAURIG, P.A.
333 Avenue of the Americas (333 S.E. 2nd Avenue)
Miami, Florida, 33131
Telephone: (305) 579-0500
Fax: (305) 579-0717
Email: bloomm@gtlaw.com

- and –

Scott M. Grossman, Esq.
GREENBERG TRAURIG, P.A.
401 East Las Olas Blvd., Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 765-0500
Fax:  (954) 765-1477
Email: grossmansm@gtlaw.com

To the Creditors' Committee:

Todd Meyers, Esq.
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6482
Fax: (404) 541-3307
Email: tmeyers@kilpatrickstockton.com

    19.13    **Closing of Case**:    The Liquidating Trustee shall, promptly upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court.

    19.14    **Section Headings**:  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

        [REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

19.15   **Inconsistencies**:   To the extent of any inconsistency between the information contained in the Disclosure Statement and the terms and provision of the Plan, the terms and provisions of the Plan shall govern.

Dated: November 22, 2010 at Miami, Florida.

BANKUNITED FINANCIAL
CORPORATION

By:   /s/ Joseph J. Luzinski
Name: Joseph J. Luzinski
Title: Chief Restructuring Officer

CRE AMERICA CORPORATION

By:   /s/ Joseph J. Luzinski
Name: Joseph J. Luzinski
Title: Chief Restructuring Officer

BANKUNITED FINANCIAL SERVICES,
INC.

By:   /s/ Joseph J. Luzinski
Name: Joseph J. Luzinski
Title: Chief Restructuring Officer

GREENBERG TRAURIG, P.A.
Counsel for the Debtors
333 Avenue of the Americas
(333 S.E. 2nd Avenue)
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By:   /s/ Mark D. Bloom
        MARK D. BLOOM
        Florida Bar No. 303836
        bloomm@gtlaw.com

        - and –

SCOTT M. GROSSMAN
Florida Bar No. 0176702
grossmansm@gtlaw.com
GREENBERG TRAURIG, P.A.
401 East Las Olas Blvd., Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile: 954-765-1477

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION

*MIA 181,473,634v7*