UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

BANKUNITED FINANCIAL
CORPORATION, *et al.*,[1]

    Debtors.

_____/

Case No. 09-19940-LMI

Chapter 11

Jointly Administered

**MOTION FOR AUTHORITY TO INCUR
AND PAY CONTINGENT ADMINISTRATIVE CLAIM AND REASONABLE
EXPENSES TO STRUCTURED CAPITAL SOLUTIONS**

Debtors, BankUnited Financial Corporation, BankUnited Financial Services, Incorporated, and CRE America Corporation (collectively, the **"Debtors"**), respectfully move pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b)(1)(A) for authority to incur and pay a contingent administrative claim and reasonable expenses (not to exceed $5,000 per calendar quarter) to investment banker Structured Capital Solutions, LLC (**"SCS"**) in respect of the transaction services contemplated below, and state:

**PRELIMINARY STATEMENT**

1.    The Debtors filed a Chapter 11 plan on November 22, 2010 (DE #733) (the **"Plan"**) that contemplates an equity investment transaction by an investor (a **"Transaction"**). While the Debtors continue to negotiate with potential investors and investment bankers, one investment banking firm, SCS, has made a proposal to bring a potential Transaction counter-party (an **"SCS Counter-Party"**) to the Debtors, in exchange for payment of (a) a fee equal to 15% of all amounts distributed to all holders of allowed pre-petition claims against BUFC (**"BUFC Creditors"**) in respect of securities issued to such BUFC Creditors (except to the

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): BankUnited Financial Corporation, a Florida corporation (7773) (**"BUFC"**); CRE America Corporation, a Florida corporation (0049); and BankUnited Financial Services, Incorporated, a Florida corporation (8335). The address of each of the Debtors is c/o Development Specialists, Inc., 200 South Biscayne Blvd., Suite 1818, Miami, FL 33131.

MIA 181,634,640v8

extent such amounts would have been distributed to BUFC Creditors in a liquidation of BUFC) in a Transaction as and when amounts are distributed on any such securities (the **"SCS Fee"**), plus (b) reimbursement of documented reasonable out-of-pocket travel and hotel expenses (not to exceed $5,000 per calendar quarter) incurred for travel from New York City in connection with the Transaction (the **"SCS Expenses"**).

2. The SCS Fee is entirely contingent, and would be payable over the life of the Transaction, only in the event the Debtors close a Transaction with an SCS Counter-Party under a confirmed Chapter 11 Plan on or before December 31, 2011 (or such later date as extended by agreement of the Debtors, the Official Committee of Unsecured Creditors (the **"Committee"**) and the SCS Counter-Party). Reimbursement of the SCS Expenses is payable on a quarterly basis, upon presentation to the Debtors and the Committee of an itemized report listing and describing such Expenses in reasonable detail, up to an amount not to exceed $5,000 on a quarterly basis. A true and correct copy of the Agreement to Provide Transaction Services between BUFC and SCS is attached hereto as **Exhibit A** (the **"SCS Agreement"**).

3. The Debtors do not seek to retain SCS as an estate professional. To the contrary, in order to obtain the potential benefit to SCS' services as a broker acting on behalf of a potential investor, the Debtors propose to enter into the Agreement with SCS on a non-exclusive basis, as a matter of affording reasonable assurance to SCS that in the event their efforts on behalf of an SCS Counter-Party lead to the consummation of a Transaction they will receive a reasonable fee from the estates. Absent Court approval of the SCS Fee and SCS Expenses, SCS is not willing to disclose the identity of or direct an SCS Counter-Party to the Debtors, thus diminishing the possibility of the Debtors entering into a Transaction that could generate substantial additional value for the estates and their creditors.

**JURISDICTION AND VENUE**

4.  This Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

**FACTUAL BACKGROUND**

5.  The Debtors commenced these cases on May 22, 2009 (the **"Petition Date"**) by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108, no trustee or examiner having been sought or appointed. On May 29, 2009, the Office of the United States Trustee appointed the Committee (DE # 33).

6.  BUFC is a former unitary savings and loan holding company of BankUnited, FSB (the **"Bank"**), incorporated in the State of Florida and formerly headquartered in Coral Gables, Florida. BUFC is also the 100% owner of (i) CRE, which holds a timeshare interest in certain real property located in New York City; and (ii) BUFS, which was organized in 1997 for the purpose of selling annuities, mutual funds and other insurance and securities products.[2]

7.  Following several unsuccessful attempts to raise the Bank's capital levels in accordance with Office of Thrift Supervision (**"OTS"**) mandates, on May 21, 2009, the OTS closed the Bank and appointed the FDIC as its Receiver. The FDIC-Receiver entered into a Purchase and Assumption Agreement with a group of investors who invested in a new depository institution, BankUnited, a de novo federal savings association organized under the laws of the United States and having its principal place of business in Coral Gables, Florida (**"New Bank"**), for the purchase of the Bank's assets. All of the former officers and employees of the Bank then

---

[2] BUFC is also the parent and 100% owner of other subsidiary entities which have not sought relief under the Bankruptcy Code in this or any other Court, and appear at this juncture not to have any meaningful assets.

*MIA 181,634,640v8*

terminated their relationship with the Bank or the Debtors and either took positions at New Bank or pursued other opportunities.

8. A Transaction under the Plan, if confirmed and consummated, could generate significant additional value for the Debtors' estates and the BUFC Creditors. In the course of their continued pursuit of an investor suitable to undertake the Transaction, the Debtors have come to learn that SCS has identified an SCS Counter-Party. Absent approval of the SCS Fee and SCS Expenses, however, SCS will not disclose the identity of that Counter-Party nor proceed with efforts to broker a Transaction.

9. SCS is a global investment banking firm, based in New York City, which has substantial experience in transactions of the type contemplated by the Plan. While its principals travel frequently between London, Sydney and New York in pursuit and furtherance of such transactions, the proposed SCS Expenses are not intended to cover any business travel emanating from anywhere other than New York.

10. The Debtors believe that SCS has the ability to bring to the Debtors one or more SCS Counter-Parties that may be interested in and have the ability to close a Transaction.

## RELIEF REQUESTED

11. The Debtors therefore seek authority to incur and pay the SCS Fee and SCS Expenses as an administrative expense of their estates, with the SCS Fee payable only in the event that the Debtors close a Transaction with an SCS Counter-Party under a confirmed Chapter 11 Plan. If SCS does not procure an investor or if a Transaction with an SCS Counter-Party fails to close, then only the SCS Expenses will be paid and the estates will have no liability whatsoever in respect of the SCS Fee. Absent approval of this contingent administrative payment, however, SCS will not proceed to introduce any SCS Counter-Party to the Debtors or to the opportunity to invest in a Transaction.

12.     In order to be allowed as an administrative expense claim, the claimant must show (1) the claim arose from a post-petition transaction and (2) the transaction actually benefited the estate. *In re Section 20 Land Group, Ltd.*, 261 B.R. 711, 715-16 (Bankr. M.D. Fla. 2000); *In re Finevest Foods, Inc.*, 159 B.R. 972, 975 (Bankr. M.D. Fla. 1993) (citing *In re Finevest Foods, Inc.*, 140 B.R. 581, 583 (Bankr. M.D. Fla. 1992)); *In re Apollo Moving Specialists*, 137 B.R. 538, 539 (Bankr. M.D. Fla. 1992); *In re Rawson Food Services, Inc.*, 61 B.R. 207, 209 (Bankr. M.D. Fla. 1986) ("If the transaction creating the claim arises between the claimant and the debtor-in-possession and the consideration supporting the claim was tendered to and beneficial to the estate then the claim is entitled to priority as an administrative expense."); *see also Broadcast Corp. v. Broadfoot (In re Subscription Television)*, 789 F.2d 1530, 1532 (11th Cir. 1986) (a post-petition expense may qualify as an actual, necessary expense of preserving the estate where the expense conferred some "concrete benefit" upon the estate).

13.     Here, the contemplated Transaction is a post-petition transaction that, if consummated, will actually benefit the estates by returning additional value to the estates and their creditors over and above liquidation value. At the same time, because the SCS Fee is contingent on a Transaction closing with an SCS Counter-Party, the only cost to the estates if the Transaction does not close will be reimbursement of the SCS Expenses.

14.     Thus, the Debtors believe in the sound exercise of their business judgment that approval of the contingent SCS Fee and payment of the SCS Expenses is in the best interests of their estates and creditors, and should be approved.

WHEREFORE, the Debtors respectfully request authority to incur and pay the SCS Fee as a contingent administrative expense, to incur and pay the SCS Expenses, and for and for such other relief as justice and equity require.

Dated February 7, 2011.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
Counsel for the Debtors
333 Avenue of the Americas
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: /s/ Scott M. Grossman
    MARK D. BLOOM
    Florida Bar No. 303836
    bloomm@gtlaw.com

- and –

SCOTT M. GROSSMAN
Florida Bar No. 0176702
grossmansm@gtlaw.com
GREENBERG TRAURIG, P.A.
401 East Las Olas Blvd., Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile: 954-765-1477

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day (i) via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record or pro se parties who are authorized to receive electronically Notices of Electronic Filing in this bankruptcy case, and (ii) on all parties listed on the Service List attached hereto via CM/ECF transmission, and/or U.S. mail, as indicated thereon.

    /s/ Scott M. Grossman
    SCOTT M. GROSSMAN

MIA 181,634,640v8

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive e-mail notice/service for this case.

- Vincent F Alexander    vfa@kttlaw.com, lf@kttlaw.com
- Johanna Armengol    Johanna.Armengol@usdoj.gov, johanna.armengol@usdoj.gov
- Paul J. Battista    pbattista@gjb-law.com, gjbecf@gjb-law.com
- Mark D. Bloom    bloomm@gtlaw.com, MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com;reisinoa@gtlaw.com
- Mark D. Bloom    bloomm@gtlaw.com, MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com;reisinoa@gtlaw.com
- Shawn M Christianson    schristianson@buchalter.com
- City of Homestead, FL    dgonzales@wsh-law.com
- City of Miramar, FL    dgonzales@wsh-law.com
- John R. Dodd    doddj@gtlaw.com, miaecfbky@gtlaw.com;mialitdock@gtlaw.com
- Stephen P. Drobny    sdrobny@shutts.com, mvandenbosch@shutts.com
- Douglas R. Gonzales    dgonzales@wsh-law.com
- Scott M. Grossman    grossmansm@gtlaw.com, jacksont@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com
- Scott M. Grossman    grossmansm@gtlaw.com, jacksont@gtlaw.com;MiaLitDock@gtlaw.com;FTLLitDock@GTLaw.com;miaecfbky@gtlaw.com
- Robert J Hauser    hauser@beasleylaw.net, lundstrom@beasleylaw.net;miles@beasleylaw.net
- Hollie N Hawn    hhawn@broward.org
- Brian W Hockett    bhockett@thompsoncoburn.com
- Christina M Kennedy    ckennedy@foley.com
- Jeffrey T. Kucera    jeffrey.kucera@klgates.com, maxine.lewis@klgates.com;;miamidocketing@klgates.com
- Peter H Levitt    plevitt@shutts-law.com
- Corali Lopez-Castro    clc@kttlaw.com, rcp@kttlaw.com
- Todd C Meyers    tmeyers@kilpatrickstockton.com, rrahman@kilpatrickstockton.com;lcanty@kilpatrickstockton.com
- Miami-Dade County Tax Collector    mdtcbkc@miamidade.gov
- Dennis A. Nowak    dnowak@fowler-white.com, agrage@fowler-white.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Geoffrey T Raicht    graicht@mwe.com, rrodriguez@mwe.com;nhazan@mwe.com;kotero@mwe.com;wjanke@mwe.com;akratenstein@mwe.com;trodriguez@mwe.com
- Craig V Rasile    crasile@hunton.com, mtucker@hunton.com,mmannering@hunton.com,adeboer@hunton.com

*MIA 181,634,640v8*

- Patricia A Redmond    predmond@stearnsweaver.com, jrivera@stearnsweaver.com;rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com
- David Samole    das@kttlaw.com, mc@kttlaw.com;ycc@kttlaw.com
- Michael C Sontag    msontag@clplaw.net
- Jonathan C. Vair    jvair@stearnsweaver.com, cgraver@stearnsweaver.com;tcotter@stearnsweaver.com;rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com
- Mark J Wolfson    mwolfson@foley.com, btanner@foley.com;jhayes@foley.com

## BankUnited Chapter 11
## NON-ECF SERVICE LIST

| | |
|---|---|
| Cede & Co.<br>P.O. Box 20<br>Bowling Green Station<br>New York, NY 10004-1408 | Wells Fargo Delaware Trust Company<br>Attn: Molly A. Breffitt<br>919 N. Market Street<br>Suite 1600<br>Wilmington, DE 19801 |
| U.S. Bank<br>1555 N. River Center Drive<br>Suite 300<br>Milwaukee, WI 53212 | Thomas M. Korsman, Vice President<br>Corporate Special Accounts Group<br>Wells Fargo Bank, N.A.<br>MAC N9311-110<br>625 Marquette Avenue<br>Minneapolis, MN 55479 |
| U.S. Bank<br>Attn: Earl Dennison, Acct. Admin.<br>Goodwin Square, 23rd Floor<br>225 Asylum Street<br>Hartford, CT 06103 | ~~Stearns Weaver~~<br>~~Museum Tower~~<br>~~150 W. Flagler Street Suite 2200~~<br>~~Miami, FL 33130~~ |
| Geoffrey T. Raicht, Esq.<br>*Counsel for FDIC*<br>McDermott Will & Emery LLP<br>340 Madison Ave.<br>New York, N.Y. 10173-1922 | Dennis S. Klein, Esq.<br>*Co-Counsel for FDIC*<br>Hughes Hubbard & Reed LLP<br>1775 I Street N.W., Suite 600<br>Washington, D.C. 20006-2401 |
| Aviva L. Wernick, Esq.<br>*Local Counsel for FDIC*<br>Hughes Hubbard & Reed LLP<br>201 S. Biscayne Blvd., Suite 2500<br>Miami, FL 33131-4332 | Coffey Burlington<br>Office in the Grove Penthouse<br>2699 S. Bayshore Drive<br>Miami, FL 33133 |
| ~~Tew Cardenas~~<br>~~Four Seasons Tower - 15th Floor~~<br>~~1441 Brickell Avenue~~<br>~~Miami, FL 33131-3439~~ | Bridget Schessler, Vice President<br>The Bank of New York Mellon<br>525 William Penn Place, 7th Floor<br>Pittsburgh, PA 15259 |
| Moses Marx<br>c/o Ross Martin, Esq.<br>Ropes & Gray, LLP<br>One International Place<br>Boston, MA 02110-2624 | Steven M. Cimalore<br>Wilmington Trust Company<br>Rodney Square North<br>1100 North Market Street<br>Wilmington, DE 19890-1615 |

MIA 181,634,640v8

| | |
|---|---|
| Susan D. Profant, CFCA, CLA, Paralegal<br>KEN BURTON, JR., Manatee County<br>Tax Collector<br>P.O. Box 25300<br>Bradenton, FL 34206-5300 | Jack Reise<br>Waterford Township General Employees<br>Retirement System<br>c/o Coughlin Stoia Geller et al<br>120 E. Palmetto Park Road Suite 500<br>Boca Raton, FL 33432 |
| Internal Revenue Service<br>P.O. Box 21126<br>Philadelphia, PA 19114 | ~~Internal Revenue Service~~<br>~~Department of Treasury~~<br>~~227 N. Borough St.~~<br>~~Tallahassee, FL 32301~~ |
| Internal Revenue Service<br>Insolvency Unit<br>7850 S.W. 6th Court<br>Mail Stop 5730<br>Plantation, FL 33324 | State of Florida<br>Department of Revenue<br>Bankruptcy Section<br>P.O. Box 6668<br>Tallahassee, FL 32314-6668 |
| Honorable R. Alexander Acosta<br>Attn: Civil Process Clerk<br>U.S. Attorney<br>99 NE Fourth Street<br>Miami, FL 33132 | Honorable Eric Holder<br>U.S. Attorney General<br>Office of the Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |
| Susan R. Sherrill-Beard<br>Senior Trial Counsel/Bankruptcy<br>U.S. Securities and Exchange Commission<br>Atlanta Regional Office<br>Suite 1000, 3475 Lenox Road, N.E.<br>Atlanta, GA 30326-1232 | David A. Lander, Esq.<br>Brian W. Hockett, Esq.<br>*Counsel for BankUnited (New Bank)*<br>Thompson Coburn LLP<br>One US Bank Plaza<br>St. Louis, Missouri 63101 |
| Allison H. Weiss, Esq.<br>Jeffrey Chubak, Esq.<br>*Counsel for Bank of New York Mellon*<br>DEWEY & LeBOEUF LLP<br>1301 Avenue of the Americas<br>New York, N.Y. 10019 | Andrew I. Silfen, Esq.<br>Leah M. Eisenberg, Esq.<br>*Counsel for Wilmington Trust Company*<br>ARENT FOX LLP<br>1675 Broadway<br>New York, N.Y. 10019 |
| Jeffrey N. Rothleder, Esq.<br>*Counsel for Wilmington Trust Company*<br>ARENT FOX LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20026 | Jonathan Lee Riches<br>dba Bernard L. Madoff Invest. Sec. LLC<br>POB 14500 #40948018<br>Lexington, KY 40512 |

| | |
|---|---|
| Wendy H. Zoberman, Esq.<br>*Lead Counsel for the Putative Class*<br>BERMAN DEVALERIO<br>4280 Professional Center Drive, Suite 350<br>Palm Beach Gardens, FL 33410 | Monumental Life Insurance Co<br>c/o Maureen Ocampo CFA<br>2049 Century Park East #330<br>Los Angeles, CA 90067 |
| CC Arbitrage, Ltd<br>c/o Castle Creek Arbitrage LLC<br>111 West Jackson Blvd 20th Fl<br>Chicago, IL 60604 | Hudson Bay Fund LP<br>Hudson Bay Overseas LTD<br>c/o Charles Winkler<br>120 Broadway 40th Flr<br>New York, NY 10271 |
| Highbridge International LLC<br>c/o Highbridge Capital Management LLC<br>9 West 57 St 27 Floor<br>New York, NY 10019 | Mark F. Hebbeln, Esq.<br>Harold L. Kaplan, Esq.<br>*Counsel for Deutsche Bank National Trust Company*<br>Foley & Lardner LLP<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313 |
| ~~Deutsche Bank Securities, Inc~~<br>~~60 Wall St~~<br>~~New York, NY 10005~~ | Maureen A. McGreevey, Esq.<br>Counsel for SunGard Availability Services<br>680 E. Swedesford Rd<br>Wayne, PA 19087 |
| Edward G Salloom, Jr.<br>Claudia R. Sullivan<br>255 Wildwood Ave<br>Worcester, MA 01603 | Deborah K Curran, Esq.<br>Counsel for McCabe Wiesberg<br>& Conway LLC<br>8101 Sandy Spring Road, Suite 100<br>Laurel, MD 20707 |
| Grace Davila-Perez<br>14721 SW 159 Place<br>Miami, FL 33196 | Yale Scott Bogen<br>Development Specialists, Inc.<br>200 S Biscayne Blvd #1818<br>Miami, FL 33131 |
| Imperial County Treasurer-Tax Collector<br>940 West Main Street, Suite 106<br>El Centro, CA 92243 | Richard I. Janvey, Esq.<br>*Special Litigation Counsel to Debtors*<br>Diamond McCarthy<br>620 Eighth Avenue, 39th Floor<br>New York, NY 10018 |

12

| | |
|---|---|
| Kathryn R. Norcross, Senior Counsel<br>Sonya L. Levine, Counsel-Legal Division<br>*Of Counsel to FDIC*<br>Federal Deposit Insurance Corporation<br>Legal Division<br>3501 Fairfax Drive, VS-D<br>Arlington, VA 22226 | Alfred S. Lurey, Esq.<br>*Counsel for Official Committee of Unsecured Creditors*<br>Kilpatrick Stockton LLP<br>1100 Peachtree Street, Suite 2800<br>Atlanta, GA 30309 |
| Miguel G. Farra, CPA<br>Morrison Brown Argiz & Farra LLP<br>1001 Brickell Bay Drive, 9th Floor<br>Miami, FL 33131 | |

### AGREEMENT TO PROVIDE TRANSACTION SERVICES

This INFORMATION USE AND TRANSACTION PROPOSAL AGREEMENT (this "Agreement") is made this [1]<sup>th</sup> day of February, 2011 (the "Effective Date"), between Structured Capital Solutions, LLC, a Delaware limited liability corporation ("SCS"), and BankUnited Financial Corporation, a Florida corporation ("BUFC" or the "Company"), Debtor in Case No. 09-19940-LMI (U.S. Bankruptcy Court, S.D. Fla.) (the "Bankruptcy Court") (each of SCS and BUFC may hereinafter be referred to as a "Party" and, collectively, the "Parties").

WHEREAS, BUFC is interested in obtaining an equity infusion in the form of common and preferred stock;

WHEREAS, in connection with BUFC's evaluation of the Proposed Structure (as defined below), SCS or its Representatives may receive certain Confidential Information (as defined below) concerning BUFC; and

WHEREAS, SCS and BUFC desire to enter into this Agreement to govern the terms under which SCS provides Limited Use Information (defined below) with BUFC and BUFC shares Confidential Information with SCS in connection with evaluating and entering into a possible transaction that significantly resemble the Proposed Structure (each a "Potential Transaction");

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, agree as follows:

1. **Definitions**. For purposes of this Agreement, the following terms shall have the meanings indicated below.

(a) The term "Proposed Structure" shall mean issuance of a combination of common and/or preferred shares by the Company to a person introduced to BUFC by SCS that BUFC acknowledged in writing was not engaged in discussions with BUFC for such an issuance prior to the introduction by SCS (the "SCS Counterparty"), or a substantially similar transaction with such a person, as more fully described in Exhibit A hereto (the "Transaction") to be delivered immediately after execution of this agreement.

(b) The term "Limited Use Information" shall mean a financial model of the effects of the Proposed Structure to be delivered to BUFC and any such information relating to the Proposed Structure that SCS may deliver to BUFC or its Representatives (as defined below) and designate as Limited Use Information from time to time in written or electronic form. Limited Use Information shall not include information which can be demonstrated: (i) to have been rightfully in the possession of BUFC from a source other than SCS or its Representatives or developed by BUFC prior

# EXHIBIT A

to the time of disclosure ("Time of Disclosure") of said information to BUFC, provided that such information is not known by BUFC to be subject to another obligation of confidentiality; (ii) to have been publicly available prior to the Time of Disclosure; or (iii) to have become publicly available after the Time of Disclosure by any means except an unauthorized act or omission or breach of this Agreement on the part of BUFC or its Representatives (as defined below).

(c) The term "Confidential Information" shall mean certain confidential information concerning BUFC furnished (whether before or after the date hereof) by BUFC including but not limited to work papers, accounting records, lists of owners of the BUFC's securities, tax returns, financial statements, information related to the Company's past and potential tax refunds, or its Representatives in oral, written, electronic or other form to SCS or its Representatives and all notes, analyses, compilations, forecasts and other studies or other documents prepared by SCS or its Representatives in connection with its assistance to BUFC in connection with its evaluation of the Proposed Structure which contain, are based upon or reflect such information. Confidential Information as used herein does not include information which can be demonstrated: (i) to have been rightfully in the possession of SCS from a source other than BUFC or its Representatives prior to the Time of Disclosure of said information to SCS, provided that such information is not known by SCS to be subject to another obligation of confidentiality; (ii) to have been publicly available prior to the Time of Disclosure; or (iii) to have become publicly available after the Time of Disclosure by any means except an unauthorized act or omission or breach of this Agreement on the part of SCS or its Representatives.

(d) The term "Representatives" shall mean collectively each of the Party's respective directors, officers, employees, contractors, consultants, affiliates, agents, advisors or representatives of advisors, including counsel, lenders and financial and tax advisors.

2. **Fees**.

(a) If prior to December 31, 2011 (or such later date as extended by agreement of BUFC, the Committee (as defined below), and the SCS Counterparty), BUFC or any of its Affiliates (as defined below) completes a Potential Transaction with an SCS Counterparty, BUFC shall pay SCS a fee equal to fifteen percent (15%) of all amounts distributed to all holders of allowed pre-petition claims against BUFC ("BUFC Creditors") in respect of securities issued to such BUFC Creditors (except to the extent such amounts would have been distributed to BUFC Creditors in a liquidation of BUFC) in a Transaction as and when amounts are distributed on any such securities (the "Annual Fee").

(b) The term "Affiliate" shall mean any corporation or other business entity that directly or indirectly owns or controls, is owned or controlled by, or is under common control of BUFC, for so long as such entity owns or controls (or is owned or controlled by or under common control with) BUFC.

2

(c) The term "control" means possession of the power to direct or cause the direction of the management and policies whether through ownership interest, by contract or otherwise.

(d) Except as provided in this subsection 2(d), SCS shall be responsible for its own out-of-pocket costs and expenses, including fees for any services provided to SCS by third parties such as legal and accounting advisors. BUFC shall be responsible for its own out-of-pocket costs including, but not limited to, legal fees, accounting fees, and consulting fees incurred with respect to the evaluating and executing the Potential Transaction. Subject to a cap of $5,000 for expenses incurred in a calendar quarter, SCS shall be entitled to reimbursement of its actual documented reasonable out-of-pocket travel and hotel expenses incurred in connection with travel in connection with the Transaction from New York City. SCS understands and agrees that BUFC cannot reimburse first-class airfare, opulent meals or luxury hotels.

(e) SCS acknowledges that the payment of any fees pursuant to Section 2(a) above and/or Section 3(b) below is subject to approval of the Bankruptcy Court, and that under certain circumstances such payment may be disallowed or allowed in an amount different from the compensation provided under the terms and conditions of this Agreement.

3. **SCS Services**.

(a) SCS will introduce BUFC to potential counterparties for a Potential Transaction. SCS shall work with BUFC and its advisors in developing the Proposed Structure for any Potential Transaction with a SCS Counterparty. SCS shall work with BUFC in connection with preparation of documentation.

(b) If BUFC requests SCS to provide additional services ("Additional Services") to BUFC not in connection with evaluation of the Proposed Structure or a Potential Transaction and SCS declines or refuses to provide such Additional Services, SCS's declining or refusing to provide such Additional Services will not affect SCS's right to the payment of the fee as provided in Section 2(a) above.

4. **Obligations of Confidentiality and Nondisclosure**.

(a) BUFC agrees that the Limited Use Information will be used solely for purposes of (i) evaluating the Proposed Structure and its interest in entering into, or to actually enter into a Potential Transaction or (ii) such additional purposes as otherwise specifically authorized in writing by SCS, and that such Limited Use Information will be kept confidential by BUFC and its Representatives; *provided, however*, that any of such Limited Use Information may be disclosed (i) to those Representatives who need to know the Limited Use Information for the purposes set forth above, who are informed of the confidential nature of the Limited Use Information and who are deemed to be bound by the terms of this Agreement; (ii) to the Official Committee of Unsecured Creditors in BUFC's bankruptcy case (the "Committee") and the Committee's Representatives; (iii) to regulatory or judicial authorities, (iv) if required

3

by applicable law, rule or regulation, or (v) upon the consent of SCS thereto in writing. BUFC shall provide prior notice to SCS to the extent practicable before disclosure to a regulatory authority is made.

(b) SCS agrees that the Confidential Information will be used solely for the purposes of assisting BUFC in connection with its evaluation of the Proposed Structure and consideration of any Potential Transaction, and that such Confidential Information will be kept confidential by SCS and its Representatives; *provided, however*, that any of such Confidential Information may be disclosed (i) persons who are interested in engaging in a Potential Transaction, (ii) to those Representatives who need to know the Confidential Information for the purposes set forth above, who are informed of the confidential nature of the Confidential Information and who are deemed to be bound by the terms of this Agreement; (iii) to regulatory or judicial authorities, (iv) if required by applicable law, rule or regulation, or (v) upon the consent of BUFC thereto in writing. SCS shall provide prior notice to BUFC to the extent practicable before disclosure to a regulatory authority is made.

(c) SCS acknowledges that none of BUFC, its Representatives or any of their respective officers, directors, employees, agents or controlling persons, makes any express or implied representation or warranty as to the accuracy or completeness of the Confidential Information. SCS further agrees that it is not entitled to rely on the accuracy or completeness of the Confidential Information.

(d) BUFC acknowledges that none of SCS, its Representatives or any of their respective officers, directors, employees, agents or controlling persons, makes any express or implied representation or warranty as to the accuracy or completeness of the Limited Use Information. BUFC further agrees that it is not entitled to rely on the accuracy or completeness of the Limited Use Information.

(e) Each of the Parties will cause its Representatives to observe the terms of this Agreement and shall be responsible for any breach of this Agreement by any of its Representatives.

(f) In addition, except as expressly permitted herein or required by applicable legal, judicial or regulatory authority, the Parties agree not disclose to any person without the consent of the other Party (other than as permitted above) the fact that the Limited Use Information or Confidential Information, as applicable, has been provided under this Agreement or that discussions or negotiations, if any, are taking or have taken place concerning a Potential Transaction, or any of the terms, conditions or other facts with respect to any such discussions or a Potential Transaction, including the status thereof; *provided, however*, that BUFC shall be allowed to discuss such matters with the Committee, the Bankruptcy Court, and any regulatory authority governing it at such regulatory authority's request. BUFC shall provide prior notice to SCS to the extent practicable before disclosure to a regulatory authority is made.

4

(g)    The term "person" as used in this letter agreement will be interpreted broadly to include, without limitation, any corporation, company, limited liability company, partnership or individual.

5.    **Return of Limited Use Information and Confidential Information**. If either Party decides to cease or to not pursue further its evaluation of the Proposed Structure, it will promptly inform the other Party of that decision. In that case, or any time upon the request of either Party, the other Party will promptly (i) return to the other Party at its own expense all Limited Use Information or Confidential Information, as applicable, in its or its Representatives' possession together with any copies thereof in its possession or control and (ii) destroy all other materials and information in its possession or control that incorporate, refer to, or comment on such Limited Use Information or Confidential Information. Notwithstanding the return or destruction of the Limited Use Information or Confidential Information, as applicable, any oral Limited Use Information or Confidential Information, as applicable, will continue to be subject to the terms of this Agreement.

6.    **Required Disclosure**.    In the event that a Party or its Representatives are requested or required by applicable legal, judicial or regulatory authority to disclose any Limited Use Information or Confidential Information, as applicable, other than as contemplated by this Agreement, such person will notify the other Party no later than five business days from the date such person becomes aware of such request or requirement so that it may seek an appropriate protective order or other appropriate remedy or, in its discretion, waive in writing compliance with the terms of this Agreement with respect to such disclosure. In the event that no such protective order or other remedy is obtained, or compliance is waived with the terms of this Agreement, the Party may, without liability under this Agreement, furnish only that portion of the Limited Use Information or Confidential Information, as applicable, which it is legally required to disclose and will exercise reasonable best efforts to obtain reliable assurance that confidential treatment will be accorded the Limited Use Information or Confidential Information, as applicable, so disclosed.

7.    **Duration**. If BUFC determines, at the behest of the Committee not to pursue a Potential Transaction or if SCS requests return of its Limited Use Information pursuant to Section 2(a) above, this Agreement can be terminated by either party immediately upon notice to the other party. In all other circumstances, either party has the right to terminate the Agreement by providing 20 days notice to the other party, provided that no such notice shall be provided earlier than May 1, 2011. No such notice shall operate to alleviate BUFC from paying any fees due under the terms hereof upon completion of a Potential Transaction with an SCS Counterparty prior to December 31, 2011 (or such later date as extended by agreement of BUFC, the Committee, and the SCS Counterparty) if, prior to December 31, 2011, BUFC or any of its Affiliates (as defined below) agrees to enter into or substantially completes negotiations to enter into a Potential Transaction with an SCS Counterparty.

8. **General Provisions.**

(a) <u>Assignment</u>. This Agreement is not assignable by either party hereto, except that the Company may assign its rights and obligations hereunder to any of its Affiliates.

(b) <u>Governing Law</u>. This Agreement shall be governed by, enforced under and construed and interpreted in accordance with the laws of the State of Florida, without giving effect to any choice of law or conflicts of law provision or rule, and the Bankruptcy Court shall have exclusive jurisdiction to resolve any claim or matter arising out of or in connection with this Agreement.

(c) <u>Approval by Bankruptcy Court</u>. SCS acknowledges that payment of any fees hereunder is subject to approval of the Bankruptcy Court in accordance with Sections 363(b) and 503(b)(1)(A) of the Bankruptcy Code. BUFC will promptly seek such approval in the form of an Order approving and authorizing BUFC to incur and pay SCS a contingent administrative claim as provided herein.

(d) <u>List Maintenance Requirements.</u> Each Party hereto agrees to notify the other Party promptly if it determines or has any reason to believe that the Proposed Transaction is subject to the list maintenance requirements of Section 6112 of the Internal Revenue Code of 1986, as amended, or any similar state law requirement.

(e) <u>Breach</u>. Each party recognizes and acknowledges that remedies at law may be inadequate to protect the other against any actual or threatened breach of this Agreement by the other party or its Representatives. Each party acknowledges that monetary damages may not be an adequate remedy for any breach of this Agreement by the other or its Representatives and that each party shall be entitled to seek injunctive relief, specific performance, and such other forms of equitable relief, in addition to any other remedies and relief that may be available to it at law or in equity for any such breach without proof of actual damages. Each party will be entitled to recover its reasonable attorney's fees and costs in any action brought against the other to seek such relief as a result of an actual or threatened breach of this Agreement, provided that such party is successful in obtaining the sought-after relief.

(f) <u>Severability</u>. If any term of provision of this Agreement is held to be invalid or unenforceable, the remaining portions of this Agreement shall continue to be valid and will be performed, construed, and enforced to the fullest extent permitted by law, and the invalid or unenforceable provision shall be deemed amended and limited to the extent necessary to permit the maximum enforceability or validation of such provision.

(g) <u>Notices</u>. Any notices and other communication required or permitted hereunder shall be in writing and shall be considered given on the date delivered, if delivered by hand, or upon mailing thereof, if mailed by certified mail, return receipt requested, or by facsimile or email (with confirmation) or delivered by an

overnight courier (with confirmation) to the Parties at the following addresses (or to such other address or addresses for a Party, as shall be specified in any notice given):

    (i)    if to SCS to:

Structured Capital Solutions, LLC
230 Park Avenue, 10th Floor
New York, NY 10169
Fax: 212-808-3020
Attention: Mark G. McTigue

    (ii)    if to BUFC to:

Joseph Luzinski
c/o Development Specialists Inc.
200 S. Biscayne Blvd., Suite 1818
Miami, FL 33131
Fax: 305-374-2718

With a copy to (which copy shall not constitute notice):

Mark Bloom, Esq.
Greenberg Traurig, P.A.
333 Avenue of the Americas (S.E. 2nd Avenue)
Suite 4400
Miami, Florida 33131
(305) 579-0717
bloomm@gtlaw.com

(h) <u>Amendments/Waiver</u>. This Agreement may be amended or modified only in a writing signed by both Parties and approved by the Bankruptcy Court. Any provision of this Agreement may only be waived by a writing signed by the Party against whom enforcement of any waiver is sought. No waiver of any provision or breach of this Agreement shall be deemed a waiver of any other provision or breach of any subsequent application of any provision or any subsequent breach. It is further understood and agreed that no failure or delay by either Party in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

(i) <u>Entire Agreement</u>. This Agreement constitutes and contains the entire agreement and understanding between the Parties and supersedes and replaces all prior negotiations and agreements proposed or otherwise, whether written or oral, concerning the subject matter of this Agreement. Acceptance of this Agreement by BUFC does not constitute acceptance of any financial term expressed or contained in Exhibit A. No contract or agreement providing for a Potential Transaction, and no legal obligation of any kind whatsoever relating to a Potential Transaction, except as to the

7

matters specifically agreed to herein, will be deemed to exist, and either Party may terminate evaluation of the Proposed Structure or a Potential Transaction at any time without any liability, unless and until a definitive agreement with respect to a Potential Transaction has been executed and delivered.

  (j) <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

  (k) <u>Non-Exclusive Relationship</u>.  SCS acknowledges and agrees that its relationship with BUFC is non-exclusive and that BUFC is working with other persons in attempting to procure a counterparty for a Transaction.  SCS understands and agrees that it will not be entitled to any compensation in the event that BUFC enters into a Transaction with a counterparty other than an SCS Counterparty.

NOTWITHSTANDING THE FOREGOING, YOU (AND EACH EMPLOYEE, REPRESENTATIVE OR OTHER AGENT OF YOURS) MAY DISCLOSE TO ANY AND ALL PERSONS, WITHOUT LIMITATION OF ANY KIND, THE TAX TREATMENT AND TAX STRUCTURE OF A TRANSACTION WITH BUFC AND ALL MATERIALS OF ANY KIND (INCLUDING OPINIONS OR OTHER TAX ANALYSES) THAT ARE PROVIDED TO YOU RELATING TO SUCH TAX TREATMENT AND TAX STRUCTURE. FOR THESE PURPOSES, THE TAX TREATMENT OF A TRANSACTION WITH BUFC MEANS THE PURPORTED OR CLAIMED UNITED STATES FEDERAL, STATE OR LOCAL INCOME TAX TREATMENT OF SUCH TRANSACTION. MOREOVER, THE TAX STRUCTURE OF A TRANSACTION WITH BUFC INCLUDES ANY FACT THAT MAY BE RELEVANT TO UNDERSTANDING THE PURPORTED OR CLAIMED UNITED STATES FEDERAL, STATE OR LOCAL INCOME TAX TREATMENT OF SUCH TRANSACTION.

STRUCTURED CAPITAL SOLUTIONS, LLC

By: _____
Name: Mark McTigue
Title: Managing Director

BANKUNITED FINANCIAL CORPORATION

By: _____
Name: Joseph J. Luzinski
Title: Chief Restructuring Officer